IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICE OF LOUISIANA

| | | |
|---|---|---|
| BERGER, JESSICA | : | CIVIL ACTION NO. |
| **Plaintiff** | : | |
| VERSUS | : | |
| | : | JUDGE |
| ROLLINS, INC. AND ORKIN, INC. | : | |
| successor in interest to ORKIN | : | |
| EXTERMINATING COMPANY, INC. | : | |
| D/B/A/ ORKIN PEST CONTROL, | : | |
| **Defendant** | : | |

: : : : : : : : : : : : : : : : : : : : : : : :

## PLAINTIFF'S EXHIBIT LIST

| No. | DESCRIPTION | BATES # |
|---|---|---|
| | **PERSONAL INFORMATION** | |
| 1 | Mrs. Berger's Louisiana Department of Agriculture and Forestry Identification Card for Orkin Exterminating; | 001-002 |
| 2 | Mrs. Berger's Resume; | 003-005 |
| | **EMPLOYMENT DOCUMENTS** | |
| 3 | Printout of Internet posting of Orkin's Job Descriptions; | 006-007 |
| 4 | ATN Pre-Employment Toxicology Form; | 008 |
| 5 | Orkin Information Booklet; | 009-033 |
| 6 | General Office Procedure Manual Vol. 1- Holidays and Vacations; | 034-042 |
| 7 | General Office Procedure Manual Vol. 1- Job Descriptions | 043-044 |
| 8 | Account Manager Pay Arrangement Components Documents, Filled Out but not signed; | 045-046 |
| 9 | Branch Account Manager Pay Arrangement Components Documents, Not filled out but Signed on 8/27/14 by Mrs. Berger; | 047-049 |

| 10 | Document reflecting Mrs. Berger's Employee #1170737; | 050 |
| 11 | 2014 Expectations of Account Managers Printout; | 051 |
| 12 | The Rollins 401(k) Savings Plan Documents; | 052-057 |
| 13 | FMC Material Safety Data Sheet; | 058-068 |
| | **PAYROLL DOCUMENTS** | |
| 14 | Automatic Direct Deposit / Pay Card Authorization; | 069 |
| 15 | Printouts of Mrs. Berger's Check Stubs starting September 2013-August 2014; | 070-086 |
| 16 | Mrs. Berger's 2013 W2's | 087-088 |
| 17 | May 13, 2014 Printout of Accumulated Hours for Sick, Floating-Personal, and Vacation Days Off for 2014 and 2015; | 089 |
| 18 | Rollins, Inc. and Subsidiaries Focus Compensation Invoices for January-May 2014, and July-August 2014; | 090-103 |
| 19 | Mrs. Berger's Orkin Pest Control Sales Documents; | 104-115 |
| 20 | Copies of the Louisiana Department of Agriculture and Forestry Identification Card for Orkin Exterminating License for Wayne Zimmerman for 2012 and 2014, along with Louisiana Department of Agriculture and Forestry Identification Card for Orkin Exterminating; Identification Cards for Jordy Parfait and Andy Boudreaux; | 116 |
| | **EMAILS** | |
| 21 | 08/14/13 Subject: Contingent Offer, from Wayne Zimmerman to Jessica Berger; | 117 |
| 22 | 08/16/13 Subject: Scheduling of Pre-Employment Physical, from Tawanda Williams to Jessica Berger; | 118-119 |
| 23 | 08/19/13 Subject: CHR Examination Appointment Confimation, Tawanda Williams to Jessica Berger; | 120 |
| 24 | 08/23/13 from Wayne Zimmerman to Jessica Berger regarding receiving her drug test and physical results, at 11:28 am; | 121 |

| 25 | 08/23/13 at 11:34 am Subject: Update, from Jessica Berger to Wayne Zimmerman; | 122 |
|----|----|----|
| 26 | 04/04/14 Facebook messages between Jessica Berger and Lisa Mosely; | 123-127 |
| 27 | 05/15/14 Subject: AM 90 Day Rolling, from Jessica Berger to Jessica Benoit; | 128-129 |
| 28 | 05/17/14 Subject: 461-2014-01256 Jessica Berger, from Jessica Berger to Nelson Borges of the EEOC; | 130 |
| 29 | 06/10/14 Subject: AM 90 Day Rolling thru May 2014, from Paul Strickland to Jessica Berger; | 131 |
| 30 | 06/13/14 Subject: BN MANGEMENT HOTEL, from Jessica Berger to Jessica Benoit; | 132-137 |
| 31 | 06/13/14 at 6:09 pm, Subject: BN MANGEMENT HOTEL, from Jessica Berger to Jessica Benoit; | 138 |
| 32 | 06/13/14 at 6:13 pm, Subject: IMG-7146, from Jessica Berger to Jessica Benoit; | 139 |
| 33 | 06/23/14 Subject: Leads, from Jessica Berger to Nelson Borges of the EEOC; | 140-142 |
| 34 | 06/25/14 Subject: Video, from Jessica Berger to Tyrone Dudley; | 143 |
| 35 | 06/25/14 Subject: License, from Jessica Berger to Tyrone Dudley; | 144 |
| 36 | 06/26/14 at 8:10 am Subject: USCG Mosquito Quote, from Jessica Berger to Jessica Benoit; | 145-148 |
| 37 | 06/26/14 at 8:24 am Subject: Emails, from Jessica Berger to Tyrone Dudley; | 149 |
| 38 | 06/26/14 at 8:54 am Subject: More Information, from Jessica Berger to Tyrone Dudley; | 150 |
| 39 | 06/30/14 at 8:52 am Subject: Orkin Houma, from Jessica Berger to Tyrone Dudley; | 151 |
| 40 | 06/30/14 at 9:03 am Subject: AM 90 Day Rolling Average, from Jessica Berger to Jessica Benoit; | 152-153 |

| 41 | 06/30/14 at 9:12 am Subject: BN MANAGEMENT HOTEL, from Jessica Berger to Jessica Benoit; | 154 |
|---|---|---|
| 42 | 07/02/14 Subject: 461-2014-01256, from Jessica Berger to Nelson Borges of the EEOC; | 155 |
| 43 | 07/09/14 at 7:25 pm Subject: Counseling 7/2/14 Jessica Berger/Houma 286, from Jessica Berger to Jessica Benoit; | 156-157 |
| 44 | 07/09/14 at 8:16 pm Subject: Counseling 7/2/14 Jessica Berger/Houma 286, from Jessica Berger to Hearld Fielder; | 158-159 |
| 45 | 07/10/14 at 7:01 pm Subject: Counseling 7/2/14 Jessica Berger/Houma 286, from Jessica Berger to Larry Black; | 160-162 |
| 46 | 07/10/14 at 7:04 pm Subject: Counseling 7/2/14 Jessica Berger/Houma 286, from Jessica Berger to Jessica Benoit; | 163-166 |
| 47 | 07/11/14 Subject: Orkin License Houma, from Jessica Berger to Tyrone Dudley; | 167 |
| 48 | 07/12/14 at 2:14 pm Subject: Jessica Berger from Jessica Berger to Henry Anthony; | 168-169 |
| 49 | 07/12/14 at 5:55 pm forwarded message from Jessica Berger to Jessica Benoit from Henry Anthony to Jessica Berger; | 170 |
| 50 | 07/13/14 Subject: BN MANAGEMENT HOTEL, from Jessica Berger to Paul Strickland; | 171-172 |
| 51 | 07/14/14 Subject: Missing Account Information from June Porter to Jessica Berger; | 173 |
| 52 | 08/19/14 at 8:39 am Subject: Orkin Houma, from Jessica Berger to Tyrone Dudley; | 174 |
| 53 | 08/19/14 at 9:31 am Subject: Orkin Houma, from Jessica Berger to Tyrone Dudley; | 175-176 |
| | **EEOC DOCUMENTS** | |
| 54 | Mrs. Berger's EEOC Questionnaire, dated 05/09/14; | 177-181 |
| 55 | Letter to Attorney Bernard regarding Mrs. Berger's claim and corrections to be made, Corrections Document attached, from Nelson Borges of the EEOC dated 08/06/14; | 182-184 |

| 56 | Mrs. Berger's Charge of Discrimination Document dated 08/27/14; | 185-188 |
| 57 | Mrs. Berger's Charge of Discrimination Document dated 03/03/15; | 189-191 |
| 58 | Mrs. Berger's Dismissal Notice of Rights with Letter to Attorney Bernard attached dated 06/03/15; | 192-194 |
| 59 | Mrs. Berger's EEOC Statement; | 195-196 |
| 60 | Mrs. Berger's Timeline; | 197-199 |
| 61 | Mrs. Berger's Timeline of Incidents; | 200 |
| | **DOCUMENTS PERTAINING TO TERMINATION** | |
| 62 | 06/13/14 Orkin Pest Control Letter, Re: Complaint by Jessica Berger; | 201-205 |
| 63 | 06/19/14 Orkin Pest Control Letter, Re: Hostile Work Environment Complaint from Larry Black to Jessica Berger, including Mr. Black Summary of his investigation; | 206-207 |
| 64 | Handwritten Note regarding Mrs. Berger turning in her things for the company, signed by witnesses on 08/15/14; | 208 |
| 65 | Memo from James Earl Thomas to Jessica Berger on 08/15/14, Re: Staff Reduction; | 209 |
| 66 | Employee Coaching / Counseling Form for 5/2/14 and 7/2/14, as a Formal Warning and Counseling Discussion; | 210-213 |
| 67 | Mrs. Berger's Employment Separation Agreement and General Release Form, not signed; | 214-217 |
| 68 | Handwritten Corrections for EEOC and Handwritten Notes; | 218-221 |

J. BERGER 001
GKB & ASSOCIATES



LOUISIANA DEPARTMENT OF
**AGRICULTURE & FORESTRY**
**IDENTIFICATION CARD**

**ORKIN EXTERMINATING -
HOUMA (286)**
JESSICA BERGER
317 LOUIS DR
HOUMA, LA 70364

REGISTRATIONS
ST

NOT AN EMPLOYEE OF THE STATE

ID Number
00144746
Effective Date: 10/16/2013

MIKE STRAIN DVM. COMMISSIONER

CERTIFIED, LICENSED OR REGISTERED AS
(ST) STRUCTURAL PEST CONTROL TECHNICIAN

| CATEGORIES | RECERTIFY BY |
|---|---|
| P1-General Pest Control | 6/30/2015 |
| P2-Commercial Vertebrate Control | 6/30/2015 |
| P3-Termite Control | 6/30/2015 |

SIGNATURE: _____

LDAF PESTICIDE SPILL HOTLINE: 225-925-3763
LA POISON CONTROL CENTER: 800-222-1222

J. BERGER 002
GKB & ASSOCIATES

# Jessica R. Berger

317 Louis Drive
Houma, LA 70364
Phone: (985) 228-5384
Email: jessben414@gmail.com

**OBJECTIVE:**

To gain more experience necessary to increase my knowledge in a more professional atmosphere. I am committed to providing an atmosphere of exceptional employee morale and impeccable service.

**QUALIFICATIONS:**

- Successfully recruited and placed a full spectrum of candidates in the legal industry as well as the food and beverage industry.
- Managed and maintained high volume of clients in a variety of economic circumstances.
- Conducted extensive research and recruiting utilizing the Internet and World Wide Web.

**EDUCATION:**

· St. Mary's Dominican High School, New Orleans, LA
**Diploma, Class of 1996**

· Loyola University, New Orleans, Louisiana
**Bachelor of Arts in Criminal Justice-** December 2003

**EXPERIENCE:**

July 2012- Present
*AT&T*

*Retail Sales Consultant*
**Houma, LA**

**RSC**
Develop and attain customer experience and sales objectives for store. Sell all products and services offered by the company. Meet all sales objectives. Handle all administrative aspects of the sale including completing customer contracts and warranties, pulling products from inventory, accepting customer payments and completed orders. Maintain strong knowledge of all products, accessories, pricing plans, promotions and service features. Maintain knowledge of competitive offers and provide critical market feedback to the store manager regarding local competition and products/service needs. Handle service inquiries from customers. Provide efficient and courteous customer service and assist in all aspects of product offerings and services.

March 2010 – March 2012
*Abstracting and Legal Research, Inc.*

*Title Examiner/Abstractor*
**Alexandria, LA**

**Abstractor/ Title Examiner**
Copies or summarizes recorded documents, such as mortgages, trust deeds, and contracts, affecting title to property. Examines mortgages, liens, judgments, easements, plat books, maps, contracts, and agreements to verify legal description, ownership, restrictions, or conformity to requirements. Analyzes encumbrances to title, statutes and case law, and prepares report outlining encumbrances and actions required to clear title. Searches records to determine if delinquent taxes are due. Prepares correspondence and other records. Confers with interested parties to resolve problems and impart information.

J. BERGER 003
GKB & ASSOCIATES

March 2008- March 2010
*Coushatta Casino Resort*

*Food and Beverage Department*
Kinder, LA

**Supervisor**
Gumbeaux's Sports Bar & Oyster Bar / 7 Clans Buffet

Part of the management team. Supervising associates in a restaurant/bar high -energy atmosphere. Supervising associates in the casino buffet. In both venues: answer all questions associates and guests may have about the venue and casino. Resolve guest complaints in a timely and professional manner. Resolve associate-associate conflicting issues. Supervisors were to provide a mentoring attitude and appearance to the associates to set the standard of impeccable guest service. Maintain open line of communication from front of the house to the back of the house. Ability to help associates in all aspects of the venue when th guests.

**Bartender**
Tending different bars in the casino while in a high volume atmosphere. Tending to servers and patrons on at the same time while maintaining a good attitude. Customer relations and guest services play a major part of the duties of the bartender. Maintaining a clean workspace and teamwork also is a priority.

July 2004-June 2005
*Optimum Marketing, L.L.C & Skymax Marketing, Inc.*
**Top Account Executive/Leader**

*BellSouth Campaign*
**Metairie, LA**

Focused on the small business sector of BellSouth Business customers. Business to business marketing involved. Analysis of billing and corrected mistakes for customers on a face to face basis in the state of Louisiana. Trained numerous starting employees in the field. Maintained team production, micromanaged an office, lead and attended meetings on a regular basis. Traveled and maintained great customer rapport with clients. Established honest and hard working reputation in numerous assigned territories. Achieved 2nd place in the country for the BellSouth Campaign in September of 2004.

June 2002-December 2003
*GMR Marketing & T.S.P Marketing*
**Lead Promotional Representative/Merchandiser**

*Phillip Morris*
**New Orleans, LA**

Promote corporate client in local venues. Interact with patrons on a one-on-one basis in a high-energy atmosphere, administer surveys and build databases. Promotional field staff for corporate equity events such as "Marlboro Ranch" and "Marlboro Racing" shows. Set up equipment for ranch and racing shows and aided in operation of the events. Interacted with patrons on a one to one basis in venues relative to the promotion.

July 2003- October 2003
*Alloy Marketing and Promotions*
**Brand Ambassador, V-Representative**

*Verizon Wireless*
**Harvey, LA**

Trained in promoting the new Get Pix promotion for the Get Pix phone on behalf of Verizon Wireless. One out of 128 nationwide chosen to demonstrate how the phone works and demonstrate the specialized features of it. Record number of demonstrations, interactions, phones sales, and total of people who come into the venue. Keep in constant contact with the market manager. Fill out a report and send to market manager to be presented to the Verizon Executive Management via website in order to calculate numbers and percentages to see which market generates the most sales. Promotion ends on Oct 19 and is accomplished throughout the weekdays and on weekends.

## ACTIVITIES & COMMUNITY INVOLVEMENT:

-Alpha Chi Omega Alumni, Social Chair and PACE
-Graduate of NASPR's Pharmacology/Pharmaceutical Sales Training Program-October 2004, CNPR  Number: 134532004
-Member of the National Association of Pharmaceutical Sales Representatives
-Member of Krewe of Medea, 2011-2012, Alexandria, Louisiana
-Business Certified 2.0. , AT&T, July 2013

*Proficient  in Microsoft Word, Works, Excel, WinZip, Windows XP, 2000 & 98, WordPerfect 9.0.

J. BERGER 004
GKB & ASSOCIATES

**REFERENCES:**

-Tonya J. Loveless, Rock Springs, WY, 406-661-9340
-Cody Johnson, AT&T, 713-876-1709
-Jeremy Messina, AT&T, 985-688-6004

J. BERGER 005
GKB & ASSOCIATES



Home (?)   Benefits (/benefits)   Orkin Training Process (/orkin-training-process)   Community Involvement (/community-involvement)

Supporting Our Troops (/supporting-our-military)

## Account Manager

Houma, Louisiana, US

Apply   (/login/d37a8ecd-b74f-11e2-9f88-40400b8b2296/aa8c6226-dcf2-11e3-9006-bc764e11339f/false?
apply=true&returnUrl=%2F1%2Frecruiting%2Fjobsapplication%2F88/91246-d150-11e3-9fcd-bc764e11339f%2Faa8c6226-dcf2-11e3-9006-bc764e11339f%2Ffalse%3Fstep%3D1)

Save   (/login/d37a8ecd-b74f-11e2-9f88-40400b8b2296/aa8c6226-dcf2-11e3-9006-bc764e11339f/false?
returnUrl=/recruiting/savejob/88/91246-d150-11e3-9fcd-bc764e11339f/aa8c6226-dcf2-11e3-9006-bc764e11339f/false)

Type: Full-Time
Category: Sales
Reference ID: 1302233
Date Posted: 04/29/2014

### Job Description

COMMERCIAL B2B SALES Professional

Orkin Pest Control, LLC is seeking talented women and men to expand our business-to-business sales. We are looking for driven, focused, and talented Outside Sales Professionals that are self-disciplined and confident. Founded in 1901, we are one of the leading service providers in the United States. We provide the most accurate, comprehensive, and efficient pest management services for the Hospitality, Food Services, Industrial, Retail and Institutional markets. Orkin provides training - both sales training and specific training on Business Process and Strategic Technology, access to databases (CRM).

### Commercial B2B Sales Professional

This position is an excellent career opportunity for a professional that is always on the outlook for potential customers, enjoys helping others, solving problems and new challenges. The Commercial B2B Sales Professional must be comfortable and confident in prospecting business decision makers to schedule initial meeting. The sales professional must be comfortable meeting cold calls and developing new business on a daily basis. The sales professional must also be able to develop and make presentations to key decision-makers. Previous commercial prospecting and outside sales experience in a business-to-business environment is a must. Qualified candidates will have an entrepreneurial spirit, be money motivated and have the hunger to succeed.

We at Orkin, have a strategic plan that ensures targeted marketing activities, professionalism, and organization drives to this marketplace and industry.

Today, there are many options when it comes to business Pest Control solutions. For that reason, we pride ourselves on our management team, sales staff, support staff, and service team. Orkin is committed to providing you with consistent and professional solutions to meet our customer's needs. We invest in our future with training and developmental opportunities so our team is always ready to handle any issue you may have.

Upon obtaining sales goals, a company vehicle with a gas card can be earned.

### Job Requirements:

- 2+ years outside sales experience in a business to business setting
- Prospecting to set initial meeting
- A genuine desire to be highly successful at business to business (B2B) outside sales
- The ability to "self start" and work independently. Must have a "hunter" attitude
- Ability to generate new leads by dedicated Cold-Calling
- Strong competitive spirit
- Manage the sales process from introduction of services to signing service agreements
- Develop relationships and referrals with business owners in your territory
- Strong communication and interpersonal skills
- Excellent follow-up and organizational skills, conduct periodic customer service, quality assurance visits with clients
- A clean driving record and dependable transportation
- The ability to pass a background check including a drug screen
- -and physical

### WE OFFER

Lucrative Commission Structure with a competitive base salary
Auto Allowance + Gas Allowance
An award winning nationally recognized training program with multiple channels of learning
Medical Insurance
Dental Insurance
Life Insurance
Vision Insurance
401 (k) Plan
Long & Short Term Disability
Flexible Spending Account

J. BERGER 006
GKB & ASSOCIATES



# Account Manager

Houma, Louisiana, US

**Apply**          Save

**Description**          Recommended

**Type:** Full-Time
**Category:** Sales
**Reference ID:** 1303233
**Date Posted:** 04/29/2014

## Job Description
COMMERCIAL B2B SALES Professional

**Orkin Pest Control,** LLC is seeking talented
women and men to expand our business-to-
business sales.  We are looking for driven,
focused, and talented Outside Sales

J. BERGER 007
GKB & ASSOCIATES

# CUSTODY AND CONTROL FORM
## (DO NOT USE THIS FORM FOR D.O.T. COLLECTIONS)

**ATN**

322611682

ADVANCED TOXICOLOGY NETWORK,
3560 Air Center Cove, Suite 101, Memphis, TN 38118 (888)222

**STEP 1: COMPLETED BY COLLECTOR OR EMPLOYER REPRESENTATIVE**

A. Employer Name, Address, I.D. No. 163057

Rolling/CMH
1375 Piccard Drive #275
Rockville, MD 20850
Phone: (800)967-0925 Fax: (240)813-2760

B. MRO Name, Address, Phone and Fax No.

CMH - ROBERT SMOTTNELL, MD
1375 PICCARD DR #175
ROCKVILLE MD 20850
Phone: (800)967-0925 Fax: (240)813-2760

Location
Code:

C. Donor Information

SSN 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

First Name JESSICA A M.I. D

Last Name BERGER

Alt. ID

Donor Phone (Daytime) 445-224-53x4 (optional)

Donor Phone (Evening) (optional)

Donor Certification:

I certify that I provided my urine specimen to the collector; that I have not adulterated it in any manner; that each specimen bottle used was sealed with a tamper-evident seal in my presence; and that the information provided on this form and on the label affixed to each specimen bottle is correct.

X _____  08/14/13
Signature of Donor        Date (MM/DD/YY)

D. Results Review

[X]133180-NDOT W/ALL REVIEW

E. Reason for Test

☐ Pre-employment   ☐ Random   ☐ Reasonable Suspicion/Cause
☐ Post Accident   ☐ Post Injury   ☐ Return to Duty   ☐ Follow-up
☐ Other (specify): _____

F. Test to be Performed:

[X]51001V 9-NIDA: 9 PANEL w/validity

G. Collection Site Information

CMH
140 Veterans Memorial Blvd
Metairie, LA 70005

Site ID #

Collection Site Phone No.

Collection Site Fax No.

**STEP 2: COMPLETED BY COLLECTOR**

Read specimen temperature within 4 minutes. Is temperature between 90° and 100° F? ☑ YES   ☐ NO, enter remarks

Specimen Collection: ☐ Single   ☐ Split

☐ Observed: (Enter Remarks Below)

REMARKS:

**STEP 3: Collector affixes bottle seal(s) to bottle(s). Collector dates seal(s). Donor initials seal(s).**

**STEP 4: CHAIN OF CUSTODY - INITIATED BY COLLECTOR AND COMPLETED BY LABORATORY**

I certify that the specimen given to me by the donor identified above was collected, labeled, sealed and released to the Delivery Service noted, in accordance with applicable requirements.

X _____
Signature of Collector    Time of Collection ☐ AM ☐ PM

PRINT Collector's Name (First MI Last)    Date (MM/DD/YY)

➤ SPECIMEN BOTTLE(S) RELEASED TO:

COURIER

Name of Delivery Service Transferring Specimen to Laboratory

**RECEIVED AT LABORATORY**

X _____
Signature of Accessioner

PRINT Accessioner's Name (First MI Last)    Date (MM/DD/YY)

➤ Primary Specimen Bottle Seal Intact?
Yes   No

enter remarks below

➤ SPECIMEN BOTTLE(S) RELEASED TO:

Temporary Storage

J. BERGER 008
GKB & ASSOCIATES

**COPY 5 - DONOR COPY**



# ORKIN INFORMATION BOOKLET



J. BERGER 009
GKB & ASSOCIATES



# TABLE OF CONTENTS

Welcome to Orkin
About the Company
Mission Statement ........................................................... 1
Company Policies and Practices
    Equal Employment Opportunity, Diversity and Respect Policies .......... 2
    Business Abuse Program ................................................. 2
    Standards of Conduct ................................................... 2
    Unions ................................................................. 3
    Substance Abuse Policy ................................................. 4
    Appeal Process ......................................................... 4
    Personal Relationships ................................................. 7
    Employment of Relatives and Family Members ............................ 7
    Standards of Appearance ................................................ 7
    Training ............................................................... 7
    Pay for Performance .................................................... 8
    Punctuality and Attendance ............................................. 9
    Lunch Periods .......................................................... 9
    Paydays ................................................................ 10
    Timekeeping Procedures ................................................. 10
    Overtime Non-Exempt Employees .......................................... 10
    Automatic Deposit ...................................................... 10
    Benefits ............................................................... 10
    Days Off ............................................................... 11
    Leave of Absence Policy ................................................ 11
    Benefits While on Leave of Absence ..................................... 13
    Funeral or Bereavement Time Off ........................................ 14
    Jury Duty .............................................................. 14
    Time Off for Witness ................................................... 14
    Voting Time Off ........................................................ 14
    Military Leave ......................................................... 14
    Workers' Compensation .................................................. 15
    Business Conduct ....................................................... 15
    Conduct Outside Work ................................................... 15
    Solicitation and Distribution Policy ................................... 15
    Teamwork ............................................................... 16
    Employee Feedback ...................................................... 16
    Employee Communications ................................................ 16
    Open-Door Policy ....................................................... 16
    Care, Custody and Control of Chemicals ................................. 17
        FIFRA .............................................................. 17
        Company Procedures ................................................. 17
    Hazard Communications Program .......................................... 17
    Consumer Policy Pledge ................................................. 18
    Driver Certification Policy ............................................ 18
    Global Positioning System (GPS) ........................................ 19
    Works Made During Employment ........................................... 19
    Dispute Resolution Policy .............................................. 20
    Employee Cooperation in In-House Investigations ........................ 20
    Confidentiality ........................................................ 20
    Use of Technology and the Internet ..................................... 21
    Visitors ............................................................... 21
    Security ............................................................... 22
    Inquiries from the Media ............................................... 22
    Employee Parking ....................................................... 22
    Travel ................................................................. 22
    Telephones ............................................................. 22
    Housekeeping ........................................................... 22
    Employment References ..................................................
    Smoking Policy .........................................................
    Management Commitment and Involvement Policy Statement ................. 23
In Conclusion .............................................................. 23
Important Notice ........................................................... 24
Acknowledgement and Agreement .............................................. 24
                                                                           25, 27

J. BERGER 010
GKB & ASSOCIATES



# ABOUT THE COMPANY

Orkin, Inc., the world's best service company, specializes in termite and pest control. Orkin's 100 year anniversary in 2001 reflects its remarkable growth from a one-man company to an organization with over 500 branches throughout the United States, Canada, Mexico, Central America, the Caribbean, the Middle East and Asia. Orkin has grown so dramatically by expanding its business in existing locations, opening branches in new areas of the country, and acquiring some of its best competitors in the pest control industry.

Orkin is a subsidiary of Rollins, Inc., a nationwide service organization that was incorporated in 1948. Publicly owned, its stock is traded on the New York and Pacific Stock Exchanges. With corporate offices located in Atlanta, Georgia, Rollins, Inc. and Orkin have over 10,000 employees throughout the United States, Canada, Mexico, the Caribbean, the Middle East and Asia.

In 1964-65, Rollins acquired three termite and pest control companies, Orkin Exterminating, Dettelbach Pesticide Corporation and Arwell, Inc., which were the foundation of present-day Orkin. Through the years, acquisitions have been an important part of Orkin's growth and success. Orkin further solidified its position in the commercial market in 1999 by acquiring the pest elimination operations of PRISM, a subsidiary of SC Johnson Professional. Later that year, Orkin acquired PCO Services, Inc., the leading pest control company in Canada, further expanding Orkin's presence in North America. This acquisition made Orkin the largest pest management company in Canada. In 1999, Orkin also acquired Redd Pest Control, a leading pest elimination company in the southeastern United States. In 2004, Rollins announced the purchase of Western Pest Services, a primarily commercial pest control company, thereby expanding Rollins's growth in the northeastern United States. In April, 2008, Rollins, Inc. announced the purchase of HomeTeam Pest Defense, the developer of the Taexx ("tubes in the wall") system. In December of 2008, Rollins, Inc made its second major acquisition for the year with the purchase of Crane Pest Control, a commercial services company.

Today, Rollins Family of Companies has over 2 million active commercial and residential customers. Our pest control service helps keep homes and businesses free from roaches, rats, mice and other disease-carrying pests. Our termite service helps protect structures from wood-destroying organisms.



# MISSION STATEMENT

Our mission is to be the World's Best Service Company. We will accomplish this goal by delivering the finest quality services and value to our customers, while being environmentally responsible. This will provide opportunities and security for employees, as well as maximize long-term financial performance for stockholders.

J. BERGER 011
GKB & ASSOCIATES

*1*



# COMPANY POLICIES AND PRACTICES

# EQUAL EMPLOYMENT OPPORTUNITY, DIVERSITY, AND RESPECT POLICIES

Orkin, Inc.'s policy is that there shall be no unlawful discrimination against any individual in any area of employment. Orkin, Inc. provides equal employment opportunities without regard to race, color, age, sex, pregnancy, religion, national origin, veteran status, or physical or mental disability, or any other criteria specified by applicable law. This policy extends to all terms and conditions of employment, including but not limited to hiring, promotion, transfer, compensation, performance evaluation, assignment, etc.

In addition, any form of harassment related to an employee's race, color, age, sex, pregnancy, religion, national origin, veteran status or disability (or any legally protected criteria) violates Company policy. The term "harassment" may include the following, as well as similar conduct:

- Slurs, jokes and other verbal, graphic or physical conduct relating to an individual's race, color, sex, age, religion, national origin or disability.
- Off-color language or profanity, sexual banter, sexual jokes and sexually suggestive materials (pictures, cartoons, etc.)
- Sexually suggestive or lewd comments or behavior
- Inappropriate touching
- Sexual acts and/or requests or demands for sexual favors

An employee who violates this policy shall be subject to disciplinary action up to and including termination, depending on the frequency and severity of the acts. Termination may occur without prior disciplinary action.

Any employee or applicant who believes he or she is being treated in violation of this policy should discuss the matter immediately with his or her branch manager, region manager, Human Resources at 404.888.2000, the Business Abuse Report Line at 1.800.241.5689, or the Business Abuse Report website at www.tnwinc.com/webreport, without fear of reprisal. Orkin, Inc.'s policy prohibits unlawful retaliation towards any employee or applicant who reports a violation of this policy, and an employee who violates this anti-retaliation policy shall be subject to disciplinary action up to and including termination. All complaints will be treated discreetly and confidentially to the extent feasible.

Any branch manager or region manager receiving a complaint of discrimination or harassment shall ensure that the matter is properly investigated by consulting the Human Resources Department and/or the Law Department for assistance.

Any employee who is harassed in connection with his or her work by a person who is not employed by the Company, should immediately contact either the employee's supervisor, branch manager, region manager, Human Resources at 404.888.2000, or the Business Abuse Report Line at 1.800.241.5689. All such complaints will be investigated and appropriate action taken.

# BUSINESS ABUSE PROGRAM

Orkin maintains a strong commitment to honesty, integrity and ethical behavior in all aspects of our business conduct. Orkin expects all employees will perform their duties in a manner consistent with this important commitment. Orkin also provides employees with the Business Abuse Program -- a method to ensure that if any employee should observe or suspect any dishonest, unethical or irresponsible act that may cause harm to our customers, our co-workers or our Company -- they can communicate their concerns in a confidential manner.

If you observe or suspect any type of questionable business conduct toward our customers, your co-workers or your Company, including but not limited to, any financial or reporting irregularities or harassment of employees and customers, you are expected to communicate this by having a discussion with your supervisor or manager, or, if you prefer to remain anonymous, you may call the Business Abuse Report Line at 1.800.241.5689 toll-free, 24 hours a day, 7 days a week, logon to the Business Abuse Report website at www.tnwinc.com/webreport, or send a note to our

2

J. BERGER 012
GKB & ASSOCIATES

secure mailbox at this address:

Rollins, Inc.
P.O. Box 244176
Atlanta, Georgia 30324

If you choose to call the Business Abuse Report Line, you will speak to a friendly representative from "The Network," an independent organization retained by the Company. The representative will ask you about your concerns, and may ask for your name, however, you are perfectly free to remain anonymous if you wish. Your concerns will be relayed to Human Resources and the Orkin Audit Committee so that a confidential investigation can be conducted and appropriate action taken to resolve the issue.

Please help us in our continued commitment to integrity and to "doing what's right" by reporting any suspected improper activity.

# STANDARDS OF CONDUCT

Each of us has a job to do. Because our conduct naturally affects our job, we have to maintain the highest standards of service and integrity to ensure the effective operation of our Company, courteous service to our customers and safe, healthful and pleasant working conditions for our employees.

If your performance or conduct becomes unsatisfactory, the situation must be corrected. Certain opportunities for improvement may be identified by your supervisor in a counseling discussion. Your supervisor may also complete a coaching and counseling form which explains the deficiency and the actions necessary to correct it. If your performance improves satisfactorily, no further discussions may be necessary. If your performance does not improve or deficiencies are serious, you will be subject to further disciplinary action up to and including termination.

A counseling discussion is a tool for explaining the problem, determining its cause and helping the employee correct it. The discussion should be viewed as an opportunity to correct a problem before it becomes serious enough to require disciplinary action. Your supervisor will make a sincere effort to help you overcome deficiencies.

However, to the extent permissible by law, employment is at-will, and employees are made no promises that coaching and counseling discussions, or any other specific form of disciplinary action, if any, will be given prior to termination.

Some actions are subject to immediate termination. Any serious misconduct or failure to perform job duties may result in termination. They include but are not limited to:

1. Embezzlement or theft of property or funds of the Company, other employees, or customers.
2. Misrepresenting or falsifying information about or to the Company, other employees, or customers. (Financial reports, other reports, service tickets, re-inspection tickets, service contracts, deposits, etc.)
3. Violating Company policies on alcohol or drug use:
   a. Possession or use of alcohol on Company business except at Company social functions.
   b. Possession or use of illegal drugs or unauthorized prescription drugs on Company business.
   c. Reporting to work under the influence of alcohol or drugs.
   d. Possession of alcohol or illegal drugs while operating a Company vehicle.
   e. Possession or use of illegal drugs during off hours.
   f. Selling marijuana or other illegal drugs.
   g. Violation of the Company Drug Testing Program.
   h. Convicted of driving under the influence of alcohol or drugs.
4. Violation of Company policies on vehicle use, including the Driver Certification Policy:
   a. Unauthorized use of a Company vehicle.
   b. Employees with private-use privilege allowing anyone other than spouse to drive a Company vehicle.
   c. Any chargeable accident within the first three (3) months of employment.
   d. Carrying any unauthorized passenger. Employees with private-use privilege are authorized to carry non-employees in Company vehicle.
   e. Driving violations totaling nine penalty points as assigned by Orkin.
   f. Failure to maintain personal vehicle insurance.
5. Possession of firearms on Company property or while on Company business.
6. Intentionally mixing chemicals incorrectly (failing to follow the label).
7. Other personal misconduct:
   a. Falsifying application for employment or other Company documents.
   b. Falsifying information on personal work reports or on any Company reports.

J. BERGER 013
GKB & ASSOCIATES

3



c.  Immoral conduct or indecency while on Company property or on Company business.
d.  Fighting.
e.  Talking or acting in such a way as to be detrimental to the Company.
f.  Deliberate destruction or damage of Company products, machines, equipment, or vehicles.
g.  Deliberate effort to hamper the performance of another employee.
h.  Failing to notify the appropriate manager when unable to report to work.
i.  Abusing paid sick leave.
j.  Failing to provide a sick leave-related physician's certificate when requested.
k.  Unreported absence of three consecutive scheduled workdays.
l.  Sleeping on the job.
m.  Insubordination, including, but not limited to, failure or refusal to obey the orders or instructions of any manager or member of management.
n.  Use of abusive or threatening language toward any employee or member of management.
8.  Making statements to customers, suppliers or other members of the public and/or peers that are disparaging to the Company or its products.
9.  Soliciting or collecting contributions in violation of Company policy.
10.  Violating any safety, health, or security policy, rule or procedure of Orkin.
11.  Violating Orkin's substance abuse policy, including failing a random, for cause or post accident drug test.
12.  Violating Orkin's Equal Employment Opportunity, Diversity & Respect Policies.

# UNIONS

Our Company has always been and wishes to remain a union-free Company. There is, however, always a chance in the future that a labor union organizer will try to persuade some of our employees to sign union authorization cards. For this reason, it is important that employees understand the Company's philosophy concerning unions.

It is the Company's belief that remaining union-free has significant advantages for both the Company and the employees. First, the Company is convinced that the best way to achieve the Company's goals, out perform competitors, and meet difficult challenges is for employees and Company management to work together directly in a spirit of cooperation and teamwork, rather than through an outside labor union. Second, the Company prefers to work with its employees informally, personally, and directly, rather than through an outside labor union. In this regard, the Company encourages employees to express their job-related concerns directly to management, and all managers are committed to listening to the employees and responding to their concerns. Finally, it is the Company's views that direct participation by employees in the Company, rather than through an outside labor union, fosters a closer working relationship between employees and their managers. As a result, the Company believes that employees are more likely to attain their own personal goals within the Company without an outside labor union. Further, in the rare event that your managers do no resolve your concerns, you are encouraged to call your division HR manager or the Business Abuse Hotline. So, you have an "open door" to talk with your Company about any concern you may have.

It is the Company's strong belief that there are many drawbacks associated with being represented by a labor union. First, union employees typically must pay union initiation fees, union dues, and union assessments. Second, labor unions frequently establish a structural framework that can hinder teamwork and create antagonistic relationships between employees and management. Third, employees and their families may face loss of income or loss of jobs due to strikes. Finally, employees should not have to play union politics, comply with union rules, and fear union discipline and fines.

For these reasons, the Company believes that the interests of employees and the Company are interrelated and, therefore, best achieved by avoiding interference by labor unions. Ultimately, however, employees have the legal right to decide whether or not to join a labor union, and the Company will respect each employee's right.

In deciding whether or not to join a labor union, employees should bear in mind that a union authorization card is a legally binding document that grants a union the right to speak on their behalf. Therefore, if you are asked to sign a union authorization card, the Company asks that you say "no."

# SUBSTANCE ABUSE POLICY

J. BERGER 014
GKB & ASSOCIATES

Orkin, Inc. recognizes its responsibility to its employees, its customers, and the general public to provide a drug-free work environment. We are equally concerned that our Company's hard-earned reputation and positive image

not be compromised in any way. Alcohol or drug abuse has an adverse effect on job performance, creates dangerous situations and serves to undermine the confidence of our customers and the community in our Company. Any questions regarding the Substance Abuse Policy or collection procedures should be directed to the Director of Employee Services, 404.888.2134.

The Company does not condone drug or alcohol abuse or the misuse/abuse of legitimate drugs or prescribed medication by its employees. Therefore, the Company adopts the following substance abuse policy applicable to all job applicants and all employees:

- The Company will not hire anyone who is known to currently abuse or misuse substances.
- The use, purchase, sale, possession, transfer or transportation of alcohol, an illicit drug, non-prescribed controlled drugs (or misusing prescribed controlled drugs) while on Company business or in a Company vehicle, regardless of whether on or off Company premises/property, is strictly prohibited.
- Violators of this policy will be terminated. Law enforcement officials will be notified, as appropriate, when suspected illegal drugs or non-prescribed controlled substances are found on Company premises/property.
- The use, purchase, sale, possession, transfer or transportation of illicit drugs, non-prescribed controlled drugs, while not on Company business is a violation of the law and a violation of Company policy. Violators will be terminated.
- Any employee convicted of a drug-related crime will be terminated. The legal use of controlled drugs prescribed by a licensed physician is not prohibited, unless the use is abusive.
- An employee taking prescribed medication should consult with his or her physician to determine if the drug may have an adverse affect on his or her physical or mental ability, such as: drowsiness or lack of balance that may negatively impact job performance and safety. If it is determined that an impairment may result, the employee is advised to report this fact to his or her supervisor.
- Every employee must report to work in a fit condition to perform his or her duties. Being under the influence of illicit drugs or alcohol is unacceptable and will not be tolerated. Violators will be subject to termination.
- A supervisor who knowingly fails to report violations of the Company's Substance Abuse Policy will be subject to disciplinary action, up to and including termination.

Third party administrators assist the Human Resources Service Center (HRSC) with the management of the pre-employment, random, suspicion and post-accident drug screening processes for Orkin, Inc.

## Post-Accident Drug Screens:

1. The Company, where allowed by law, will require employees involved in any motor vehicle accident/incident or an on-the-job injury/incident while on Company business to submit to a drug screen within 24 hours of the accident. The post-accident drug screen is usually a urine analysis.
2. If an employee refuses to submit to the drug screen, the employee will be in violation of Company policy and may be subject to termination.
3. Any requested exceptions to the submission of the drug screen must be referred to Risk Management at 404.888.2140 or 404.888.2260.
4. Exceptions must be requested within 24 hours of the accident or they will not be considered. All requested exceptions will be decided upon individually and without any bias.
Note: The Risk Management Department will notify locations monthly of employees who have not submitted to a post-accident drug screen.

## Random Drug Screens:

The Company will conduct random drug screens of its employees throughout the calendar year. Random drug screens are usually oral fluid analyses conducted by obtaining saliva/oral fluid specimens from the employee. Certain state regulations prohibit oral fluid testing. In those states, urine tests will be conducted. Because location selection is performed randomly, it is possible that a location or an employee could be selected more than once. The random selection will be carried out as follows:

The random selection of a location includes all location employees, excluding only the Location Manager who will facilitate the test.

Note: Location and Region Managers will be tested randomly at Region and Division meetings by the next level of management or by their Division Human Resources Manager.

The HRSC sends an email to the Location and Region Managers on the Friday before the week of the scheduled test. An employee roster, specimen shipping instructions and collection information is also emailed at this time.

1. The HRSC will make all arrangements for the oral fluid collection process. Our supply vendor ships the

drug testing supplies directly to the Location. Testing supplies are scheduled to arrive at the selected Locations on Mondays. The Location Managers should make every effort to complete the testing within 24 hours of receiving the supply kits. If the Location Manager cannot conduct the testing within the 24 hour period, he/she must schedule the testing for another day within the same week in which the supplies are received. The Location Manager must call the Director of Employee Services immediately if he/she cannot perform the testing during the designated timeframe.

2. In states where a urine collection must be conducted, the HRSC coordinates the arrangements for an onsite collection. The HRSC will give consideration to the location's meeting schedule to make the collection as efficient and convenient as possible.

3. Anyone who refuses to submit to the drug test at the time of the specimen collection will be in violation of Company policy and therefore will be subject to termination.

4. Anyone who leaves the location without giving a specimen once it has been requested will be subject to termination. This includes:
   a. Anytime during the Random Drug Test
   b. Once the Random Drug Test has been announced
   c. Once the collection has begun

5. Employees with an excused absence on the day of the collection (illness, vacation, etc.) must submit to a drug collection within 24 hours of their return to work.

6. In states where urine collection is required, the employee must report to their local clinic with a Chain of Custody Form on the day he/she returns to work.

7. In states where oral fluids may be collected, the location manager should conduct the make-up drug screen on the day the employee returns to work. At least one witness who is not the location manager or employee being tested must be present.

8. Employees are required to show photo identification, prior to beginning the collection.

9. Employees will be asked to seal their oral fluid specimen, which begins the Chain of Custody process. The employee's signature on the Chain of Custody form indicates that the specimen (urine or oral fluids) is theirs. Chain of Custody procedures are explained in greater detail in the instructions received from the HRSC. The HRSC can assist with Chain of Custody questions as well.

10. Due to state laws governing pre-employment, post-accident and random drug screens, the Company will enforce/exercise its policy where allowed by state law.
    • Surplus drug testing supplies must be mailed to the HRSC with the completed roster and Employer copy of the Chain of Custody Forms.

An employee or applicant whose test report indicates the unauthorized use of a controlled (prescribed) drug (i.e., use of medication prescribed to another person or obtained illegally) will be in violation of Company policy.
   • For applicants, the offer of employment will be withdrawn.
   • For employees who are found to have an isolated incident of inappropriate use, an investigation will be conducted. If it is determined that the employee has used medicine prescribed for an immediate household member, a copy of the prescription or label from the bottle must be provided. An Employee Coaching/Counseling Form will be issued to the employee and the employee will be subject to additional, unannounced periodic drug tests for up to one year.

Employees who violate this policy a second time will be terminated and will not be considered for reinstatement/rehire.

## Voluntary Admission (prior to notification or scheduling of drug screens):
   • Applicants who admit drug use will not be considered for hire.
   • Employees with less than one year of continuous service with the Company who admit to using/abusing drugs or who are substance abusers will be terminated.
   • An employee with one year or more of continuous service with the Company who admits to using illegal drugs or who is a substance abuser will be afforded one opportunity to seek rehabilitation.
   • When an employee tells their manager that they have a personal drug or substance abuse problem, the manager must notify their Division Human Resources Manager (DHRM). The cost of any rehabilitation program is the employee's sole responsibility. All employees are enrolled in the Employee Assistance Plan (EAP). It is recommended that the employee utilize this benefit for a referral to a Substance Abuse Center. The DHRM may be able to assist the employee in locating a Substance Abuse Center where the employee is located. Human Resources will attempt to assist the employee but will not guarantee the effectiveness or reputation of a center.

J. BERGER 016
GKB & ASSOCIATES



Provisions of the above policy are subject to state laws and testing procedures may vary accordingly. Contact HRSC for guidance on drug testing requirements for your State.

# APPEAL PROCESS

If an employee feels that there are special circumstances that should be considered, the employee may appeal the positive drug screen results and ruling by the Medical Review Officer.

Appeals must be forwarded in writing to:

Orkin, Inc.
ATTN: Vice President, Human Resources
2170 Piedmont Road, NE
Atlanta, GA 30324

# PERSONAL RELATIONSHIPS

Orkin recognizes that employees may develop personal dating relationships with each other. Any such personal relationship must be kept outside of the work place and not interfere with the individual's ability to perform their job based on the Company's performance standards. In an effort to prevent favoritism, morale problems, disputes or misunderstandings, supervisors and managers are not permitted to date or engage in personal relationships with direct or indirect subordinate employees. If a personal relationship in violation of this policy develops, either the manager or the subordinate employee must seek other employment either within or outside the Company. This decision must be made by the manager and the subordinate employee. Violation of this policy may result in disciplinary action up to and including termination.

# EMPLOYMENT OF RELATIVES AND FAMILY MEMBERS

Employees are encouraged to recruit relatives and family members for employment with Orkin or Rollins, Inc. The only restriction is that relatives and family members are not permitted to work under the same direct or indirect supervisor or have supervisory authority over another family member.

# STANDARDS OF APPEARANCE

This policy's purpose is to establish a standard of appearance for Orkin employees.

People tend to judge a company by the appearance of its employees. Neat, clean, conservative clothing and grooming present a professional business appearance. Because fashion changes constantly, exact rules of dress and appearance are difficult to establish and monitor; however, certain basic principles comprise any sound standard of appearance and dress policy. Appropriateness should be the guiding principle.

1.  Clothing

    Employees required to wear a uniform must wear the designated uniform for their position, including shoes. Employees not required to wear a Company uniform should wear clothing that looks professional, business-like and suitable to their position. Clothing should always be clean and neat.

    a.  Appropriate office attire for women includes conservative dresses, suits, dress slacks or skirts with a complementary jacket and/or blouse suitable for daytime office wear. Dresses or skirts must be no shorter than three inches above the knees.
        Hosiery should be worn with dresses or skirts; socks are acceptable with slacks. Peep-toe shoes are acceptable office attire for women.

    b.  Appropriate attire for men includes business suits with conservative shirt and tie, dress slacks with a complementary conservative sports jacket, shirt and tie, or dress slacks with a conservative shirt and tie.

    c.  Inappropriate clothing for women includes jeans (or similarly designed pants), capri style pants, weekend casual pants and tops, lounging attire, sweatshirts, tee shirts and after-five-o'clock evening or party clothes. Clothes must not be excessively tight or revealing.

    d.  Inappropriate clothing for men includes jeans (or similarly designer pants), excessively tight trousers, weekend casual pants, sweatshirts, tee shirts and after-five-o'clock evening or party clothes.



J. BERGER 017
GKB & ASSOCIATES

7

e. Inappropriate footwear includes athletic shoes (sneakers, tennis or jogging shoes), open-toed shoes, sandals, western style boots and all footwear designed primarily for casual wear. An exception may be made for medical reasons.

f. Jewelry and make-up should be appropriate for the daytime business environment. Earrings may only be worn on the earlobe. Any other facial jewelry is prohibited. Earrings on men are prohibited.

2. Personal Grooming

a. Men's hair must be neatly styled and close to the head, not extending over the collar, any part of the ears, or below the middle of the forehead. Long sideburns (extending below the bottom of the ear), "mutton chops," "punk" styles and inappropriate coloring of the hair is unacceptable.

b. A mustache must be neatly trimmed (off the lip) and not extending beyond or below the corners of the mouth. "Fu Manchu" and handlebar style mustaches are inappropriate. Beards are prohibited unless documented by a medical doctor as medically necessary to protect the skin.

c. Women's hair must not be worn in "punk" style or be an inappropriate hair color.

3. Example and Enforcement

All employees are responsible for adhering to these standards as closely as possible. Supervisors and managers are responsible for being role models, setting a good example and consistently maintaining the standards of appearance. Requests for dress code exceptions will be considered consistent with applicable law, and must be accompanied by documentation considered appropriate by Orkin.

When a manager or supervisor observes an employee with inappropriate dress or grooming, the manager or supervisor should discuss privately the employee's deviation from the Company standards of appearance. If the violation of dress code is extreme, the manager or supervisor will send the employee home to correct their dress and appearance. The time away from work will be without pay.

# TRAINING

The emphasis Orkin places on training is reflected in the international awards the Learning & Media Services Department has received in recent years. Examples include the BEST award from the American Society for Training and Development and the Top 125 Award from Training magazine (over the last seven years consecutively) for having one of the best training programs in the world. Orkin provides blended learning programs for all new sales and service employees. The field management curriculum covers the fundamental skills of management, followed by specific skills necessary for successful service and branch management. Orkin's training programs are considered among the best, most professional and extensive programs available. The Company believes that trained employees provide better service, save valuable time by knowing their jobs and have greater overall job satisfaction.

Residential Pest Control, Commercial Pest Control and Termite Control service specialist are required to complete initial training that is specific to their role. The initial training programs are 15 days in duration. The first five days consist of self-directed and on-the-job training, which are supervised by location managers and certified field trainers. Learning resources used for the self-directed training include video-on-demand, interactive video-on-demand, web-based courseware, printed manuals and job aids. Trainees must demonstrate that they are prepared for weeks two and three by passing a milestone assessment at the end of the first week of their initial training. The remaining 10 days of training consist of satellite interactive distance learning blended with self-directed and on-the-job training. All satellite training is delivered by certified trainers who are subject matter experts and incorporates professional video, animations, and simulated service environments. The satellite interactive distance learning network allows students to ask questions, receive instructor feedback, answer test questions, and respond to surveys. A final assessment must be passed at the conclusion of the 15-day initial training program. Service employees receive certificates upon successful completion of the initial training program.

Termite Sales employees (inspectors, supervisors and sales managers) begin their employment by completing several sales training activities in the branch, which include reviewing material on Orkin services, accompanying route managers on service calls and observing existing sales employees in sales activities. They are also required to complete the Termite Sales Inspector Initial Training Syllabus. After completing the initial training, termite sales trainees are required to attend the Orkin Termite Sales Technical Training on satellite prior to attending the Orkin Quality Sales Training (OQST). The OQST-TC termite sales school utilizes classroom training techniques which include lecture, hands on individual and group activities and role plays for each part of the Orkin sales cycle. Sales trainees learn different prospecting methods, how to calculate treatment costs, how to review the inspection report and present sales proposals to a prospect. They also learn how to qualify Orkin and close the sale using RAC. Sales inspectors demonstrate competency by delivering a final proposal using the Orkin sales cycle. Sales inspectors receive certificates of completion at the completion of their sales training.

J. BERGER 018
GKB & ASSOCIATES

**Commercial Sales** employees (account managers, branch manager trainees and sales managers) begin their employment by performing several sales training activities in the branch, which include reviewing material on Orkin services, acCompanying route managers on service calls and observing existing sales employees in sales activities. They are also required to complete the In Branch Self Study Initial Training Syllabus. After completing the initial training, commercial sales trainees are required to attend the Orkin AMTT Technical Training on satellite prior to attending the Orkin Quality Sales Training (OQST). The OQST-PC Commercial sales school utilizes classroom training techniques which include lecture, hands on individual and group activities and roles plays for each part of the Orkin sales cycle. Sales trainees learn different prospecting methods, how to interview potential prospects, importance of complete inspections, how to calculate treatment costs, how to review the inspection report and present sales proposals to a prospect. They also learn how to qualify Orkin and close the sale using a consultative approach. Account Managers demonstrate competency by delivering a final proposal using the Orkin sales cycle. Account Managers receive certificates of completion at the completion of their sales training.

**Branch and Service Manager** training begins in the field. If selected to participate in our management training program, the trainee will be given the opportunity to learn all phases of service and branch operations. During the training period, the trainee will actually sell and service pest and termite control services and become familiar with branch administrative procedures.

Branch management training requires that students complete the appropriate technical and correspondence courses before beginning work on their management training courses. These include successful completion of a self-directed Online Study Guide followed by attending Fundamentals of Management and Managing a Service Organization, instructor-led classes. Management Development School is an invitation only course that is offered to Region and Branch Managers in training. These classroom-based courses are facilitated at the Atlanta Learning & Media Services Center. The curriculum is designed to build and develop management and leadership skills in field operations. At the successful conclusion of this program, manager trainees receive certificates of completion and are eligible to be placed in service and branch management positions.

# PAY FOR PERFORMANCE

Most salaried and hourly positions (non-commission paid) have assigned pay ranges. Salary ranges are used to determine the minimum and maximum rate of pay appropriate for each position. You are hired at a rate based on your experience and/or education.

In order to perform your best work, it is important to know how you are doing and how your work is evaluated. Most Orkin employees are reviewed during a common annual merit review process. Performance may be evaluated on one or more of the following areas:

- Location performance
- Management skills
- Revenue collection efforts
- Customer Service
- Quality/quantity of work

Salary adjustments are based on performance ratings, time in job and where you are in the salary range for your job.

# PUNCTUALITY & ATTENDANCE

At Orkin, full-time employees usually work at least an eight-hour day. However, different positions require different hours and work schedules that include some after hours or weekend work. You will be assigned a work schedule and you will be expected to be at work prior to the start of your schedule and remain productive until the close of business. In order to accommodate the needs of our business, it may be necessary to change the individual work schedules on either a short-term or long-term basis.

Being at your work station on time is required and is very important for the success of both you and the Company. Absenteeism, early departure from work, unexcused absences and late arrivals burden your fellow employees and Orkin. If you cannot avoid being late to work or are unable to work as scheduled, you must personally call your manager before the beginning of your regularly scheduled workday or work shift. You must also inform your manager of the expected duration of any absence. It is your responsibility to provide sufficient information to enable Orkin to make a determination as to the appropriateness of any request for time off. You must notify your manager of any change in your status as soon as possible.

Absenteeism may lead to disciplinary action, up to and including termination of employment. Continuing



J. BERGER 019
GKB & ASSOCIATES

9



patterns of absences, early departure or tardiness, regardless of the exact number of days, may warrant disciplinary action.

If you fail to report to work without any notification to your manager, you may be considered to have abandoned your employment.

# LUNCH PERIODS

Employees are generally provided 30 minutes unpaid for lunch, as well as a 15-minute paid break in the morning and a 15-minute paid break in the afternoon. Lunch is expected to be taken in the middle of the day. Approved lunch periods are considered unpaid time. Administrative employees, new customer specialists, customer service specialists, schedulers, termite specialists and pest specialists must record the in/out time on their timecards in Kronos (see "Timekeeping Procedures" below). Lunch breaks should be taken away from the employee's work area, and no work is to be conducted during this period of time.

# PAYDAYS

Paydays are important to all of us. If you are paid semi-monthly, your pay periods are the 1st through the 15th and the 16th through the end of the month. Your payday is generally 10 calendar days after the end of the pay period (25th and 10th), with the following exceptions:

Delaware and Hawaii: 7th calendar day following the end of the pay period.

California: Pay period 1-15 generally paid the 25th, but no later than 26th of the month. Pay period 16-end of month is paid no later than 10th day of the next month.

NY, CT, MA, ME: Payday is weekly (Friday following the week ending the previous Saturday).

If you are paid weekly, your payday is the next Friday following the end of the week.

If payday falls on Saturday, you will be paid the preceding Friday. If it falls on a Friday observed as a holiday or the Saturday following a Friday holiday, payday will be the preceding Thursday.

When payday falls on Sunday, you will get paid on the following Monday. When it falls on a Monday observed as a holiday or the Sunday before a Monday holiday, payday will be the Friday before the holiday.

You'll see on your paycheck stub all the amounts taken out for FICA (Social Security), Medicare, federal and state income taxes and other deductions.

You will receive your paycheck at the branch. If you have any questions about your paycheck, ask your supervisor or branch manager, who will be glad to help.

No one other than the employee to whom the paycheck is written will be allowed to pick up a paycheck unless written authorization has been given for another person to do so.

# TIMEKEEPING PROCEDURES

Non-exempt employees must record their actual time worked for payroll and benefit purposes. Non-exempt employees should record the time their work begins and ends, as well as the beginning and ending time of each meal period in Kronos. All employees must also record benefit hours used (sick, vacation, holiday) for non-work related reasons in Kronos before approving.

All employees (exempt and non-exempt) are required to approve their timecards in Kronos at the end of each week.

# OVERTIME NON-EXEMPT EMPLOYEES

Working overtime without prior authorization may result in disciplinary action. Non-exempt employees will be compensated for all overtime hours worked in accordance with state and federal law. Exempt employees are expected to work as much each workday as is necessary to complete their job responsibilities.

J. BERGER 020
GKB & ASSOCIATES

# AUTOMATIC DEPOSIT

Employees may designate up to two bank accounts for automatic deposit of their paycheck. For example, a set amount may be directed into your savings account, with the balance deposited into your checking account. All of the required enrollment and consent forms are available from Payroll or visit the myOrkin intranet site.



# BENEFITS

Orkin provides a comprehensive package of benefits, which includes medical, dental, basic life insurance, voluntary term life insurance, vision plan, long-term disability, 401(k) plan, vacation, holiday and sick leave, stock purchase plan, employee discounts, tuition reimbursement, flexible spending accounts, Employee Assistance Program (EAP) and a Company scholarship program. More specific information regarding these benefits can be found in the Rollins Benefits brochure, or contact the Benefits Department at 1.888.704.4772 or 404.877.4772 in the Atlanta area.

# DAYS OFF

A. Sick Time

New full-time employees hired before October 1 accumulate sick days at a rate of four hours per month to a maximum of five days. Employees are eligible to take these days after three months of continuous employment.

Beginning January 1 each year, all active, full-time employees hired before October 1 of the previous year are eligible for five days of sick pay.

New full-time employees hired on or after October 1 will not accumulate sick days during their first calendar year. Beginning January 1, all active, full-time employees hired on or after October 1 of the previous year are eligible for five days of sick pay after three months of continuous employment.

Sick days taken are paid as straight time and are not considered hours of work for purposes of overtime pay.

Sick days may be used for an employee's health-related absences, or the health-related issues of an immediate family member-spouse/domestic partner, child or parent. A supervisor may require a doctor's slip at any time for any medical condition requiring lost work time, for absences preceding or following a holiday or if you have numerous absences due to illness. Sick days may be taken in 1 hour increments.

B. Banked Sick Days

Effective April 1, 2005, the maximum unused sick days allowed to accumulate is 10. Employees with more than 10 banked sick days will no longer continue to accrue unused sick days. Employees with more than 10 banked sick days will not lose their accumulated days in excess of the 10. They will not accrue more sick days until the days in their bank fall below 10 days.

The following conditions must be satisfied for employees to use their banked sick days:

- All current-year sick days must be used before drawing on banked sick days.
- To request payment for banked sick days, the employee must complete a Banked Sick Days Supplemental Payment Form.
- Employee may use banked sick days after the exhaustion of current year's allotment of sick days to care for him/herself or an ill immediate family member- spouse/domestic partner, child or parent.
- The Bank Sick Supplemental Payment form must be accompanied by a Medical Certification form completed and signed by the employee/immediate family member's physician.

C. Regular Holidays

Orkin recognizes the following as regular "fixed" holidays:

- New Year's Day
- Independence Day
- Labor Day
- Thanksgiving Day
- Christmas Day

When a holiday falls on a Saturday, it will normally be observed on the preceding Friday. When the holiday falls on a Sunday, it will normally be observed on the following Monday.

Full-time employees are eligible to receive 8 hours of regular pay for a regular "fixed" holiday.

Regular holidays are not considered hours of work for purposes of overtime pay. When a regular holiday occurs during an employee's vacation period, that day will be paid as a holiday and not as a vacation day.

D. Floating Holidays

The Company grants eligible full-time employees up to three days off per calendar year in addition to the five regular holidays. These three days are identified as floating holidays.

Eligible employees must take their floating holiday(s) within the calendar year. Floating holidays cannot be carried forward to the following year, except where required by law. Employees will not be paid for floating

J. BERGER 021
GKB & ASSOCIATES

holidays that were not taken either in the calendar year in which they were earned or at termination, except where required by law.

To be eligible for a floating holiday, employees must have a minimum of three continuous months of full-time service with the Company. New employees will be granted floating holidays during their initial calendar year according to the following schedule:

| Hire date falls between | Number of days eligible |
|---|---|
| January 1 and June 30 | Two days before the end of the calendar year after three months of continuous service. |
| July 1 and December 31 | No days before the end of the year. |

Floating holidays are paid as straight time and are not considered hours of work for purposes of overtime pay. An employee must complete a request through Kronos at least two weeks in advance to request the use of a floating holiday. The branch manager is responsible for determining the eligibility and approving or denying a request.

E. California Personal Holidays

The Company grants eligible full-time employees up to three days off per calendar year in addition to the five regular holidays. These three days are identified as personal holidays. Eligible employees must take their personal holiday(s) within the calendar year. Personal holidays cannot be carried forward to the following year. Employees will not be paid for personal holidays that were not taken either in the calendar year in which they were earned or at termination.

To be eligible for a personal holiday, employees must have a minimum of three continuous months of full-time service with the Company. New employees will be granted personal holidays during their initial calendar year according to the following schedule:

| Hire date falls between | Number of days eligible |
|---|---|
| January 1 and June 30 | Two days before the end of the calendar year after three months of continuous service. |
| July 1 and December 31 | No days before the end of the year. |

Personal holidays are paid as straight time and are not considered hours of work for purposes of overtime pay. An employee must complete a request through Kronos at least two weeks in advance to request the use of a personal holiday. The branch manager is responsible for determining the eligibility and approving or denying a request.

These personal holidays are to be taken only when tied to one of the following events:

- Birthday (yours, your spouse's, your parents', your children's)*
- Christmas Eve or any religious holiday
- Memorial Day
- President's Day
- 1-3 days during the week of Christmas
- Anniversary Dates (service and/or personal)*
- New Year's Eve
- Day after Thanksgiving
- Martin Luther King, Jr.'s Observed Birthday
- Veteran's Day
- Leave of Absence (medical, workers' comp, military or personal)

*Personal Holiday may be taken within one week of the actual birthday or anniversary.

F. Absence on Workday Before and After a Holiday

Employees must be present the workday before and after a regular or floating holiday in order to be paid for the holiday and/or workday.

If an employee misses the workday before or after a holiday or floating holiday with an unexcused absence, he or she forfeits pay for these days.

G. Vacation Time

Vacation time is based on your calendar years of service. Vacation must be requested through Kronos at least two weeks in advance.

1. New Hires:

All employees will be granted vacation time on a calendar year basis. New employees will receive their first year's vacation as follows:

J. BERGER 022
GKB & ASSOCIATES

12

New Hire Vacation Eligibility Table

| Month of Hire | Vacation Eligibility in Year of Employment (1st Calendar Year) |
|---|---|
| January | 5 days |
| February | 5 days |
| March | 4 days |
| April | 3 days |
| May | 2 days |
| June | 1 day |
| July-December | 0 days |

2.  Current Employees:

All employees are granted vacation time on a calendar year basis (see schedule in "I" below).

H.  Vacation Carry Over

All current year vacation days must be used by December 31. No vacation days may carry over into the next calendar year.

For California Vacation time please see "J" below.

I.  Length of Service

Full time employees are eligible for vacation based on the following length of service:

*For Calendar Year 1, please refer to the Chart in Section G.

| Calendar years 2-5 | 10 days of vacation |
|---|---|
| Calendar year 6 | 11 days of vacation |
| Calendar year 7 | 12 days of vacation |
| Calendar year 8 | 13 days of vacation |
| Calendar year 9 | 14 days of vacation |
| Calendar year 10+ | 15 days of vacation |
| Calendar year 15+ | 20 days of vacation |

(Operations Manager and above)

*Rehired employees get credit for previous years of service towards their vacation eligibility beginning in calendar year 2. Employees will have an adjusted hire date calculated to define their years of service for vacation eligibility purposes.

J.  California Vacation Time

Vacation accrues with each completed month of employment, starting with month seven of employment. Vacation is earned as it accrues.

Accrued and earned vacation time is subject to an accrual cap, or maximum, of two times the employee's vacation entitlement. If the employee's earned and unused vacation and monthly accrued vacation reaches the accrual maximum, no further vacation accrues until earned vacation is taken. For instance, if an employee is eligible for two weeks of vacation annually and the total of earned vacation and monthly accrued vacation equals four weeks, their vacation stops accruing until the earned vacation is taken. California employees should discuss vacation carry over with the branch manager.

# LEAVE OF ABSENCE POLICY

Orkin may grant an unpaid medical, military caregiver, exigency (a state of affairs that makes urgent demands due to a service member's active duty or a call to active duty) or personal leave of absence in certain circumstances after three months of employment. You must give your manager at least 30-days notice if the leave is foreseeable. However, where the leave is not foreseeable, you must provide as much notice as practical. Orkin will consider you request in accordance with applicable State and Federal laws and as required by the Family Medical Leave Act of 1993 (FMLA) and Orkin policies. You will be notified whether your leave request is granted or denied.

To qualify for a FMLA leave of absence as defined by applicable law and Orkin policy you must:

A.  Have been employed by the Company for 12 months
B.  Work 1250 hours in the 12-months preceding the leave request
C.  Have your physician complete a Medical Certification Form certifying a required absence from work for medical reasons
D.  Complete a Request for Leave of Absence Form

If you return from a FMLA leave of absence within 12 weeks (26 weeks for military caregiver leave) from the last day worked, you will be reinstated to your same or equivalent position within the same pay and benefits prior to

J. BERGER 023
GKB & ASSOCIATES

13



the leave.

If you have not returned from a FMLA leave of absence within 12 weeks (26 weeks for military caregiver leave) from the last day worked, the Company will reclassify your leave to NON-FMLA status and you are not guaranteed reinstatement to the same or equivalent job, pay and/or benefits. Reinstatement of certain benefits is dependent upon your election and continuous coverage under the provisions of COBRA.

If granted leave, you must comply with the terms and conditions of the leave as defined by law. In addition, you must comply with Orkin policy that includes but is not limited to the following:

1. You must provide your manager with periodic updates on your status and intention to return to work.
2. You must not apply for unemployment benefits while on approved leave of absence.
3. If you accept other employment while on approved leave of absence, that action will be treated as your voluntary resignation from Orkin.
4. While on an approved Medical FMLA or Non-FMLA leave, and Personal FMLA or non-FMLA leave to care for a qualified ill immediate family member, employees must use all current and banked sick days to cover the lost time. Employees may use any available vacation time or floating holidays to cover the lost time.
5. While on approved leave of absence you are subject to the same employment policies and procedures related to job elimination or staff reduction as applicable to an active employee not on leave.
6. If an employee fails to return to work within 12 months, inclusive of the initial 12 weeks (26 week for military caregiver Leave), employment will be terminated subject to applicable laws and Orkin policy. You may continue your benefits coverage under the provisions of COBRA. Contact the Benefits Department at 1.888.704.4772 or 404.877.4772 in the Atlanta area for additional information about COBRA.

# BENEFITS WHILE ON LEAVE OF ABSENCE

If you are on an approved leave of absence, your benefits may be affected. For information concerning your particular leave, contact the Benefits Department at 1.888.704.4772 or 404.877.4772 in the Atlanta area.

# FUNERAL OR BEREAVEMENT TIME OFF

Any employee may take up to three consecutive workdays off with pay following the death of the employee's spouse, parent, child, sister, brother, legal guardian, grandparent, grandchild, mother-in-law, father-in-law, daughter-in-law, or son-in-law. The supervisor may also approve additional unpaid time off for the death of a spouse or child, or if lengthy traveling distances or other circumstances justify.

# JURY DUTY

Orkin encourages employees to serve on jury duty when called. You must notify your manager of the need for time off for jury duty as soon as a notice or summons from the court or a subpoena is received. Employees will be paid while on jury duty. In return, any payments received from the court for serving as a juror must be turned over to your manager, who will process the reimbursement to Orkin. You must provide verification confirming your service as a juror and report or return to work for the remainder of your work schedule on any day you are dismissed from jury duty.

# TIME OFF FOR WITNESS DUTY

You may take time off with pay because of your required attendance as a witness in a legal proceeding. In exchange, if you are compensated for your participation as a witness, you will be asked to turn over any payments to your manager, who will process the reimbursement to Orkin. You are requested to notify your manager of the need to take time off as far in advance as possible, but no later than the day prior to the leave.

# VOTING TIME OFF

J. BERGER 024
GKB & ASSOCIATES

In the unlikely event that your work schedule does not permit you to vote in a statewide public election before or after working hours, you will be allowed sufficient time off to go to the polls. You must give reasonable notice to your manager of the need to have time off to vote.



# MILITARY LEAVE

Leave without pay is provided to you when you enter the uniformed services, as defined by federal or state law. For example, the uniformed services include military services with the Armed Forces of the United States or the Armed Forces Reserves. You may be entitled to reemployment rights and retention of full seniority for all prior service upon reemployment under the Uniformed Service Employment and Reemployment Rights Act and applicable state laws. When possible, you should send your military service orders to the Human Resources Department for review prior to commencement of the leave. Also, contact the Benefits Department for benefits information.

Temporary employees may not be eligible for reinstatement following military leave, and reinstatement may not be required for other employees in some circumstances. Contact the Human Resources for information pertinent to your situation.

As with other leaves of absences, failure to return to work or to reapply within applicable time limits may result in termination of employment.

# WORKERS' COMPENSATION

Orkin is committed to the health and safety of all employees. We value your safety and good health and encourage you to always work in a safe manner.

If an accident does occur while at work, report it to your supervisor immediately. Seek treatment from one of the approved doctors on the workers' compensation panel posted on the office bulletin board.

The basic objective of workers' compensation is to provide medical and income assistance to employees injured while at work.

## Benefits Provided

Generally, workers' compensation laws provide for three types of benefits to injured workers, and any one or more of them may be applied to a particular case.

- Medical Benefits. Generally, to be covered, medical expenses must be reasonable in cost and necessary for treatment of a work-related injury. Medical benefits are provided from the first dollar of cost. There is no deductible.
- Disability Benefits. Such benefits are intended to replace your loss of income or earning capacity. Payments are generally at a reduced rate and limits are defined by law.
- Rehabilitation Benefits. This covers both reasonable medical and vocational rehabilitation. The goal is to return you to gainful employment as soon as medically possible.

The Modified Duty-Return to Work Program is designed to facilitate an employee's return to work after being injured on the job. Working within the physician's restrictions, often an office-type position is altered to accommodate the employee during the employee's period of recuperation. This program allows the employee to be productive during recovery and make an easier transition to full duty.

# BUSINESS CONDUCT

Employees cannot accept and must decline or return any gift or gratuity, including major event tickets, (i.e. Masters Golf Tournament, Super Bowl, concerts, etc.), valued in excess of ninety-nine dollars ($99) from any customer, vendor, supplier, or other person doing business with Orkin. In doing so, please explain that Orkin prohibits employees from accepting gifts or gratuities to ensure that business decisions, transactions and services are provided on an objective and professional basis.

# CONDUCT OUTSIDE WORK

Orkin does not seek to interfere with employees' off-duty activities. However, Orkin will not tolerate conduct away from work that negatively affects Orkin, either in terms of an employee's individual work performance or the business interests of Orkin or its reputation.

J. BERGER 025
GKB & ASSOCIATES



# SOLICITATION AND DISTRIBUTION POLICY

Approaching fellow employees in the workplace regarding non-work related activities, organizations or causes, regardless of how worthwhile, important or benevolent, can in some circumstances create unnecessary apprehension and pressure for fellow employees. Orkin has established rules, applicable to all employees, to govern solicitation and distribution of written material during work time and entry onto the premises and work area. All employees are expected to comply strictly with these rules:

Orkin, Inc. has bulletin boards located throughout its facilities for the purpose of communication with employees. Postings on these boards are limited to Company related material including statutory and legal notices, safety and disciplinary rules, Company policies, memos of general interest relating to the Company, local operating rules, and other items. All postings require appropriate management approval. No postings will be permitted for any other purpose.

In order to maintain a proper business environment and prevent interference with work and inconvenience to others, the following solicitous actions are prohibited in working areas during working time or during the work time of the employee(s) at whom the activity is directed:

- Posting of notices or other written material on Company-owned or leased property, including but not limited to bulletin boards, without prior written approval;
- Circulation or distribution of written promotional or solicitation material;
- Solicitation of any form during working times, including soliciting employees on behalf of any club, society, labor union, political party, religious organization or other group or cause;
- Sale or attempted sale of goods on Company property;
- Distribution of literature, sale of merchandise, solicitation of financial contributions or solicitation for any cause on Company property by individuals not employed by the Company;
- Under no circumstances is a non-employee permitted to solicit or to distribute written material for any purpose on Orkin property; and
- The sole exception to the Company's no-solicitation rule during work hours and in work areas applies to the Company's annual participation in the United Way.

## Definitions

As used in this policy, "work time" includes all time for which an employee is scheduled to work for/and at Orkin; it does not include break periods, meal periods, or periods in which an employee is not, and is not scheduled to be, performing service or work for Orkin. It also includes the "work time" of any employee to whom prohibited activity is directed. Employees are not to access work areas outside of their normally scheduled work hours unless they have prior authorization from their immediate supervisor, and such pre-authorized access is only permitted for legitimate work-related activities associated with their job duties.

# TEAMWORK

Providing service to each customer's satisfaction, on the specified day, is the responsibility of all of us. You have not been employed to fill just one position, but to work on a team. Pulling together in this way helps each of us enjoy our work more and makes the workload seem lighter.

From time to time you will be asked to help a fellow employee who has fallen behind due to illness or other problems. Remember, teamwork is the heart of our successful Company.

# EMPLOYEE FEEDBACK

While performing your job, you may think of a better way to accomplish your duties. Express your ideas to your supervisor; you may have found a way to increase productivity or improve operations. As well, if you have questions or concerns about any aspect of your job, talk to your supervisor. We encourage a positive exchange between employees and managers.

# EMPLOYEE COMMUNICATIONS

J. BERGER 026
GKB & ASSOCIATES

Orkin has several publications that knit our employees together with common goals and interests, often highlighting employee achievements. Our corporate communications include:

*16*

*Rollins Today* – a quarterly magazine with feature stories, service anniversaries and letters from our customers.

*Insider* – a monthly newsletter distributed electronically for Orkin employees with feature stories and other important Company announcements and reminders.

Employees are encouraged to submit story ideas or customer appreciation letters to the Corporate Communications Department.

# OPEN-DOOR POLICY

Orkin recognizes that employees will have suggestions for improving the workplace, as well as complaints about the workplace. The most satisfactory solution to a job-related problem or concern is usually reached through a prompt discussion with your manager. Please feel free to contact your manager with any suggestions and/or complaints.

If you do not feel comfortable contacting your manager or are not satisfied with your manager's response, please submit your suggestion or complaint in writing to the Human Resources Department. Human Resources will review your written submission and provide you with a final resolution.

# CARE, CUSTODY AND CONTROL OF CHEMICAL

If your job requires you to handle pesticides in any way, it is important for you to know the laws and Company policies regarding chemical usage. Federal Insecticide Fungicide and Rodenticide Act Under federal law (FIFRA), states you must use chemicals as directed on the label. Any usage that is inconsistent with the label is illegal. If you use chemicals illegally, you may face civil and/or criminal penalties. Remember – the label is the law.

Managers are responsible for teaching appropriate personnel that all pesticides must be used in accordance with label instructions or as officially directed by the Environmental Protection Agency. If in doubt about any chemical usage, check with your manager.

## Company Procedures

Orkin provides you with extensive training in the handling of pesticides. There are certain prescribed procedures in the handling and usage of chemicals and gases that you may use in the course of your employment with Orkin. The rules and regulations set by the Company in the usage of such chemicals are a very important part of your employment. You are expected to adhere to and fulfill the policies established by the Company in the handling and usage of these chemicals. Compliance with the following procedures in the usage and handling of chemicals and gases is required in order to fulfill your responsibility. Those procedures include:

1. Locking vehicles at all times when unattended by the service operator. This includes while (a) servicing an account and (b) any other time when the service operator is out of the immediate vicinity of the vehicle for any reason whatsoever. This means any time pesticides are transported, regardless of the type of vehicle used.
2. Placing liquid and solid pesticides and rodenticides on the customer's premises so that they will be out of the way to unauthorized persons as well as non-target animals.
3. Correctly and legibly labeling all pesticide containers at all times.
4. Applying pesticides in such a manner as to prevent their coming in contact with food, feed, drink, eating and cooking utensils and food handling equipment.
5. The pesticides supplied to employees are for use by Orkin personnel in servicing the Company's customers. Under no conditions, whatsoever are chemicals of any form or nature to be sold or given to anyone.
6. By following Company procedures and label recommendations, you can perform your work properly and safely. Remember:
   a. Do not eat or smoke while using chemicals.
   b. Wash hands with soap and water after applying or using chemicals.
   c. Immediately wash off any chemical accidentally spilled on your skin.
   d. Use of respirators in dusty and misty application sites – according to label directions.
   e. Read, understand, and follow label instructions.

J. BERGER 027
GKB & ASSOCIATES

Failure to comply with these procedures may result in disciplinary action up to and including termination. Safety and concern for the proper use of pesticides is important to all of us.

If you handle chemicals regularly, wash clothing thoroughly (two or three times, if necessary) after each day of chemical application. Clothing should be washed in hot water separately from the family laundry. Line dry

*17*

whenever possible to avoid spreading pesticide in the automatic dryer. If clothing is saturated with highly toxic pesticides, discard them using the directions for disposal of pesticide containers.

# HAZARD COMMUNICATION PROGRAM

Orkin endorses the premise that the "employee has a right to know" about any potential chemical hazards to which you may be exposed during the performance of your job. This information is provided to you by three means: (1) pesticide labels; (2) Material Safety Data Sheets; and (3) employee information and training.

You can access any or all of these items by asking your manager to see the Pesticide Reference Manual. This manual contains copies of all of the pesticide labels as well as copies of all the Material Safety Data Sheets (MSDS). In addition, you should (at any time you desire or feel the need) ask your manager to allow you to review technical bulletins available in the branch as well as the various training videos also available.

Should a question arise that cannot be answered on the local level, do not hesitate to contact your region manager. (The region manager will refer questions to Technical Services that cannot be addressed at the region level.)

# CONSUMER POLICY PLEDGE

Orkin's success is based on giving quality service to our customers. The integrity of the Company depends on all of us understanding and following The Consumer Policy Pledge.

**Sales Employees**
- I will not tell a customer or prospect anything that is untrue.
- I will not insinuate or claim that a condition exists that does not, in fact, exist.
- If the condition is not active, I will tell the customer it is not active. If there is a danger of infestation and preventive treatment is warranted, I will tell them of the need and show them why.
- If the customer is in doubt of the need, I will not pressure him/her into an unwanted contract.
- I will not put pressure on the elderly to sign an unwanted contract.
- I will not exaggerate the danger. I will quote directly from authenticated technical sources.
- At the time the contract is signed, I will advise the customer of the 3-day (business days) cancellation clause verbally and, in addition, place (1) the date the contract was signed, (2) the branch office address and (3) the date until midnight of which the customer may cancel the contract on the Cancellation Form. At this time, I will advise the customer that if he or she should change his or her mind prior to work being done, we will refund their payment.
- I will quote charges for our service as are indicated by our Company rate card. I will not under-charge or over-charge for services being offered. I will not be paid commission for under-priced jobs.
- I will check back with the customer to see that the work has been done to his/her satisfaction.
- I will show interest, concern, courtesy and respect for each and every customer.
- I realize the problems that afflict our customer may afflict his/her neighbors as well and acknowledge it as my responsibility to offer service to all that need it.
- I understand that I will be making termite re-inspections, and I will make a thorough and complete inspection.

**All Employees**
- I acknowledge that a customer's problem is always URGENT! His/Her call is a call for help. His/Her complaint must be satisfied conclusively, promptly and with utmost concern.
- I acknowledge that the problem is not solved until our customer is satisfied.
- I acknowledge that our service, whether satisfactory or not, is the customer's decision - not ours!
- The attitude of Orkin that our customer is "always right" is a statement of policy and not merely rhetoric.
- A complaint is not an intrusion on our daily routine...it is our golden opportunity to prove our value and our genuine concern.

J. BERGER 028
GKB & ASSOCIATES



# DRIVER CERTIFICATION POLICY

**Overview**

Orkin, Inc. employees operate Company-owned and employee-owned vehicles on behalf of the Company and drive over 140 million miles each year. The Company's commitment to highway safety and employee welfare, as well as the best interests of the general public is a top priority and the basis of the Driver Certification Policy.

- All employees (including new employees) who drive a Company vehicle must adhere to the Driver Certification Policy.
- Employees who use their personal vehicle on behalf of the Company are also subject to the Driver Certification Policy.
- Company Driver Certification is earned based on safely operating a Company or personal vehicle, maintaining a valid state operator driving license (where required the state commercial drivers license), and complying with state vehicle operating standards.
- Personal driving records are an indication of your overall driving skills and habits. Violations occurring on personal time will be included with Company Certification/point accumulation.
- Driver Certification is monitored by a point system in which points are accumulated based on unsatisfactory driving practices. New employees begin with zero points at the time of hire, unless points were accumulated and confirmed through the pre-hire MVR or during prior employment with the Company. Please see the Orkin Employee Safety Booklet for more information on the Driver Certification Policy.
- Annual MVRs will be conducted for all driving positions.

# GLOBAL POSITIONING SYSTEM (GPS)

The Company's commitment to highway safety, employee welfare and the safety of the general public, are priorities and the genesis of GPS.

GPS is a satellite system that is attached to the Company vehicle and monitors the vehicle during operation. This system monitors:

- Speed of travel
- Time of arrival
- Length of visit
- Time vehicle spends idling
- Location of the vehicle at every stop.
- Seat belt use
- Vehicle mileage
- Unauthorized or after hours use

All employees who drive vehicles in which a GPS unit has been installed are expected to comply with all governmental statutes and regulations related to the operation of motor vehicles, and those employees will also be governed by specific GPS rules. These GPS rules are in addition to the Drivers Certification Policy and any applicable regulatory or government discipline which may supersede this policy.

Driving habits and patterns will be reviewed on a rolling one (1) year basis. This means that a GPS violation remains viable for discipline for a one (1) year period of time from its occurrence, unless it requires immediate action based on the severity of the violation as described below.

If multiple violations occur on the same day, they may be treated as one violation, with any applicable discipline based upon the most serious offense.

**Required Measures**

The following GPS-related activities are required measures and may be appealed only under the guidelines of the section entitled Appeals in the Orkin Employee Safety Booklet. All GPS Rules of the Road Counseling/Coaching forms given to the employee must include the specific exception report noting the violation.

1. Vehicles that travel 71 mph up to 79 mph:
   a. First offense will be a written warning.
   b. Second offense results in a final written warning.
   c. Third violation will result in termination.
2. Vehicles that travel 80 mph up to 89 mph:
   a. First offense will be a written warning.

J. BERGER 029
GKB & ASSOCIATES

19

b.   Second offense will result in termination.
3.   Vehicles that travel 90 mph and greater:
   a.   Immediate termination.
4.   Vehicles left idling at any service location:
   a.   First offense will be a written warning.
   b.   Second offense will result in termination.
5.   Failure to wear seat belt while driving Company vehicle:
   a.   First offense will result in written warning.
   b.   Second offense will result in final warning.
   c.   Third offense will result in termination.
6.   Stops which deviate from the technician's assigned route of service or other unscheduled stops, which cause the route to be run out of sequence or cause customers to be serviced outside their time window:
   a.   First offense will be a written warning.
   b.   Second offense will result in termination.
7.   Unauthorized use of Company vehicle after work hours:
   a.   First offense will result in written warning.
   b.   Second offense will result in final warning.
   c.   Third offense will result in termination.
8.   Employees tampering with the GPS unit:
   a.   First offense will be a written warning.
   b.   Second offense will result in termination.
9.   Employees providing service to non-Orkin customers:
   a.   First offense will result in termination.
For accidents that causes a significant loss, the employee may be subject to immediate termination pending a review by the Division Vice-President, Region Manager, Human Resources, and Risk Management.

# WORKS MADE DURING EMPLOYMENT

All work products tangible and intangible (including but not limited to presentations, ideas, documents, programs, corrections, modifications, etc.) created within the scope of your employment will remain the exclusive property of Orkin. To the extent that the employee may, under applicable law, be entitled to claim any ownership interest in the Work Product, each employee must agree to relinquish rights to Orkin as a condition of employment.

# DISPUTE RESOLUTION POLICY

The Dispute Resolution Policy establishes the procedures both you and the Company are required to follow for resolving any "dispute" between us. The Policy applies to and legally binds the Company, together with you and the Company's current and/or former employees and applicants.

The Company believes that protracted and expensive court litigation often does not serve the best interests of either you or the Company. The Company therefore has instituted a Policy that is designed to be fair, efficient, and inexpensive. All parties are required to use this process exclusively, rather than more formal court litigation, so that the merits of such disputes are more promptly and efficiently resolved.

This policy has been designed with the intention of assuring a reliable and efficient method for addressing such disputes. These procedures reflect the Company's long-standing commitment to open communication and its continuing interest in seeing that employment-related disputes are promptly, fully and fairly addressed.

To acknowledge and agree to the Dispute Resolution Policy, the Agreement to Arbitrate Form must be signed by employees at the time of hire, during the signing of bonus plans and at the time of job promotion. The Agreement to Arbitrate Form can be found on the myOrkin intranet site.

# EMPLOYEE COOPERATION IN IN-HOUSE INVESTIGATIONS

**J. BERGER 030**
**GKB & ASSOCIATES**

There may be instances where employees are asked to participate in an in-house investigation by an Orkin representative. A thorough investigation requires investigators to acquire all useful and relevant information from





any employee with knowledge of the incident. All employees are required to truthfully cooperate in all in-house investigations. Failure to cooperate may subject an employee to disciplinary action up to and including termination.

# CONFIDENTIALITY

Information about Orkin, its employees, customers, suppliers and vendors is to be kept confidential and divulged only to individuals within Orkin who have both a need to receive and an authorization to receive the information. If you are in doubt as to whether information should be divulged, you should not divulge information, but discuss the situation with your manager.

All records, files and computer data maintained by Orkin are confidential and remain the property of Orkin. Records and files are not to be disclosed to any outside party without the express permission of the Vice President of Human Resources. Confidential information includes, but is in no way limited to: financial records, customer lists, business, marketing and strategic plans; personnel and payroll records regarding current and former employees; the identity of, contact information for any other account information on customers, vendors and suppliers; inventions, programs, trade secrets, formulas, techniques and processes; and any other documents or information regarding Orkin operations, procedures or practices. Confidential information or property may not be removed from Orkin premises without express authorization. Any inquiries from the press, other media, government agencies or any other outside groups should be passed along to the Public Relations department for handling.

Confidential information obtained during or through employment with Orkin may not be used by any employee for the purpose of furthering current or future outside employment or activities or for obtaining personal gain or profit. Orkin reserves the right to avail itself of all legal or equitable remedies to prevent impermissible use of confidential information or to recover damages incurred as a result of the impermissible use of confidential information.

Employees may be required to enter into written confidentiality agreements confirming their understanding of Orkin confidentiality policies.



# USE OF TECHNOLOGY AND THE INTERNET

Orkin provides employees access to one or more forms of electronic media and services, including computers, e-mail, desktop phones, cell phones, PDAs, voice mail, fax machines, external electronic bulletin boards, wire services, on-line services, and the internet. Employees are encouraged to use these media and associated services because they can make communication more efficient and effective and because they are valuable sources of information about vendors, customers, technology, and new products and services. However, all employees and everyone connected with Orkin should remember that electronic media and services provided by Orkin are Company property, and their purpose is to facilitate and support Company business. Employees do not have a right to, nor should they have any expectation of, privacy while using Orkin information technology resources at any time, including accessing the internet through Company gateways and using email. The Company monitors and reports employees' inappropriate internet and email activity to their manager for disciplinary action.

1. Email: Orkin's e-mail system is a valuable business asset. The messages sent and received on the E-mail system, like memos, purchase orders, letters, or other documents created by employees in the course of their workday, are and remain the property of Orkin, Inc. The use of technological tools to send or view material that is offensive or inappropriate in a business environment is strictly prohibited. The use of Orkin technological tools (computer, networks and internet) to access, maintain, organize, or participate in personal websites, web logs (blogs), web journals, chat rooms or instant messaging is strictly prohibited and may subject an employee to disciplinary action up to and including termination.
2. Portable Devices (PDAs and cell phones): Newer PDAs and cell phones are becoming more popular and have a number of innovative features such as wireless Email, chat, etc. Unfortunately, these devices can be problematic and disruptive when used inappropriately during business meetings. All employees should understand that their full attention should be on the meeting and that these devices should remain in silent mode for the duration of the meeting.
3. Laptops: Employees who have a Company laptop have a responsibility to maintain the security and protection of that asset from both physical and electronic threats. Laptops are frequently the entry point of viruses and other electronic threats. ITC Desktop Support Services (DSS) will periodically request that users connect their laptops for operating systems and anti-virus updates. Users should not interrupt or cancel those updates until the process has completed.
4. Internet: The internet is another valuable business asset. However, the use of the internet to view material



21

that is offensive or inappropriate in a business environment is strictly prohibited. The use of the internet on Company time and property for purposes other than Orkin-related business may subject an employee to disciplinary action up to and including termination.

5. Orkin has traditionally followed a monitoring only process where enforcement actions were taken (upon management advisement) in the event of a violation. However, the threat of infection from spyware, viruses and other types of malicious code exists in e-mail, search engines and on many popular websites. In many instances, employees' computers can be infected by doing nothing more than surfing to these websites. This possibility places the entire network at risk, due to the chance of an infection spreading from a single computer to many other connected systems. To reduce this risk, the Company has implemented a web blocking and filtering system.

# VISITORS

Employees may have an occasional visit from a friend or relative provided advance approval is obtained from their manager. Any visit must be arranged to minimize disruption of work. Generally, friends and relatives should be asked not to visit employees during working hours. Unattended children are not allowed in the facility or on the premises at any time. For safety and insurance reasons, friends, relatives and customers are not permitted in areas restricted to employees only, unless authorized by management.

# SECURITY

Employees should be alert at all times and should immediately report the presence of any suspicious persons to their manager. Computer passwords, electronic door codes and any other security access information should not be disclosed to anyone who is not authorized to have that information.

# INQUIRIES FROM THE MEDIA

From time to time, members of the media may ask you questions concerning Orkin and our business. You are not to answer these questions. Any inquiries from the media (including, but not limited to, representatives of radio and television stations, newspapers, magazines, security analysts and research persons) must be referred to the Public Relations Department, 404.888.2217, P.O. Box 647, Atlanta, GA 30301, and that office should be notified that such a referral has been made.

# EMPLOYEE PARKING

Orkin generally provides employees with parking. You may park your vehicle in a non-reserved space. Some parking areas, however, may be reserved for disabled drivers, vendors, customers, vehicles belonging to Orkin and others. Orkin will not be responsible for any damage to your vehicle or the contents of your vehicle while parked on the Orkin property.

# TRAVEL

All employees are expected to act responsibly while traveling on behalf of the Company. Employees will be reimbursed for all travel expenses, so long as the expenses are for a clear and necessary business purpose and are reasonable in amount. Please review the General Office Procedure Manual, Volume II for Orkin's complete policy on travel.

# TELEPHONES

While at work, employees are expected to perform their job duties and responsibilities. Personal calls, both incoming and outgoing, must be kept to a minimum and must not interfere with employees' duties and responsibilities. Long-distance calls are prohibited without the express approval of an employee's manager. Abuse of the telephone policy may result in discipline, up to and including termination.

J. BERGER 032
GKB & ASSOCIATES

# HOUSEKEEPING

All employees are expected to maintain their desks and/or areas in an orderly fashion. Employees should report any unsafe conditions or building problems to their manager. Also, please pick up after yourself when you use the break room, locker room or restroom. At the end of the workday, each employee should clear his or her desk of all files and paperwork and store desk accessories as much as practical.

# EMPLOYMENT REFERENCES

Upon termination from Orkin, Inc. all employment references will be referred to The Work Number. Employees should provide requestors with their social security number and Orkin's employer code, which is 11467. Requestors may access the information online at www.theworknumber.com/verifier or toll free at 1.800.996.7566.

# SMOKING POLICY

Smoking is prohibited in all Orkin facilities. See your manager for designated smoking areas.

# MANAGEMENT COMMITMENT AND INVOLVEMENT POLICY STATEMENT

The management of this organization is committed to providing employees with a safe and healthful workplace. It is the policy of this organization that employees report unsafe conditions and do not perform work considered unsafe. Employees must report all accidents, injuries, and unsafe conditions to their supervisors.

No such report will result in retaliation, penalty, or other disincentive.

Employee recommendations to improve safety and health conditions will be given thorough consideration by our management team. Management will give top priority to and make every effort to provide the financial resources for the correction of unsafe conditions. Similarly, management will take disciplinary action against an employee who willfully or repeatedly violates workplace safety rules. This action may include verbal and written reprimands and may ultimately result in termination of employment.

The primary responsibility for the coordination, implementation, and maintenance of our workplace safety program has been assigned to the Risk Management and Human Resources Departments.

They will work with you or your branch manager in ongoing safety and health program activities, which include:

- Promoting Loss Prevention committee participation;
- Providing safety and health education and training; and
- Reviewing and updating workplace safety rules.

This policy statement serves to express management's commitment to and involvement in providing our employees a safe and healthful workplace. This workplace safety program will be incorporated as the standard of practices for this organization. Compliance with safety rules will be required of all employees as a condition of employment.

J. BERGER 033
GKB & ASSOCIATES

23

**GENERAL OFFICE PROCEDURE MANUAL VOLUME I**
*Holidays and Vacations*

Page #:  1
Effective Date: 1/1/14
Replaces: 2/1/10

Process Owner: Payroll and Human Resources

## Holidays and Vacations

__ITEM__                                                      __PAGE NUMBER__

Vacation Policy Guidelines..................................................1-6.1

Authorized Holidays.........................................................1-6.2

Guidelines for Floating Holidays........................................1-6.3

Requesting Vacation Days & Floating Holidays.................1-6.4

Vacation Planning Guidelines...........................................1-6.5

Earned Vacation Days for Terminating Employees............1-6.6

Grandfathered Vacation Days...........................................1-6.8

Policy for Dedicated Commercial Locations......................1-6.8

### California Holidays / Vacations

Vacation Policy Guidelines................................................1-6.10

Non-exempt and Sales Employees......................................1-6.10

Exempt Employees: Vacation Accrual...............................1-6.11

Vacation Accrual Cap; Rehired Employees; Authorized Holidays...1-6.12

Personal Holidays...........................................................1-6.13

Guidelines for Fixed and Personal Holidays.....................1-6.13

Requesting Vacation Days and Personal Holidays.............1-6.15

Vacation Planning Guidelines...........................................1-6.16

Policy for Dedicated Commercial Locations......................1-6.17

**J. BERGER 034**
**GKB & ASSOCIATES**

PROPERTY OF ORKIN, LLC

2170 PIEDMONT ROAD NE, ATLANTA, GA  30324

**GENERAL OFFICE PROCEDURE MANUAL VOLUME I**
*Holidays and Vacations*

Page #:  1-6.1
Effective Date:  1/1/14
Replaces: 2/1/10

Process Owner: Payroll and Human Resources

## Holidays and Vacations

## Note:  Policy pages 1-6.1 – 1-6.8 apply to:
## All Locations (except California)

**Vacation Policy Guidelines**

The Company's vacation policy is based on the philosophy that all eligible employees, with the proper approvals, may schedule and take earned vacation anytime during the calendar year.

1. Vacation is a use-it-or-lose-it benefit unless superseded by state law.
2. All vacation earned during the calendar year must be taken by December 31st. Any vacation earned but not taken by December 31st is forfeited.
3. No carryover of vacation is allowed.
4. No one is authorized to make any exceptions to this policy.
5. Vacation may be taken any time during the year occurring on or following six months of continuous full time service with the Company.
6. Employees begin to earn vacation after six months of continuous employment.
7. Full time employees will receive vacation for the first calendar year of employment or reemployment based on the New Hire/Rehire Eligibility Table below.

| New Hires/Rehires Month of Hire | Vacation Eligibility Based on Month of Hire - Calendar Year 1 |
|---|---|
| January | 5 days |
| February | 4 days |
| March | 3 days |
| April | 2 days |
| May | 1 days |
| June - December | 0 days |

8. Thereafter, on January 1st of each year, employees will have a number of vacation days deposited to their vacation bank based on their Vacation Eligibility Date as outlined on the Vacation Planning Schedule. These days may be scheduled and taken anytime during the year with proper approvals.

*Continued on next page*

**J. BERGER 035**
**GKB & ASSOCIATES**

PROPERTY OF ORKIN, LLC

2170 PIEDMONT ROAD NE., ATLANTA, GA  30324

# GENERAL OFFICE PROCEDURE MANUAL VOLUME I
*Holidays and Vacations*

Page #:  1-6.3

Effective Date:  1/1/14

Replaces: 1/1/08

Process Owner :  Payroll and Human Resources

**Vacation Policy
Guidelines**
*continued*

9. Effective 1/1/14, a separated employee who becomes reemployed must work continuously for at least five (5) years before prior service is counted and applied towards determining total years of service. Until that time, the employee's vacation eligibility will be based on his/her most recent hire date and the vacation tables for Calendar years 1-5 will apply. After five years of continuous full-time service, a vacation eligibility date will be assigned. The vacation eligibility date reflects the most recent month and day of hire; and the year will reflect the total number of years of service. (Ex. An employee rehired on 4/12/13 with eight years of prior service would have a vacation eligibility date of 4/12/2005 following five years of service.)

10. Employees will be required to utilize earned vacation to cover days not worked in the event that all sick, banked sick (when applicable) and floating holidays have been used. If this takes away from future vacation requests that have already been scheduled and approved in Kronos, the employee will still be allowed to take the vacation time, however, some or all of such vacation time may be unpaid.

| Vacation Planning Schedule | |
|---|---|
| Calendar years 2 - 5 | 10 days of vacation |
| Calendar year 6 | 11 days of vacation |
| Calendar year 7 | 12 days of vacation |
| Calendar year 8 | 13 days of vacation |
| Calendar year 9 | 14 days of vacation |
| Calendar years 10-19 | 15 days of vacation |
| Calendar year 15 - Operations Manager and above | 20 days of vacation |
| Calendar year 20 - All other Orkin personnel in both supervisory and non-supervisory positions | 20 days of vacation |

**Authorized
Holidays**

Orkin recognizes eight (8) paid holidays during the calendar year. Five of these days are "fixed" holidays which are established as holidays to be recognized by all employees. The other three holidays are floating holidays to be chosen by the employee.

The five (5) "fixed" holidays are as follows:

| *Holiday* | *Date* |
|---|---|
| New Year's Day | January 1st |
| Independence Day | July 4th |
| Labor Day | First Monday in September |
| Thanksgiving Day | Fourth Thursday in November |
| Christmas Day | December 25th |

J. BERGER 036
GKB & ASSOCIATES

PROPERTY OF ORKIN, LLC

2170 PIEDMONT ROAD NE , ATLANTA, GA  30324

# GENERAL OFFICE PROCEDURE MANUAL VOLUME I
*Holidays and Vacations*

Page #: 1-6.4

Effective Date: 1/1/14

Process Owner : Payroll and Human Resources

Replaces: 1/1/08

**Authorized Holidays**

1. When a "fixed" holiday falls on a Saturday, it will normally be observed on the preceding Friday.
2. When a "fixed" holiday falls on a Sunday, it will normally be observed on the following Monday.
3. Employees who regularly work a half day on Saturday will be allowed time off without pay (if no other accrued time is available) when the "fixed" holiday is observed the preceding Friday.
4. When a "fixed" holiday occurs during an employee's vacation period, that day will be paid as a holiday and not as a vacation day.
5. If a location closes for Memorial Day, all employees will use one floating holiday for that day and will have two floating holidays remaining for the rest of the year.

**Guidelines for Floating Holidays**

The Company grants full time employees up to three paid days off (floating holidays) per calendar year in addition to the five fixed holidays.

1. Eligible employees must take their floating holiday(s) within the calendar year.
2. Unused Floating holidays may not be carried forward to the following year, except where applicable by law.
3. Unused Floating Holidays will not be paid, except where applicable by law.
4. To be eligible for a floating holiday, an employee must have a minimum of six months of full-time service with the Company.
5. Employees will be required to utilize earned floating holidays to cover days not worked in the event that all sick and banked sick (when applicable) and earned vacation has been used. If this takes away from future leave requests that have already been scheduled and approved in Kronos, the employee will still be allowed to take the leave, however, some or all of such leave time may be unpaid.
6. New employees will be granted floating holidays during their initial calendar year according to the following schedule:

| Hire date falls between | Number of Floating Holidays eligible |
|---|---|
| January 1 through May 31 | Two days before the end of the calendar year after six months of continuous service. |
| June 1 through December 31 | No floating holidays before the end of the calendar year and eligible for three floating holidays during the next calendar year after meeting six month service requirement. |

J. BERGER 037
GKB & ASSOCIATES

PROPERTY OF ORKIN, LLC

2170 PIEDMONT ROAD NE., ATLANTA, GA  30324

# GENERAL OFFICE PROCEDURE MANUAL VOLUME I
*Holidays and Vacations*

Page #:  1-6.5

Effective Date: 1/1/14

Process Owner : Payroll and Human Resources

Replaces: 1/1/08

**Guidelines for Floating Holidays**
*continued*

1. Absence due to Severe Weather - If an employee is unable to get to work due to severe weather conditions, the time off will be automatically applied against any available floating holidays. If the employee has already taken the floating holiday or is not eligible for a floating holiday, the time off due to severe weather will be without pay unless there is earned vacation time available. This must be noted on the employee's Timesheet.

2. Religious Holidays - Major religious holidays may be observed by an employee either as a paid holiday or as an excused absence without pay. The manager may excuse an employee to observe religious holidays when the work schedule permits the absence without reducing operational efficiency; however, managers should try to accommodate all reasonable requests from an employee in this regard. The employee's Time Sheet must show whether the employee should be paid for a floating holiday or an excused unpaid holiday absence.

3. Absence on workdays before or after a Holiday - Employees must be present the scheduled workday before and after a holiday, "fixed" or floating, in order to be paid for the holiday and/or the workday. If an employee takes a floating holiday and misses the workday before or after that day with an unexcused absence, he or she not only forfeits pay for the two days but also forfeits the right to reschedule the floating holiday.

4. Exceptions: If an employee is absent for an authorized vacation or leave; or, if an employee produces a physician's statement indicating an excused illness.

**Guidelines for Requesting & Paying Vacation Days & Floating Holidays**

1. An employee must submit a request in Kronos at least two weeks in advance to request the use of a vacation day(s) or a floating holiday. The Operations Manager is responsible for determining the eligibility and approving or denying the request based on the Company's vacation and holiday policy.

| Step | Action |
|------|--------|
| 1 | Access Employee Timecard in Kronos. |
| 2 | Select "My Actions". |
| 3 | Select "Time Off Request" |
| 4 | Select the type of Time off and enter the time off request dates. |
| 5 | An email will automatically be sent to the Manager for approval/denial. |
| 6 | An email will be sent from the Manager to the Kronos inbox indicating whether the request was approved or denied. |

2. For salaried and hourly employees a day's pay is equal to the pay for an eight-hour workday at the employee's usual rate of pay. For commission paid employee, vacation and holiday pay is outlined in the pay component forms unique to each job.

J. BERGER 038
GKB & ASSOCIATES

# GENERAL OFFICE PROCEDURE MANUAL VOLUME I
*Holidays and Vacations*

Page #: 1-6.6
Effective Date: 1/1/14
Replaces: 1/1/08

Process Owner:   Payroll and Human Resources

**Guidelines for Requesting & Paying Vacation Days & Floating Holidays**
*continued*

3.  Non-exempt employees (paid for overtime) who are required to work on a regular Company designated holiday will receive holiday pay plus regular pay. Additional pay is computed at the regular hourly rate for the actual hours worked. If an employee worked on a holiday he/she must record hours worked in Kronos. For example: If an employee worked three hours on a designated holiday the employee must enter a "new row" in Kronos and enter the amount of "hours worked".

4.  Seasonal, Casual Labor and Part-time employees are paid by the hour and are not eligible for paid vacations or holidays. When a seasonal, casual labor or part-time employee changes employment status and becomes a regular full-time employee, accrual of earned vacation begins the date the employment status changes to regular full-time. The amount of vacation received is based on the New Hire/Rehire Eligibility table. Eligible vacation must be taken anytime during the remainder of that calendar year following six months of continuous full-time service with the Company.

5.  Overtime pay is a factor only when the hours actually worked during a week are over 40, except where applicable by law. Hourly Administrative employees and Hourly Termite Specialists are paid time and a half the regular rate for all hours actually worked over 40.

6.  Holidays are paid as straight time and are not considered as hours worked for calculation of overtime pay, except where required by state law.

**Vacation Planning Guidelines**

Below are vacation guidelines that should be referenced when completing the Vacation Planner.

1.  Although Kronos is used to request and maintain vacation information, the Manager should utilize the Vacation Planner to plan ahead and avoid disappointments and conflicts in scheduling.

2.  Managers are urged to plan vacations and floating holidays on a yearly basis using the Vacation Planner, which is located on myOrkin under Human Resources>Forms and Documents.

3.  Vacation schedules should be prepared during the first two weeks of January to provide the proper control throughout the year.

4.  Vacations and floating holidays must be scheduled so they do not interfere with normal business operations. "Normal business operations" means that customer service will not be interrupted and all deadlines and commitments will be met.

5.  No more than 10% of the work force will be granted a floating holiday on the day before or the day after a regular holiday. Floating holidays on the day before or after a regular holiday will be granted on the basis of seniority.

J. BERGER 039
GKB & ASSOCIATES

PROPERTY OF ORKIN, LLC

2170 PIEDMONT ROAD NE., ATLANTA, GA 30324

# GENERAL OFFICE PROCEDURE MANUAL VOLUME I
*Holidays and Vacations*

Page #: 1-6.7

Effective Date: 1/1/14

Process Owner:   Payroll and Human Resources

Replaces: 1/1/08

**Vacation Planning Guidelines**
*continued*

6. No more than 20% of total personnel in a department may be on vacation in any given month. Employees with school age children should be encouraged to take vacations during the Christmas and spring vacation to avoid all the vacation time falling during the summer months.

7. No more than one person per job category may be on vacation during the same week.

8. Vacations must be limited to one-week intervals unless advance approval is secured from the next level of management.

9. Pest Specialists should avoid being absent from work during the last week of each month to ensure that all customers within the Location are serviced.

10. Personnel involved with Termite sales, service and administration should schedule their absences from work during months other than swarm season, which is generally March through May.

11. For Location and Region supervisors, the unit manager may not be on vacation while his or her next level supervisor is away. Each next level supervisor must advise their teams when they will take time away from work so conflicts can be avoided.

**Earned Vacation Pay for Terminating Employees**

1. In the event an employee terminates during the year, a "true-up" of vacation earned versus taken during the year needs to be calculated. Any excess of vacation earned versus taken will be paid on an employee's final check.

2. If an employee has taken more vacation than earned through his/her termination date, the employee will repay the excess vacation pay on the final check (provided the paycheck covers it and it is permissible per state law.) Please refer to the tables on the following page to calculate earned vacation for terminating employees.

J. BERGER 040
GKB & ASSOCIATES

# GENERAL OFFICE PROCEDURE MANUAL VOLUME I
*Holidays and Vacations*

Page #: 1-6.8
Effective Date: 1/1/14

Process Owner · : Payroll and Human Resources

Replaces  1/1/08

**Earned Vacation Days for Employees Terminating First Year of Employment**

The chart below shows when and how many vacation days are earned by employees terminating during their first year of employment:

| Vacation Days Earned Year 1 | |
|---|---|
| # of Months Worked | Days |
| 1 - 6 | 0 |
| 7 | 1 |
| 8 | 1 |
| 9 | 2 |
| 10 | 3 |
| 11 | 4 |
| 12 | 5 |

Note:  Employees do not begin to earn vacation until after six months of continuous employment.

**Earned Vacation Days for Employees Terminating After the First Year of Employment**

The chart below shows when and how many vacation days are earned by employees terminating after the first calendar year of employment:

| Vacation Days Earned | | | | | | |
|---|---|---|---|---|---|---|
| | 10 | 11 | 12 | 13 | 14 | 15 | 20 |
| **Calendar Years of Employment** | 2-5 | 6 | 7 | 8 | 9 | 10+ | 15+ |
| **Month Terminated** | | | | | | | |
| *January* | 0 | 1 | 1 | 1 | 1 | 1 | 2 |
| *February* | 1 | 2 | 2 | 2 | 2 | 2 | 3 |
| *March* | 2 | 3 | 3 | 3 | 3 | 4 | 5 |
| *April* | 3 | 4 | 4 | 4 | 5 | 5 | 7 |
| *May* | 4 | 5 | 5 | 5 | 6 | 6 | 8 |
| *June* | 5 | 6 | 6 | 6 | 7 | 8 | 10 |
| *July* | 6 | 6 | 7 | 7 | 8 | 9 | 12 |
| *August* | 7 | 7 | 8 | 9 | 9 | 10 | 13 |
| *September* | 8 | 8 | 9 | 10 | 11 | 11 | 15 |
| *October* | 8 | 9 | 10 | 11 | 12 | 13 | 17 |
| *November* | 9 | 10 | 11 | 12 | 13 | 14 | 18 |
| *December* | 10 | 11 | 12 | 13 | 14 | 15 | 20 |

J. BERGER 041
GKB & ASSOCIATES

**GENERAL OFFICE PROCEDURE MANUAL VOLUME I**     Page #:   1-6.9
*Holidays and Vacations*                         Effective Date: 1/1/14

Process Owner :  Payroll and Human Resources                    Replaces: 1/1/08

**Grandfathered Vacation Days**

Employees hired prior to January 2005 may have grandfathered vacation days earned when the vacation policy transitioned from anniversary year to calendar year.  This does not apply to employees who work within the state of California.  This one time deposit of banked vacation time can be used after all current vacation time in a calendar year has been used, and with a two weeks advance notice and prior approval from the Manager. Any unused time will be paid to the employee upon termination.

1. An employee may use some or all of their banked vacation days after they use all of their current year's vacation.
2. An Employee may elect to be paid for any banked vacation that remains in their bank while on an approved leave of absence or at the time the employee leaves the Company.
3. Employees will be required to utilize grandfathered vacation time to cover days not worked in the event that all sick and banked sick (when applicable), floating holidays and earned vacation have been used.  If this takes away from future vacation requests that have already been scheduled and approved in Kronos, the employee will still be allowed to take the vacation, however, some or all of such vacation time may be unpaid.

## Dedicated Commercial Locations ONLY (Vacation during week of Christmas)

**Policy for Dedicated Commercial Locations**

Dedicated Commercial Locations may close down the week of Christmas due to businesses being closed or the retail customers are too busy to allow us to render regular service.  The following procedures will be followed for scheduling vacation time during that week:

1. A skeleton crew will need to be in all Commercial Locations.  Management will determine how many employees must be scheduled based upon customer needs and requirements.
2. Employees will have the option of using vacation time, floating holiday or take one or more days without pay.
3. Managers should try to accommodate all reasonable requests when scheduling their skeleton crew.
4. All full-time employees who are eligible for holiday pay will be paid for December 25th (Christmas Day).
5. All Company rules/procedures must be followed for holiday and vacation pay.

J. BERGER 042
GKB & ASSOCIATES

# GENERAL OFFICE PROCEDURE MANUAL VOLUME I
## JOB DESCRIPTIONS

Page#: 9.1

Process Owner: Human Resources

Effective Date: 3/1/10

**Position:** Sales Inspector

**Job Code:** 2340, 3050, 3060, 3150, 3160, 4104, 4108 (may not be an all inclusive listing)

Replaces: 11/15/09

**Reports to:** Sales Manager / Branch Manager

**Position Summary**

Solicit sales opportunities with prospective customers. Inspect and evaluate the customer's service requirements. Propose appropriate scope of service. Obtain signed sales contract.

| Percent of Time | General Duties |
|---|---|
| 25 | *1. Respond to telephone contact with prospective customers. Schedule sales appointments. Drive vehicle to customer location. Develop new business (not from leads). |
| 20% | *2. Meet customer. Explain steps and procedures to be completed in identifying potential pest problems. Conduct thorough inspection of the interior of the customer's premise including the basement, attic and crawl space areas, etc. Move furniture or other customer property that may interfere with thorough inspection. Return furniture and other customer property to original location when finished. Conduct a thorough inspection of the exterior of the customer's premise. Based on the nature of the pest problem identified, prepare a proposal specifying the required scope of service. Prepare any related paperwork to document results of inspection. |
| 30 | *3. Present the sales presentation to the customer. Explain the pest problems that have been identified and the proposed service solution. Respond to customer's questions. Obtain customer commitment to purchase our service. Complete the necessary contract documents and obtain customer's signature. Achieve assigned sales performance objectives. |
| 15% | 4. Conduct annual Reinspections of customer's property. |
| 10% | 5. Complete other duties as assigned. |
| | *Essential Function |

# GENERAL OFFICE PROCEDURE MANUAL VOLUME I
## JOB DESCRIPTIONS

Process Owner: Human Resources

**Sales Inspector (continued)**

Page #: 9.2

Effective Date: 11/15/09

Replaces: 9/1/09

**Requirements Summary**

The requirements for Pest Control Sales, Termite Sales Inspectors and Commercial Sales Inspectors positions vary in several of the specific requirements listed below, depending on the actual work being performed and the Division requirements. These positions are classified as heavy work in as much as they require exertion of up to 60 pounds. This may vary according to the specific position and the Division requirements. Must be capable of wearing a respirator.

| Specific Requirements | Task Description |
|---|---|
| Lift / Carry 1 | Sales Inspector may be required to move customer's furniture or other customer property. Frequently (more than 20% of 8 hour period) requires lifting and carrying up to 20 pounds for a distance of up to 100 feet maximum. Occasionally (less than 20% of 8 hour period) requires lifting up to 60 pounds for a distance of up to 100 feet maximum. |
| Upper Extremity Push / Pull | Sales Inspector must be able to push measuring wheel over various terrains to measure property. Requires upper body forces up to 5 pounds 1 time in 5 minutes, up to once an hour. |
| Climb 1 | Sales Inspector must climb pull down ladder to access attic. Requires climbing ladder up to 6 rungs 3 times in under 5 minutes, up to 6 times an hour. |
| Climb 2 | Sales Inspector must climb stairs in customer's home or business. Requires climbing stairs up to 5 steps in under 5 minutes, up to 10 times per hour in an 8 hour period. |
| Stand 1 | Sales Inspector must stand during inspections. Requires a tolerance of standing posture for up to 30 minutes continuously for a total of up to 5 hours in an 8 hour period. |
| Sit 1 | Sales Inspector must sit while driving to customer's home or business. Requires tolerance of seated position up to 30 minutes continuously for a total of up to 3 hours per 8 hour period. |
| Crawl 1 | Sales Inspector may need to be able to crawl for up to 30 minutes during inspections. |
| Walk 1 | Sales Inspector must ambulate over various terrains during inspections. Requires walking up to 500' in 8 hour period. |
| Confined Access | Sales Inspector may need to enter crawl spaces during inspection. Must access spaces with specific entries of 24" vertical by 24" horizontal. |
| Temperature | Sales Inspector must tolerate working environment with outside temperatures, must be able to work in extreme temperatures. |
| Visual Sense | Required |
| Auditory Sense | Required |
| Verbal | Must be able to speak |
| Mental | Must be able to read and comprehend |
| Mental | Must be able to write |
| Mental | Must be able to use and comprehend basic math calculations |

J. BERGER 044
GKB & ASSOCIATES

## Account Manager Pay Arrangement Components

_Jessica Berger 1170737_     Account Manager          4108
Employee Name    Address Book #/SSN         Job Title          Job Code          District Name/#
(Note to Operation Managers and District Sales Managers: Place a "✓" in the applicable areas below.)

I understand that I will be paid based on the following provisions:

☒ **Training Salary**
A monthly salary of $_3600.00_ will be paid during the three month training period until _11-30-13_
(Account Managers hired between the 1st and the 15th of the month, are considered hired in "Month 1". Account
Managers hired after the 15th of the month are considered hired in "Month 0" and the first of the following month will
be "Month 1".)

☒ **Monthly Salary/Draw**
After the training period, a monthly salary of $_2500.00_ and draw of $_____0_____ is paid. Salary and
draw are split and paid in equal amounts each pay period. All commissions settle against the draw. If commissions
do not equal draw, the employee will go into deficit. The deficit will be repaid from future commissions.

☒ **PC Sales Commission:**
Commission is based on a scale. (See scale and details on back of form.)

☒ **Odd Jobs/Hardware/Government Bid Sales/Add-on Equipment Sales/Product Sales/TC Surveys**
Commission of 5% is paid on odd jobs (those jobs that are short-term and not under annual contract), hardware
sales and government bid work. Chargebacks are made at the same percentage rate as commission paid. If an
odd job is sold to a customer who has a current, recurring revenue contract with the Company, 10% may be paid
based on the District Sales Manager's discretion via supplemental. Deciding factors may be the costs of goods and
services, sub-contractor fees, the degree of difficulty and the current customer relationship.

☒ **Team Sales**
National Account Team Sales inside an Inspector's territory will be paid like regular PC and TC Sales. Set-ups will
be paid at 2%. Set-ups and National Account Leads do not count toward an Inspector's gross monthly sales
amounts.

☒ **Renewals**
The Account Manager receives 3% renewal commission _only_ for accounts assigned by the Operation Managers or
District Sales Managers. The commission is based on the renewal price as approved by the Operation Managers or
or District Sales Managers. Operation Managers or District Sales Managers may assign routine phone calls or
additional visits as deemed necessary. Chargebacks are made at the same percentage rate as the renewal
commission. Renewals do not count toward gross monthly sales.

| Monthly Value of Account | Account Visit Frequency | Monthly Value of Account | Account Visit Frequency |
|---|---|---|---|
| $75 - $200 | Yearly | $501 - $1000 | Every 4 months |
| $201 - $500 | Every 6 months | $1001 + | Every 3 months |

☒ **Set up Commission**
A 2% commission is paid to the local Account Manager who sets up accounts sold by Account Managers in other
sales territories or National Account Managers. Commission is paid (after set-up procedures are completed) on the
dollar value of the contract.  A graph and floor level must be attached.

☒ **Auto Allowance** – Auto allowance during training is $250. Auto allowance for the remainder of the first 12 months
is paid as follows. (Gross sales include odd job sales, hardware sales and government bid work.) Initial auto
allowance of $300 will be paid on the mid-month paycheck. The additional $100 auto allowance settlement, if
earned, will be paid on the end-month paycheck.

| Gross Sales | Personal Vehicle |
|---|---|
| $0 - $9999 | $300 |
| $10,000 + | $400 |

Auto allowance after the first 12 months is paid as follows:

| Gross Sales | Personal Vehicle |
|---|---|
| $0 - $14,999 | $300 |
| $15,000 + | $400 |

J. BERGER 045
GKB & ASSOCIATES

☒ **Gas Allowance** will be paid on the end-month commission paycheck according to the following scale based on
gross sales for the month. The fluctuating gas allowance recognizes that more sales are usually the product of
more sales calls and proposals, and therefore the gas allowance is greater for higher levels of sales

**CHARGEBACKS –** If the PC contract is cancelled within the first 12 months, advanced commissions will be subject to chargebacks on the uncollected portion of the contract. Chargebacks are calculated as the number of months unpaid (unserviced months PLUS serviced months not yet paid) times the monthly charge and will settle against any future production and/or sales commissions paid to the employee who sold the contract. Chargebacks will be made at the flat rate of 7.5%.

**PAY DAYS –** If you are paid semi-monthly, your pay periods are the 1st through the 15th, and the 16th through the end of the month. Your payday is approximately 10 days after the end of the pay period (25th and 10th). If you are employed in Delaware, you are paid semi-monthly. Your pay periods are the 1st through the 15th, and the 16th through the end of the month. Your paydays are approximately 7 days after the end of the pay period (22nd and 7th.) If you are employed in the state of Connecticut, New York, Maine or Massachusetts and are paid weekly, your payday is the next Friday following the end of the week.

**VACATION/SICK/HOLIDAY PAY - FULL TIME EMPLOYEES ONLY –** Vacation/sick/holiday pay for commission-paid employees is based on an Average Daily Rate of Pay (Example: Sum of prior 12 months pay divided by hours reported (2080 = 40 hours X 52 weeks) = hourly rate X 8 = Average Daily Rate of Pay. Vacation/sick/holiday pay is paid in place of salary and draw for days taken. Average Daily Rate of Pay excludes overtime pay, prizes, bonuses and auto allowance.

**VACATION –** Full time employees will be eligible for vacation pay according to the schedule below for the first calendar year. Thereafter, on January 1st, employees in calendar years 2-5 will receive 10 days of vacation in their vacation bank, and one additional day each year after that up to a total of 15 days each January 1st. A terminating employee will receive vacation pay for all vacation earned but not taken as of the termination date. A terminating employee will not be paid for floating holidays or Company holiday privileges, regardless of the reason for separation. The Company Policy and Procedure Manual contains more detailed information regarding vacation earned at the time of termination and other aspects of this policy.

In California, a terminating employee will receive vacation pay for all vacation earned and accrued as of the termination date.

**New Hire Vacation Eligibility in first calendar year of employment**
**Month of Hire**

| | |
|---|---|
| January – February | |
| March | 5 days |
| April | 4 days |
| May | 3 days |
| June | 2 days |
| July-December | 1 day |
| | 0 days |

### EMPLOYEE'S ACKNOWLEDGMENT

I understand that the Company reserves the right to discontinue or change the pay arrangement at anytime at the sole discretion of the Company. I acknowledge that I have received the Welcome to Orkin handbook, and I am aware that I must abide by the work rules of the Company which are outlined in Welcome to Orkin. I also understand that I am to follow the most current Orkin policies and procedures when performing my job. I have read and I understand the various components of my pay arrangement as outlined above. I understand Pay Days and Vacation/Holiday/Sick Pay as explained on the reverse side. I have been made aware of the Company Drug Policy and the consequences of using illegal drugs. I also understand that I will be drug tested pursuant to Orkin's drug testing policies.

_____     _____          _____     _____
Employee's Signature                                Date                Manager's Signature                               Date

**Payments for commissions, bonuses or other incentives are not earned and/or due except in accordance with the plan.**
**PAY PROGRAMS ARE SUBJECT TO CHANGE OR DISCONTINUATION AT THE DISCRETION OF THE COMPANY.**

J. BERGER 046
GKB & ASSOCIATES

## BRANCH ACCOUNT MANAGER PAY ARRANGEMENT COMPONENTS

| Employee Name | | Address Book #/SSN | Job Title | O4104 / W4104 Job Code | Branch |
|---|---|---|---|---|---|

**(Note to Operation Managers: Place a "✓" in the applicable areas below.)**

I understand that I will be paid based on the following provisions:

❑ **Training Salary**
A monthly salary of $_____ will be paid during the three month training period until _____
(BAMs hired between the 1st and the 15th of the month, are considered hired in "Month 1". BAMs hired after the 15th of the month are considered hired in "Month 0" and the first of the following month will be "Month 1".)

❑ **Monthly Salary/Draw**
After the training period, a monthly salary of $_____ and draw of $_____ is paid. Salary and draw are split and paid in equal amounts each pay period. All commissions settle against the draw. If commissions do not equal draw, the employee will go into deficit. The deficit will be repaid from future commissions.

❑ **PC Sales Commission:**
Commission is based on a sliding scale. (See scale and details on next page.)

❑ **Odd Jobs/Hardware/Government Bid Sales**
Commission of 5% is paid on Odd Jobs (those jobs that are short-term and not under annual contract), hardware sales and government bid work. Chargebacks are made at the same percentage rate as commission paid. If an odd job is sold to a customer who has a current, recurring revenue contract with the Company, 10% may be paid based on the Operation Manager's discretion. Deciding factors may be the costs of goods and services, sub-contractor fees, the degree of difficulty and the current customer relationship.

❑ **Renewals**
The BAM receives 3% renewal commission for accounts assigned by the Operation Managers. The commission is based on the renewal price as approved by the Operation Managers. The BAM must also conduct face-to-face visits with floor level inspection reports as outlined in the schedule below. Operation Managers may assign routine phone calls or additional visits as deemed necessary. Chargebacks are made at the same percentage rate as the renewal commission.

| Monthly Value of Account | Account Visit Frequency | |
|---|---|---|
| $ 75 - $200 | Yearly | |
| $201 - $500 | Every 6 months | A new contract must be signed each year and placed in the customer's file. A minimum price increase of 3% is required for commission to be paid. |
| $501 - $1000 | Every 4 months | |
| $1001 + | Every 3 months | |

❑ **Set up Commission**
A 2% commission is paid to the BAM who sets up accounts sold by BAMs in other branches or National Account Managers. Commission is paid (after set-up procedures are completed) on the dollar value of the contract. A graph and floor level must be attached.

❑ **Team Sales**
National Account Team Sales outside of a BAM's or local branch's territory will be paid by National Accounts at 6%. These sales do not count toward a BAM's annual sales target, nor do National Account Leads.

❑ **Auto Allowance** – Auto allowance during training is $250. Auto allowance for the remainder of the first 12 months is paid as follows. (Gross sales include odd job sales, hardware sales, government bid work and renewal sales.) Initial auto allowance of $300 will be paid on the mid-month paycheck. The additional $100 auto allowance settlement, if earned, will be paid on the end-month paycheck.

| Gross Sales | Personal Vehicle |
|---|---|
| $0 - $9999 | $300 |
| $10,000 + | $400 |

Auto allowance after the first 12 months is paid as follows:

| Gross Sales | Personal Vehicle | |
|---|---|---|
| $0 - $14,999 | $300 | **J. BERGER 047** |
| $15,000 + | $400 | **GKB & ASSOCIATES** |

Gas Allowance will be paid on the end-month commission paycheck according to the following scale based on gross sales for the month. The fluctuating gas allowance recognizes that more sales are usually the product of more sales calls and proposals, and therefore the gas allowance is greater for higher levels of sales.

| Monthly Gross Sales Started | $ Amount Gas Allowance |
|---|---|
| $      0 - $7,999 | $50 |
| $  8,000 - $11,999 | $75 |
| $12,000 - $14,999 | $125 |
| $15,000 - $19,999 | $175 |
| $20,000 - $29,999 | $225 |
| $30,000 and over | $275 |

☞ If a Company car is awarded to a salesperson through the Silver Circle program, a gas card will also be awarded to the salesperson (subject to all current gas card policies.) The auto allowance and gas allowance will be removed and "Personal Auto Use" deductions will apply.

☒ **Expenses Authorized** – Account Managers are authorized to expense the following items as necessary:

| Item | Amount (up to) | Item | Amount (up to) |
|---|---|---|---|
| Cell Phone | $50/month | DSL Line Installation | $100 (one-time) |
| Business Phone Line Installation | $100 (one-time) | DSL Subscription | $65/month |
| Business Phone Line | $50/month | | |

☛ **OVERTIME – EXEMPT:** not eligible for overtime.

**MONTHLY SALES** - The basis for earning sales commission is the revenue received by the Company from the sales of Company products and services. Sales commissions are earned when full payment is received from the customer.  PC Sales commission is calculated on the first year's annualized revenue of all approved contracts sold at rate card and advanced to the employee following completion of the first month's service.  The commission rate to be paid on all individual sales in excess of $100,000 must be approved in advance of the sale by the Division President or Sales Director. The Company reserves the right to pay commissions on these kinds of jobs at a rate less than the employee's normal approved pay arrangement. Also, the Company has the right to reduce commissions on sales made at less than rate card.

During the training period, commissions on new sales are paid at 5%. New Sales are defined as those jobs under a 12-month contract.  Odd jobs, hardware sales, and government bid work do not qualify as new sales.  However, they are counted toward total monthly sales in order to determine the appropriate commission rate.  After the training period and for the remainder of the first 12 months, commissions on new sales are paid on the following schedule:

| New Sales $ Amount | Commission |
|---|---|
| $0 - $9999 | 5% |
| $10,000+ | 10% |

After the first 12 months, commissions on new sales are paid on the following schedule:

| New Sales $ Amount | Commission |
|---|---|
| $0 - $14,999 | 5% |
| $15,000+ | 10% |

Upon attainment of the sales goals below, an Account Manager may receive an additional 1% commission at the upper threshold, up to a maximum of 20%, on new sales for the remainder of the calendar year and the following calendar year. (For example, instead of 5-10%, the commission rates would be 5-11%, 5-12%, etc.)

| Commission Percentage | Sales Goal | Commission Percentage | Sales Goal |
|---|---|---|---|
| 11% | 120,000 | | |
| 12% | 160,000 | 16% | 320,000 |
| 13% | 200,000 | 17% | 360,000 |
| 14% | 240,000 | 18% | 400,000 |
| 15% | 280,000 | 19% | 440,000 |
| | | 20% | 465,000 |

J. BERGER 048
GKB & ASSOCIATES

Account Managers who achieve the amounts in the scale above will receive their commission percentage increase the first of the month following attainment of the sales goal.  Account Managers will retain achieved commission percentages until the end of the current calendar year and through the next calendar year.  At the end of second calendar year, Account Managers will either maintain the percentage he/she has obtained or drop back to a lower percentage based on the entire year's attainment.

All local sales in an Account Manager's assigned territory will count towards attainment of the goals above.  This includes PC Sales, Odd Jobs, Equipment Sales, Government Contracts and Team Sales that will be serviced by the Account Manager's assigned territories.  Team Sales outside of an Account Manager's assigned territory* will not count towards attainment of the goals above. National Account Leads will not count towards attainment of the goals above.  Renewals will not count towards attainment of the goals above.

- In a "split sale", where two or Account Managers contribute to a sale, the sales dollars will be split between Account Managers.
- Team Sales (a National Accounts sale made with a National Accounts Manager) will be paid according to the current National Accounts policy.

**CHARGEBACKS** – If the PC contract is cancelled within the first 12 months, advanced commissions will be subject to chargebacks on the uncollected portion of the contract. Chargebacks are calculated as the number of months unpaid (unserviced months PLUS serviced months not yet paid) times the monthly charge and will settle against any future production and/or sales commissions paid to the employee who sold the contract. Chargebacks will be made at the flat rate of 7.5%.

**TERMITE SALES:** are an exception to pay plan for this position. If a TC Sales is approved for commission, it will be paid at a flat 10% commission rate (if approved by management) and does not count toward gross monthly sales.

**PAY DAYS** – If you are paid semi-monthly, your pay periods are the 1st through the 15th, and the 16th through the end of the month. Your payday is approximately 10 days after the end of the pay period (25th and 10th).

**VACATION/SICK/HOLIDAY PAY** - FULL TIME EMPLOYEES ONLY – Vacation/sick/holiday pay for commission-paid employees is based on an Average Daily Rate of Pay (Example: Sum of prior 12 months pay divided by hours reported (2080 = 40 hours X 52 weeks) = hourly rate X 8 = Average Daily Rate of Pay.  Vacation/sick/holiday pay is paid in place of salary and draw for days taken. Average Daily Rate of Pay excludes overtime pay, prizes, bonuses and auto allowance.

**VACATION** –  The Company Policy and Procedure Manual contains more detailed information regarding vacation accruals, vacation earned at the time of termination, and other aspects of this policy.

## EMPLOYEE'S ACKNOWLEDGMENT

I understand that the Company reserves the right to discontinue or change the pay arrangement at anytime at the sole discretion of the Company.  I acknowledge that I have received the Welcome to Orkin handbook, and I am aware that I must abide by the work rules of the Company which are outlined in Welcome to Orkin.  I also understand that I am to follow the most current Orkin policies and procedures when performing my job.  I have read and I understand the various components of my pay arrangement as outlined above.  I understand Pay Days and Vacation/Holiday/Sick Pay as explained on the reverse side.  I have been made aware of the Company Drug Policy and the consequences of using illegal drugs.  I also understand that I will be drug tested pursuant to Orkin's drug testing policies.

_Jessica Berger_   8/27/13      _____
Employee's Signature           Date          Manager's Signature
                                                             Date

Payments for commissions, bonuses or other incentives are not earned and/or due except in accordance with the plan.

Upon termination: All final commissions will be calculated according to what is payable as of termination date and will be paid on the final paycheck. PC Sales started and TC Sales completed and paid after the termination date are not payable and therefore not due to the terminated employee.

PAY PROGRAMS ARE SUBJECT TO CHANGE OR DISCONTINUATION AT THE DISCRETION OF THE COMPANY.

J. BERGER 049
GKB & ASSOCIATES

# ORKIN EMPLOYEES

Each employee has been issued an employee #.   Use this employee # on all documents for identification.  Do not put your social security # on any paperwork , always use your employee # listed below.

Your employee #

1170737

J. BERGER 050
GKB & ASSOCIATES

2014 Expectations of Account Manager

Commercial

> $12000 in sales per month- minimum
> $3000 in sales per week
> $600 in sales per day
> With 25% close rate that is $2400 in proposals per day

Ways to get to $2400 per day in proposals

> Minimum 4 appointments per day @ $50 month=$2400 per day proposals
>
> Making 20-40 calls per day
> Visit existing customers
> Ride along with Route Managers
> Continue meeting with Leads Group
> Networking events (Business After Hours/ Coast Young Professionals/ Associations)

Resources Available to Account Managers
> Existing Commercial Customer Base
> Route Managers
> Commercial Sales Portal
Work with other  Account Managers
> Team Sales Opportunities

J. BERGER 051
GKB & ASSOCIATES

4/19/2014

## THE ROLLINS 401(K) SAVINGS PLAN
### PLAN 006974
## OVERVIEW OF PLAN INVESTMENT OPTIONS AND FEES
### AS OF: March 31, 2014

As a participant in the above referenced plan, you have the right to direct how your contributions to the Plan will be invested. This overview of the Plan's investment options is an important starting point for helping you to evaluate which plan investments might be best for you. This document is for informational purposes only; no action is necessary.

**Getting Started** - As you review your investment choices, you should think about your lifetime income needs at retirement, your long-term investment goals, and tolerance for risk. It is important to understand that all investments carry some level of risk and most investments will fluctuate in value as market conditions change. Therefore you should consider the benefits of a well-balanced and diversified portfolio.

This document enables you to compare **investment performance** and **investment-related expenses and fees** for each of the Plan's investment options. Existing participants (those with an account in the retirement plan) can log into their accounts at www.prudential.com/online/retirement (eligible non-participants, or those who have not yet enrolled in the plan, can go to www.prudential.com/planinfo) for access to additional information about each investment option—including the most recent performance information—and a glossary of investment-related terms.

**What you should know about** *investment performance* - Investment performance is the investment's return to investors after expenses are deducted. This overview shows the **average annual total return** for each investment at 1, 5 and 10 year intervals or since the inception of the investment. For each investment with a variable return, the overview also provides a **benchmark** which enables you to compare the performance of the investment with a broad based securities market index. Broad based securities market indices may not always correlate well to an individual investment option. For example, an **employer stock investment option** is not diversified and is not managed to perform similarly to a benchmark, and therefore its performance should be expected to deviate from the benchmark performance. Performance for investment options that invest in a blend of both stocks and bonds (e.g. lifestyle funds or balanced funds) may also be expected to deviate from the benchmark performance. Past performance is not a reliable indicator of future performance, but it may help you assess an investment's volatility over time.

**What you should know about** *investment fees and expenses* – As with any business, there are costs associated with operating all investment options. Investment options typically pay their operating expenses, including expenses for investment management and distribution fees, out of assets of the investment. To help you compare fees and expenses, the overview includes each investment's **total annual operating expense** expressed as a percentage of the investment's net assets, but also as a dollar cost for each $1,000 invested. Some investments have additional fees that may be charged directly to the investor, such as sales charges (load), purchase fees, redemption fees and exchange fees. These fees, if applicable, will be described in the column titled **Additional Fees, Restrictions, and Notes.**

*The cumulative effect of investment fees and expenses can substantially reduce the return on investments and, therefore, your retirement savings. However, fees and expenses are only two of many factors to consider when deciding what investment is appropriate for you. For additional information concerning the long-term effect of fees and expenses, visit the U.S. Department of Labor's Web site at http://www.dol.gov/ebsa/publications/401k_employee.html.*

**Overview of the Disclosure Document - Part I** of this overview includes those investment options with **variable rates of return** – investments that do not provide a specific rate of return for investors. **Part II** includes investment options with **fixed rates of return** – investments that provide a specific rate of return for investors. **Part III** includes annuity options and other guaranteed lifetime income options that have guaranteed benefit features that help ensure your retirement savings lasts a lifetime. **Part IV** explains who you can contact for questions and paper copies of investment-related information. **Part V** contains information about administrative or recordkeeping fees associated with your plan.

J. BERGER 052
GKB & ASSOCIATES

Important Information

# ROLLINS Benefits Department

September 18, 2013

JESSICA BERGER
317 LOUIS DRIVE
HOUMA, LA 70364

Welcome!  We are happy to have you as a member of our team!  Please review the following checklist to ensure that you make your benefits elections before the deadline date!

- ✓ You have 90 days from your date of hire to make your benefit elections. Your deadline date is December 2, 2013 .

- ✓ Before you enroll, read the 2013 Rollins Benefit Guide. This will help you understand your benefit choices. You can locate this guide on the Benefits Portal at https://myportal.platformone.com.

- ✓ If you are enrolling dependents, complete the Dependent Eligibility/Proof of Change Form (required documentation is listed on the back of the form). Fax the form/documentation to the Rollins Benefits Department at 770-817-2972. The Benefits Department will contact you by phone once your dependent(s) have been added into the system. You can then enroll yourself and/or your dependents.

- ✓ Medical Plan: You will have a choice of enrolling in the $1500 or $2500 (Value) Deductible Plans.  In order to enroll in the $1500 plan completion of a Personal Wellness Assessment (PWA) and biometric screening is required.

- ✓ If you enroll in the $2500 (Value) Plan, completion of the PWA and Biometric screening is voluntary. However, if do complete them both, you will receive a deposit into your Health Reimbursement Account (HRA):

  - • Employee - $500 in your HRA account; Spouse/Domestic Partner - $300 additional in your HRA account.
  - • In addition, you can receive up to $500 just for enrolling in the Value Plan (amount will change based on your hire date).

- ✓ To add a beneficiary to your life insurance enrollment, please log onto https://myportal.platformone.com after your benefit effective date.

- ✓ If you choose to enroll in the DMO Dental Plan, you are agreeing to only use DMO network dentists. Please review the Summary Plan Descriptions on the benefits portal for more information. To find a network dentist go to www.cigna.com.

- ✓ **Dependent Flexible Spending** – This account allows you to set aside money on a pre-tax basis to pay for care for your dependents (i.e. day care expenses).

J. BERGER 053
GKB & ASSOCIATES

0010132202

# How to Enroll in Benefits and Complete the PWA

**Please follow the instructions below to log on to the Benefits Portal.** If you don't complete your enrollment by the deadline date you will have to wait for the next open enrollment period.

1. From the Intranet or the Internet using **Internet Explorer**, go to https://myportal.platformone.com.

2. Log in with your username and temporary password.  Your **user name** is the letter "b", then your first initial, your last name, followed by the last four digits of your Social Security number (SSN).  *Example: If your name is Jane Doe and your SSN is 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, your user id is bjdoe6789.*

   *If you are a Jr., Sr., II, etc. you must include the suffix as part of your last name without any punctuation (that is, no periods or dashes).  Example:  bjoejr6789.*

   Your **temporary password** is your birth date in "MMDDYYYY" format.  *Example: If your birth date is January 2, 1955, your temporary password is 01021955.  After you log in for the first time, you must change your password.*

**Please follow the instructions on how to complete your Biometric Screening and Personal Wellness Assessment.** You must complete both within 60 days from your hire date.

1. **Biometric Screening** – If you have been to the doctor or are planning to go, get your biometric values (blood pressure, glucose, total cholesterol) and enter your results into your PWA (see below) **OR**
2. You can also order a free at home biometric kit from BioIQ to test yourself. From the Internet using **Internet Explorer**, go to www.RollinsHealthyPath.com. If you don't remember (or are logging in for the first time), click "Register" to create a new login ID and password. On the left side, click "New Hire Information", and then click "At Home Biometric Kit (BioIQ)". **Use code: Rollins13.**
   - Return your kit to BioIQ. You will be sent an email when your results are ready to review.
   - Have your blood pressure checked (at the doctor or local pharmacy) - save that number to put into your PWA.
3. **Personal Wellness Assessment** – Once you have your biometric values (these are required), complete your PWA. From the Internet using **Internet Explorer**, go to www.RollinsHealthyPath.com and log in. On the left side, click "Program Information," then click "Personal Wellness Assessment." You will receive a "score" outlining the steps toward improving your health.

J. BERGER 054
GKB & ASSOCIATES

Representatives in the Benefits Department are available to assist you with your questions regarding our benefit plans, as well as issues with your password, navigation, and other user issues from **8:00a.m. through 8:00p.m., E.S.T., Monday through Friday.**

 **Prudential**

January 2, 2014

JESSICA B BERGER
317 LOUIS DRIVE
HOUMA, LA 70364-2208

| Access to Your Account: |
| --- |
| www.prudential.com/online/retirement |
| 877-PRU-2100 (877-778-2100) |
| Hearing Impaired Service: 877-760-5166 |



Plan Name:        THE ROLLINS 401(K) SAVINGS PLAN
Plan Number:      006974
Sub Plan Number:  000001

### Subject: Welcome to Prudential Retirement

Dear Jessica B Berger:

Welcome to Prudential Retirement[®]!  Participating in your retirement plan is an important step on the road to saving for your future.

You have been automatically enrolled in your retirement plan.  Automatic enrollment provides a convenient way for you to jumpstart saving for a more secure retirement.

The most efficient way to access and manage your account is by using the Prudential Retirement participant website.  Registering your account is easy and only takes a few minutes.  If you haven't yet, please register your account at www.prudential.com/online/retirement by clicking on "Register Now" and following the instructions to create a password.  It's important to keep this password in a safe place and have it available whenever you visit the website.  **Save paper and time by electing to receive confirmations and statements electronically!**

Once you register your account, here are some of the features you may have access to use, at your convenience, virtually 24/7:

- Move funds between investments
- Select new investments available within your plan
- Retirement Income Calculator, an online tool that can tell you if you're on track with your retirement planning
- Review your account information
- Change your e-delivery preference

Since you have not made an investment choice, you will be invested in the default investment option that was chosen by your plan.  You can review your investment allocation and link to investment performance information from the Accounts Detail page of the Prudential Retirement participant website, or you may call us at the number referenced below.

When you access the Prudential Retirement participant website, please take a moment to ensure you have a beneficiary designated for your retirement account.  To do this, from the "Accounts Home" page, you would select "Account Detail" and then select "Personal Information".

J. BERGER 055
GKB & ASSOCIATES

W-2010010069742573

Applies to Sections 401 and 403

### SPECIAL TAX NOTICE REGARDING PLAN PAYMENTS

**Retain For Your Records**

This notice is provided to you by Prudential Financial, Inc., on behalf of the plan administrator ("Plan Administrator").

**Right to Defer Distributions from Defined Contribution Plans**

You may be eligible to receive a distribution from your employer's retirement plan now. Instead of taking a distribution now, you may elect to defer receiving a distribution until a later date -- typically as late as age 70-1/2. (If your account balance does not exceed $5,000 (or the amount of your plan's cashout threshold), you may not have a right to defer payment.) If you defer receiving a distribution, the plan investment options available to you thereafter (including related fees) generally will be the same as those available to active employees. However, certain plan features, such as the right to repay or take a loan from the plan, may not be available if you have terminated employment. Please refer to your summary plan description and fund fact sheets for more information about plan investment options, investment related expenses, any plan restrictions or charges applicable to terminated employees, payment options, and any other special rules that may impact your distribution decision. If you elect to receive a distribution that you roll over to another eligible retirement plan such as an IRA, the investment options offered under your current employer's plan (e.g., mutual funds, employer stock) may not be available to you or, if available, are likely to carry higher expenses if transferred to an IRA. If you elect to receive a distribution but do not roll it over to another eligible retirement plan, such action triggers taxation (possibly including a 10% penalty), results in loss of future tax-deferred earnings (if any), and may diminish the funds available to you for retirement purposes. For additional information about plan investment options (and related fees), plan restrictions or charges applicable to terminated employees who defer receiving a distribution, or if you have other questions regarding your right to defer a distribution, and the consequences of failing to defer, please contact Prudential at the number provided on your benefit statement.

## For Payments Not From a Designated Roth Account

This notice describes the rollover rules that apply to payments from your employer's plan (the "Plan") that are <u>not</u> from a designated Roth account (a type of account with special tax rules in some employer plans). A different notice is provided for payments from a designated Roth account.

### YOUR ROLLOVER OPTIONS

This notice is provided to you because all or part of the payments that you may receive from the Plan may be eligible for rollover to an IRA or an eligible employer plan. This notice is intended to help you decide whether to do such a rollover. If you have additional questions after reading this notice, you can contact your Plan Administrator.

Rules that apply to most payments from a plan are described in the "General Information About Rollovers" section. Special rules that only apply in certain circumstances are described in the "Special Rules and Options" section.

### GENERAL INFORMATION ABOUT ROLLOVERS

**How can a rollover affect my taxes?**

You will be taxed on a payment from the Plan if you do not roll it over. If you are under age 59½ and do not do a rollover, you will also have to pay a 10% additional income tax on early distributions (unless an exception applies). However, if you do a rollover, you will not have to pay tax until you receive payments later and the 10% additional income tax will not apply if those payments are made after you are age 59½ (or if an exception applies).

**Where may I roll over the payment?**

You may roll over the payment to either an IRA (an individual retirement account or individual retirement annuity) or an employer plan (a tax-qualified plan, section 403(b) plan, or governmental section 457(b) plan) that will accept the rollover. The rules of the IRA or employer plan that holds the rollover will determine your investment options, fees, and rights to payment from the IRA or employer plan (for example, no spousal consent rules apply to IRAs and IRAs may not provide loans). Further, the amount rolled over will become subject to the tax rules that apply to the IRA or employer plan.

**How do I do a rollover?**

There are two ways to do a rollover. You can do either a direct rollover or a 60-day rollover.

<u>If you do a direct rollover</u>, the Plan will make the payment directly to your IRA or an employer plan. You should contact the IRA sponsor or the administrator of the employer plan for information on how to do a direct rollover.

<u>If you do not do a direct rollover</u>, you may still do a rollover by making a deposit into an IRA or eligible employer plan that will accept it. You will have 60 days after you receive the payment to make the deposit. If you do not do a direct rollover, the Plan is required to withhold 20% of the payment for federal income taxes (up to the amount of cash and property received other than employer stock). This means that, in order to roll over the entire payment in a 60-day rollover, you must use other funds to make up for the 20% withheld. If you do not roll over the entire amount of the payment, the portion not rolled over will be taxed and will be subject to the 10% additional income tax on early distributions if you are under age 59½ (unless an exception appli~~

J. BERGER 056
GKB & ASSOCIATES

Ed. 3/2011



You may roll over to an employer plan all of a payment that includes after-tax contributions, but only through a direct rollover (and only if the receiving plan separately accounts for after-tax contributions and is not a governmental section 457(b) plan). You can do a 60-day rollover to an employer plan of part of a payment that includes after-tax contributions, but only up to the amount of the payment that would be taxable if not rolled over.

**If you miss the 60-day rollover deadline**

Generally, the 60-day rollover deadline cannot be extended. However, the IRS has the limited authority to waive the deadline under certain extraordinary circumstances, such as when external events prevented you from completing the rollover by the 60-day rollover deadline. To apply for a waiver, you must file a private letter ruling request with the IRS. Private letter ruling requests require the payment of a nonrefundable user fee. For more information, see IRS Publication 590, Individual Retirement Arrangements (IRAs).

**If your payment includes employer stock that you do not roll over**

If you do not do a rollover, you can apply a special rule to payments of employer stock (or other employer securities) that are either attributable to after-tax contributions or paid in a lump sum after separation from service (or after age 59½, disability, or the participant's death). Under the special rule, the net unrealized appreciation on the stock will not be taxed when distributed from the Plan and will be taxed at capital gain rates when you sell the stock. Net unrealized appreciation is generally the increase in the value of employer stock after it was acquired by the Plan. If you do a rollover for a payment that includes employer stock (for example, by selling the stock and rolling over the proceeds within 60 days of the payment), the special rule relating to the distributed employer stock will not apply to any subsequent payments from the IRA or employer plan. The Plan Administrator can tell you the amount of any net unrealized appreciation.



**If you have an outstanding loan that is being offset**

If you have an outstanding loan from the Plan, your Plan benefit may be offset by the amount of the loan, typically when your employment ends. The loan offset amount is treated as a distribution to you at the time of the offset and will be taxed (including the 10% additional income tax on early distributions, unless an exception applies) unless you do a 60-day rollover in the amount of the loan offset to an IRA or employer plan.

**If you were born on or before January 1, 1936**

If you were born on or before January 1, 1936 and receive a lump sum distribution that you do not roll over, special rules for calculating the amount of the tax on the payment might apply to you. For more information, see IRS Publication 575, Pension and Annuity Income.

**If you are an eligible retired public safety officer and your pension payment is used to pay for health coverage or qualified long-term care insurance**

If the Plan is a governmental plan, you retired as a public safety officer, and your retirement was by reason of disability or was after normal retirement age, you can exclude from your taxable income plan payments paid directly as premiums to an accident or health plan (or a qualified long-term care insurance contract) that your employer maintains for you, your spouse, or your dependents, up to a maximum of $3,000 annually. For this purpose, a public safety officer is a law enforcement officer, firefighter, chaplain, or member of a rescue squad or ambulance crew.

**If your plan offers Roth contributions and also permits Roth In-Plan Rollovers**

If you roll over the payment to a designated Roth account in the Plan, the amount of the payment rolled over (reduced by any after-tax amounts directly rolled over) will be taxed. However, the 10% additional tax on early distributions will not apply (unless you take the amount rolled over out of the designated Roth account within the 5-year period that begins on January 1 of the year of the rollover).

If you roll over the payment to a designated Roth account in the Plan, later payments from the designated Roth account that are qualified distributions will not be taxed (including earnings after the rollover). A qualified distribution from a designated Roth account is a payment made both after you attain age 59½ (or after your death or disability) and after you have had a designated Roth account in the Plan for a period of at least 5 years. The 5-year period described in the preceding sentence begins on January 1 of the year your first contribution was made to the designated Roth account. However, if you made a direct rollover to a designated Roth account in the Plan from a designated Roth account in a plan of another employer, the 5-year period begins on January 1 of the year your first contribution was made to the designated Roth account in the Plan or, if earlier, to the designated Roth account in the plan of the other employer. Payments from the designated Roth account that are not qualified distributions will be taxed to the extent allocable to earnings after the rollover, including the 10% additional tax on early distributions (unless an exception applies).

**If you roll over your payment to a Roth IRA**

If you roll over the payment to a Roth IRA, a special rule applies under which the amount of the payment rolled over (reduced by any after-tax amounts) will be taxed. However, the 10% additional income tax on early distributions will not apply (unless you take the amount rolled over out of the Roth IRA within 5 years, counting from January 1 of the year of the rollover). If you roll over the payment to a Roth IRA, later payments from the Roth IRA that are qualified distributions will not be taxed (including earnings after the rollover). A qualified distribution from a Roth IRA is a payment made after you are age 59½ (or after your death or disability, or as a qualified first-time homebuyer distribution of up to $10,000) and after you have had a Roth IRA for at least 5 years. In applying this 5-year rule, you count from January 1 of the year for which your first contribution was made to a Roth IRA. Payments from the Roth IRA that are not qualified distributions will be taxed to the extent of earnings after the rollover, including the 10% additional income tax on early distributions (unless an exception applies). You do not have to take required minimum distributions from a Roth IRA during your lifetime. For more information, see IRS Publication 590, Individual Retirement Arrangements (IRAs).

J. BERGER 057
GKB & ASSOCIATES

# MATERIAL SAFETY DATA SHEET

### TALSTAR® PROFESSIONAL INSECTICIDE



MSDS Ref. No.: 82657-04-3-149
Date Approved: 01/16/2008
Revision No.: 3

---

This document has been prepared to meet the requirements of the U.S. OSHA Hazard Communication Standard, 29 CFR 1910.1200 and Canada's Workplace Hazardous Materials Information System (WHMIS) requirements.

---

# 1. PRODUCT AND COMPANY IDENTIFICATION

**PRODUCT NAME:** TALSTAR® PROFESSIONAL INSECTICIDE

**PRODUCT CODE:** 6339

**ACTIVE INGREDIENT(S):** Bifenthrin

**CHEMICAL FAMILY:** Pyrethroid Pesticide

**MOLECULAR FORMULA:** $C_{23}H_{22}ClF_3O_2$ (bifenthrin)

**SYNONYMS:** FMC 54800; (2-methyl[1,1'-biphenyl]-3-yl)methyl 3-(2-chloro-3,3,3-trifluoro-1-propenyl)-2,2-dimethylcyclopropanecarboxylate; IUPAC: 2-methylbiphenyl-3-ylmethyl (Z)-(1RS)-cis-3-(2-chloro-3,3,3-trifluoroprop-1-enyl)-2,2-dimethylcyclopropanecarboxylate

U.S. EPA REGISTRATION NUMBER: 279-3206

## MANUFACTURER

FMC CORPORATION
Agricultural Products Group
1735 Market Street
Philadelphia, PA 19103
(800) 321-1362 (General Information)
msdsinfo@fmc.com (Email - General Information)

## EMERGENCY TELEPHONE NUMBERS

(800) 331-3148 (Medical - U.S.A. & Canada)
(651) 632-6793 (Medical - Collect - All Other Countries)

For leak, fire, spill, or accident emergencies, call:
(800) 424-9300 (CHEMTREC - U.S.A. & Canada)
(703) 527-3887 (CHEMTREC - Collect - All Other Countries)

---

# 2. HAZARDS IDENTIFICATION

### EMERGENCY OVERVIEW:

- Beige liquid with a bland odor.
- Slightly combustible. May support combustion at elevated temperatures.
- Thermal decomposition and burning may form toxic by-products.
- For large exposures or fire, wear personal protective equipment.

J. BERGER 058
GKB & ASSOCIATES

TALSTAR® PROFESSIONAL INSECTICIDE (82657-04-3-149)

Date:  01/16/2008

- Highly toxic to fish and aquatic organisms. Keep out of drains and water courses.

**POTENTIAL HEALTH EFFECTS:**  Effects from overexposure may result from either swallowing, inhaling or coming into contact with the skin or eyes.  Symptoms of overexposure include bleeding from the nose, tremors and convulsions.  Contact with bifenthrin may occasionally produce skin sensations such as rashes, numbing, burning or tingling. These skin sensations are reversible and usually subside within 12 hours.

**MEDICAL CONDITIONS AGGRAVATED:**  None presently known.

# 3. COMPOSITION / INFORMATION ON INGREDIENTS

| Chemical Name | CAS# | Wt.% | EC No. | EC Class |
|---|---|---|---|---|
| Bifenthrin | 82657-04-3 | 7.9 | None | R25-20-43-50/53: S1/2-23-24-37-38-45-29 |
| Propylene Glycol | 57-55-6 | <6.2 | 200-338-0 | Not classified |

# 4. FIRST AID MEASURES

**EYES:** Flush with plenty of water. Get medical attention if irritation occurs and persists.

**SKIN:** Wash with plenty of soap and water.

**INGESTION:** Call a poison control center or doctor immediately for treatment advice.  Have person sip a glass of water if able to swallow. Do not induce vomiting unless told to do so by a poison control center or doctor.  Do not give anything to an unconscious person.

**INHALATION:** Remove to fresh air. If breathing difficulty or discomfort occurs and persists, contact a medical doctor.

**NOTES TO MEDICAL DOCTOR:** This product has low oral, dermal and inhalation toxicity. It is practically non-irritating to the eyes and is non-irritating to the skin. Reversible skin sensations (paresthesia) may occur and ordinary skin salves have been found useful in reducing discomfort. Treatment is otherwise controlled removal of exposure followed by symptomatic and supportive care.

# 5. FIRE FIGHTING MEASURES

J. BERGER 059
GKB & ASSOCIATES

TALSTAR® PROFESSIONAL INSECTICIDE (82657-04-3-149)

Date: 01/16/2008

**EXTINGUISHING MEDIA:** Foam, CO₂ or dry chemical. Soft stream water fog only if necessary. Contain all runoff.

**FIRE / EXPLOSION HAZARDS:** Slightly combustible. This material may support combustion at elevated temperatures.

**FIRE FIGHTING PROCEDURES:** Isolate fire area. Evacuate downwind. Wear full protective clothing and self-contained breathing apparatus. Do not breathe smoke, gases or vapors generated.

# 6. ACCIDENTAL RELEASE MEASURES

**RELEASE NOTES:** Isolate and post spill area. Wear protective clothing and personal protective equipment as prescribed in Section 8, "Exposure Controls/Personal Protection". Keep unprotected persons and animals out of the area.

Keep material out of lakes, streams, ponds and sewer drains. Dike to confine spill and absorb with a non-combustible absorbent such as clay, sand or soil. Vacuum, shovel or pump waste into a drum and label contents for disposal.

To clean and neutralize contaminated area, scrub area with a solution of detergent (e.g. commercial product such as SuperSoap™, Tide®, Spic and Span®, or other high pH detergent) and water. Let solution sit for 5 minutes. Use a stiff brush to scrub affected area. Repeat if necessary to remove visible staining. Additional decontamination can be made by applying bleach (Clorox® or equivalent) to affected area.

Absorb wash-liquid as noted above, remove visibly contaminated soil and place into recovery / disposal container (plastic, open-top steel drum or equivalent). Place all clean-up material in a container, seal and dispose of in accordance with the method outlined in Section 13 "Disposal Considerations" below.

For further information on spill clean-up, waste disposal, or return of salvaged product, call the FMC Emergency Hotline number listed in Section 1 "Product and Company Identification" above.

# 7. HANDLING AND STORAGE

**HANDLING AND STORAGE:** Store in a cool, dry, well-ventilated place. Do not use or store near heat, open flame or hot surfaces. Store in original containers only. Keep out of reach of children and animals. Do not contaminate other pesticides, fertilizers, water, food or feed by storage or disposal.

# 8. EXPOSURE CONTROLS / PERSONAL PROTECTION

**ENGINEERING CONTROLS:** Use local exhaust at all process locations where vapor or mist may be emitted. Ventilate all transport vehicles prior to unloading.

J. BERGER 060
GKB & ASSOCIATES

TALSTAR® PROFESSIONAL INSECTICIDE (82657-04-3-149)

Date: 01/16/2005

## PERSONAL PROTECTIVE EQUIPMENT

**EYES AND FACE:** For splash, mist or spray exposure, wear chemical protective goggles or a face shield.

**RESPIRATORY:** For splash, mist or spray exposure wear, as a minimum, a properly fitted air-purifying respirator with an organic vapor cartridge (OV) or canister with any R, P or HE prefilter (approved by U.S. NIOSH/MSHA, EU CEN or comparable certification organization). Respirator use and selection must be based on airborne concentrations.

**PROTECTIVE CLOTHING:** Depending upon concentrations encountered, wear coveralls or long-sleeved uniform and head covering. For larger exposures as in the case of spills, wear full body cover barrier suit, such as a PVC suit. Leather items - such as shoes, belts and watchbands - that become contaminated should be removed and destroyed. Launder all work clothing before reuse (separately from household laundry).

**GLOVES:** Wear chemical protective gloves made of materials such as rubber, neoprene, or PVC. Thoroughly wash the outside of gloves with soap and water prior to removal. Inspect regularly for leaks.

## WORK HYGIENIC PRACTICES:
Clean water should be available for washing in case of eye or skin contamination. Wash skin prior to eating, drinking, chewing gum, or using tobacco. Shower at the end of the workday.

## COMMENTS:
Personal protective recommendations for mixing or applying this product are prescribed on the product label. Information stated above provides useful, additional guidance for individuals whose use or handling of this product is not guided by the product label.

# 9. PHYSICAL AND CHEMICAL PROPERTIES

| | |
|---|---|
| ODOR: | Bland |
| APPEARANCE: | Beige liquid |
| DENSITY / WEIGHT PER VOLUME: | 8.53 lb/gal. (1024 g/L) |
| FLASH POINT: | > 100 °C (> 212 °F) (TCC) |
| MOLECULAR WEIGHT: | 422.9 (bifenthrin) |
| pH: | 6.7 |
| SOLUBILITY IN WATER: | Disperses |
| SPECIFIC GRAVITY: | 1.024 @ 20°C (water =1) |

J. BERGER 061
GKB & ASSOCIATES

TALSTAR® PROFESSIONAL INSECTICIDE (82657-04-3-149)

Date: 01/16/2008

## 10. STABILITY AND REACTIVITY

CONDITIONS TO AVOID:  Excessive heat and fire.

STABILITY:  Stable

POLYMERIZATION:  Will not occur

HAZARDOUS DECOMPOSITION PRODUCTS:  Carbon monoxide, carbon dioxide, chlorine, fluorine, hydrogen chloride and hydrogen fluoride.

## 11. TOXICOLOGICAL INFORMATION

EYE EFFECTS:  Practically non-irritating

SKIN EFFECTS:  Non-irritating

DERMAL LD$_{50}$:  >2,000 mg/kg (rabbit)

ORAL LD$_{50}$:  632 mg/kg (rat)

INHALATION LC$_{50}$:  11.58 mg/l (1 h) (rat)

ACUTE EFFECTS FROM OVEREXPOSURE:  This product has low oral, dermal and inhalation toxicity. It is practically non-irritating to the eyes and is non-irritating to the skin. Large doses of bifenthrin ingested by laboratory animals produced signs of toxicity including convulsions, tremors and bloody nasal discharge. Bifenthrin does not cause acute delayed neurotoxicity. Experience to date indicates that contact with bifenthrin may occasionally produce skin sensations such as rashes, numbing, burning or tingling. These sensations are reversible and usually subside within 12 hours. In humans, ingestion of large amounts of propylene glycol has resulted in symptoms of reversible central nervous system depression including stupor, rapid breathing and heartbeat, profuse sweating and seizures.

CHRONIC EFFECTS FROM OVEREXPOSURE:  No data available for the formulation. In studies with laboratory animals, bifenthrin did not cause reproductive toxicity or teratogenicity. Tremors were associated with repeated exposure of laboratory animals to bifenthrin. In lifetime feeding studies conducted with laboratory animals, a slight increase in the incidence of urinary bladder tumors at the highest dose in male mice was considered to be an equivocal response, not evidence of a clear compound-related effect. The overall absence of genotoxicity has been demonstrated in mutagenicity tests with bifenthrin. Repeated overexposure to propylene glycol can produce central nervous system depression, hemolysis and minimal kidney damage.

J. BERGER 062
GKB & ASSOCIATES

TALSTAR® PROFESSIONAL INSECTICIDE (82657-04-3-149)

Date: 01/16/2008

## CARCINOGENICITY:

| | |
|---|---|
| NTP: | Not listed |
| IARC: | Not listed |
| OSHA: | Not listed |
| OTHER: | Not Listed (ACGIH) |

# 12. ECOLOGICAL INFORMATION

Unless otherwise indicated, the data presented below are for the active ingredient.

**ENVIRONMENTAL DATA:** In soil, bifenthrin is stable over a wide pH range and degrades at a slow rate that is governed by soil characteristics. Bifenthrin will also persist in aquatic sediments. Bifenthrin has a high Log Pow (6.6), a high affinity for organic matter, and is not mobile in soil. Therefore, there is little potential for movement into ground water. There is the potential for bifenthrin to bioconcentrate (BCF <2,000).

**ECOTOXICOLOGICAL INFORMATION:** Bifenthrin is highly toxic to fish and aquatic arthropods and $LC_{50}$ values range from 0.0038 to 17.8 µg/L. In general, the aquatic arthropods are the most sensitive species. Care should be taken to avoid contamination of the aquatic environment. Bifenthrin had no effect on mollusks at its limit of water solubility. Bifenthrin is only slightly toxic to both waterfowl and upland game birds ($LD_{50}$ values range from 1,800 mg/kg to >2,150 mg/kg).

# 13. DISPOSAL CONSIDERATIONS

**DISPOSAL METHOD:** Open dumping or burning of this material or its packaging is prohibited. If spilled material cannot be disposed of by use according to label instructions, an acceptable method of disposal is to incinerate in accordance with local, state and national environmental laws, rules, standards and regulations. However, because acceptable methods of disposal may vary by location and regulatory requirements may change, the appropriate agencies should be contacted prior to disposal.

**EMPTY CONTAINER:** Non-returnable containers that held this material should be cleaned, prior to disposal, by triple rinsing. Containers which held this material may be cleaned by being triple-rinsed, and recycled, with the rinsate being incinerated. Do not cut or weld metal containers. Vapors that form may create an explosion hazard.

# 14. TRANSPORT INFORMATION

## U.S. DEPARTMENT OF TRANSPORTATION (DOT)

J. BERGER 063
GKB & ASSOCIATES



TALSTAR® PROFESSIONAL INSECTICIDE (82657-04-3-149)

Date: 01/16/2008

| | |
|---|---|
| PACKAGING TYPE: | Non-Bulk |
| ADDITIONAL INFORMATION: | This material is not a hazardous material as defined by US Department of Transportation at 49 CFR Parts 100 through 185. |

| | |
|---|---|
| PACKAGING TYPE: | Bulk |
| PROPER SHIPPING NAME: | Environmentally hazardous substance, liquid, n.o.s. |
| TECHNICAL NAME(S): | Bifenthrin |
| PRIMARY HAZARD CLASS / DIVISION: | 9 |
| UN/NA NUMBER: | UN 3082 |
| PACKING GROUP: | III |
| MARINE POLLUTANT: | Bifenthrin |
| LABEL(S): | 9 |
| PLACARD(S): | 9 |
| MARKING(S): | 3082 |

## INTERNATIONAL MARITIME DANGEROUS GOODS (IMDG)

| | |
|---|---|
| PACKAGING TYPE: | Non-Bulk |
| PROPER SHIPPING NAME: | Environmentally hazardous substance, liquid, n.o.s. |
| TECHNICAL NAME(S): | Bifenthrin |
| PRIMARY HAZARD CLASS / DIVISION: | 9 |
| UN/NA NUMBER: | UN 3082 |
| PACKING GROUP: | III |
| MARINE POLLUTANT: | Bifenthrin |
| LABEL(S): | 9 |
| PLACARD(S): | 9 |
| MARKING(S): | Environmentally hazardous substance, liquid, n.o.s. (bifenthrin), UN3082 + Marine Pollutant |
| ADDITIONAL INFORMATION: | EmS Number: F-A, S-F |

## ADR - EUROPEAN AGREEMENT CONCERNING THE INTERNATIONAL CARRIAGE OF DANGEROUS GOODS BY ROAD

J. BERGER 064
GKB & ASSOCIATES



TALSTAR® PROFESSIONAL INSECTICIDE (82657-04-3-149)

Date: 01/16/2008

| | |
|---|---|
| PACKAGING TYPE: | Non-Bulk |
| PROPER SHIPPING NAME: | Environmentally hazardous substance, liquid, n.o.s. |
| TECHNICAL NAME(S): | Bifenthrin |
| PRIMARY HAZARD CLASS / DIVISION: | 9 |
| CLASSIFICATION CODE: | M6 |
| UN/NA NUMBER: | UN3082 |
| PACKING GROUP: | III |
| HAZARD IDENTIFICATION NUMBER: | 90 |
| MARINE POLLUTANT: | Bifenthrin |
| LABEL(S): | 9 |
| PLACARD(S): | 9 |
| MARKING(S): | UN3082 + Marine Pollutant |

## INTERNATIONAL CIVIL AVIATION ORGANIZATION (ICAO) / INTERNATIONAL AIR TRANSPORT ASSOCIATION (IATA)

| | |
|---|---|
| PACKAGING TYPE: | Non-Bulk |
| PROPER SHIPPING NAME: | Environmentally hazardous substance, liquid, n.o.s. |
| TECHNICAL NAME(S): | Bifenthrin |
| PRIMARY HAZARD CLASS / DIVISION: | 9 |
| UN/NA NUMBER: | UN3082 |
| PACKING GROUP: | III |
| LABEL(S): | 9 |
| LIMITED QUANTITY: | Y914 / 30 kg |
| LIMITED QUANTITY: PASSENGER / CARGO: | 914 / No limit |
| LIMITED QUANTITY: CARGO: | 914 / No limit |
| ADDITIONAL INFORMATION: | When shipped by air within the USA, this product is not regulated as a Marine Pollutant in non-bulk packages and does not require identification as a Marine Pollutant; however, when shipped by air within, to and/or from ADR signatory countries, identification as Marine Pollutant is required. |
| | Marks: Environmentally hazardous |

J. BERGER 065
GKB & ASSOCIATES

TALSTAR® PROFESSIONAL INSECTICIDE (82657-04-3-149)

Date: 01/16/2008

UN3082 + Marine Pollutant

**OTHER INFORMATION:**
HARMONIZED SYSTEM NUMBERS:
Import to the U.S.A.: 3808.91.2500
Export from the U.S.A.: 3808.91.0000

# 15. REGULATORY INFORMATION

## UNITED STATES

### SARA TITLE III (SUPERFUND AMENDMENTS AND REAUTHORIZATION ACT)

SECTION 302 EXTREMELY HAZARDOUS SUBSTANCES (40 CFR 355, APPENDIX A):
Not listed

SECTION 311 HAZARD CATEGORIES (40 CFR 370):
Immediate, Delayed

SECTION 312 THRESHOLD PLANNING QUANTITY (40 CFR 370):
The Threshold Planning Quantity (TPQ) for this product, if treated as a mixture, is 10,000 lbs; however, this product contains the following ingredients with a TPQ of less than 10,000 lbs.:
None

SECTION 313 REPORTABLE INGREDIENTS (40 CFR 372):
This product contains the following ingredients subject to Section 313 reporting requirements:
Bifenthrin

### CERCLA (COMPREHENSIVE ENVIRONMENTAL RESPONSE COMPENSATION AND LIABILITY ACT)

CERCLA DESIGNATION & REPORTABLE QUANTITIES (RQ) (40 CFR 302.4):
Not listed

### FEDERAL INSECTICIDE FUNGICIDE RODENTICIDE ACT
U.S. EPA Signal Word: CAUTION

## INTERNATIONAL LISTINGS

Australian Hazard Code: 3Z

# HAZARD, RISK AND SAFETY PHRASE DESCRIPTIONS:

Bifenthrin:

EC Symbols:

| | | |
|---|---|---|
| T | (Toxic) | |
| Xn | (Harmful) | |
| N | (Dangerous for the environment) | |

**J. BERGER 066**
**GKB & ASSOCIATES**

TALSTAR® PROFESSIONAL INSECTICIDE (82657-04-3-149)

Date: 01/16/2008

| | | |
|---|---|---|
| EC Risk Phrases: | R25 | (Toxic if swallowed.) |
| | R20 | (Harmful by inhalation.) |
| | R43 | (May cause sensitization by skin contact.) |
| | R50/53 | (Very toxic to aquatic organisms, may cause long-term adverse effects in the aquatic environment.) |
| EC Safety Phrases: | S1/2 | (Keep locked up and out of reach of children.) |
| | S23 | (Do not breathe gas, fumes, vapor, or spray) |
| | S24 | (Avoid contact with skin.) |
| | S37 | (Wear suitable gloves.) |
| | S38 | (In case of insufficient ventilation, wear suitable respiratory equipment.) |
| | S45 | (In case of accident or if you feel unwell, seek medical advice immediately - show the label where possible.) |
| | S29 | (Do not empty into drains.) |

Notes For Preparation:

CLASSIFICATION: Mandatory labeling (self-classification) of hazardous substances: applicable

# 16. OTHER INFORMATION

NFPA

| | |
|---|---|
| Health | 1 |
| Flammability | 1 |
| Reactivity | 0 |
| Special | None |

No special requirements

NFPA (National Fire Protection Association)

Degree of Hazard Code:
4 = Extreme
3 = High
2 = Moderate
1 = Slight
0 = Insignificant

REVISION SUMMARY:
This MSDS replaces Revision #2, dated October 18, 2007.
Changes in information are as follows:
Section 2 (Hazards Identification)
Section 4 (First Aid Measures)
Section 16 (Other Information)

Talstar and FMC - Trademarks of FMC Corporation

J. BERGER 067
GKB & ASSOCIATES

TALSTAR® PROFESSIONAL INSECTICIDE (82657-04-3-149)

Date:  01/16/2008

SuperSoap - Trademark of Weba Technologies, Inc.; Tide - Trademark of Proctor and Gamble; Spic and Span: Trademark of The Spic and Span Company.  Clorox - Trademark of The Clorox Company

© 2008 FMC Corporation. All Rights Reserved.

FMC Corporation believes that the information and recommendations contained herein (including data and statements) are accurate as of the date hereof. NO WARRANTY OF FITNESS FOR ANY PARTICULAR PURPOSE, WARRANTY OF MERCHANTABILITY, OR ANY OTHER WARRANTY, EXPRESSED OR IMPLIED, IS MADE CONCERNING THE INFORMATION PROVIDED HEREIN. The information provided herein relates only to the specific product designated and may not be applicable where such product is used in combination with any other materials or in any process. Use of this product is regulated by the U.S. Environmental Protection Agency (EPA). It is a violation of Federal law to use this product in a manner inconsistent with its labeling. Further, since the conditions and methods of use are beyond the control of FMC Corporation, FMC Corporation expressly disclaims any and all liability as to any results obtained or arising from any use of the product or reliance on such information.

J. BERGER 068
GKB & ASSOCIATES


**ROLLINS**

## Automatic Direct Deposit/Pay Card Authorization Form

**Select Authorization Type(s):**

☒ **Add Account**

☐ **Update Account**

**Account – #1**

☒ Checking

*Chase*
Bank Name

☐ Savings

☐ Pay Card

718893068
Account Number

065400137
Bank Routing Number

Dollar Amount
100.00
Percentage

**Account – #2**

☐ Checking

☐ Savings

☐ Pay Card

---

JESSICA B. BERGER
JOSHUA A. BERGER
113 HILTON CT
PINEVILLE, LA  71360

84-13/654  31

1470

DATE

PAY TO THE
ORDER OF

VOID

$

DOLLARS

**CHASE**
JPMorgan Chase Bank, N.A.
www.Chase.com

MEMO

⑈065400137⑈  718893068⑈ 1470

---

I authorize Rollins, Inc. and the bank listed to make deposits of my net pay and to make, if necessary, adjustments for any deposits made in error to my checking/savings/pay card account. This authority will remain in effect until I have cancelled it in writing.

Employee Name  *Jessica Berger*

Employee Number  *1170737*

Branch Location  *Houma La 286*

Signature  *Jessica Berger*

Date  *8/27/13*

In order to ensure proper processing please attach a voided check or a letter from the bank, including routing number and account number, for all Checking and/or Savings account deposits. If an Instant Issue pack is provided a copy must be submitted with authorization form.

**Please complete, sign and return to the Payroll Department. Thank you!**

J. BERGER 069
GKB & ASSOCIATES

Rev. 06/2011

Auto Direct Dep-Pay Card v2

Details

| PRE-TAX DEDUCTIONS | | | | TAXES | |
|---|---|---|---|---|---|
| Description | Current | YTD | Description | | Current |
| | | | Federal Income Tax | | |
| | | | Social Security Withheld | | 175.78 |
| | | | Medicare Withheld | | 96.10 |
| | | | LA State Tax | | 22.47 |
| | | | | | 44.20 |
| Total | 0.00 | 0.00 | Total | | 338.55 |

| AFTER-TAX DEDUCTIONS | | | | WAGE ADJUSTMENTS | |
|---|---|---|---|---|---|
| Description | Current | YTD | Description | | Current |
| Total | 0.00 | 0.00 | Total | | 0.00 |

| WAGE DISTRIBUTION | | |
|---|---|---|
| Acct Type | Routing# | Account# |
| J P Morgan Chase Ban | XXXXX0137 | XXXXX3068 |

---

**ROLLINS**

Orkin, LLC.
2170 PIEDMONT ROAD
ATLANTA GA 30324

JESSICA BERGER
317 LOUIS DRIVE
HOUMA, LA 70364

| WAGE STATEMENT | | | |
|---|---|---|---|
| Employee: 1170737 | | Pay Date: | |
| | | Advice Number: | |
| Pay Period Begin: 9/1/2013 | | Pay Period End: | |
| Location:Houma, LA Home | | | |

| TAX DATA | | Federal | State |
|---|---|---|---|
| Tax Status | | Single | Single |
| Allowances | | 1 | 1 |
| Additional Amount | | 0.00 | 0.00 |

| WAGE STATEMENT SUMMARY | |
|---|---|
| | Current |
| Total Gross | 1,588.10 |
| Total Pre-Tax Deductions | 0.00 |
| Total Wages | 1,588.10 |
| Total Taxes | 348.60 |
| Total After-Tax Deductions | 0.00 |
| Total Adjustments | 0.00 |
| Net Pay | 1,239.50 |

| HOURS AND EARNINGS | | | |
|---|---|---|---|
| Description | Rate | Current Hours | Earnings |
| Regular Wages | 0.00 | 72.00 | 1,350.00 |
| Base Auto | 0.00 | 0.00 | 238.10 |
| Total | | 72.00 | 1,588.10 |

| PRE-TAX DEDUCTIONS | | | | TAXES | |
|---|---|---|---|---|---|
| Description | Current | YTD | Description | | Current |
| | | | Federal Income Tax | | |
| | | | Social Security Withheld | | 181.50 |
| | | | Medicare Withheld | | 98.46 |
| | | | LA State Tax | | 23.03 |
| | | | | | 45.61 |
| Total | 0.00 | 0.00 | Total | | 348.60 |

| AFTER-TAX DEDUCTIONS | | | | WAGE ADJUSTMENTS | |
|---|---|---|---|---|---|
| Description | Current | YTD | Description | | Current |
| Total | 0.00 | 0.00 | Total | | 0.00 |

| WAGE DISTRIBUTION | | |
|---|---|---|
| Acct Type | Routing# | Account# |
| J P Morgan Chase Ban | XXXXX0137 | XXXXX3068 |

Terms and C

**J. BERGER 070**
**GKB & ASSOCIATES**

Details

| Medicare Withheld | 23.20 |
| LA State Tax | 46.05 |

| Total | 0.00 | 0.00 | Total | | 351.73 |

**AFTER-TAX DEDUCTIONS**

| Description | Current | YTD |
| --- | --- | --- |

**WAGE ADJUSTMENTS**

| Description | Current |
| --- | --- |

| Total | 0.00 | 0.00 | Total | 0.00 |

**WAGE DISTRIBUTION**

| Acct Type | Routing# | Account# |
| --- | --- | --- |
| J.P.Morgan Chase Ban | XXXXX0137 | XXXXX3068 |

---



Orkin, LLC.
2170 PIEDMONT ROAD
ATLANTA GA 30324

JESSICA BERGER
317 LOUIS DRIVE
HOUMA, LA 70364

**WAGE STATEMENT**

| Employee: 1170737 | | |
| --- | --- | --- |
| | PayDate: | 10 |
| | Advice Number: | 11 |
| Pay Period Begin: 10/1/2013 | Pay Period End: | 10 |
| Location:Houma, LA Home | | |

**TAX DATA**

| | Federal | State |
| --- | --- | --- |
| Tax Status | Single | Single |
| Allowances | 1 | 1 |
| Additional Amount | 0.00 | 0.00 |

**WAGE STATEMENT SUMMARY**

| | Current |
| --- | --- |
| Total Gross | 1,750.00 |
| Total Pre-Tax Deductions | 0.00 |
| Total Wages | 1,750.00 |
| Total Taxes | 391.26 |
| Total After-Tax Deductions | 0.00 |
| Total Adjustments | 0.00 |
| Net Pay | 1,358.74 |

**HOURS AND EARNINGS**

| Description | Rate | Hours | Earnings |
| --- | --- | --- | --- |
| Regular Wages | 0.00 | 88.00 | 1,500.00 |
| Base Auto | 0.00 | 0.00 | 250.00 |
| Total | | 88.00 | 1,750.00 |

**PRE-TAX DEDUCTIONS**

| Description | Current | YTD |
| --- | --- | --- |

**TAXES**

| Description | Current |
| --- | --- |
| Federal Income Tax | 205.78 |
| Social Security Withheld | 108.50 |
| Medicare Withheld | 25.38 |
| LA State Tax | 51.60 |

| Total | 0.00 | 0.00 | Total | 391.26 |

**AFTER-TAX DEDUCTIONS**

| Description | Current | YTD |
| --- | --- | --- |

**WAGE ADJUSTMENTS**

| Description | Current |
| --- | --- |

| Total | 0.00 | 0.00 | Total | 0.00 |

**WAGE DISTRIBUTION**

| Acct Type | Routing# | Account# |
| --- | --- | --- |
| J.P.Morgan Chase Ban | XXXXX0137 | XXXXX3068 |

---



Orkin, LLC.
2170 PIEDMONT ROAD
ATLANTA GA 30324

JESSICA BERGER
317 LOUIS DRIVE
HOUMA, LA 70364

**STATEMENT**

| Employee: 1170737 | | |
| --- | --- | --- |
| | PayDate: | 10 |
| | Advice Number: | 11 |
| Pay Period Begin: 9/16/2013 | Pay Period End: | 9/ |
| Location:Houma, LA Home | | |

**TAX DATA**

| | Federal | State |
| --- | --- | --- |
| Tax Status | Single | Single |
| Allowances | 1 | 1 |
| Additional Amount | 0.00 | 0.00 |

**WAGE STATEMENT SUMMARY**

| | Current |
| --- | --- |
| Total Gross | 1,550.00 |
| Total Pre-Tax Deductions | 0.00 |
| Total Wages | 1,550.00 |
| Total Taxes | 338.55 |
| Total After-Tax Deductions | 0.00 |
| Total Adjustments | 0.00 |
| Net Pay | 1,211.45 |

J. BERGER 071
GKB & ASSOCIATES

**HOURS AND EARNINGS**

| Description | Rate | Hours | Earnings |
| --- | --- | --- | --- |
| Regular Wages | 0.00 | 88.00 | 1,500.00 |
| Auto Settlmt | 0.00 | 0.00 | 50.00 |
| Total | | 88.00 | 1,550.00 |

Details

| Description | Current | YTD |
|---|---|---|
| Total | 0.00 | 0.00 |

| Description | Current |
|---|---|
| Total | 0.00 |

WAGE DISTRIBUTION

| Acct Type | Routing# | Account# |
|---|---|---|
| J P Morgan Chase Ban | XXXXX0137 | XXXXX3068 |

ROLLINS

Orkin, LLC
2170 PIEDMONT ROAD
ATLANTA GA 30324

JESSICA BERGER
317 LOUIS DRIVE
HOUMA, LA 70364-2208

WAGE STATEMENT

Employee: 1170737
Pay Period Begin: 11/1/2013
Location:Houma, LA Home

Pay Date: 11
Advice Number: 11
Pay Period End: 11

| TAX DATA | Federal | State |
|---|---|---|
| Tax Status | Single | Single |
| Allowances | 1 | 1 |
| Additional Amount | 0.00 | 0.00 |

| WAGE STATEMENT SUMMARY | Current |
|---|---|
| Total Gross | 1,750.00 |
| Total Pre-Tax Deductions | 0.00 |
| Total Wages | 1,750.00 |
| Total Taxes | 391.25 |
| Total After-Tax Deductions | 0.00 |
| Total Adjustments | 0.00 |
| Net Pay | 1,358.75 |

HOURS AND EARNINGS

| Description | Rate | Hours | Earnings |
|---|---|---|---|
| Regular Wages | 0.00 | 88.00 | 1,500.00 |
| Base Auto | 0.00 | 0.00 | 250.00 |
| Total | | 88.00 | 1,750.00 |

PRE-TAX DEDUCTIONS

| Description | Current | YTD |
|---|---|---|
| Total | 0.00 | 0.00 |

TAXES

| Description | Current |
|---|---|
| Federal Income Tax | 205.78 |
| Social Security Withheld | 108.50 |
| Medicare Withheld | 25.37 |
| LA State Tax | 51.60 |
| Total | 391.25 |

AFTER-TAX DEDUCTIONS

| Description | Current | YTD |
|---|---|---|
| Total | 0.00 | 0.00 |

WAGE ADJUSTMENTS

| Description | Current |
|---|---|
| Total | 0.00 |

WAGE DISTRIBUTION

| Acct Type | Routing# | Account# |
|---|---|---|
| J P Morgan Chase Ban | XXXXX0137 | XXXXX3068 |

ROLLINS

Orkin, LLC
2170 PIEDMONT ROAD
ATLANTA GA 30324

JESSICA BERGER
317 LOUIS DRIVE
HOUMA, LA 70364

WAGE STATEMENT

Employee: 1170737
Pay Period Begin: 10/16/2013
Location:Houma, LA Home

Pay Date: 1
Advice Number: 1
Pay Period End: 1(

| TAX DATA | Federal | State |
|---|---|---|
| Tax Status | Single | Single |
| Allowances | 1 | 1 |
| Additional Amount | 0.00 | 0.00 |

| WAGE STATEMENT SUMMARY | Current |
|---|---|
| Total Gross | 1,600.00 |
| Total Pre-Tax Deductions | 0.00 |
| Total Wages | 1,600.00 |
| Total Taxes | 351.73 |
| Total After-Tax Deductions | 0.00 |
| Total Adjustments | 0.00 |
| Net Pay | 1,248.27 |

J. BERGER 072
GKB & ASSOCIATES

HOURS AND EARNINGS

| Description | Rate | Hours | Earnings |
|---|---|---|---|
| Regular Wages | 0.00 | 96.00 | 1,500.00 |
| Auto Settlmt | 0.00 | 0.00 | 50.00 |
| Odd Job Sale | 5.00 | 1,000.00 | 50.00 |
| Total | | 1,096.00 | 1,600.00 |

PRE-TAX DEDUCTIONS

| Description | Current | YTD |
|---|---|---|

TAXES

| Description | Current |
|---|---|
| Federal Income Tax | 183.28 |
| Social Security Withheld | 99.20 |

Details

| Acct Type | Routing# | Account# |
|---|---|---|
| J P Morgan Chase Ban | XXXXX0137 | XXXXX3068 |

**ROLLINS**

### WAGE STATEMENT

| Employee: 1170737 | PayDate: | 12 |
|---|---|---|
| | Advice Number: | 11 |
| Pay Period Begin: 12/1/2013 | Pay Period End: | 12 |
| Location Houma, LA Home | | |

Orkin, LLC.
2170 PIEDMONT ROAD
ATLANTA GA 30324

JESSICA BERGER
317 LOUIS DRIVE
HOUMA, LA 70364-2208

| TAX DATA | Federal | State |
|---|---|---|
| Tax Status | Single | Single |
| Allowances | 1 | 1 |
| Additional Amount | 0.00 | 0.00 |

| WAGE STATEMENT SUMMARY | Current |
|---|---|
| Total Gross | 1,550.01 |
| Total Pre-Tax Deductions | 0.00 |
| Total Wages | 1,550.01 |
| Total Taxes | 338.56 |
| Total After-Tax Deductions | 0.00 |
| Total Adjustments | 0.00 |
| Net Pay | 1,211.45 |

### HOURS AND EARNINGS

| Description | Rate | Hours | Earnings |
|---|---|---|---|
| Regular Wages | 0.00 | 80.00 | 1,250.00 |
| Base Auto | 0.00 | 0.00 | 300.00 |
| Draw Rev-VHSM | 0.00 | 0.00 | 0.01 |
| Total | | 80.00 | 1,550.01 |

| PRE-TAX DEDUCTIONS | | |
|---|---|---|
| Description | Current | YTD |
| Total | 0.00 | 0.00 |

| TAXES | |
|---|---|
| Description | Current |
| Federal Income Tax | 175.78 |
| Social Security Withheld | 96.10 |
| Medicare Withheld | 22.48 |
| LA State Tax | -44.20 |
| Total | 338.56 |

| AFTER-TAX DEDUCTIONS | | |
|---|---|---|
| Description | Current | YTD |
| Total | 0.00 | 0.00 |

| WAGE ADJUSTMENTS | |
|---|---|
| Description | Current |
| Total | 0.00 |

### WAGE DISTRIBUTION

| Acct Type | Routing# | Account# |
|---|---|---|
| J P Morgan Chase Ban | XXXXX0137 | XXXXX3068 |

**ROLLINS**

### WAGE STATEMENT

| Employee: 1170737 | PayDate: | 1: |
|---|---|---|
| | Advice Number: | 1' |
| Pay Period Begin: 11/16/2013 | Pay Period End: | 1' |
| Location Houma, LA Home | | |

Orkin, LLC.
2170 PIEDMONT ROAD
ATLANTA GA 30324

JESSICA BERGER
317 LOUIS DRIVE
HOUMA, LA 70364-2208

| TAX DATA | Federal | State |
|---|---|---|
| Tax Status | Single | Single |
| Allowances | 1 | 1 |
| Additional Amount | 0.00 | 0.00 |

| WAGE STATEMENT SUMMARY | Current |
|---|---|
| Total Gross | 1,689.50 |
| Total Pre-Tax Deductions | 0.00 |
| Total Wages | 1,689.50 |
| Total Taxes | 375.33 |
| Total After-Tax Deductions | 0.00 |
| Total Adjustments | 0.00 |
| Net Pay | 1,314.17 |

### HOURS AND EARNINGS

| Description | Rate | Hours | Earnings |
|---|---|---|---|
| Regular Wages | 0.00 | 72.00 | 1,350.00 |
| Holiday Pay | 18.75 | 8.00 | 150.00 |
| Auto Settlmnt | 0.00 | 0.00 | 56.00 |
| PC Sales | 5.00 | 1,125.60 | 56.28 |
| Odd Job Sale | 5.00 | 1,575.00 | 78.75 |
| Ex Init Sls | 5.00 | 89.40 | 4.47 |
| Total | | 2,870.00 | 1,689.50 |

| PRE-TAX DEDUCTIONS | | |
|---|---|---|
| Description | Current | YTD |
| Total | 0.00 | 0.00 |

| TAXES | |
|---|---|
| Description | Current |
| Federal Income Tax | 196.71 |
| Social Security Withheld | 104.75 |
| Medicare Withheld | 24.50 |
| LA State Tax | 49.37 |
| Total | 375.33 |

**J. BERGER 073**
**GKB & ASSOCIATES**

| AFTER-TAX DEDUCTIONS | |
|---|---|

| WAGE ADJUSTMENTS | |
|---|---|

Details

## First Wage Statement

Orkin, LLC.
2170 PIEDMONT ROAD
ATLANTA GA 30324

JESSICA BERGER
317 LOUIS DRIVE
HOUMA, LA 70364-2208

| TAX DATA | Federal | State |
|---|---|---|
| Tax Status | Single | Single |
| Allowances | 1 | 1 |
| Additional Amount | 0.00 | 0.00 |

| WAGE STATEMENT SUMMARY | Current |
|---|---|
| Total Gross | 1,575.42 |
| Total Pre-Tax Deductions | 38.26 |
| Total Wages | 1,537.16 |
| Total Taxes | 337.17 |
| Total After-Tax Deductions | 0.00 |
| Total Adjustments | 0.00 |
| Net Pay | 1,199.99 |

### HOURS AND EARNINGS

| Description | Rate | Hours | Earnings |
|---|---|---|---|
| Regular Wages | 0.00 | 80.00 | 1,136.36 |
| Holiday Pay | 17.38 | 8.00 | 139.05 |
| Base Auto | 0.00 | 0.00 | 300.00 |
| Draw Rev-VHSM | 0.00 | 0.00 | 0.01 |
| Total | | 88.00 | 1,575.42 |

| PRE-TAX DEDUCTIONS | | |
|---|---|---|
| Description | Current | YTD |
| 401k 1-6% | 38.26 | 38.26 |
| Total | 38.26 | 38.26 |

| TAXES | |
|---|---|
| Description | Current |
| Federal Income Tax | 172.92 |
| Social Security Withheld | 97.68 |
| Medicare Withheld | 22.84 |
| LA State Tax | 43.73 |
| Total | 337.17 |

| AFTER-TAX DEDUCTIONS | | |
|---|---|---|
| Description | Current | YTD |
| Total | 0.00 | 0.00 |

| WAGE ADJUSTMENTS | |
|---|---|
| Description | Current |
| Total | 0.00 |

### WAGE DISTRIBUTION

| Acct Type | Routing# | Account# |
|---|---|---|
| J.P. Morgan Chase Ban | XXXXX0137 | XXXXX3068 |

## Second Wage Statement



Orkin, LLC.
2170 PIEDMONT ROAD
ATLANTA GA 30324

JESSICA BERGER
317 LOUIS DRIVE
HOUMA, LA 70364-2208

| WAGE STATEMENT | |
|---|---|
| Employee: 1170737 | PayDate: 1/ |
| | Advice Number: 1 |
| Pay Period Begin: 12/16/2013 | Pay Period End: 12 |
| Location:Houma, LA Home | |

| TAX DATA | Federal | State |
|---|---|---|
| Tax Status | Single | Single |
| Allowances | 1 | 1 |
| Additional Amount | 0.00 | 0.00 |

| WAGE STATEMENT SUMMARY | Current |
|---|---|
| Total Gross | 1,349.36 |
| Total Pre-Tax Deductions | 0.00 |
| Total Wages | 1,349.36 |
| Total Taxes | 284.76 |
| Total After-Tax Deductions | 0.00 |
| Total Adjustments | 0.00 |
| Net Pay | 1,064.60 |

### HOURS AND EARNINGS

| Description | Rate | Hours | Earnings |
|---|---|---|---|
| Regular Wages | 0.00 | 88.00 | 1,145.83 |
| Holiday Pay | 17.13 | 8.00 | 137.04 |
| Auto Settmt | 0.00 | 0.00 | 50.00 |
| Draw Rev-VHSM | 0.00 | 0.00 | 0.01 |
| Minus MD-Mth | 0.00 | 0.00 | -0.01 |
| Minus ED-Mth | 0.00 | 0.00 | -0.01 |
| PC Sales | 5.60 | 330.00 | 16.50 |
| Total | | 426.00 | 1,349.36 |

| PRE-TAX DEDUCTIONS | | |
|---|---|---|
| Description | Current | YTD |
| Total | 0.00 | 0.00 |

| TAXES | |
|---|---|
| Description | Current |
| Federal Income Tax | 144.75 |
| Social Security Withheld | 83.66 |
| Medicare Withheld | 19.57 |
| LA State Tax | 36.78 |
| Total | 284.76 |

| AFTER-TAX DEDUCTIONS | | |
|---|---|---|
| Description | Current | YTD |
| Total | 0.00 | 0.00 |

| WAGE ADJUSTMENTS | |
|---|---|
| Description | Current |

**J. BERGER 074**
**GKB & ASSOCIATES**

| | |
|---|---|
| Total | 0.00 |

### WAGE DISTRIBUTION

## HOURS AND EARNINGS

| Description | Current | | |
| --- | --- | --- | --- |
| | Rate | Hours | Earnings |
| Regular Wages | 0.00 | 80.00 | 1,250.00 |
| Base Auto | 0.00 | 0.00 | 300.00 |
| Draw Rev-VHSM | 0.00 | 0.00 | 0.01 |
| Total | | 80.00 | 1,550.01 |

### PRE-TAX DEDUCTIONS

| Description | Current | YTD |
| --- | --- | --- |
| 401k 1-6% | 37.50 | 117.89 |
| Total | 37.50 | 117.89 |

### TAXES

| Description | Current |
| --- | --- |
| Federal Income Tax | 169.22 |
| Social Security Withheld | 96.10 |
| Medicare Withheld | 22.47 |
| LA State Tax | 42.82 |
| Total | 330.61 |

### AFTER-TAX DEDUCTIONS

| Description | Current | YTD |
| --- | --- | --- |
| Total | 0.00 | 0.00 |

### WAGE ADJUSTMENTS

| Description | Current |
| --- | --- |
| Total | 0.00 |

### WAGE DISTRIBUTION

| Acct Type | Routing# | Account# |
| --- | --- | --- |
| J P Morgan Chase Ban | XXXXX0137 | XXXXX3068 |



Orkin, LLC.
2170 PIEDMONT ROAD
ATLANTA GA 30324

JESSICA BERGER
317 LOUIS DRIVE
HOUMA, LA 70364-2208

### WAGE STATEMENT

| Employee: 1170737 | Pay Date: |
| --- | --- |
| Pay Period Begin: 1/16/2014 | Advice Number: |
| Location:Houma, LA Home | Pay Period End: |

### TAX DATA

| | Federal | State |
| --- | --- | --- |
| Tax Status | Single | Single |
| Allowances | 1 | 1 |
| Additional Amount | 0.00 | 0.00 |

### WAGE STATEMENT SUMMARY

| | Current |
| --- | --- |
| Total Gross | 1,454.25 |
| Total Pre-Tax Deductions | 42.13 |
| Total Wages | 1,412.12 |
| Total Taxes | 304.51 |
| Total After-Tax Deductions | 0.00 |
| Total Adjustments | 0.00 |
| Net Pay | 1,107.61 |

### HOURS AND EARNINGS

| Description | Current | | |
| --- | --- | --- | --- |
| | Rate | Hours | Earnings |
| Regular Wages | 0.00 | 80.00 | 1,041.66 |
| Misc Pay | 17.38 | 16.00 | 278.10 |
| Auto Settlmt | 0.00 | 0.00 | 50.00 |
| Draw Rev-VHSM | 0.00 | 0.00 | 0.01 |
| Minus MD-Mth | 0.00 | 0.00 | -0.01 |
| Minus ED-Mth | 0.00 | 0.00 | -0.01 |
| PC Sales | 5.00 | 1,560.00 | 78.00 |
| Ex Int Sls | 5.00 | 130.00 | 6.50 |
| Total | | 1,786.00 | 1,454.25 |

### PRE-TAX DEDUCTIONS

| Description | Current | YTD |
| --- | --- | --- |
| 401k 1-6% | 42.13 | 80.39 |
| Total | 42.13 | 80.39 |

### TAXES

| Description | Current |
| --- | --- |
| Federal Income Tax | 154.16 |
| Social Security Withheld | 90.16 |
| Medicare Withheld | 21.09 |
| LA State Tax | 39.10 |
| Total | 304.51 |

### AFTER-TAX DEDUCTIONS

| Description | Current | YTD |
| --- | --- | --- |
| Total | 0.00 | 0.00 |

### WAGE ADJUSTMENTS

| Description | Current |
| --- | --- |
| Total | 0.00 |

### WAGE DISTRIBUTION

| Acct Type | Routing# | Account# |
| --- | --- | --- |
| J P Morgan Chase Ban | XXXXX0137 | XXXXX3068 |

**J. BERGER 075**
**GKB & ASSOCIATES**



### WAGE STATEMENT

| Employee: 1170737 | Pay Date: | 1 |
| --- | --- | --- |
| | Advice Number: | 1 |
| Pay Period Begin: 1/1/2014 | Pay Period End: | 1 |
| Location:Houma, LA Home | | |



**Orkin, LLC.**
2170 PIEDMONT ROAD
ATLANTA GA 30324

JESSICA BERGER
317 LOUIS DRIVE
HOUMA, LA 70364-2208

### WAGE STATEMENT

Employee: 1170737

Pay Period Begin: 2/16/2014
Location:Houma, LA Home

PayDate:
Advice Number:
Pay Period End:

| TAX DATA | Federal | State |
|---|---|---|
| Tax Status | Single | Single |
| Allowances | 1 | 1 |
| Additional Amount | 0.00 | 0.00 |

| WAGE STATEMENT SUMMARY | Current |
|---|---|
| Total Gross | 1,596.24 |
| Total Pre-Tax Deductions | 46.39 |
| Total Wages | 1,549.85 |
| Total Taxes | 341.14 |
| Total After-Tax Deductions | 0.00 |
| Total Adjustments | 0.00 |
| Net Pay | 1,208.71 |

### HOURS AND EARNINGS

| Description | Rate | Hours | Earnings |
|---|---|---|---|
| Regular Wages | 0.00 | 80.00 | 1,250.00 |
| Auto Settlmt | 0.00 | 0.00 | 50.00 |
| Draw Rev-VHSM | 0.00 | 0.00 | 0.01 |
| Minus MD-Mth | 0.00 | 0.00 | -0.01 |
| Minus ED-Mth | 0.00 | 0.00 | -0.01 |
| Odd Job Sale | 5.00 | 5,925.00 | 296.25 |
| Total | | 6,005.00 | 1,596.24 |

| PRE-TAX DEDUCTIONS | | | TAXES | |
|---|---|---|---|---|
| Description | Current | YTD | Description | Current |
| 401k 1-6% | 46.39 | 164.28 | Federal Income Tax | 174.82 |
| | | | Social Security Withheld | 98.97 |
| | | | Medicare Withheld | 23.15 |
| | | | LA State Tax | 44.20 |
| Total | 46.39 | 164.28 | Total | 341.14 |

| AFTER-TAX DEDUCTIONS | | | WAGE ADJUSTMENTS | |
|---|---|---|---|---|
| Description | Current | YTD | Description | Current |
| Total | 0.00 | 0.00 | Total | 0.00 |

| WAGE DISTRIBUTION | | |
|---|---|---|
| Acct Type | Routing# | Account# |
| J P Morgan Chase Ban | XXXXX0137 | XXXXX3068 |

---



Rollins Expense Reimbursements
2170 PIEDMONT RD. N.E.
Atlanta GA 30324

JESSICA BERGER
317 LOUIS DRIVE
HOUMA, LA 70364-2208

**EXPENSE STATEMENT SUMMARY**
Employee: 1170737
Date: 2/26/2014
Advice Number: 11304579
Total Amount Paid: 50.00

| Expense Report for W/E | | | Submitted on | Net Amc |
|---|---|---|---|---|
| 02/07/2014 Expense Reimbursement for Week Ending 02/07/2014 | | | 2/26/2014 | 50.00 |

| REIMBURSEMENT DEPOSIT TO | | | | |
|---|---|---|---|---|
| Bank Name | Deposit Date | Routing# | Account# | Total Paid |
| PAPER CHECK | 2/26/2014 | | | 50.00 |

---



Orkin, LLC.
2170 PIEDMONT ROAD
ATLANTA GA 30324

JESSICA BERGER
317 LOUIS DRIVE
HOUMA, LA 70364-2208

### STATEMENT

Employee: 1170737

Pay Period Begin: 2/1/2014
Location:Houma, LA Home

PayDate:
Advice Number:
Pay Period End:

| TAX DATA | Federal | State |
|---|---|---|
| Tax Status | Single | Single |
| Allowances | 1 | 1 |
| Additional Amount | 0.00 | 0.00 |

| WAGE STATEMENT SUMMARY | Current |
|---|---|
| Total Gross | 1,550.01 |
| Total Pre-Tax Deductions | 37.50 |
| Total Wages | 1,512.51 |
| Total Taxes | 330.61 |
| Total After-Tax Deductions | 0.00 |
| Total Adjustments | 0.00 |
| Net Pay | 1,181.90 |

*J. BERGER 076 GKB & ASSOCIATES*

Details

HOUMA, LA 70364-2208

| | |
|---|---|
| Total After-Tax Deductions | 0.00 |
| Total Adjustments | 0.00 |
| Net Pay | 1,304.04 |

## HOURS AND EARNINGS

****************************Current****************************

| Description | Rate | Hours | Earnings |
|---|---|---|---|
| Regular Wages | 0.00 | 88.00 | 1,250.00 |
| Auto Settmt | 0.00 | 0.00 | 75.00 |
| Draw Rev-VHSM | 0.00 | 0.00 | 0.01 |
| Minus MD-Mth | 0.00 | 0.00 | -0.01 |
| Minus ED-Mth | 0.00 | 0.00 | -0.01 |
| PC Sales | 5.00 | 0.00 | -0.01 |
| Odd Job Sale | 5.00 | 5,460.00 | 273.00 |
| Ex Init Sls | 5.00 | 2,525.00 | 126.25 |
| | 5.00 | 100.00 | 5.00 |
| Total | | 8,173.00 | 1,729.24 |

| PRE-TAX DEDUCTIONS | | | TAXES | |
|---|---|---|---|---|
| Description | Current | YTD | Description | Current |
| 401k 1-6% | 49.63 | 252.06 | Federal Income Tax | 194.29 |
| | | | Social Security Withheld | 107.21 |
| | | | Medicare Withheld | 25.07 |
| | | | LA State Tax | 49.00 |
| Total | 49.63 | 252.06 | Total | 375.57 |

| AFTER-TAX DEDUCTIONS | | | WAGE ADJUSTMENTS |
|---|---|---|---|
| Description | Current | YTD | Description | Current |
| Total | 0.00 | 0.00 | Total | 0.00 |

## WAGE DISTRIBUTION

| Acct Type | Routing# | Account# |
|---|---|---|
| J P Morgan Chase Ban | XXXXX0137 | XXXXX3068 |

---

ROLLINS

Orkin, LLC.
2170 PIEDMONT ROAD
ATLANTA GA 30324

JESSICA BERGER
317 LOUIS DRIVE
HOUMA, LA 70364-2208

| WAGE STATEMENT | | |
|---|---|---|
| Employee: 1170737 | Pay Date: | 3 |
| | Advice Number: | 1 |
| Pay Period Begin: 3/1/2014 | Pay Period End: | 3 |
| Location: Houma, LA Home | | |

| TAX DATA | Federal | State |
|---|---|---|
| Tax Status | Single | Single |
| Allow ances | 1 | 1 |
| Additional Amount | 0.00 | 0.00 |

| WAGE STATEMENT SUMMARY | Current |
|---|---|
| Total Gross | 1,571.64 |
| Total Pre-Tax Deductions | 38.15 |
| Total Wages | 1,533.49 |
| Total Taxes | 336.19 |
| Total After-Tax Deductions | 0.00 |
| Total Adjustments | 0.00 |
| Net Pay | 1,197.30 |

## HOURS AND EARNINGS

****************************Current****************************

| Description | Rate | Hours | Earnings |
|---|---|---|---|
| Regular Wages | 0.00 | 48.00 | 750.00 |
| Holiday Pay | 16.30 | 8.00 | 130.41 |
| Sick Pay | 16.30 | 24.00 | 391.22 |
| Base Auto | 0.00 | 0.00 | 300.00 |
| Draw Rev-VHSM | 0.00 | 0.00 | 0.01 |
| Total | | 80.00 | 1,571.64 |

| PRE-TAX DEDUCTIONS | | | TAXES | |
|---|---|---|---|---|
| Description | Current | YTD | Description | Current |
| 401k 1-6% | 38.15 | 202.43 | Federal Income Tax | 172.37 |
| | | | Social Security Withheld | 97.44 |
| | | | Medicare Withheld | 22.79 |
| | | | LA State Tax | 43.59 |
| Total | 38.15 | 202.43 | Total | 336.19 |

| AFTER-TAX DEDUCTIONS | | | WAGE ADJUSTMENTS |
|---|---|---|---|
| Description | Current | YTD | Description | Current |
| | | | **J. BERGER 077** | |
| | | | **GKB & ASSOCIATES** | |
| Total | 0.00 | 0.00 | Total | 0.00 |

## WAGE DISTRIBUTION

| Acct Type | Routing# | Account# |
|---|---|---|
| J P Morgan Chase Ban | XXXXX0137 | XXXXX3068 |

| PRE-TAX DEDUCTIONS | | | TAXES | |
| --- | --- | --- | --- | --- |
| Description | Current | YTD | Description | Current |
| 401k 1-6% | 46.90 | 337.01 | Federal Income Tax | 177.29 |
| | | | Social Security Withheld | 100.02 |
| | | | Medicare Withheld | 23.39 |
| | | | LA State Tax | 44.81 |
| Total | 46.90 | 337.01 | Total | 345.51 |

| AFTER-TAX DEDUCTIONS | | | WAGE ADJUSTMENTS | |
| --- | --- | --- | --- | --- |
| Description | Current | YTD | Description | Current |
| Total | 0.00 | 0.00 | Total | 0.00 |

| WAGE DISTRIBUTION | | |
| --- | --- | --- |
| Acct Type | Routing# | Account# |
| J P Morgan Chase Ban | XXXXX0137 | XXXXX3068 |

---



Orkin, LLC.
2170 PIEDMONT ROAD
ATLANTA GA 30324

JESSICA BERGER
317 LOUIS DRIVE
HOUMA, LA 70364-2208

| WAGE STATEMENT | |
| --- | --- |
| Employee: 1170737 | PayDate: 4 |
| | Advice Number: 1 |
| Pay Period Begin: 4/1/2014 | Pay Period End: 4 |
| Location:Houma, LA Home | |

| TAX DATA | Federal | State |
| --- | --- | --- |
| Tax Status | Single | Single |
| Allowances | 1 | 1 |
| Additional Amount | 0.00 | 0.00 |

| WAGE STATEMENT SUMMARY | Current |
| --- | --- |
| Total Gross | 1,568.29 |
| Total Pre-Tax Deductions | 38.05 |
| Total Wages | 1,530.24 |
| Total Taxes | 335.33 |
| Total After-Tax Deductions | 0.00 |
| Total Adjustments | 0.00 |
| Net Pay | 1,194.91 |

| HOURS AND EARNINGS | | | |
| --- | --- | --- | --- |
| Description | Rate | Hours | Earnings |
| Regular Wages | 0.00 | 80.00 | 1,136.36 |
| Holiday Pay | 16.49 | 8.00 | 131.92 |
| Base Auto | 0.00 | 0.00 | 300.00 |
| Draw Rev-VHSM | 0.00 | 0.00 | 0.01 |
| Total | | 88.00 | 1,568.29 |

| PRE-TAX DEDUCTIONS | | | TAXES | |
| --- | --- | --- | --- | --- |
| Description | Current | YTD | Description | Current |
| 401k 1-6% | 38.05 | 290.11 | Federal Income Tax | 171.88 |
| | | | Social Security Withheld | 97.24 |
| | | | Medicare Withheld | 22.74 |
| | | | LA State Tax | 43.47 |
| Total | 38.05 | 290.11 | Total | 335.33 |

| AFTER-TAX DEDUCTIONS | | | WAGE ADJUSTMENTS | |
| --- | --- | --- | --- | --- |
| Description | Current | YTD | Description | Current |
| Total | 0.00 | 0.00 | Total | 0.00 |

| WAGE DISTRIBUTION | | |
| --- | --- | --- |
| Acct Type | Routing# | Account# |
| J P Morgan Chase Ban | XXXXX0137 | XXXXX3068 |

**J. BERGER 078**
**GKB & ASSOCIATES**

---



Orkin, LLC.
2170 PIEDMONT ROAD
ATLANTA GA 30324

JESSICA BERGER
317 LOUIS DRIVE

| | |
| --- | --- |
| Employee: 1170737 | PayDate: |
| | Advice Number: |
| Pay Period Begin: 3/16/2014 | Pay Period End: |
| Location:Houma, LA Home | |

| TAX DATA | Federal | State |
| --- | --- | --- |
| Tax Status | Single | Single |
| Allowances | 1 | 1 |
| Additional Amount | 0.00 | 0.00 |

| WAGE STATEMENT SUMMARY | Current |
| --- | --- |
| Total Gross | 1,729.24 |
| Total Pre-Tax Deductions | 49.63 |
| Total Wages | 1,679.61 |
| Total Taxes | 375.57 |

Details

| Total | | 0.00 | 0.00 | Total | | | 0.00 |

| Acct Type | WAGE DISTRIBUTION | | |
|---|---|---|---|
| J P Morgan Chase Ban | | Routing# | Account# |
| | | XXXXX0137 | XXXXX3068 |



| | WAGE STATEMENT | |
|---|---|---|
| Employee: 1170737 | PayDate: | |
| | Advice Number: | |
| Pay Period Begin: 5/1/2014 | Pay Period End: | |
| Location:Houma, LA Home | | |

Orkin, LLC.
2170 PIEDMONT ROAD
ATLANTA GA 30324

JESSICA BERGER
317 LOUIS DRIVE
HOUMA, LA 70364-2208

| TAX DATA | Federal | State |
|---|---|---|
| Tax Status | Single | Single |
| Allowances | 1 | 1 |
| Additional Amount | 0.00 | 0.00 |

| WAGE STATEMENT SUMMARY | Current |
|---|---|
| Total Gross | 1,568.41 |
| Total Pre-Tax Deductions | 38.05 |
| Total Wages | 1,530.36 |
| Total Taxes | 335.36 |
| Total After-Tax Deductions | 0.00 |
| Total Adjustments | 0.00 |
| Net Pay | 1,195.00 |

| HOURS AND EARNINGS | | | |
|---|---|---|---|
| Description | ***Current*** | | |
| | Rate | Hours | Earnings |
| Regular Wages | 0.00 | 80.00 | |
| Sick Pay | 16.50 | 8.00 | 1,136.36 |
| Base Auto | 0.00 | 0.00 | 132.04 |
| Draw Rev-VHSM | | | 300.00 |
| Total | 0.00 | 0.00 | 0.01 |
| | | 88.00 | 1,568.41 |

| PRE-TAX DEDUCTIONS | | | TAXES | |
|---|---|---|---|---|
| Description | Current | YTD | Description | Current |
| 401k 1-6% | 38.05 | 375.06 | Federal Income Tax | 171.90 |
| | | | Social Security Withheld | 97.24 |
| | | | Medicare Withheld | 22.74 |
| | | | LA State Tax | 43.48 |
| Total | 38.05 | 375.06 | Total | 335.36 |

| AFTER-TAX DEDUCTIONS | | | WAGE ADJUSTMENTS | |
|---|---|---|---|---|
| Description | Current | YTD | Description | Current |
| Total | 0.00 | 0.00 | Total | 0.00 |

| Acct Type | WAGE DISTRIBUTION | | |
|---|---|---|---|
| J P Morgan Chase Ban | | Routing# | Account# |
| | | XXXXX0137 | XXXXX3068 |



| | STATEMENT | |
|---|---|---|
| Employee: 1170737 | PayDate: | |
| | Advice Number: | |
| Pay Period Begin: 4/16/2014 | Pay Period End: | |
| Location:Houma, LA Home | | |

Orkin, LLC.
2170 PIEDMONT ROAD
ATLANTA GA 30324

JESSICA BERGER
317 LOUIS DRIVE
HOUMA, LA 70364-2208

| TAX DATA | Federal | State |
|---|---|---|
| Tax Status | Single | Single |
| Allowances | 1 | 1 |
| Additional Amount | 0.00 | 0.00 |

J. BERGER 079
GKB & ASSOCIATES

| WAGE STATEMENT SUMMARY | Current |
|---|---|
| Total Gross | 1,613.24 |
| Total Pre-Tax Deductions | 46.90 |
| Total Wages | 1,566.34 |
| Total Taxes | 345.51 |
| Total After-Tax Deductions | 0.00 |
| Total Adjustments | 0.00 |
| Net Pay | 1,220.83 |

| HOURS AND EARNINGS | | | |
|---|---|---|---|
| Description | ***Current*** | | |
| | Rate | Hours | Earnings |
| Regular Wages | 0.00 | 88.00 | |
| Auto Setlmt | 0.00 | 0.00 | 1,250.00 |
| Draw Rev-VHSM | 0.00 | 0.00 | 56.00 |
| Minus MD-Mth | 0.00 | 0.00 | 0.01 |
| Minus ED-Mth | 0.00 | 0.00 | -0.01 |
| PC Sales | 5.00 | 0.00 | -0.01 |
| Odd Job Sale | 5.00 | 4,500.00 | 225.00 |
| Ex Init Sls | 5.00 | 1,440.00 | 72.00 |
| Total | | 325.00 | 16.25 |
| | | 6,353.00 | 1,613.24 |



Orkin, LLC.
2170 PIEDMONT ROAD
ATLANTA, GA 30324

JESSICA BERGER
317 LOUIS DRIVE
HOUMA, LA 70364-2208

## WAGE STATEMENT

| | |
|---|---|
| Employee: 1170737 | PayDate: 6/10/2014 |
| | Advice Number: 11348096 |
| Pay Period Begin: 5/16/2014 | Pay Period End: 5/31/2014 |
| Location: Houma, LA Home | |

### TAX DATA

| Tax Status | Federal | State |
|---|---|---|
| | Single | Single |
| Allowances | 1 | 1 |
| Additional Amount | 0.00 | 0.00 |

### WAGE STATEMENT SUMMARY

| | Current | YTD |
|---|---|---|
| Total Gross | 1,428.71 | 17,004.81 |
| Total Pre-Tax Deductions | 41.36 | 416.42 |
| Total Wages | 1,387.35 | 16,588.39 |
| Total Taxes | 297.94 | 3,624.09 |
| Total After-Tax Deductions | 0.00 | 0.00 |
| Total Adjustments | 0.00 | 0.00 |
| Net Pay | 1,089.41 | 12,964.30 |

### HOURS AND EARNINGS

| Description | Rate | Current Hours | Earnings |
|---|---|---|---|
| Regular Wages | 0.00 | 80.00 | 1,145.83 |
| Sick Pay | 16.50 | 8.00 | 132.04 |
| Auto Settlmt | 0.00 | 0.00 | 50.00 |
| Draw Rev-VHSM | 0.00 | 0.00 | 0.01 |
| Minus MD-Mth | 0.00 | 0.00 | -0.01 |
| Minus ED-Mth | 0.00 | 0.00 | -0.01 |
| PC Sales | 5.00 | 1,920.00 | 96.00 |
| Ex Init Sls | 5.00 | 97.00 | 4.85 |
| Total | | 2,105.00 | 1,428.71 |

### PRE-TAX DEDUCTIONS

| Description | Current | YTD |
|---|---|---|
| 401k 1-6% | 41.36 | 416.42 |
| Total | 41.36 | 416.42 |

### TAXES

| Description | Current | YTD |
|---|---|---|
| Federal Income Tax | 150.45 | 1,854.05 |
| Social Security Withheld | 88.58 | 1,054.30 |
| Medicare Withheld | 20.72 | 246.57 |
| LA State Tax | 38.19 | 469.17 |
| Total | 297.94 | 3,624.09 |

### AFTER-TAX DEDUCTIONS

| Description | Current | YTD |
|---|---|---|
| Total | 0.00 | 0.00 |

### WAGE ADJUSTMENTS

| Description | Current | YTD |
|---|---|---|
| Total | 0.00 | 0.00 |

### WAGE DISTRIBUTION

| Acct Type | Routing # | Account # | Current |
|---|---|---|---|
| J P Morgan Chase Ban | XXXXX0137 | XXXXX3068 | 1,089.41 |

J. BERGER 080
GKB & ASSOCIATES



| WAGE STATEMENT | | |
|---|---|---|
| Employee: 1170737 | PayDate: | 6 |
| | Advice Number: | 1 |
| Pay Period Begin: 6/1/2014 | Pay Period End: | 6 |
| Location:Houma, LA Home | | |

Orkin, LLC.
2170 PIEDMONT ROAD
ATLANTA GA 30324

JESSICA BERGER
317 LOUIS DRIVE
HOUMA, LA 70364-2208

| TAX DATA | Federal | State |
|---|---|---|
| Tax Status | Single | Single |
| Allowances | 1 | 1 |
| Additional Amount | 0.00 | 0.00 |

| WAGE STATEMENT SUMMARY | |
|---|---|
| | Current |
| Total Gross | 1,550.01 |
| Total Pre-Tax Deductions | 37.50 |
| Total Wages | 1,512.51 |
| Total Taxes | 330.61 |
| Total After-Tax Deductions | 0.00 |
| Total Adjustments | 0.00 |
| Net Pay | 1,181.90 |

**HOURS AND EARNINGS**
*************Current*************

| Description | Rate | Hours | Earnings |
|---|---|---|---|
| Regular Wages | 0.00 | 80.00 | 1,250.00 |
| Base Auto | 0.00 | 0.00 | 300.00 |
| Draw Rev-VHSM | 0.00 | 0.00 | 0.01 |
| Total | 0.00 | 80.00 | 1,550.01 |

**PRE-TAX DEDUCTIONS**

| Description | Current | YTD |
|---|---|---|
| 401k 1-6% | 37.50 | 453.92 |
| Total | 37.50 | 453.92 |

**TAXES**

| Description | Current |
|---|---|
| Federal Income Tax | 169.22 |
| Social Security Withheld | 96.10 |
| Medicare Withheld | 22.47 |
| LA State Tax | 42.82 |
| Total | 330.61 |

**AFTER-TAX DEDUCTIONS**

| Description | Current | YTD |
|---|---|---|
| Total | 0.00 | 0.00 |

**WAGE ADJUSTMENTS**

| Description | Current |
|---|---|
| Total | 0.00 |

**WAGE DISTRIBUTION**

| Acct Type | Routing# | Account# |
|---|---|---|
| J P Morgan Chase Ban | XXXXX0137 | XXXXX3068 |



| WAGE STATEMENT | | |
|---|---|---|
| Employee: 1170737 | PayDate: | |
| | Advice Number: | |
| Pay Period Begin: 5/16/2014 | Pay Period End: | |
| Location:Houma, LA Home | | |

Orkin, LLC.
2170 PIEDMONT ROAD
ATLANTA GA 30324

JESSICA BERGER
317 LOUIS DRIVE
HOUMA, LA 70364-2208

| TAX DATA | Federal | State |
|---|---|---|
| Tax Status | Single | Single |
| Allowances | 1 | 1 |
| Additional Amount | 0.00 | 0.00 |

| WAGE STATEMENT SUMMARY | |
|---|---|
| | Current |
| Total Gross | 1,428.71 |
| Total Pre-Tax Deductions | 41.36 |
| Total Wages | 1,387.35 |
| Total Taxes | 297.94 |
| Total After-Tax Deductions | 0.00 |
| Total Adjustments | 0.00 |
| Net Pay | 1,089.41 |

**HOURS AND EARNINGS**
*************Current*************

| Description | Rate | Hours | Earnings |
|---|---|---|---|
| Regular Wages | 0.00 | 80.00 | 1,145.83 |
| Sick Pay | 16.50 | 8.00 | 132.04 |
| Auto Settlmt | 0.00 | 0.00 | 50.00 |
| Draw Rev-VHSM | 0.00 | 0.00 | 0.01 |
| Minus MD-Mth | 0.00 | 0.00 | -0.01 |
| Minus ED-Mth | 0.00 | 8.00 | -0.01 |
| PC Sales | 5.00 | 1,920.00 | 96.00 |
| Ex Inil Sts | 5.00 | 97.00 | 4.85 |
| Total | | 2,105.00 | 1,428.71 |

**PRE-TAX DEDUCTIONS**

| Description | Current | YTD |
|---|---|---|
| 401k 1-6% | 41.36 | 416.42 |
| Total | 41.36 | 416.42 |

**TAXES**

| Description | Current |
|---|---|
| Federal Income Tax | 150.45 |
| Social Security Withheld | 88.56 |
| Medicare Withheld | 20.72 |
| LA State Tax | 38.19 |
| Total | 297.94 |

J. BERGER 081
GKB & ASSOCIATES

**AFTER-TAX DEDUCTIONS**

| Description | Current | YTD |
|---|---|---|

**WAGE ADJUSTMENTS**

| Description | Current |
|---|---|

Details

JESSICA BERGER
317 LOUIS DRIVE
HOUMA, LA 70364-2208

| Total Pre-Tax Deductions | |
| Total Wages | 38.54 |
| Total Taxes | 1,546.14 |
| Total After-Tax Deductions | 339.55 |
| Total Adjustments | 0.00 |
| Net Pay | 0.00 |
| | 1,206.59 |

| HOURS AND EARNINGS | | | |
|---|---|---|---|
| Description | \*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*Current\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\* | | |
| | Rate | Hours | Earnings |
| Regular Wages | 0.00 | 72.00 | 1,022.72 |
| Holiday Pay | 16.37 | 16.00 | 261.95 |
| Base Auto | 0.00 | 0.00 | 300.00 |
| Draw Rev-VHSM | 0.00 | 0.00 | 0.01 |
| Total | | 88.00 | 1,584.68 |

| PRE-TAX DEDUCTIONS | | |
|---|---|---|
| Description | Current | YTD |
| 401k 1-6% | 38.54 | 582.61 |
| | | |
| Total | 38.54 | 582.61 |

| TAXES | |
|---|---|
| Description | Current |
| Federal Income Tax | 174.26 |
| Social Security Withheld | 98.25 |
| Medicare Withheld | 22.98 |
| LA State Tax | -44.06 |
| Total | 339.55 |

| AFTER-TAX DEDUCTIONS | | |
|---|---|---|
| Description | Current | YTD |
| | | |
| Total | 0.00 | 0.00 |

| WAGE ADJUSTMENTS | |
|---|---|
| Description | Current |
| | |
| Total | 0.00 |

| WAGE DISTRIBUTION | | |
|---|---|---|
| Acct Type | Routing# | Account# |
| J P Morgan Chase Ban | XXXXX0137 | XXXXX3068 |

ROLLINS

Orkin, LLC.
2170 PIEDMONT ROAD
ATLANTA GA 30324

JESSICA BERGER
317 LOUIS DRIVE
HOUMA, LA 70364-2208

| WAGE STATEMENT | |
|---|---|
| Employee: 1170737 | Pay Date: |
| | Advice Number: |
| Pay Period Begin: 6/16/2014 | Pay Period End: |
| Location:Houma, LA Home | |

| TAX DATA | Federal | State |
|---|---|---|
| Tax Status | Single | Single |
| Allowances | 1 | 1 |
| Additional Amount | 0.00 | 0.00 |

| WAGE STATEMENT SUMMARY | |
|---|---|
| | Current |
| Total Gross | 3,279.84 |
| Total Pre-Tax Deductions | 90.15 |
| Total Wages | 3,189.69 |
| Total Taxes | 930.90 |
| Total After-Tax Deductions | 0.00 |
| Total Adjustments | 0.00 |
| Net Pay | 2,258.79 |

| HOURS AND EARNINGS | | | |
|---|---|---|---|
| Description | \*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*Current\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\* | | |
| | Rate | Hours | Earnings |
| Regular Wages | 0.00 | 88.00 | 1,250.00 |
| Auto Setlmt | 0.00 | 0.00 | 175.00 |
| Auto End Mth | 0.00 | 0.00 | 100.00 |
| Draw Rev-VHSM | 0.00 | 0.00 | 0.01 |
| Minus MO-Mth | 0.00 | 0.00 | -0.01 |
| Minus ED-Mth | 0.00 | 0.00 | -0.01 |
| PC Sales | 10.00 | 10,482.00 | 1,048.20 |
| PC Sales CB | -7.50 | 1,320.00 | -99.00 |
| Team Sls In | 10.00 | 6,264.00 | 626.40 |
| Ex Int Sls | 10.00 | 1,792.50 | 179.25 |
| Total | | 19,946.50 | 3,279.84 |

| PRE-TAX DEDUCTIONS | | |
|---|---|---|
| Description | Current | YTD |
| 401k 1-6% | 90.15 | 544.07 |
| | | |
| Total | 90.15 | 544.07 |

| TAXES | |
|---|---|
| Description | Current |
| Federal Income Tax | 560.18 |
| Social Security Withheld | 203.35 |
| Medicare Withheld | 47.56 |
| LA State Tax | 119.81 |
| Total | 930.90 |

| AFTER-TAX DEDUCTIONS | | |
|---|---|---|
| Description | Current | YTD |
| | | |
| Total | 0.00 | 0.00 |

| WAGE ADJUSTMENTS | |
|---|---|
| Description | Current |
| **J. BERGER 082** | |
| **GKB & ASSOCIATES** | |
| Total | 0.00 |

| WAGE DISTRIBUTION | | |
|---|---|---|
| Acct Type | Routing# | Account# |
| J P Morgan Chase Ban | XXXXX0137 | XXXXX3068 |

Details

| | | | Federal Income Tax | | |
|---|---|---|---|---|---|
| 401k 1-6% | 39.62 | 662.30 | Social Security Withheld | | 179.51 |
| | | | Medicare Withheld | | 100.49 |
| | | | LA State Tax | | 23.50 |
| | | | | | 45.35 |
| Total | 39.62 | 662.30 | Total | | 348.85 |

| AFTER-TAX DEDUCTIONS | | | WAGE ADJUSTMENTS | |
|---|---|---|---|---|
| Description | Current | YTD | Description | Current |
| | | | | |
| Total | 0.00 | 0.00 | Total | 0.00 |

| WAGE DISTRIBUTION | | |
|---|---|---|
| Acct Type | Routing# | Account# |
| J P Morgan Chase Ban | XXXXX0137 | XXXXX3068 |

---



| | WAGE STATEMENT | | |
|---|---|---|---|
| Employee: 1170737 | | PayDate: | |
| Pay Period Begin: 7/16/2014 | | Advice Number: | |
| Location:Houma, LA Home | | Pay Period End: | |

Orkin, LLC.
2170 PIEDMONT ROAD
ATLANTA GA 30324

JESSICA BERGER
317 LOUIS DRIVE
HOUMA, LA 70364-2208

| TAX DATA | Federal | State |
|---|---|---|
| Tax Status | Single | Single |
| Allowances | 1 | 1 |
| Additional Amount | 0.00 | 0.00 |

| WAGE STATEMENT SUMMARY | Current |
|---|---|
| Total Gross | 1,385.70 |
| Total Pre-Tax Deductions | 40.07 |
| Total Wages | 1,345.63 |
| Total Taxes | 286.83 |
| Total After-Tax Deductions | 0.00 |
| Total Adjustments | 0.00 |
| Net Pay | 1,058.80 |

| HOURS AND EARNINGS | | | |
|---|---|---|---|
| Description | Rate | Hours | Earnings |
| Regular Wages | 0.00 | 96.00 | 1,250.00 |
| Auto Setfmt | 0.00 | 0.00 | 50.00 |
| Draw Rav-VHSM | 0.00 | 0.00 | 0.01 |
| Minus MD-Mth | 0.00 | 0.00 | -0.01 |
| Minus ED-Mth | 0.00 | 0.00 | -0.01 |
| PC Sales | 5.00 | 351.00 | 17.55 |
| Team Sls In | 5.00 | 1,260.00 | 63.00 |
| Ex Init Sls | 5.00 | 103.25 | 5.16 |
| Total | | 1,810.25 | 1,385.70 |

| PRE-TAX DEDUCTIONS | | | TAXES | |
|---|---|---|---|---|
| Description | Current | YTD | Description | Current |
| 401k 1-6% | 40.07 | 622.68 | Federal Income Tax | 144.19 |
| | | | Social Securty Withheld | 85.91 |
| | | | Medicare Withheld | 20.09 |
| | | | LA State Tax | 36.64 |
| Total | 40.07 | 622.68 | Total | 286.83 |

| AFTER-TAX DEDUCTIONS | | | WAGE ADJUSTMENTS | |
|---|---|---|---|---|
| Description | Current | YTD | Description | Current |
| | | | | |
| Total | 0.00 | 0.00 | Total | 0.00 |

| WAGE DISTRIBUTION | | |
|---|---|---|
| Acct Type | Routing# | Account# |
| J P Morgan Chase Ban | XXXXX0137 | XXXXX3068 |

**J. BERGER 083**
**GKB & ASSOCIATES**

---



| | WAGE STATEMENT | |
|---|---|---|
| Employee: 1170737 | | PayDate: 7 |
| | | Advice Number: 1 |
| Pay Period Begin: 7/1/2014 | | Pay Period End: 7 |
| Location:Houma, LA Home | | |

Orkin, LLC.
2170 PIEDMONT ROAD
ATLANTA GA 30324

| TAX DATA | Federal | State |
|---|---|---|
| Tax Status | Single | Single |
| Allowances | 1 | 1 |
| Additional Amount | 0.00 | 0.00 |

| WAGE STATEMENT SUMMARY | Current |
|---|---|
| Total Gross | 1,584.68 |



## Online Wage Statements

Current Pay Period

Statement History

W2 History

Messages

My Profile

Change Password

Logout



Orkin, LLC.
2170 PIEDMONT ROAD
ATLANTA GA 30324

JESSICA BERGER
317 LOUIS DRIVE
HOUMA, LA 70364-2208

Print | Save as PDF | Decrease Font  Increase F

| WAGE STATEMENT | | |
|---|---|---|
| Employee: 1170737 | PayDate: | |
| | Advice Number: | |
| Pay Period Begin: 8/16/2014 | Pay Period End: | |
| Location:Houma, LA Home | | |

| TAX DATA | | Federal | State |
|---|---|---|---|
| Tax Status | | Single | Single |
| Allowances | | 1 | 1 |
| Additional Amount | | 0.00 | 0.00 |

| WAGE STATEMENT SUMMARY | | Current |
|---|---|---|
| Total Gross | | 1,250.00 |
| Total Pre-Tax Deductions | | 0.00 |
| Total Wages | | 1,250.00 |
| Total Taxes | | 258.57 |
| Total After-Tax Deductions | | 0.00 |
| Total Adjustments | | 0.00 |
| Net Pay | | 991.43 |

| HOURS AND EARNINGS | | | |
|---|---|---|---|
| | | ***********Current*********** | |
| Description | Rate | Hours | Earnings |
| Severance | 0.00 | 80.00 | 0.00 |
| Severance | 0.00 | 0.00 | 1,250.00 |
| Auto Setfirt | 0.00 | 0.00 | 1,250.00 |
| Auto Setfirt | 0.00 | 0.00 | -50.00 |
| Draw Rev-VHSM | 0.00 | 0.00 | 50.00 |
| Minus MD-Mth | 0.00 | 0.00 | 0.00 |
| Minus ED-Mth | 0.00 | 0.00 | -0.01 |
| Def Addition | 0.00 | 0.00 | -0.01 |
| Total | 0.00 | 80.00 | 0.02 |
| | | 80.00 | 1,250.00 |

| PRE-TAX DEDUCTIONS | | |
|---|---|---|
| Description | Current | YTD |
| 401k 1-6% | 0.00 | 662.30 |
| Total | 0.00 | 662.30 |

| TAXES | |
|---|---|
| Description | Current |
| Federal Income Tax | 129.84 |
| Social Security Withheld | 77.50 |
| Medicare Withheld | 18.13 |
| LA State Tax | 33.10 |
| Total | 258.57 |

| AFTER-TAX DEDUCTIONS | | |
|---|---|---|
| Description | Current | YTD |
| Total | 0.00 | 0.00 |

| WAGE ADJUSTMENTS | |
|---|---|
| Description | Current |
| Total | 0.00 |

| WAGE DISTRIBUTION | | |
|---|---|---|
| Acct Type | Routing# | Account# |
| J P Morgan Chase Ban | XXXXX0137 | XXXXX3068 |



Orkin, LLC.
2170 PIEDMONT ROAD
ATLANTA GA 30324

JESSICA BERGER
317 LOUIS DRIVE
HOUMA, LA 70364-2208

**J. BERGER 084
GKB & ASSOCIATES**

| STATEMENT | | |
|---|---|---|
| Employee: 1170737 | PayDate: | E |
| | Advice Number: | 1 |
| Pay Period Begin: 8/1/2014 | Pay Period End: | E |
| Location:Houma, LA Home | | |

| TAX DATA | | Federal | State |
|---|---|---|---|
| Tax Status | | Single | Single |
| Allowances | | 1 | 1 |
| Additional Amount | | 0.00 | 0.00 |

| WAGE STATEMENT SUMMARY | | Current |
|---|---|---|
| Total Gross | | 1,620.71 |
| Total Pre-Tax Deductions | | 39.62 |
| Total Wages | | 1,581.09 |
| Total Taxes | | 348.85 |
| Total After-Tax Deductions | | 0.00 |
| Total Adjustments | | 0.00 |
| Net Pay | | 1,232.24 |

| HOURS AND EARNINGS | | | |
|---|---|---|---|
| | | ***********Current*********** | |
| Description | Rate | Hours | Earnings |
| Regular Wages | 0.00 | 64.00 | 909.08 |
| Vacation Pay | 17.15 | 24.00 | 411.62 |
| Base Auto | 0.00 | 0.00 | 300.00 |
| Draw Rev-VHSM | 0.00 | 0.00 | 0.01 |
| Total | | 88.00 | 1,620.71 |

| PRE-TAX DEDUCTIONS | | |
|---|---|---|
| Description | Current | YTD |

| TAXES | |
|---|---|
| Description | Current |



Orkin, LLC.
2170 PIEDMONT ROAD
ATLANTA, GA 30324

JESSICA BERGER
317 LOUIS DRIVE
HOUMA, LA 70364-2208

## WAGE STATEMENT

| Employee: 1170737 | PayDate: 8/25/2014 |
| --- | --- |
| | Advice Number: 11423465 |
| Pay Period Begin: 8/1/2014 | Pay Period End: 8/15/2014 |
| Location: Houma, LA Home | |

### TAX DATA

| Tax Status | Federal | State |
| --- | --- | --- |
| Tax Status | Single | Single |
| Allowances | 1 | 1 |
| Additional Amount | 0.00 | 0.00 |

### WAGE STATEMENT SUMMARY

| | Current | YTD |
| --- | --- | --- |
| Total Gross | 1,620.71 | 26,425.75 |
| Total Pre-Tax Deductions | 39.62 | 662.30 |
| Total Wages | 1,581.09 | 25,763.45 |
| Total Taxes | 348.85 | 5,860.83 |
| Total After-Tax Deductions | 0.00 | 0.00 |
| Total Adjustments | 0.00 | 0.00 |
| Net Pay | 1,232.24 | 19,902.62 |

### HOURS AND EARNINGS
****************** Current ******************

| Description | Rate | Hours | Earnings |
| --- | --- | --- | --- |
| Regular Wages | 0.00 | 64.00 | 909.08 |
| Vacation Pay | 17.15 | 24.00 | 411.62 |
| Base Auto | 0.00 | 0.00 | 300.00 |
| Draw Rev-VHSM | 0.00 | 0.00 | 0.01 |
| Total | | 88.00 | 1,620.71 |

### PRE-TAX DEDUCTIONS

| Description | Current | YTD |
| --- | --- | --- |
| 401k 1-6% | 39.62 | 662.30 |
| Total | 39.62 | 662.30 |

### TAXES

| Description | Current | YTD |
| --- | --- | --- |
| Federal Income Tax | 179.51 | 3,081.41 |
| Social Security Withheld | 100.49 | 1,638.40 |
| Medicare Withheld | 23.50 | 383.17 |
| LA State Tax | 45.35 | 757.85 |
| Total | 348.85 | 5,860.83 |

### AFTER-TAX DEDUCTIONS

| Description | Current | YTD |
| --- | --- | --- |
| Total | 0.00 | 0.00 |

### WAGE ADJUSTMENTS

| Description | Current | YTD |
| --- | --- | --- |
| Total | 0.00 | 0.00 |

### WAGE DISTRIBUTION

| Acct Type | Routing # | Account # | Current |
| --- | --- | --- | --- |
| J P Morgan Chase Ban | XXXXX0137 | XXXXX3068 | 1,232.24 |

J. BERGER 085
GKB & ASSOCIATES



Orkin, LLC.
2170 PIEDMONT ROAD
ATLANTA, GA 30324

JESSICA BERGER
317 LOUIS DRIVE
HOUMA, LA 70364-2208

## WAGE STATEMENT

| | |
|---|---|
| Employee: 1170737 | PayDate: 9/10/2014 |
| | Advice Number: 11435189 |
| Pay Period Begin: 8/16/2014 | Pay Period End: 8/31/2014 |
| Location: Houma, LA Home | |

### TAX DATA

| | Federal | State |
|---|---|---|
| Tax Status | Single | Single |
| Allowances | 1 | 1 |
| Additional Amount | 0.00 | 0.00 |

### WAGE STATEMENT SUMMARY

| | Current | YTD |
|---|---|---|
| Total Gross | 1,250.00 | 27,675.75 |
| Total Pre-Tax Deductions | 0.00 | 662.30 |
| Total Wages | 1,250.00 | 27,013.45 |
| Total Taxes | 258.57 | 6,119.40 |
| Total After-Tax Deductions | 0.00 | 0.00 |
| Total Adjustments | 0.00 | 0.00 |
| Net Pay | 991.43 | 20,894.05 |

### HOURS AND EARNINGS

| Description | Rate | Current Hours | Earnings |
|---|---|---|---|
| Severance | 0.00 | 80.00 | 0.00 |
| Severance | 0.00 | 0.00 | 1,250.00 |
| Auto Settlmt | 0.00 | 0.00 | 1,250.00 |
| Auto Settlmt | 0.00 | 0.00 | -50.00 |
| Draw Rev-VHSM | 0.00 | 0.00 | 50.00 |
| Minus MD-Mth | 0.00 | 0.00 | 0.00 |
| Minus ED-Mth | 0.00 | 0.00 | -0.01 |
| Def Addition | 0.00 | 0.00 | -0.01 |
| | 0.00 | 0.00 | 0.02 |
| Total | | 80.00 | 1,250.00 |

### PRE-TAX DEDUCTIONS

| Description | Current | YTD |
|---|---|---|
| 401k 1-6% | 0.00 | 662.30 |
| Total | 0.00 | 662.30 |

### TAXES

| Description | Current | YTD |
|---|---|---|
| Federal Income Tax | 129.84 | 3,211.25 |
| Social Security Withheld | 77.50 | 1,715.90 |
| Medicare Withheld | 18.13 | 401.30 |
| LA State Tax | 33.10 | 790.95 |
| Total | 258.57 | 6,119.40 |

### AFTER-TAX DEDUCTIONS

| Description | Current | YTD |
|---|---|---|
| Total | 0.00 | 0.00 |

### WAGE ADJUSTMENTS

| Description | Current | YTD |
|---|---|---|
| Total | 0.00 | 0.00 |

### WAGE DISTRIBUTION

| Acct Type | Routing # | Account # | Current |
|---|---|---|---|
| J P Morgan Chase Ban | XXXXX0137 | XXXXX3068 | 991.43 |

J. BERGER 086
GKB & ASSOCIATES

## W-2 Wage and Tax Statement 2013

| | |
|---|---|
| a Employee's social security number | 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 |
| 1. Wages, tips, other comp. | 11477.61 |
| 2. Federal income tax withheld | 1324.61 |
| 3. Social security wages | 11477.61 |
| 4 Social security tax withheld | 711.61 |
| 5 Medicare wages and tips | 11477.61 |
| 6 Medicare tax withheld | 166.43 |
| 7 Social security tips | |
| 8 Allocated tips | |
| 9 | |
| 10 Dependent care benefits | |
| 11 Nonqualified plans | |
| 12a | |

c Employer's name, address, and ZIP code

ORKIN, LLC
2170 PIEDMONT ROAD NE
ATLANTA GA 30324

e/f Employee's name, address, and ZIP code

13 Statutory employee   Retirement plan   Third-party sick pay
14 Other

JESSICA B BERGER
317 LOUIS DRIVE
HOUMA LA 70364-2208

b Employer identification number EIN   58-0942031
d Control number

12b
12c
12d

| 15 State | Employer's state I.D. no. | 16 State wages, tips, etc. | 17 State income tax | 18 Local wages, tips, etc. | 19 Local income tax | 20 Locality name |
|---|---|---|---|---|---|---|
| LA | 2303618001 | 11477.61 | 332.63 | | | |

Copy B To Be Filed with Employee's Federal Income Tax Return

---

## W-2 Wage and Tax Statement 2013

| | |
|---|---|
| a Employee's social security number | 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 |
| 1. Wages, tips, other comp. | 11477.61 |
| 2. Federal income tax withheld | 1324.61 |
| 3. Social security wages | 11477.61 |
| 4 Social security tax withheld | 711.61 |
| 5 Medicare wages and tips | 11477.61 |
| 6 Medicare tax withheld | 166.43 |
| 7 Social security tips | |
| 8 Allocated tips | |
| 9 | |
| 10 Dependent care benefits | |
| 11 Nonqualified plans | |
| 12a | |

c Employer's name, address, and ZIP code

ORKIN, LLC
2170 PIEDMONT ROAD NE
ATLANTA GA 30324

e/f Employee's name, address, and ZIP code

13 Statutory employee   Retirement plan   Third-party sick pay
14 Other

JESSICA B BERGER
317 LOUIS DRIVE
HOUMA LA 70364-2208

b Employer identification number EIN   58-0942031
d Control number

12b
12c
12d

| 15 State | Employer's state I.D. no. | 16 State wages, tips, etc. | 17 State income tax | 18 Local wages, tips, etc. | 19 Local income tax | 20 Locality name |
|---|---|---|---|---|---|---|
| LA | 2303618001 | 11477.61 | 332.63 | | | |

Copy C For Employee Records

---

## W-2 Wage and Tax Statement 2013

| | |
|---|---|
| a Employee's social security number | 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 |
| 1. Wages, tips, other comp. | 11477.61 |
| 2. Federal income tax withheld | 1324.61 |
| 3. Social security wages | 11477.61 |
| 4 Social security tax withheld | 711.61 |
| 5 Medicare wages and tips | 11477.61 |
| 6 Medicare tax withheld | 166.43 |
| 7 Social security tips | |
| 8 Allocated tips | |
| 9 | |
| 10 Dependent care benefits | |
| 11 Nonqualified plans | |
| 12a | |

c Employer's name, address, and ZIP code

ORKIN, LLC
2170 PIEDMONT ROAD NE
ATLANTA GA 30324

e/f Employee's name, address, and ZIP code

13 Statutory employee   Retirement plan   Third-party sick pay
14 Other

JESSICA B BERGER
317 LOUIS DRIVE
HOUMA LA 70364-2208

b Employer identification number EIN   58-0942031
d Control number

12b
12c
12d

| 15 State | Employer's state I.D. no. | 16 State wages, tips, etc. | 17 State income tax | 18 Local wages, tips, etc. | 19 Local income tax | 20 Locality name |
|---|---|---|---|---|---|---|
| LA | 2303618001 | 11477.61 | 332.63 | | | |

Copy 1 For State, City, or Local Tax Department

---

## W-2 Wage and Tax Statement 2013

| | |
|---|---|
| a Employee's social security number | 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 |
| 1. Wages, tips, other comp. | 11477.61 |
| 2. Federal income tax withheld | 1324.61 |
| 3. Social security wages | 11477.61 |
| 4 Social security tax withheld | 711.61 |
| 5 Medicare wages and tips | 11477.61 |
| 6 Medicare tax withheld | 166.43 |
| 7 Social security tips | |
| 8 Allocated tips | |
| 9 | |
| 10 Dependent care benefits | |
| 11 Nonqualified plans | |
| 12a | |

Employer's name, address, and ZIP code

ORKIN, LLC
2170 PIEDMONT ROAD NE
ATLANTA GA 30324

f Employee's name, address, and ZIP code

13 Statutory employee   Retirement plan   Third-party sick pay
14 Other          J. BERGER 087
                  GKB & ASSOCIATES

JESSICA B BERGER
317 LOUIS DRIVE
HOUMA LA 70364-2208

b Employer identification number EIN   58-0942031
d Control number

12d

| State | Employer's state I.D. no. | 16 State wages, tips, etc. | 17 State income tax | 18 Local wages, tips, etc. | 19 Local income tax | 20 Locality name |
|---|---|---|---|---|---|---|
| LA | 2303618001 | 11477.61 | 332.63 | | | |

## Notice to Employee

**Do you have to file?** Refer to the Form 1040 Instructions to determine if you are required to file a tax return. Even if you do not have to file a tax return, you may be eligible for a refund if box 2 shows an amount or if you are eligible for any credit.

**Earned income credit (EIC).** You may be able to take the EIC for 2013 if your adjusted gross income (AGI) is less than a certain amount. The amount of the credit is based on income and family size. Workers without children could qualify for a smaller credit. You and any qualifying children must have valid social security numbers (SSNs). You cannot take the EIC if your investment income is more than the specified amount for 2013 or if income is earned for services provided while you were an inmate at a penal institution. For 2013 income limits and more information, visit www.irs.gov/eic. Also see Pub. 596, Earned Income Credit. Any EIC that is more than your tax liability is refunded to you, but only if you file a tax return.

**Clergy and religious workers.** If you are not subject to social security and Medicare taxes, see Pub.517, Social Security and Other Information for Members of the Clergy and Religious Workers.

**Corrections.** If your name, SSN, or address is incorrect, correct Copies B, C, and 2 and ask your employer to correct your employment record. Be sure to ask the employer to file Form W-2c, Corrected Wage and Tax Statement, with the Social Security Administration (SSA) to correct any name, SSN, or money amount error reported to the SSA on Form W-2. Be sure to get your copies of Form W-2c from your employer for all corrections made so you may file them with your tax return. If your name and SSN are correct but are not the same as shown on your social security card, you should ask for a new card that displays your correct name at any SSA office or by calling 1-800-772-1213. You also may visit the SSA at www.socialsecurity.gov.

**Cost of employer-sponsored health coverage (if such cost is provided by the employer).** The reporting in box 12, using code DD, of the cost of employer-sponsored coverage is for your information only. The amount reported with code DD is not taxable.

**Credit for excess taxes.** If you had more than one employer in 2013 and more than $7,049.40 in social security and Tier 1 railroad retirement (RRTA) taxes were withheld, you may be able to claim a credit for the excess against your federal income tax. If you had more than one railroad employer and more than $3,709.20 in Tier 1 RRTA tax was withheld, you also may be able to claim a credit. See your Form 1040 or Form 1040A instructions and Pub. 505, Tax Withholding and Estimated Tax

## Instructions

**Box 1.** Enter this amount on the wages line of your tax return.

**Box 2.** Enter this amount on the federal income tax withheld line of your tax return.

**Box 5.** This amount may be required to be entered on Form 8959. See Form 1040 instructions to determine if you are required to complete Form 8959.

**Box 6.** This amount includes the 1.45% Medicare Tax withheld on all Medicare wages and tips shown in Box 5, as well as the 0.9% Additional Medicare Tax on any of those Medicare wages and tips above $200,000.

**Box 8.** This amount is not included in boxes 1, 3, 5, or 7. For information on how to report tips on your tax return, see your Form 1040 instructions. You must file Form 4137, Social Security and Medicare Tax on Unreported Tip Income, with your income tax return to report at least the allocated tip amount unless you can prove a smaller amount with adequate records. By filing Form 4137, your social security and Medicare income and taxes are credited to your social security record. Allocated tips are not subject to withholding and are not included in boxes 1, 3, 5, or 7.

**Box 10.** This amount is the total dependent care benefits that your employer paid to you or incurred on your behalf (including amounts from a section 125 (cafeteria) plan). Any amount over $5,000 is also included in box 1. Complete Form 2441, Child and Dependent Care Expenses, to compute any taxable and nontaxable amounts.

**Box 11.** This amount is (a) reported in box 1 if it is a distribution made to you from a nonqualified deferred compensation or nongovernmental section 457(b) plan or (b) included in box 3 and/or 5 if it is a prior year deferral under a nonqualified or section 457(b) plan that became taxable for social security and Medicare taxes this year because there is no longer a substantial risk of forfeiture of your right to the deferred amount. This box should not be used if you had a deferral and a distribution in the same calendar year. If this happens and you are or will be age 62 by the end of the calendar year, your employer should file Form SSA-131 with the Social Security Administration and give you a copy.

**Box 12.** The following list explains the codes shown in box 12. You may need this information to complete your tax return. Elective deferrals (codes D, E, F, and S) and designated Roth contributions (codes AA, BB, and EE) under all plans are generally limited to a total of $17,500 ($12,000 if you only have a SIMPLE plan, $20,500 for section 403(b) plans if you qualify for the 15-year rule explained in Pub. 571). Deferrals under code G are limited to $17,500. Deferrals under code H are limited to $7,000. However, if you were at least age 50 in 2013, your employer may have allowed an additional deferral of up to $5,500 ($2,500 for section 401(k)(11) and SIMPLE plans). This additional deferral amount is not subject to the overall limit on elective deferrals. For code G, the limit on elective deferrals may be higher for the last 3 years before you reach retirement age. Contact your plan administrator for more information. Amounts in excess of the overall elective deferral limit must be included in income. See the "Wages, Salaries, Tips, etc." line instructions for Form 1040.

**Note:** If a year follows codes D through H, S, Y, AA, BB, or EE, you made a make-up pension contribution for a prior year(s) when you were in military service. To figure whether you made excess deferrals, consider these amounts for that year shown, not the current year. If no year is shown, the contributions are for the current year (on Form 1040, see "Other Taxes" in the Form 1040 instructions.

**A** — Uncollected social security or RRTA tax on tips. Include this tax on Form 1040. See "Other Taxes" in the Form 1040 instructions.

**B** — Uncollected Medicare tax on tips. Include this tax on Form 1040. See "Other Taxes" in the Form 1040 instructions.

**C** — Taxable cost of group-term life insurance over $50,000 (included in boxes 1, 3 (up to social security wage base), and 5).

**D** — Elective deferrals to a section 401(k) cash or deferred arrangement. Also includes deferrals under a SIMPLE retirement account that is part of a section 401(k) arrangement.

**E** — Elective deferrals under a section 403(b) salary reduction agreement

**F** — Elective deferrals under a section 408(k)(6) salary reduction SEP

**G** — Elective deferrals and employer contributions (including nonelective deferrals) to a section 457(b) deferred compensation plan

**H** — Elective deferrals to a section 501(c)(18)(D) tax-exempt organization plan. See "Adjusted Gross Income" in the Form 1040 instructions for how to deduct.

**J** — Nontaxable sick pay (information only, not included in boxes 1, 3, or 5)

**K** — 20% excise tax on excess golden parachute payments. See "Other Taxes" in the Form 1040 instructions

**L** — Substantiated employee business expense reimbursements (nontaxable)

**M** — Uncollected social security or RRTA tax on taxable cost of group-term life insurance over $50,000 (former employees only). See "Other Taxes" in the Form 1040 instructions.

**N** — Uncollected Medicare tax on taxable cost of group-term life insurance over $50,000 (former employees only). See "Other Taxes" in the Form 1040 instructions.

**P** — Excludable moving expense reimbursements paid directly to employee (not included in boxes 1, 3, or 5)

**Q** — Nontaxable combat pay. See the instructions for Form 1040 or Form 1040A for details on reporting this amount.

**R** — Employer contributions to your Archer MSA. Report on Form 8853, Archer MSAs and Long-Term Care Insurance Contracts.

**S** — Employee salary reduction contributions under a section 408(p) SIMPLE plan (not included in box 1)

**T** — Adoption benefits (not included in box 1). Complete Form 8839, Qualified Adoption Expenses, to compute any taxable and nontaxable amounts.

**V** — Income from exercise of nonstatutory stock option(s) (included in boxes 1, 3 (up to social security wage base) and 5). See instructions for Schedule D (Form 1040) for reporting requirements.

**W** — Employer contributions (including amounts the employee elected to contribute using a section 125 (cafeteria) plan) to your health savings account. Report on Form 8889, Health Savings Accounts (HSAs)

**Y** — Deferrals under a section 409A nonqualified deferred compensation plan

**Z** — Income under section 409A on a nonqualified deferred compensation plan. This amount is also included in box 1. It is subject to an additional 20% tax plus interest. See "Other Taxes" in the Form 1040 instructions.

**AA** — Designated Roth contributions under a section 401(k) plan

**BB** — Designated Roth contributions under a section 403(b) plan

**DD** — Cost of employer-sponsored health coverage. The amount reported with code DD is not taxable.

**EE** — Designated Roth contributions under a governmental section 457(b) plan. This amount does not apply to contributions under a tax-exempt organization section 457(b) plan.

**Box 13.** If the "Retirement plan" box is checked, special limits may apply to the amount of traditional IRA contributions you may deduct.

**Box 14.** Employers may use this box to report information such as state disability insurance taxes withheld, union dues, uniform payments, health insurance premiums deducted, nontaxable income, educational assistance payments, or a member of the clergy's parsonage allowance and utilities. Railroad employers use this box to report RRTA compensation, Tier 1 tax, Tier II tax, Medicare tax and Additional Medicare Tax.

**Note:** Keep Copy C of Form W-2 for at least 3 years after the due date for filing your income tax return. However, to help protect your social security benefits, keep Copy C until you begin receiving social security benefits, just in case there is a question about your work record and/or earnings in a particular year.

---

NOTE: THESE ARE SUBSTITUTE WAGE AND TAX STATEMENTS AND ARE ACCEPTABLE FOR FILING WITH YOUR FEDERAL, STATE AND LOCALICITY INCOME TAX RETURNS.

---

Department of the Treasury — Internal Revenue Service
This information is being furnished to the Internal Revenue Service

**IMPORTANT NOTE:**
In order to insure efficient processing, attach this W-2 to your tax return like this (following city or local instructions):



TAX RETURN

THIS
FORM
W-2
OTHER
W-2S

NOTE: THESE ARE SUBSTITUTE WAGE AND TAX STATEMENTS AND ARE ACCEPTABLE FOR FILING WITH YOUR FEDERAL, STATE AND LOCALICITY INCOME TAX RETURNS

---

Department of the Treasury — Internal Revenue Service
This information is being furnished to the Internal Revenue Service

**IMPORTANT NOTE:**
In order to insure efficient processing, attach this W-2 to your tax return like this (following city or local instructions):



TAX RETURN

THIS
FORM
W-2
OTHER
W-2S

NOTE: THESE ARE SUBSTITUTE WAGE AND TAX STATEMENTS AND ARE ACCEPTABLE FOR FILING WITH YOUR FEDERAL, STATE AND LOCAL/CITY INCOME TAX RETURNS

---

Department of the Treasury — Internal Revenue Service
This information is being furnished to the Internal Revenue Service

**IMPORTANT NOTE:**
In order to insure efficient processing, attach this W-2 to your tax return like this (following city or local instructions):



TAX RETURN

THIS

J. BERGER 088
GKB & ASSOCIATES

NOTE: THESE ARE SUBSTITUTE WAGE AND TAX STATEMENTS AND ARE ACCEPTABLE FOR FILING WITH YOUR FEDERAL, STATE AND LOCALICITY INCOME TAX RETURNS

Date Selected: 5/13/2014
Name: BERGER, JESSICA B

Printed: 5/13/2014
ID: 1170737

| Accrual Code | Accrual Type | Period Ending Balance | Furthest Projected Taking Date | Projected Takings | Projected Credits | Projected Balance | Balance w/o Proj. Credits |
|---|---|---|---|---|---|---|---|
| Banked Sick | Hour | 12.0 | 5/13/2014 | 0.0 | 0.0 | 12.0 | 12.0 |
| Banked Vacation CA | Hour | 0.0 | 5/13/2014 | 0.0 | 0.0 | 0.0 | 0.0 |
| Floating-Personal Holiday Field | Hour | 8.0 | 1/01/2015 | 0.0 | 24.0 | 24.0 | 8.0 |
| GF Bank Sick | Hour | 0.0 | 5/13/2014 | 0.0 | 0.0 | 0.0 | 0.0 |
| GF Vacation | Hour | 0.0 | 5/13/2014 | 0.0 | 0.0 | 0.0 | 0.0 |
| Sick | Hour | 16.0 | 5/13/2014 | 0.0 | 0.0 | 16.0 | 16.0 |
| Vacation | Hour | 80.0 | 1/01/2015 | 8.0 | 80.0 | 80.0 | 72.0 |

J. BERGER 089
GKB & ASSOCIATES

GPCFOCUS
User ID: GPGMR

Rollins, Inc. & Subsidiaries
Focus Compensation

J. BERGER 080
GKB & ASSOCIATES

Page - : - 3669
Date - : . 1/06/14
Time - : . 06:14 AM

Company: 00002    Division: SCD    Region: 189    Branch:    2860    Houma, LA Home

Employee: 01170737    BERGER, JESSICA B    Year:    13    Month: 12

| Pay Type | Trans Date | CAG Typ | Prod Freq Pay | Service Contract | Customer Name | Cust Branch | Std Commission Amt | Sales Tracking ID | Loc Num |
|----------|-----------|---------|---------------|------------------|---------------|-------------|-------------------|-------------------|---------|
| 110 PC Sales | 12/11/13 | M | 012015080 | 016405275 MHH URGENT CARE | | 286 P | 330.00 | 7365073 | 00001 |
| | | | | * Total PC Sales: | | | 330.00 | | |
| 150 Odd Jobs | 12/05/13 | OT | NEW | 012010148 | 01G396413 CAMPBELL, LACEST | 286 N | 95.00 | | 00001 |
| | | | | * Total Odd Jobs: | | | 95.00 | | |

GRCFOCUS
User ID: QRCMR

Rollins, Inc. & Subsidiaries
Focus Compensation

Page - : . : . 3670
Date - : . : . 1/06/14
Time - : . : . 06:14 AM

Company:   00002      Division: SCD   Region: 109      Branch:              2860  Houma, LA Home

Employee: 01170737   BENGER, JESSICA B               Year: 13   Month: 12

Commission Summary for JBERGER

| | Pay | Hold | Not Eligible | Chargeback | Reversal | Net Commissionable |
|---|---|---|---|---|---|---|
| 110 - PC Sales | 330.00 | .00 | .00 | .00 | .00 | 330.00 |
| 150 - Odd Jobs | .00 | .00 | 95.00 | .00 | .00 | .00 |
| Total for JBERGER | 330.00 | .00 | 95.00 | .00 | .00 | 330.00 |

J. BERGER 091
GKB & ASSOCIATES

```
GPCFOCUS                                Rollins, Inc. & Subsidiaries              Page - . . . 3153
User ID: QPGPR                              Focus Compensation                    Date - . . . 2/05/14
                                                                                  Time - . . . 06:13 AM

Company:  OCC32   Division: SCD   Region: 189   Branch:        2863  Houma, LA Home

Employee: 01170737  BERGER, JESSICA B          Year:  14  Month:  1

                          Trans   CAS      Prod   Service                              Cust                      Sales     Loc
   Pay Type               Date    Typ Frsq Pay    Contract        Customer Name        Branch Sts Commission Amt Tracking ID  Num
------------------------  ------- --- ---- ----   --------     ------------------      ------ --- ------------- -----------  ----
  110 PC Sales            1/25/14  M           012049027     016441906 LAQUINTA INN      286   P     1,560.00    7426993   00C01

                                          *  Total PC Sales:                                        1,560.00

  506 Ex Init Sls         1/25/14  M           012048027     016441906 LAQUINTA INN      286   P       130.00    7426383   00001

                                          *  Total Ex Init Sls:                                        130.00
```

**J. BERGER 092**
**GKB & ASSOCIATES**

```
GPCFOCUS                                  Rollins, Inc. & Subsidiaries              Page - . . . 3454
User ID: GPGPA                               Focus Compensation                     Date - . . . 2/05/14
                                                                                    Time - . . . 06:13 AM

Company:  00002   Division: SCD   Region: 189   Branch:        2863  Houma, LA Home

Employee: 01170737  BERGER, JESSICA B         Year:  14  Month:  1
```

| Commissions Summary for JBERGER | Pay | Hold | Not Eligible | Chargeback | Reversal | Net Commissionable |
|---|---|---|---|---|---|---|
| 110 - PC Sales | 1,560.00 | .00 | .00 | .00 | .00 | 1,560.00 |
| 506 - Ex Init Sls | 130.00 | .00 | .00 | .00 | .00 | 130.00 |
| Total for JBERGER | 1,690.00 | .00 | .00 | .00 | .00 | 1,690.00 |

**J. BERGER 093**
**GKB & ASSOCIATES**

```
GPCFOCUS
User ID: TPOTTS2                          Rollins, Inc. & Subsidiaries                    Page - . . . 3483
                                             Focus Compensation                           Date - . . . 3/06/14
                                          FINAL FINAL FINAL FINAL                         Time - . . . 09:35 AM

Company:  CC002    Division: SCD   Region: 189   Branch:      2860  Houma, LA Home

Employee: 01170737  BERGER, JESSICA B          Year: 14  Month: 2
```

| Pay Type | Trans Date | CAS Typ | Prod Freq | Pay | Service Contract | Customer Name | Cust Branch | Sts | Commission Amt | Sales Tracking ID | Loc Num |
|----------|-----------|---------|-----------|-----|------------------|---------------|-------------|-----|----------------|-------------------|---------|
| 125 Odd Job Sale | 2/11/14 | | | OT | 012059071 | 016491650 HOUMA TERREBONNE HOUSING | 286 | P | 425.00 | 7483272 | 0CC01 |
| 125 Odd Job Sale | 2/13/14 | | | OT | 012061980 | 016486956 CHEVRON GENESIS | 286 | P | 5,500.00 | 7490331 | 0CC01 |

```
                                         *  Total Odd Job Sale:                           5,925.00
```

J. BERGER 094
GKB & ASSOCIATES

```
GPCFOCU3                          Rollins, Inc. & Subsidiaries                    Page - . . . 3484
User ID: TPOTTS2                        Focus Compensation                        Date - . . . 3/06/14
                                     FINAL  FINAL  FINAL  FINAL                   Time - . . . 09:35 AM

Company:  00002    Division: SCD    Region: 189    Branch:      2860  Houma, LA Home

Employee: 01170737  BERGER, JESSICA B        Year: 14  Month: 2
```

| Commissions Summary for JBERGER | Pay | Hold | Not Eligible | Chargeback | Reversal | Net Commissionable |
|---|---|---|---|---|---|---|
| 125 - Odd Job Sale | 5,925.00 | .00 | .00 | .00 | | 5,925.00 |
| Total for JBERGER | 5,925.00 | .00 | .00 | .00 | .00 | 5,925.00 |

**J. BERGER 095**
**GKB & ASSOCIATES**

```
GPCFOCUS                                                                                    Page - . . . :  362B
User ID: QPGMR                                                                              Date - . . . : 4/03/14
                                        Rolling, Inc. & Subsidiaries                        Time - . . . : 06:17 AM
                                            Focus Compensation

Company: 00002   Division: SCD   Region: 189   Branch: 14   Month: 3

Employee: 01170737   BERGER, JESSICA B                                                      CARL BERGER & ASSOCIATES
                                                                                            960 MICHEL'T
```

| Pay Type | Trans Date | CAS Typ | Prod Pay | Service Contract | Customer Name | Cust Branch | Sts | Commission Amt | Sales Tracking ID | Loc Num |
|---|---|---|---|---|---|---|---|---|---|---|
| 110 PC Sales | 3/07/14 | M | | 012070519 | 01651980 BAYOU RESERVE APTS | 286 | P | 5,040.00 | 7550107 | 00001 |
| 110 PC Sales | 3/10/14 | M | | 012061099 | 01685537 STELLA'S KITCHEN | 286 | P | 420.00 | 7488339 | 00001 |
| | | | | | * Total PC Sales: | | | 5,460.00 | | |
| 125 Odd Job Sale | 3/13/14 | OT | | 012095006 | 01654969 HOUMA HIGH RISE | 286 | P | 50.00 | 7567368 | 00001 |
| 125 Odd Job Sale | 3/19/14 | OT | | 012095050 | 01654969 HOUMA HIGH RISE | 286 | P | 425.00 | 7567444 | 00001 |
| 125 Odd Job Sale | 3/20/14 | OT | | 012101788 | 01656232 MAINSTAY SUITES | 286 | P | 95.00 | 7581685 | 00001 |
| 125 Odd Job Sale | 3/24/14 | OT | | 012101813 | 01656232 MAINSTAY SUITES | 286 | P | 950.00 | 7581772 | 00001 |
| 125 Odd Job Sale | 3/24/14 | OT | | 012107808 | 01667294 SLEEP INN & SUITES | 286 | P | 405.00 | 7596154 | 00001 |
| 125 Odd Job Sale | 3/27/14 | OT | | 012107805 | 01667337 SLEEP INN & SUITES | 286 | P | 350.00 | 7596672 | 00001 |
| 125 Odd Job Sale | 3/29/14 | OT | | 012110192 | 01671108 SLEEP IN & SUITES | 286 | P | 250.00 | 7603478 | 00001 |
| | | | | | * Total Odd Job Sale: | | | 2,525.00 | | |
| 150 Odd Jobs | 3/13/14 | OT | NEW | 012095006 | 01654969 HOUMA HIGH RISE | 286 | N | 50.00 | | 00001 |
| 150 Odd Jobs | 3/20/14 | OT | NEW | 012101788 | 01656232 MAINSTAY SUITES | 286 | N | 95.00 | | 00001 |
| | | | | | * Total Odd Jobs: | | | 145.00 | | |
| 506 Ex Init Sls | 3/10/14 | M | | 012061099 | 01640537 STELLA'S KITCHEN | 286 | P | 100.00 | 7488339 | 00001 |
| | | | | | * Total Ex Init Sls: | | | 100.00 | | |
| | | | | | | | | 100.00 | | |

GPCFOCUS
User ID: QPGMR

Rollins, Inc. & Subsidiaries
Focus Compensation

Page    - : . . . 3629
Date    - : . . 4/03/14
Time    - : . . 06:17 AM

Company:  00002    Division: SCD    Region: 189    Branch:       2860    Houma, LA Home

Employee: 01170737    BERGER, JESSICA B    Year: 14    Month: 3

Commissions Summary for JBERGER

| | Pay | Hold | Not Eligible | Chargeback | Reversal | Not Commissionable |
|---|---|---|---|---|---|---|
| 110 — PC Sales | 5,460.00 | .00 | .00 | .00 | .00 | 5,460.00 |
| 125 — Odd Job Sale | 2,525.00 | .00 | .00 | .00 | .00 | 2,525.00 |
| 150 — Odd Jobs | .00 | .00 | 145.00 | .00 | .00 | .00 |
| 505 — Ex Init Sls | 100.00 | .00 | .00 | .00 | .00 | 100.00 |
| Total for JBERGER | 8,085.00 | .00 | 145.00 | .00 | .00 | 8,085.00 |

J. BERGER 097
GKB & ASSOCIATES

Rollins, Inc. & Subsidiaries
Focus Compensation

Company: 00002    Division: SCD    Region: 189    Branch:    Year: 14    Month: 4

Employee: 01170737    BERGER, JESSICA B    2860 Houma, LA Home

J BERGER & ASSOCIATES 1609

| Pay Type | Trans Date | CAS Typ | Freq | Prod Pay | Service Contract | Customer Name | Cust Branch | Sts | Commission Amt | Sales Tracking ID | Loc Num |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 110 PC Sales | 4/10/14 | M | | | 012121030 | 01659193 MAINSTAY SUITES | 286 | P | 2,040.00 | 7631320 | 00001 |
| 110 PC Sales | 4/21/14 | M | | | 012143096 | 01663264 HUDDLE HOUSE | 286 | P | 660.00 | 7660878 | 00001 |
| 110 PC Sales | 4/23/14 | M | | | 012135233 | 01661B036 COMFORT INN & SUITES | 286 | P | 1,800.00 | 7663013 | 00001 |
| | | | | | | * Total PC Sales: | | | 4,500.00 | | |
| 125 Odd Job Sale | 4/01/14 | OT | | | 012115050 | 01658196J MAINSTAY SUITES | 286 | P | 95.00 | 7613135 | 00001 |
| 125 Odd Job Sale | 4/02/14 | OT | | | 012115867 | 01658201J MAINSTAY SUITES | 286 | P | 95.00 | 7611935 | 00001 |
| 125 Odd Job Sale | 4/07/14 | OT | | | 012124028 | 01659765J SLEEP INN & SUITES | 286 | P | 770.00 | 7638192 | 00001 |
| 125 Odd Job Sale | 4/10/14 | OT | | | 012124408 | 01660552J SLEEP INN & SUITES | 286 | P | 550.00 | 7648212 | 00001 |
| | | | | | | * Total Odd Job Sale: | | | 1,440.00 | | |
| 150 Odd Jobs | 4/01/14 | OT | NEW | | 012115868 | 01658196J MAINSTAY SUITES | 286 | N | 95.00 | | 00001 |
| 150 Odd Jobs | 4/07/14 | OT | NEW | | 012124028 | 01659765J SLEEP INN & SUITES | 286 | N | 95.00 | | 00001 |
| | | | | | | * Total Odd Jobs: | | | 190.00 | | |
| 506 Ex Init Sls | 4/04/14 | M | | | 012107770 | 01656242J SLEEP INN AND SUITES | 286 | F | 40.00 | 7589395 | 00001 |
| 506 Ex Init Sls | 4/10/14 | M | | | 012121030 | 01659193J MAINSTAY SUITES | 286 | F | 130.00 | 7631320 | 00001 |
| 504 Ex Init Sls | 4/21/14 | M | | | 012143096 | 01663264J HUDDLE HOUSE | 286 | F | 55.00 | 7660878 | 00001 |
| 506 Ex Init Sls | 4/23/14 | M | | | 012135233 | 01661B036J COMFORT INN & SUITES | 286 | F | 100.00 | 7663013 | 00001 |
| | | | | | | * Total Ex Init Sls: | | | 325.00 | | |
| 582 HBInspecialE | 4/04/14 | M | | | 012107778 | 01656243J SLEEP INN AND SUITES | 286 | N | 1,920.00 | 7589395 | 00001 |
| | | | | | | * Total HBInspecialE: | | | 1,920.00 | | |

```
GPCFOCUS                           Rollins, Inc. & Subsidiaries                    Page . . . . : 3775
User ID: GPGMR                          Focus Compensation                         Date . . . . : 5/05/14
                                                                                   Time . . . . : 06:14 AM

Company:  00002      Division: SCD   Region: 109   Branch:        2860   Houma, LA Home

Employee: 011707J7   BERGER, JESSICA B              Year: 14   Month: 4

Commissions Summary for JBERGER

                        Pay        Hold    Not Eligible   Chargeback   Reversal   Net Commissionable
                   ---------   --------    ------------   ----------   --------   ------------------
110  - PC Sales     4,500.00        .00             .00          .00        .00            4,500.00
125  - Odd Job Sale 1,440.00        .00             .00          .00        .00            1,440.00
150  - Odd Jobs          .00        .00          190.00          .00        .00                 .00
506  - Ex Init Sls       .00        .00        1,920.00          .00        .00                 .00
582  - BGInspecSale    325.00        .00             .00          .00        .00              325.00
                   =========   ========    ============   ==========   ========   ==================
Total for JBERGER   6,265.00        .00        2,110.00          .00        .00            6,265.00
```

J. BERGER 099
GKB & ASSOCIATES

GPCFOCUS
User ID: OPGMR

Rollins, Inc. & Subsidiaries
Focus Compensation

Company: 00002
Employee: 01170737   BERGER, JESSICA B

Division: SCD   Region: 189   Branch:   Year: 14   Month: 6   2860   Houma, LA Home

Page - : .   3896
Date - : .   7/03/14
Time - . : .   06:20 AM

| Pay Type | Trans Date | CAS Typ | Prod Pay Freq | Service Contract | Customer Name | Cust Branch | Gts | Commission Amt | Sales Tracking ID | Loc Num |
|---|---|---|---|---|---|---|---|---|---|---|
| 110 PC Sales | 6/10/14 | M | | 01222064? | | 286 | P | 480.00 | 7760739 | 00001 |
| 110 PC Sales | 6/12/14 | M | | 01222064? | | 286 | P | 6,250.00 | 7823982 | 00001 |
| 110 PC Sales | 6/30/14 | M | | 01225469J | POPEYE'S #2355 | 286 | P | 400.00 | 8175801 | 00001 |
| 111 PC Sales Cb | 6/30/14 | M | | 01215514S | RESERVE TELECOMMUNICATION 286 CLECO COREORATION 286 | | P | 9,480.00 | 7760739 7823982 8175801 | 00001 00001 00001 |
| | | | | | * Total PC Sales: | | | 10,402.00 | | |
| | | | | 01665561? | CITY BUFFET | 286 | C | 1,320.00- | 7710335 | 00001 |
| | | | | | * Total PC Sales Cb: | | | 1,320.00- | | |
| 146 Team Sls In | 6/20/14 | M | | 01217809? | BAKER HUGHES OILFIELD OPE 286 | | P | 3,984.00 | 7796699 | 00018 |
| 146 Team Sls In | 6/20/14 | M | | 01217809? | BAKER HUGHES OILFIELD OPE 286 | | P | 1,140.00 | 7796705 | 00019 |
| 146 Team Sls In | 6/20/14 | EO | | 01217809? | BAKER HUGHES OILFIELD OPE 286 | | P | 288.00 | 7796705 | 00019 |
| 146 Team Sls In | 6/25/14 | M | | 01217809? | BAKER HUGHES OILFIELD OPE 286 | | P | 852.00 | 7796672 | 00015 |
| 146 Team Sls In | 6/25/14 | EO | | 01217809? | BAKER HUGHES OILFIELD OPE 286 | | P | | 7796664 | 00016 |
| | | | | | * Total Team Sls In: | | | 6,264.00 | | |
| 506 Ex Init Sls | 6/20/14 | M | | 01222064? | | 286 | P | 60.00 | | 00001 |
| 506 Ex Init Sls | 6/20/14 | M | | 01222029? | | 286 | P | 976.00 | | 00001 |
| 506 Ex Init Sls | 6/20/14 | M | | 01217809? | | 286 | P | 340.00 | | 00001 |
| 506 Ex Init Sls | 6/20/14 | M | | 01217809? | | 286 | P | 100.00 | | 00001 |
| 506 Ex Init Sls | 6/25/14 | M | | 01217809? | | 286 | P | 108.00 | | 00001 |
| 506 Ex Init Sls | 6/25/14 | M | | 01217809? | | 286 | P | 59.00 | | 00001 |
| 506 Ex Init Sls | 6/30/14 | M | | 01225469J | POPEYE'S #2355 | 286 | P | 141.50 | | 00016 |
| | | | | | * Total Ex Init Sls: | | | 1,792.50 | | |

J. BERGER 100
GKB & ASSOCIATES

GRCFOCUS
User ID: QPGMR

Rollins, Inc. & Subsidiaries
Focus Compensation

Page — : . : 3897
Date — : . : 7/03/14
Time — : . : 06:20 AM

Company:   00002        Division: 3CD     Region: 189     Branch:               2860   Houma, LA Home

Employee: 01170737     BERGER, JESSICA B                  Year: 14     Month: 6

Commissions Summary for JBERGER

| | Pay | Hold | Not Eligible | Chargeback | Reversal | Net Commissionable |
|---|---|---|---|---|---|---|
| 110 — PC Sales | 10,482.00 | .00 | .00 | | | 10,482.00 |
| 111 — PC Sales CB | | .00 | .00 | | | 1,320.00- |
| 146 — Team Sls In | 6,264.00 | .00 | .00 | 1,320.00- | | 6,264.00- |
| 506 — Ex Init Cls | 1,792.50 | .00 | .00 | | | 1,792.50 |
| Total for JBERGER | 18,538.50 | .00 | .00 | 1,320.00- | .00 | 17,218.50 |

**J. BERGER 101**
**GKB & ASSOCIATES**

```
GYCFOCUS                                          Rollins, Inc. & Subsidiaries                           Page : . . :  3868
User ID: QPGMR                                      Focus Compensation                                   Date : . . :  8/05/14
                                                                                                         Time : . . :  06:10 AM

Company: 00002       Division: 3CD    Region: 189    Branch:         Year:  14    Month:  7

Employee: 01170737   BERGER, JESSICA B                       2860   Houma, LA Home

                                                                                                         BERGER'T 201
                                                                                                         GKB & ASSOCIATES

 Pay Type      Trans    CAS            Prod    Service                             Cust                             Sales      Loc
               Date     Typ Freq Pay   Contract          Customer Name          Branch Sts  Commission Amt     Tracking ID    Num
------------- -------  --- ---- ---- ---------- ------------------------------  ----------  --------------    -----------   -----
 110 PC Sales  7/02/14  M        M    01225A714                                    206   P      351.00         81758090      00001

146 Team Sls In 7/24/14 M        M    007506690  00814487G HAMPTON INN HOUMA       206   P    1,260.00         02992206      01359

                                              * Total PC Sales:                    206   P      351.00
                                              * Total Team Sls In:                 206   P    1,260.00

506 Ex Init Sls 7/02/14 M             01225A714  016047291 POPEYE'S #4556          206   P       58.25         81758090      00001
506 Ex Init Sls 7/24/14 M             007506690  00814487G HAMPTON INN HOUMA       206   P       45.00         02992206      01359

                                              * Total Ex Init Sls:                             103.25
```

```
GPCFOCUS                                                Rollins, Inc. & Subsidiaries                              Page - : . . 3869
User ID: QPGMR                                              Focus Compensation                                   Date - : . . 8/05/14
                                                                                                                 Time : . . . 06:10 AM
Company:  00002      Division: SCD   Region: 109   Branch:        Year: 14    Month: 7    2860   Houma, LA Home

Employee: 01170737   BERGER, JESSICA B

Commissions Summary for JBERGER

                                    Pay          Hold       Not Eligible    Chargeback     Reversal    Net Commissionable
110  - PC Sales                     351.00         .00          .00            .00           .00          351.00
146  - Team Sls                   1,260.00         .00          .00            .00           .00        1,260.00
506  - Ex Init Cls                  103.25         .00          .00            .00           .00          103.25
Total for JBERGER                 1,714.25         .00          .00            .00           .00        1,714.25
```

J. BERGER 103
GKB & ASSOCIATES

0205668 • 12/11

**ORKIN**
**PEST CONTROL**
World's Best

**SPECIAL SERVICE AGREEMENT**

THIS AGREEMENT IS CONTINGENT UPON THE APPROVAL AND SIGNATURE OF THE ORKIN BRANCH MANAGER, WHO HAS THE SOLE AUTHORITY TO EXECUTE IT ON BEHALF OF ORKIN.

11962832

ROUTE # 4   GRID #

SERVICE DAY: FRIDAY

BUSINESS TYPE: Property Mgmt.   DATE: 10/4/13

ACCOUNT NAME (CUSTOMER): Bayou Residence

BRANCH OFFICE: Houma   PHONE: 985-879-1537

SERVICE ADDRESS, NUMBER, STREET: 2464 Tolbot Ave.

BILLING ADDRESS, NUMBER, STREET: Same

CITY, STATE, ZIP CODE: Thibodaux, La. 70301

CITY, STATE, ZIP CODE:

TYPE AND NO. OF STRUCTURES TO SERVICE: Exterior of 10 Apartment Bldg's

PERSON TO CONTACT:

PESTS TO BE TREATED (SPECIFIC OCCASIONAL INVADERS) (DO NOT ABBREVIATE): Fleas, Ants, Spiders
October Service Per
Scope Of Service

SERVICE PHONE: 985-447-4566   OFFICE PHONE: Same

PRODUCTS PURCHASED: Services

I agree to pay Orkin Pest Control the below amount at this time for treatment of the pest(s) indicated.

SERVICES RENDERED         $ 1,000.00
PRODUCTS PURCHASED     $
SALES/SERVICE TAX           $
AMOUNT DUE                    $ 1,000
AMOUNT PAID                   ($        )
BALANCE DUE                   $ 1,000.00

PAYMENT MADE BY:
☐ PO #
☐ CHECK    ☐ CASH
☐ COMPLETE EASY PAYMENT FORM

PROBLEM AREAS: Several Buildings

SPECIAL INSTRUCTIONS
☒ 1 TREATMENT
☐ 2 TREATMENTS
☐ (OTHER)

This Special Service Agreement is guaranteed for 30 days only, and WILL NOT provide permanent control. For CONTINUOUS protection and control, we strongly recommend a REGULAR PEST CONTROL SERVICE.
Service Exclusions. 1. Services Requiring a Separate Agreement: The Customer understands that this Agreement does not cover Bed Bugs, Carpenter Ants, Fire Ants, or Mosquitoes. Service for these pests requires a separate agreement or addendum. The requirement for a separate agreement or addendum cannot be waived by the Customer or any employee or agent of Orkin. 2. Additional Exclusions: This Agreement does not cover Brown Recluse Spiders. This exclusion can not be waived by the Customer or any employee or agent of Orkin. The Customer expressly releases Orkin from liability for any claim for personal injury (including stings or bites from fire ants, spiders, or any other pests) or property damage (to include the structure or contents) caused by any pests.

MEDIATION/ARBITRATION: ANY CONTROVERSY OR CLAIM ARISING OUT OF OR RELATING TO THIS AGREEMENT, OR THE SERVICES PERFORMED BY ORKIN UNDER THIS AGREEMENT OR ANY OTHER AGREEMENT, REGARDLESS OF WHETHER THE CONTROVERSY OR CLAIM AROSE BEFORE OR AFTER THE EXECUTION, TRANSFER OR ACCEPTANCE OF THIS AGREEMENT, INCLUDING BUT NOT LIMITED TO ANY TORT AND STATUTORY CLAIMS, AND ANY CLAIMS FOR PERSONAL OR BODILY INJURY OR DAMAGE TO REAL OR PERSONAL PROPERTY, SHALL BE SETTLED BY BINDING ARBITRATION, UNLESS THE PARTIES AGREE OTHERWISE. THE ARBITRATION SHALL BE ADMINISTERED UNDER THE RULES OF THE AMERICAN ARBITRATION ASSOCIATION ("AAA") AND SHALL BE CONDUCTED BY AAA. IF ADMINISTERED UNDER THE AAA RULES, A CLAIM SHALL BE DETERMINED UNDER THE AAA SUPPLEMENTARY PROCEDURES FOR CONSUMER-RELATED DISPUTES IN CASES WHERE SUCH PROCEDURES ARE APPLICABLE. ANY OTHER CONTROVERSY OR CLAIM SHALL BE DETERMINED UNDER THE AAA COMMERCIAL ARBITRATION RULES. THE CUSTOMER AND ORKIN AGREE THAT THE ARBITRATOR SHALL FOLLOW THE SUBSTANTIVE LAW, INCLUDING THE TERMS AND CONDITIONS OF THIS AGREEMENT. THE ARBITRATOR'S POWERS TO CONDUCT ANY ARBITRATION PROCEEDING UNDER THIS AGREEMENT SHALL BE LIMITED AS FOLLOWS: ANY ARBITRATION PROCEEDING UNDER THIS AGREEMENT WILL NOT BE CONSOLIDATED OR JOINED WITH ANY ACTION OR LEGAL PROCEEDING UNDER ANY OTHER AGREEMENT OR INVOLVING ANY OTHER PREMISES, AND WILL NOT PROCEED AS A CLASS ACTION, PRIVATE ATTORNEY GENERAL ACTION OR SIMILAR REPRESENTATIVE ACTION. EITHER PARTY HAS THE RIGHT TO REQUIRE A PANEL OF THREE (3) ARBITRATORS, BUT IN THE ABSENCE OF THE PARTIES' AGREEMENT, THE REQUESTING PARTY SHALL BE RESPONSIBLE FOR THE COST OF THE ADDITIONAL ARBITRATORS. EITHER PARTY MAY REQUEST AT ANY TIME PRIOR TO THE HEARING THAT THE AWARD BE ACCOMPANIED BY A REASONED OPINION. THE AWARD RENDERED BY THE ARBITRATOR(S) SHALL BE FINAL AND BINDING ON ALL PARTIES, EXCEPT THAT A PARTY MAY WITHIN 30 DAYS OF THE ORIGINAL AWARD REQUEST AN ARBITRAL APPEAL TO AN APPEAL TRIBUNAL, CONSTITUTED IN THE SAME NUMBER AND BY THE SAME PROCESS AS THE INITIAL ARBITRATOR(S). THE APPEALING PARTY SHALL BE RESPONSIBLE FOR THE FILING FEE AND OTHER ARBITRATION FEES AND COSTS SUBJECT TO AWARD BY THE APPEAL TRIBUNAL UNDER APPLICABLE LAW. THE APPEAL TRIBUNAL SHALL REVIEW ALL QUESTIONS OF LAW AND FACT UNDER A CLEARLY ERRONEOUS STANDARD. THE AWARD OF THE APPEAL TRIBUNAL SHALL BE FINAL AND BINDING. JUDGMENT MAY BE ENTERED ON THE AWARD IN ANY COURT HAVING JURISDICTION THEREOF. CUSTOMER AND ORKIN ACKNOWLEDGE AND AGREE THAT THIS ARBITRATION PROVISION IS MADE PURSUANT TO A TRANSACTION INVOLVING INTERSTATE COMMERCE AND SHALL BE GOVERNED BY THE FEDERAL ARBITRATION ACT. BEFORE COMMENCE AND SHALL BE ARBITRATION, CUSTOMER AND ORKIN EACH AGREES TO TRY IN GOOD FAITH TO SETTLE ANY CONTROVERSY OR CLAIM BY AT LEAST FOUR (4) HOURS OF MEDIATION ADMINISTERED UNDER THE AAA COMMERCIAL MEDIATION RULES WITH ORKIN AGREEING TO PAY THE COSTS OF THE MEDIATION. THE AAA MAY BE CONTACTED AT http://www.adr.org. THE TOLL-FREE NUMBER 800 778.7.   BSITE.

J. BERGER 104
GKB & ASSOCIATES

CHEMICAL INFORMATION WARNING:                                    may be
present for a period of time after applicatic                      ves you
have a sensitivity to chemical odor or che                    initial or
a subsequent service performed at you.                       r family
physician. At your request, Orkin will provide information about the chemicals to be used in treating the premises.

CANCELLATION: CUSTOMER MAY CANCEL THIS AGREEMENT AT ANY TIME PRIOR TO MIDNIGHT OF THE THIRD BUSINESS DAY AFTER THE DATE OF THIS TRANSACTION.

Jessica Berger / W. Zimmerman
ORKIN INSPECTOR

109 Venture Blvd
BRANCH ADDRESS: STREET

Houma, La. 70360
CITY, STATE, ZIP CODE

DATE: 10/9/13

Management Approval (This agreement has been verified and monies have been received as indicated)

Accepted By:
Signature   ☐ Owner  ☐ Lessee  ☐ Agent

Title: Manager

191387 REV. 11/2011

LOCATION

2703060

Run Time: 12:56:38

Pest Control Initial Start Information
ORKIN - HOUMA, LA

Report: FCSV1062

Lead ID: 13608201
Focus Service Contract #: 11962832   Customer ID: 16309178   Location:   1   Sold Date: 10/04/13
Schedule Status:
Schedule Start Date: 10/9 /2013   Schedule Start Time:

Page:   1

Directions:

Schedule End Time:

Nearest Cross Street:

Customer Service Information:
Contact Person:
Name:      BAYOU RESERVE
Address:   2464 TALBOT AVE

City:        THIBODAUX                                    email:
County:      LAFOURCHE
Home Phone: (985) 447-4566                     State: LA   Zip:   70301
Preferred Contact Phone:  Service   Work/Alt Bus Phone:   Within City Limits:   N
                                                                    Cell Phone:
Type of Service:        Comm Standard Pest Svc
Special Instructions:
                                                          Frequency: One Time

Description (Service Information):

Target Pest: PEST: OCCASIONAL INVADERS
Number and Type of Pets:

Does anyone have allergies. respiratory or medical conditions. which would be affected by treatment?

ructure Type:
itial Charge: 1.000.00
vice Charge: 1.000.00
ment Type:   *Blank                       Number of Bedrooms: 0       J. BERGER 105
                                          Number of Baths:    .0       GKB & ASSOCIATES
                                          NCS:            JBERGER1

lete the following tasks immediately:

mplete the appropriate Service Agreement ready for the customer to approve.
tach the pre-printed service ticket and completed Service Agreement to this document.
le in the Pending Start's I-31 file for the appropriate scheduled start day.

ORKIN
COMMERCIAL SERVICES

ORKIN - HOUMA, LA
109 VENTURE BLVD
HOUMA, LA 70360
(985) 879-1537

E-MAIL

LPCO: 00013008
GRID:           STOP#:
ROUTE:
FREQ:

PRIOR BALANCE:
THIS SERVICE:
TAX:
TOTAL DUE:
THIS SERVICE

Amount Paid _____
☐ Cash
☐ Check      Ck# _____

CUSTOMER SIGNATURE      ARE YOU SATISFIED ☐ YES ☐ NO      TECH ___
Follow Up Service Date ___

Date ___
Time In ___  AM / PM
Time Out ___  AM / PM

Scheduled Date ___      Prior Service ___

TYPE OF SERVICE
☐ Regular   ☐ Call Back or Follow-Up   ☐ Start
☐ Odd Job   ☐ Extra Service

Pesticide Product Labels are Available Upon Request.
For additional information, a copy of the Label and/or MSDS
may be requested from your local branch.

ENVIRONMENTAL INSPECTION INDICATES THE FOLLOWING CONDITIONS: (Explain "no" answers, under comments)

A) Yes No NA  SANITATION
☐ ☐ ☐ 1. Premises free of litter and debris?
☐ ☐ ☐ 2. Garbage containers cleaned and covered?
☐ ☐ ☐ 3. Elevator pit clean from litter and debris?
☐ ☐ ☐ 4. Food preparation and storage equipment free from food debris?
☐ ☐ ☐ 5. Mops and brooms stored off floor, on racks?
☐ ☐ ☐ 6. Restrooms clean, clutter free?
☐ ☐ ☐ 7. Locker / break rooms clean and accessible?
☐ ☐ ☐ 8. Storage area clean and orderly?

D) Yes No NA  PLUMBING
☐ ☐ ☐ 1. Drain covers present in good repair?
☐ ☐ ☐ 2. Pipes free from broken insulation?
☐ ☐ ☐ 3. Pipes free from leaks?

E) Yes No NA  FLY CONTROL
☐ ☐ ☐ 1. Is fly control adequate?
☐ ☐ ☐ 2. Is odor control adequate?

Wind Direction        Wind Velocity        Temperature

Humidity        Sky Condition

COMMENTS

STRUCTURE
Exterior doors / windows rodent insect proof?
_gs / floors free from missing / or broken tiles?
_elect wells, pipes, conduits _rage lines, ceiling?
_haust fans screened?
PRACTICES
_way from floor and
_goods removed
_tainers

J. BERGER 106
GKB & ASSOCIATES

Orkin takes care to place treatment materials where they will achieve maximum effectiveness. For codes, see other side.

| Products | Quantity | Sites | Specific Site Application Area (if applicable) | Method | Equipment | Application Rate (if applicable) |
|---|---|---|---|---|---|---|
|  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |

CONFORMENT NOTIFICATION(S) / POST APPLICATION STATEMENTS   FOR INFORMATION REGARDING CODES LISTED ABOVE, SEE REVERSE SIDE
Treated Area(s) - Do not allow unprotected persons, children, or pets to touch, enter, or replace liners or bedding, to contact or enter treated area(s) until dry
Ventilation/Reoccupying - Vacate and keep area(s) closed up to 30 minutes after treatment, then ventilate area(s) for up to 2 hours before reoccupying.
Equipment/Processing/Food - Thoroughly wash dishes, utensils, food preparation/processing equipment and surfaces with an effective cleaning compound and rinse with clean water, if not removed or covered during a treatment. The area should be odor free before food products are placed in there.
Exterior Applications (Baits) - Do not allow grazing of feed, lawn or sod clippings to livestock after bait applications.
Granular Application(s) - Do not water to the point of run off.

Treatment

| | Previous Inventory | Number Picked-up | # Added (No Charge) | Replaced/New (Chargeable) + | New Inventory | Equipment Charge $ |
|---|---|---|---|---|---|---|
| Commercial Establishments |  |  |  |  |  |  |
| Air Scents |  |  |  |  |  |  |
| Exterior Bait Stations |  |  |  |  |  |  |
| Interior Bait Stations |  |  |  |  |  |  |
| Multi Catch Traps |  |  |  |  |  |  |
| Glue/Airs |  |  |  |  |  |  |
| OE-30 |  |  |  |  |  |  |

Customer Initials

☐ Actively reported. Treatment resolved for target pests below.
☐ German Roaches   ☐ Rats
☐ American Roaches ☐ Mice
☐ Oriental Roaches
☐ Carpenter Ants
☐ Fire Ants
☐ Ants (Other)
☐ Other

☐ No activity reported. Preventive treatment rendered for target pests
☐ German Roaches   ☐ Rats
☐ American Roaches ☐ Mice
☐ Oriental Roaches
☐ Carpenter Ants
☐ Fire Ants
☐ Ants (Other)
☐ Other

☐ Do not burn firewood for 1 month after treatment.

the Colorado Department of Agriculture.
PESTICIDE APPLICATIONS UNTIL DRY, DISSIPATED OR AERATED.
*EEP CHILDREN AND PETS AWAY FROM
*T. ORKIN PEST CONTROL - C4029BCD AT
1-800-346-7546.

| DATE | 11-Oct-13 | INVOICE | Bayou Reserve |
| INV# | 84465287 | | 2464 Talbot Ave |
| | | | Thibodaux, LA 70301 |

### ONE TIME SERVICE

PEST CONTROL

| | | | AMOUNT |
|---|---|---|---|
| 10/04/13 | Acct#11962832 | Exterior Pest Control Service on 10 Apartment Bldgs | $ 1,500.00 |

Please Remit to:

ORKIN LLC Branch 286
109 Venture Blvd
Houma, LA 70360

$ 1,500.00

J. BERGER 107
GKB & ASSOCIATES

# Transmission Log

Houma Orkin 286       Wednesday, 2013-12-11  09:18       19858532724

| Date | Time | Type | Job # | Length | Speed | Station Name/Number | Pgs | Status |
| ---------- | ----- | ---- | ----- | ------ | ----- | ------------------- | --- | --------------- |
| 2013-12-11 | 09:16 | SCAN | 01447 | 1:12 | 26400 | Orkin 695 | 6 | OK -- V.34 1231 |

### ORKIN LLC
**109 VENTURE BLVD.**
**HOUMA, LA 70360**
**BRANCH 286**

### FAX COVER SHEET

DATE: _December 11, 2013_

TO: _Ed Smit_

FROM: _Jessica Berger_

RE: _Here is the whole packet._
_Let me know if you need_
_anything else._
_Thanks!!_
_:)_

**THIS FAX HAS** _6_ **PAGES, INCLUDING THIS COVER SHEET**

**IF THIS FAX IS INCOMPLETE, PLEASE CALL (985)879-1537**
                                           **FAX  (985) 853-2724**



**J. BERGER 108**
**GKB & ASSOCIATES**

O206053 • 3/13



**Orkin Pest Control**
**Commercial Services Agreement**

THIS AGREEMENT IS CONTINGENT UPON THE APPROVAL AND
SIGNATURE OF A REPRESENTATIVE OF ORKIN MANAGEMENT,
WHO HAS AUTHORITY TO EXECUTE IT ON BEHALF OF ORKIN.

COMMERCIAL SERVICES

12016080

| ROUTE | GRID # |
|---|---|

Date 12-10-13

Customer Name MHM Urgent Care Houma

Billing Address 5922 West Main St. Ste A     Zip Code 70360     Phone 985-262-8015

City Houma     State LA

I. INTENT
A. This agreement is intended to constitute a mutual understanding between MHM Urgent Care Houma (the Customer) and Orkin, LLC (Orkin Pest Control).

B. The specifications include services to be rendered by Orkin at the building(s) and premises of the Customer located at (service address): 5922 W. Main St Ste A, Houma LA 70360

County Name: Terrebonne     Is this within city limits? ☒ Yes ☐ No     ☐ Gold Medal Customer ☐ Element

II. SCOPE AND NATURE OF WORK

III. CUSTOMER OBLIGATIONS

IV. SERVICE SCHEDULE     ☒ 1 Time ☐ 2 Times ☐ 3 Times [per month]

V. TERMS OF AGREEMENT

VI. PAYMENT
A. The cost of the services described herein shall be $ 55.00 plus tax of $ ____ 

VII. MATERIALS

VIII. MATERIALS

IX. LIMITATION OF LIABILITY

X. EQUIPMENT REPLACEMENT

XI. INSURANCE

XII. CHEMICAL INFORMATION WARNING

XIII. MEDIATION/ARBITRATION

**PAYMENT SUMMARY** (includes ☒ pest ☐ by ☐ odor ☐ other ____)
CHECK THOSE THAT APPLY

1. INITIAL PAYMENT
   a. Initial / Start-up Service ........... $ 55.00
   b. One-Time Charges ................... $ ____
   c. Product Sales ....................... $ ____
   d. Sales Tax (if applicable) ........... $ ____
   TOTAL (1a + 1b + 1c + 1d) ......... $ 55.00

2. MONTHLY TREATMENT SERVICE CHARGES
   a. Monthly Treatment Service Charges .. $ 55.00
   b. Sales Tax (if applicable) ........... $ ____
   TOTAL (2a + 2b) .................... $ 55.00

3. MONTHLY LEASE CHARGES
   a. Leased Component Charges ........... $ ____
   ☐ Sconce ☐ Standard ☐ Industrial ☐ Orkin/Aires ☐ AutoFresh
   ☐ Other ____
   b. Sales Tax (if applicable) ........... $ ____
   TOTAL (3a + 3b) .................... $ -0-

4. Product Sales / One-Time Charges plus tax (if applicable) ... $ ____

FIRST MONTH'S INVESTMENT (Total of 1a, b, c, and d) ... $ 55.00

MONTHLY SERVICE / LEASE PAYMENT (Total of 2 + 3) ... $ 55.00

J. BERGER 109
GKB & ASSOCIATES

XIII. AMOUNT REMITTED: $ ____ ☐ Cash ☐ Check ☐ Complete Easy Payment Form

Ms. Essica Berger  1070997  (1170737)

Inspector Name (PRINT)     Employee ID # or Certificate #

985-879-1537
Branch Telephone Number

109 Venture Blvd.
Branch Street Address

Houma     LA     70360
City     State     Zip Code

X Danae Marcel
Customer's Signature     Date 12-10-13

THIS AGREEMENT IS NOT VALID UNTIL APPROVED BY ORKIN MANAGEMENT

☐ P.O. Number

**ORKIN**
COMMERCIAL SERVICES

Branch # _286_
*Scope of Service*

LEAD □ Y or ☒ N
LEAD # _____
NAT'L □ Y or ☒ N

□ Branch   □ Technician   □ DSM

Account Manager: _Jessica Berger_     Sales Person #1 _Jessica Berger_ % _50_
Date Sold: _12-10-13_     Sales Person #2 _Ed Smit_ % _50_
Date Rec'd: _12-09-13_     Bus Dev Mgr: _____ % ____
Business Name: _MHM Urgent Care Houma_
Service Address: _5922 W Main St, Suite A, Houma LA 70360_
Owner/Manager: _Dr John King - owner / Danae Marcel - office mngr._
Contact Person: _Danae Marcel_     Phone: _985·262·8015_

☒ New Sale   □ Addendum   □ Renewal   □ Change   □ Price Inc/Dec   □ Other:_____
□ Weekly   ☒ Monthly   □ Semi-Mo   □ Bi-Monthly   □ Quarterly   □ Seasonal   □ One Time
□ Auto Pay   □ PO# ____   □ Billed   □ Group Bill   □ COD   □ Initial Pd/COD $_____
**Grid:** _____   **Sq Footage:** _____   **Audited:** □ Yes □ No **Agency:** _____
Initial Charge: _55.00_   Monthly/Bi-Monthly/Quarterly: _55.00_   Total Sale: _660.00_

**Business Code:**

□ AIR   □ PROPM   □ LODG   □ GOVT   □ HEALT   □ RES   □ RETAI   □ EDUC   □ FARM   □ FDPRO   □ RSTR
         Rick Jordan   Oscar Merino   Deborah Toth   Robb Rebisa   Joey Gotte/Chester Johnson          Larry Brennan   Frank Allen
**Treatment Areas:**

**Prop Mgmt:** □ Offices   □ Restrooms □ Storage   □ Breakroom   □ Common Area □ Dumpster
**Lodging:** □ Laundry   □ Vending   □ Pking Gar   Rotation: _____ Rooms per _____
**Healthcare:** □ Nursing   □ Pharmacy   □ Court Yard   Rotation: _____ Rooms per _____
**Retail:** □ Sales Floor   □ Restrooms □ Storage   □ Breakroom   □ Check-Out   □ Dumpster
**Food Pr/Dist:** □ Food Prep   □ Food Store □ Food Pkg   □ Receiving   □ Shipping   □ Compcter
         □ Warehouse   □ Prod Area   □ Mechanical   □ Docks   □ Non-Food
**Foodservice:** □ Kitchen   □ Dining Rm   □ Wait Stations □ Prep Areas   □ Storage   □ Dumpster
         □ Bar   □ Deli   □ Food Stores □ Common Area □ Check-out   □ Dock

Rodent Control: Interior # _____ Exterior # _____ Placards: □ Yes □ No Other:_____
Pests Identified: _General pest control_
Areas of Concern: _none_
Initial Treatment: _____
Interior Treatment: _____     J. BERGER 110
                                   GKB & ASSOCIATES
Exterior Treatment: _____
Other Instructions: _Please call ofc. mngr @ 860-1778 before service_
_to meet tech @ location before of facility opens. 9-930am_

Attached: □ Agreement (4 parts)   □ Rate Card   □ Graph   □ Floor Level   □ Easy Pay

1205425 • 09/13



COMMERCIAL SERVICES

## Commercial Easy Payment Options and Savings

**Please Verify Billing Address & Contact Information:**

Company Name: _MHM Urgent Care Houma_   Service Rate: _1 × mo_

Attention to: _Danae Marcel / John King_   Customer PO #: _____

Billing Address: _5922 W Main St_

_Ste A , Houma LA  70360_

Billing Telephone: _985 262 8015_   Fax: _985 · 262 8016_

Billing Contact Person: _Danae Marcel_   Title: _office manager_

E-mail Address: _dmarcel@mhmurgentcare.com_

**Please Verify Service Address & Contact Information (IF DIFFERENT):**

Service Name: _____

Service Address: _____

_____

Service Telephone: _____   Fax: _____

Service Contact Person: _Danae Marcel / John King_   Title: _office manager / owner_

**Please Initial One of the Following Payment Methods:**

_____ **Automatic Payment Program** - You can pay for your service with your credit card or bank checkcard by joining our automatic payment program. Simply complete the authorization below and your credit card or bank checkcard (displaying the Visa or MasterCard logo) will be charged.

_X DM_ **Save 4% by Paying a Year in Advance** - The easiest way to pay for your service is to pay for the entire year in advance with a single payment. If you choose this option, Orkin will give you a 4% discount on the present rate.

_____ **Billing (Pay Net 30 Days)** - Orkin will pre-bill at the beginning of each month. This statement will show the month's scheduled services plus any past due amount. (Please verify billing information.)

_____ **Pay Your Specialist** - Our specialists can take your payment in the form of a check, credit card, bank checkcard or cash after your service has been completed to your satisfaction.

**(Customer has the option to change payment options at any time.)**

---

AUTOMATIC PAYMENT AUTHORIZATION

I (We) authorize the credit card company listed below to tender payment to ORKIN for services rendered, when it is charged, and to post the payment to our account.

VISA / MC / DISCOVER #:_____   Expiration Date_____
(Circle appropriate card type)

Card Holder's Name (as it appears on the card) _____

Orkin is authorized to initiate debit entries against our credit card account listed above for the regularly scheduled services listed above performed by Orkin at such times when these amounts become due. I (We) authorize the credit card company to accept any debit entries initiated by Orkin to be debited from the account. I (We) have the right to cancel this automatic payment authorization by submitting to Orkin written notice 30 days in advance of the intended termination of this authorization, this authorization will remain in effect until Orkin has received that written notification. **J. BERGER III** customer's responsibility to copy or notify the credit card company that this authorization is being c **GKB & ASSOCIATES** the automatic payment authorization does not cancel the pest control service agreement or the cu thereunder.

Date _____   Signature _____

---

FOR OFFICE USE ONLY

Processed By: _____   Date Entered: _____

1208442 • 5/12

**ORKIN**

COMMERCIAL SERVICES

## FLOOR LEVEL
## INSPECTION REPORT

Time In 10:15

Time Out 10:30

Date 12-10-13

Jessica Berger
Inspector - Print Name

**CUSTOMER INFORMATION**

Name MMM Urgent Care

Address 5922 W Main St

Store # Ste A    Ph. # 202·8015

Manager Dinae Marrel

**LOCATION INFORMATION**

Name Orkin    Ph. # 879-1537

Pest Specialist Leslie B    Rt. # 6

Svc. Time ___    Frequency 1 x mo

| Line | SITE | ACTIVE INFESTATION FOUND Yes | No | PEST FOUND (SPECIFY) | CORRECTIVE ACTION REQUIRED by Orkin | by Customer | DESCRIBE ACTION REQUIRED |
|---|---|---|---|---|---|---|---|
| 1. | Lobby | | X | | | | No corrective action needed |
| 2. | Reception Area | X | | | | | " |
| 3. | Nurse's Station | | X | | X | | General PC needed |
| 4. | Patient Rooms | | X | | | | No corrective action needed |
| 5. | Bathrooms | | X | | X | | General PC needed |
| 6. | | | | | | | |
| 7. | | | | | | | |
| 8. | | | | | | | |
| 9. | | | | | | | |
| 10. | | | | | | | |
| 11. | | | | | | | |
| 12. | | | | | | | |
| 13. | | | | | | | |
| 14. | | | | | | | |
| 15. | | | | | | | |

Additional Comments General Pest Control needed as preventative.

Does Customer Have:

| | YES | NO |
|---|---|---|
| Hands Free Flushing | | ✓ |
| Restroom Odor Control | | ✓ |
| Flying Insect Traps | | ✓ |
| Floor Care Program in place | | X |

| | YES | NO |
|---|---|---|
| Drain Odor Present | | ✓ |
| Floor Drains Clean | ✓ | |
| Door Sweeps Needed | | ✓ |
| Dumpster Odor Present | | X |

J. BERGER 112
GKB & ASSOCIATES

Inspector
Signature

Customer

# ORKIN, INC.

COMMERCIAL SERVICES

Customer Name _MHM Urgent Care Houma_   DATE _12-10-13_
Address _5922 W. Main St_   City _Houma_   State _LA_



HALL

HALL

Reception Area

Nurses station

Lobby

J. BERGER 113
GKB & ASSOCIATES

Drawn To What Scale = 1 Square =
_X mo_
Frequency Of Service
KEY TO GRAPH CODES
Infestation – Double Letters (AP)
Housekeeping – Maintenance – Single Letter (B)

Person To Contact _Danae Marcel_ Phone _262-8015_
Special Instructions For Servicing:
ORKIN Rep. _Jessica Berger_

**ORKIN LLC**
**109 VENTURE BLVD.**
**HOUMA, LA 70360**
**BRANCH 286**

**FAX COVER SHEET**

DATE: _December 11, 2013_

TO: _Ed Smit_

FROM: _Jessica Berger_

RE: _Here is the whole packet._
_Let me know if you need_
_anything else._
_Thanks!!_
_:)_

**THIS FAX HAS** ___6___ **PAGES, INCLUDING THIS COVER SHEET**

**IF THIS FAX IS INCOMPLETE, PLEASE CALL (985)879-1537**
**FAX (985) 853-2724**



J. BERGER 114
GKB & ASSOCIATES



**Orkin Commercial**
**Mosquito Service Agreement**

COMMERCIAL SERVICES

THIS AGREEMENT IS CONTINGENT UPON THE APPROVAL AND SIGNATURE OF A REPRESENTATIVE OF ORKIN MANAGEMENT, WHO HAS AUTHORITY TO EXECUTE IT ON BEHALF OF ORKIN.

543702

ROUTE          GRID #

Customer Name   USCG GRAND ISLE STATION
Billing Address   453 ADMIRAL CRAIK DR
City   GRAND ISLE          State   LA          Zip Code   70358

Date   06·19·2014
Phone   985·787·4549

**CIRCLE SCHEDULED SERVICE MONTHS**

| Jan | Feb | Mar | Apr | May | Jun | Jul | Aug | Sep | Oct | Nov | Dec |
|-----|-----|-----|-----|-----|-----|-----|-----|-----|-----|-----|-----|
| 1st | 2nd | 3rd | 4th | | Mon | Tue | Wed | Thu | Fri | Sat | |

- **SERVICE:** Orkin will provide Mosquito Service for the service season noted above, under the terms and conditions in this Agreement, consisting of one service per month as specified above and additional treatments as deemed necessary by Orkin. This service is intended to suppress mosquitoes, not control or eliminate them. The service will be on the day as scheduled above, and Customer agrees to make the area to be treated accessible. If the area to be treated is not accessible, the Customer will need to call to reschedule the service. The schedule should be followed to obtain the best results.
- **DISCLAIMER OF GUARANTEE:** Orkin is performing a service and expressly disclaims any guarantee of any kind, whether express or implied. Orkin does not guarantee that mosquitoes will not return. Moreover, Orkin cannot guarantee control or elimination of mosquitoes, nor does it guarantee against an invasion of mosquitoes from neighboring areas.
- **LIMITATION OF LIABILITY:** Customer expressly releases Orkin from liability for any claim for personal injury (including stings, bites or pest-borne illnesses from mosquitoes or any other pests including, but not limited to West Nile Virus) or property damage (to include the structure or contents) caused by mosquitoes or any other pests. Customer agrees that under no circumstances shall Orkin be liable for any amount greater than the amount paid by the Customer to Orkin for the services to be provided. In no event will Orkin be responsible for consequential damages for loss of use of property. Any claim by Customer for damages must be made in writing within one (1) year of the incident at issue or it will be deemed waived.
- **TERM:** After the initial one year period, this Agreement is automatically renewable on an annual basis, and can be cancelled any time after the first 12 months by either party by giving a 30 day written notice.
- **CUSTOMER OBLIGATIONS:** Customer understands that results of service are relative to and dependent upon the cooperation of the Customer as to reduction or removal of conducive conditions for mosquito breeding grounds and accessibility of areas to be serviced. Customer agrees to cooperate with Orkin as reasonably necessary to facilitate service.
- **SATISFACTION:** If, during the regularly scheduled treatment, you are not satisfied with the results, Orkin will continue to work to solve your problem to your satisfaction, or Orkin will refund a portion of your service charge. Should you choose to discontinue the service and you have a credit or any prepaid service charges, you will receive a refund of the balance of your service charge for the services not yet performed.
- **MEDIATION/ARBITRATION:** ANY CONTROVERSY OR CLAIM ARISING OUT OF OR RELATING TO THIS AGREEMENT, OR THE SERVICES PERFORMED BY ORKIN UNDER THIS AGREEMENT OR ANY OTHER AGREEMENT, REGARDLESS OF WHETHER THE CONTROVERSY OR CLAIM AROSE BEFORE OR AFTER THE EXECUTION, TRANSFER OR ACCEPTANCE OF THIS AGREEMENT, INCLUDING BUT NOT LIMITED TO ANY TORT AND STATUTORY CLAIMS, AND ANY CLAIMS FOR PERSONAL OR BODILY INJURY OR DAMAGE TO REAL OR PERSONAL PROPERTY, SHALL BE SETTLED BY BINDING ARBITRATION. UNLESS THE PARTIES AGREE OTHERWISE. THE ARBITRATION SHALL BE ADMINISTERED UNDER THE RULES OF THE AMERICAN ARBITRATION ASSOCIATION THAT ARE IN EFFECT AT THE TIME THE ARBITRATION IS COMMENCED BY AAA. IF ADMINISTERED UNDER THE AAA RULES, A CLAIM SHALL BE DETERMINED UNDER THE AAA SUPPLEMENTARY PROCEDURES FOR CONSUMER-RELATED DISPUTES IN CASES WHERE SUCH PROCEDURES ARE APPLICABLE. ANY OTHER CONTROVERSY OR CLAIM SHALL BE DETERMINED UNDER THE AAA COMMERCIAL ARBITRATION RULES. THE CUSTOMER AND ORKIN AGREE THAT THE ARBITRATOR SHALL FOLLOW THE SUBSTANTIVE LAW, INCLUDING THE TERMS AND CONDITIONS OF THIS AGREEMENT. THE ARBITRATOR'S POWERS TO CONDUCT ANY ARBITRATION PROCEEDING UNDER THIS AGREEMENT SHALL BE LIMITED AS FOLLOWS: ANY ARBITRATION PROCEEDING UNDER THIS AGREEMENT WILL NOT BE CONSOLIDATED OR JOINED WITH ANY ACTION OR LEGAL PROCEEDING UNDER ANY OTHER AGREEMENT, OR INVOLVING ANY OTHER PREMISES, AND WILL NOT PROCEED AS A CLASS ACTION, PRIVATE ATTORNEY GENERAL ACTION OR SIMILAR REPRESENTATIVE ACTION. EITHER PARTY HAS THE RIGHT TO REQUIRE A PANEL OF THREE (3) ARBITRATORS, BUT IN THE ABSENCE OF THE PARTIES' AGREEMENT, THE REQUESTING PARTY SHALL BE RESPONSIBLE FOR THE COST OF THE ADDITIONAL ARBITRATORS. EITHER PARTY MAY REQUEST AT ANY TIME PRIOR TO THE HEARING THAT THE AWARD BE ACCOMPANIED BY A REASONED OPINION. THE AWARD RENDERED BY THE ARBITRATOR(S) SHALL BE FINAL AND BINDING ON ALL PARTIES, EXCEPT THAT A PARTY MAY WITHIN 30 DAYS OF THE ORIGINAL AWARD REQUEST AN ARBITRAL APPEAL TO AN APPEAL TRIBUNAL, CONSTITUTED IN THE SAME NUMBER AND BY THE SAME PROCESS AS THE INITIAL ARBITRATOR(S). THE APPEALING PARTY SHALL BE RESPONSIBLE FOR THE FILING FEE AND OTHER ARBITRATION FEES AND COSTS SUBJECT TO AWARD BY THE APPEAL TRIBUNAL UNDER APPLICABLE LAW. THE APPEAL TRIBUNAL SHALL REVIEW ALL QUESTIONS OF LAW AND FACT UNDER A CLEARLY ERRONEOUS STANDARD. THE AWARD OF THE APPEAL TRIBUNAL SHALL BE FINAL AND BINDING. JUDGMENT MAY BE ENTERED ON THE AWARD IN ANY COURT HAVING JURISDICTION THEREOF. CUSTOMER AND ORKIN ACKNOWLEDGE AND AGREE THAT THIS ARBITRATION PROVISION IS MADE PURSUANT TO A TRANSACTION INVOLVING INTERSTATE COMMERCE AND SHALL BE GOVERNED BY THE FEDERAL ARBITRATION ACT. AS A PRECONDITION HAVING RECOURSE TO ARBITRATION, CUSTOMER AND ORKIN EACH AGREES TO TRY IN GOOD FAITH TO SETTLE ANY CONTROVERSY OR CLAIM BY AT LEAST FOUR (4) HOURS OF MEDIATION ADMINISTERED UNDER THE AAA COMMERCIAL MEDIATION RULES WITH ORKIN AGREEING TO PAY THE COSTS OF THE MEDIATION. THE AAA MAY BE CONTACTED AT THE TOLL-FREE NUMBER 800.778.7879, OR THROUGH THE FOLLOWING WEBSITE: http://www.adr.org.
- **CHEMICAL INFORMATION WARNING:** Virtually all pesticides and larvacides have some odor which may be present for a period of time after application. The Customer acknowledges that it has no information, or has communicated to Orkin in writing and information it does have, that any persons on the premises have any medical condition or sensitivity which may be affected by the services contemplated by this Agreement. At your request, Orkin will provide information about the chemicals to be used in treating the premises.
- **SERVICE EXCLUSION:** Customer understands that this Agreement only covers mosquitoes and does not provide any other pest control, nor does it include the control or prevention of wood infesting organisms such as termites, powder post beetles, wood borers, carpenter ants, etc. Customer understands that this does not include treatment for any mold or mold like conditions, which is outside the scope of this Agreement.
- **ENTIRE AGREEMENT:** Customer acknowledges that the only terms and conditions of this agreement are those stated in this written agreement. If any provision or portion thereof, of this Agreement is held invalid, such invalidity shall not affect the validity or enforceability of any other part of this Agreement. Provided, however, that as to the paragraph sentence precluding the arbitrator from conducting an arbitration proceeding as a class, representative or private attorney general action is found to be invalid or unenforceable then the entirety of the MEDIATION/ARBITRATION paragraph shall be deemed to be deleted from this Agreement.

**PAYMENT**

In consideration of the service to be provided, the undersigned agrees to pay to ORKIN PEST CONTROL the following:

Initial Treatment Cost

| | | | |
|---|---|---|---|
| Service Charge | $1500 | x 1 | = $ 1500 |
| Service Charge Sales Tax | | x | = $ |
| | | Total Charge | $ 1500 |

Amount Remitted with Agreement
☐ Cash  ☐ Check
☐ Complete Easy Payment Form

$ 1500 00

Jessica Berger                    1170737                    J. BERGER 115
985·879·1537                                                GKB & ASSOCIATES

109 Venture Blvd
Houma LA  70360

THIS AGREEMENT IS NOT VALID UNTIL APPROVED BY ORKIN MANAGEMENT.

X

160002  REV  3/2010

LOUISIANA DEPARTMENT OF AGRICULTURE & FORESTRY

MIKE STRAIN DVM, COMMISSIONER

Structural Pest Control Commission, P.O. Box 3596, Baton Rouge, LA 70821-9084 (225) 925-4578, FAX (225) 925-3760

STRUCTURAL PEST CONTROL LICENSE:

WAYNE J ZIMMERMAN
109 VENTURE BLVD
HOUMA LA 70360

Date: 04/11/2012
LDAF ID: 00013098
Phone:

Phase(s):   LP1-General Pest Control
LP2-Commercial Vertebrate Control
LP3-Termite Control

ease verify information for correctness. If changes are necessary, make corrections and promptly return to issuing agency.

LOUISIANA DEPARTMENT OF AGRICULTURE & FORESTRY

MIKE STRAIN DVM, COMMISSIONER

Structural Pest Control Commission, P.O. Box 3596, Baton Rouge, LA 70321-9084 (225) 925-4578, FAX (225) 925-3760

Be it known that the individual named below has complied with all relevant requirements of the Louisiana Revised Statutes and effective 03/28/2012 through the date(s) indicated is hereby authorized to engage in **STRUCTURAL PEST CONTROL** in the phases listed.

| Phase(s): | Phase | Recertify By |
|---|---|---|
| | LP1-General Pest Control | 12/31/2014 |
| | LP2-Commercial Vertebrate Control | 12/31/2014 |
| | LP3-Termite Control | 12/31/2014 |

WAYNE J ZIMMERMAN (00013098)

109 VENTURE BLVD
HOUMA LA 70360

ORKIN EXTERMINATING - HOUMA (286) (00016521)

DISPLAY IN PLACE OF BUSINESS

Commissioner





LOUISIANA DEPARTMENT OF
AGRICULTURE & FORESTRY
IDENTIFICATION CARD

ORKIN EXTERMINATING -
HOUMA (286)
JORDY PARFAIT
4216 COUNTRY DR
HOUMA, LA 70343

REGISTRATIONS
ST

ID Number
00137568
Effective Date: 3/13/2013

MIKE STRAIN DVM COMMISSIONER

LOUISIANA DEPARTMENT OF
AGRICULTURE & FORESTRY
IDENTIFICATION CARD

ORKIN EXTERMINATING -
HOUMA (286)
ANDY BOUDREAUX
208 CHERBOURG STREET
HOUMA, LA 70360

REGISTRATIONS
ST

ID Number
00101082
Effective Date: 3/13/2013

MIKE STRAIN DVM COMMISSIONER

J. BERGER 116
GKB & ASSOCIATES



## Contingent Offer

1 message

**Wayne Zimmerman** <WZimmerm@rollins.com>                          Wed, Aug 14, 2013 at 4:40 PM
To: Jessica Berger <jessben414@gmail.com>
Cc: Paul R. Strickland <pstrickla@rollins.com>

Jessica,

Would you be available either Thursday or Friday to meet with me at our office so we can discuss a contingent offer and schedule you for your drug screen and physical? My schedule is just about open either day.

Thanks,

# Wayne Zimmerman

Branch Manager

Orkin Pest Control

Houma, Louisiana

Office (985) 879-1537

Cell (504) 329-8389

Fax (504) 324-0499

J. BERGER 117
GKB & ASSOCIATES



## Scheduling of Pre-Employment Physical

1 message

**Twanda L. Williams** <TWilliams@chr.com>
To: jessben414@gmail.com <jessben414@gmail.com>
Cc: branch286@orkin.com <branch286@orkin.com>

Fri, Aug 16, 2013 at 2:41 PM

Hello Jessica,

Please contact me, at your earliest convenience, for scheduling of your Pre-Employment Physical appointment. Also, be mindful that you need to have your ppwk (7 page packet), with your **Rollins/CHR chain of custody** for your **Drug screen in order to schedule.**

Thank you,



Corporate Health Resources, Inc.

## *CHR... The Industry Leader in Occupational Health Since 1986!*

## *Twanda Williams*

Scheduling Coordinator

Corporate Health Resources, Inc.

J. BERGER 118
GKB & ASSOCIATES

1375 Piccard Drive, Suite 275
Rockville, Maryland 20850
240-813-2850- **Direct**

800-867-0933 x2850- **Toll Free**
240-813-2760 - **Fax**

www.chr.com

Hours 8:30am- 5:00pm EST

This transmission and any files transmitted with it are intended solely for the individual or entity named in the e-mail address and are confidential. If you are the reader of this message, are not the intended recipient, or the employee or agent responsible to deliver it to the intended recipient, any disclosure, copying, distribution, or reliance upon the contents is prohibited. Please notify us immediately and destroy the related message and attachments.

The HIPAA Privacy Rule requires covered entities to safeguard certain Protected Health Information (PHI) related to a person's healthcare. Information being sent to you may include PHI, after appropriate consent, acknowledgment, or authorization from the parent or under circumstances that do not require patient authorization. You, the recipient, are obligated to maintain PHI in a safe and secure manner. You may not re-disclose this patient information without additional patient consent or as required by law. Unauthorized re-disclosure or failure to safeguard PHI could subject us, or you, to penalties described in federal (HIPAA) and state law.


**image001.png**
16 KB



# CHR's Examination Appointment Confirmation

1 message

**null** <twilliams@chr.com>
Reply-to: twilliams@chr.com
To: jessben414@gmail.com, branch286@orkin.com, PhysicalReporting@rollins.com
Cc: twilliams@chr.com

Mon, Aug 19, 2013 at 11:53 AM

***This is a system generated message, PLEASE DO NOT RESPOND.***

Corporate Health Resources, Inc. has scheduled the following examination(s):

Jessica Berger

Occupational Medicine Services LLC
144 Valhi Lagoon Crossing
Houma, LA 70360
United States
Phone: 985-223-0032

Appointment Date: 08/19/2013
Appointment Time: 8-5 (WALK-IN)

Examination Type: Pre-employment Physical w/Resp

Case #242907

*NOTE TO EXAMINEE: Please remind the clinic that you were scheduled by Corporate Health Resources. Please be sure the clinic locates your paperwork to ensure the correct testing is done to avoid delays.

If you have any concerns, please call CHR immediately at (800) 867-0933.*

Charge code:   286 Houma
Business Group:

Contact Name: Physical Reporting

Please print this email and bring it to your scheduled appointment along with a photo ID.

Thank you for using CHR's Examiner Network.

Twanda Williams
Corporate Health Resources, Inc.
PH: 800-867-0933
FAX: 240-813-2760

***This is a system generated message, PLEASE DO NOT RESPOND***

J. BERGER 120
GKB & ASSOCIATES



**(no subject)**
1 message

Wayne Zimmerman <WZimmerm@rollins.com>
To: Jessica Berger <jessben414@gmail.com>

Fri, Aug 23, 2013 at 11:28 AM

Hey Jessica,

We just received approval for your drug test and physical and just waiting for the rest of your background check to come in. Will keep you posted!

Thanks,

# Wayne Zimmerman

Branch Manager

Orkin Pest Control

Houma, Louisiana

Office (985) 879-1537

Cell (504) 329-8389

Fax (504) 324-0499

J. BERGER 121
GKB & ASSOCIATES



## Update
1 message

Jessica Berger <jessben414@gmail.com>
To: Wayne Zimmerman <WZimmerm@rollins.com>

Fri, Aug 23, 2013 at 11:34 AM

Ok, thanks for the update!

Jessica Berger

On Aug 23, 2013 11:28 AM, "Wayne Zimmerman" <WZimmerm@rollins.com> wrote:

Hey Jessica,

We just received approval for your drug test and physical and just waiting for the rest of your background check to come in. Will keep you posted!

Thanks,

# Wayne Zimmerman

Branch Manager

Orkin Pest Control

Houma, Louisiana

Office (985) 879-1537

Cell (504) 329-8389

Fax (504) 324-0499

J. BERGER 122
GKB & ASSOCIATES

5/15/2014

Lisa Mosely - Messages

April 4

**Lisa Mosely**
Y'all are driving me nuts with the arguing!!!!!!!!!! Stop!!! He was sooooo wrong about the dog thing! I called him "grasshopper" and slapped him in back the head before I left!!!
4/4, 5:57pm

**Jessica Benoit Berger**
I hate him
4/4, 5:58pm

**Lisa Mosely**
Grasshopper meaning he has a lot to learn!!!!!
4/4, 5:58pm

**Jessica Benoit Berger**
And I was just about to ask you something
4/4, 5:58pm

**Lisa Mosely**
Okkkkkkkk?
4/4, 5:59pm

**Jessica Benoit Berger**
About the weapon thing? What exactly is the policy?
4/4, 6:02pm

**Lisa Mosely**
No firearms on premises
4/4, 6:02pm

**Jessica Benoit Berger**
Of the branch right?

What about searching my personal vehicle?
4/4, 6:03pm

**Lisa Mosely**
Or in vehicles but it's never come up before.

Really???
4/4, 6:05pm

**Jessica Benoit Berger**
But it's my personal vehicle? Not an Orkin vehicle
4/4, 6:06pm

**Lisa Mosely**
I know but do you get an auto allowance?
4/4, 6:06pm

**Jessica Benoit Berger**
Yes
4/4, 6:06pm

**Lisa Mosely**
Then during work hours and especially in our lot, no firearms, alcohol or drugs! But who's looking?
4/4, 6:08pm

**Jessica Benoit Berger**
I know he hates me and I don't care so
4/4, 6:08pm

J. BERGER 123
GKB & ASSOCIATES

5/15/2014

Lisa Mosely - Messages

Whatever! Beast , behave!!

**Jessica Benoit Berger**
Well he can't search my vehicle without my permission anyways so

4/4, 6:10pm

**Lisa Mosely**
Soooooooooo

4/4, 6:10pm

**Jessica Benoit Berger**
Why what he said about me?

4/4, 6:10pm

**Lisa Mosely**
Nothing, he knows we talk. Just meet your quotas.

4/4, 6:11pm

**Jessica Benoit Berger**
Or what?

4/4, 6:11pm

He's gonna write me up?

He can't, I haven't been here a year.

**Lisa Mosely**
I don't know, just sayin.

4/4, 6:12pm

**Jessica Benoit Berger**
I've had just about enough of his shit

4/4, 6:13pm

**Lisa Mosely**
Just keep moving forward and stop worrying about him!! Chill out.

4/4, 6:14pm

**Jessica Benoit Berger**
Fuck him! I'm done with his ass. And his threats.

4/4, 6:15pm

**Lisa Mosely**
Girl, how did he threatened you?

4/4, 6:15pm

**Jessica Benoit Berger**
He threatens to fire people all the time.

4/4, 6:16pm

**Lisa Mosely**
Who? When?

4/4, 6:16pm

**Jessica Benoit Berger**
Oh this person will be gone by this time and blah blah blah

4/4, 6:16pm

**Lisa Mosely**
Yea, he just full of himself. Don't worry, Marky Mark still there!

4/4, 6:17pm

**Jessica Benoit Berger**
Do you know that next month our sales goal is like 30 grand for commercial!?

4/4, 6:17pm

**Lisa Mosely**
That's crazy! I wonder what we sold last year?

**J. BERGER 124**
**GKB & ASSOCIATES**

4, 6:19pm

5/15/2014                                      Lisa Mosely - Messages



**Jessica Benoit Berger**                                    4/4, 6:19pm
It was like some bird bull shit

Termite I think is like around the same



**Lisa Mosely**                                              4/4, 6:20pm
Oh! That's not realistic.

Crazy! But, he the man so let him worry about it...



**Jessica Benoit Berger**                                    4/4, 6:22pm
He's stupid



**Lisa Mosely**                                              4/4, 6:24pm
He's definitely different, but trust me he will be under scrutiny for awhile.

**J. BERGER 125**
**GKB & ASSOCIATES**

https://www.facebook.com/messages/lisa.mosely.54

5/15/2014                                     Lisa Mosely - Messages

April 22


**Jessica Benoit Berger**
O. M. G.                                                                    4/22, 7:22pm


**Lisa Mosely**
W. T. F.                                                                    4/22, 7:31pm


**Jessica Benoit Berger**
Um I just want to let you know that Andy is no longer my friend.           4/22, 7:32pm

I told him this already so he knows

I'm keeping you in the loop SCONE


**Lisa Mosely**
Look flatbread, what could our little Andy possibly do?                    4/22, 7:34pm


**Jessica Benoit Berger**
Oh well let me just inform u then                                          4/22, 7:35pm

YOUR lil Andy poo made a stink about me going get boots at grainger.

So, I asked him what the issue was and he said we have to watch our cost.


**Lisa Mosely**
Wow! That's weird. Didn't Russ tell you to go get them?                    4/22, 7:38pm


**Jessica Benoit Berger**
Therefore, I said, so it's ok for y'all to get boots from grainger and buy them out of petty cash   4/22, 7:38pm
for a bed bug job but I can't get any for me? He said well that was  a 9 grand job, I said this is
a 500 million dollar job ...

Then one of them passes the comment , well we don't make anything off that

Russ told me to go get them anyways. I told them they should be ashamed of themselves.
And they weren't. But I told Andy I'm not his friend so...

They are sexist mofos

F them


**Lisa Mosely**
O. M. G.                                                                    4/22, 7:40pm


**Jessica Benoit Berger**
;(                                                                          4/22, 7:40pm

Fuckers

I told him I didn't want to see his face

Lol


**Lisa Mosely**
Nice                                                                        4/22, 7:42pm

J. BERGER 126
GKB & ASSOCIATES

5/15/2014                                    Lisa Mosely - Messages



**Jessica Benoit Berger**
What's the deal about grainger? Like why the fit?                    4/22, 7:42pm



**Lisa Mosely**
I don't know, they get stuff there often.                            4/22, 7:43pm



**Jessica Benoit Berger**
Hmm. Dunno                                                           4/22, 7:43pm

Anyway

J. BERGER 127
GKB & ASSOCIATES

https://www.facebook.com/messages/lisa.mosely.54



## Fwd: AM 90 Day Rolling
1 message

**Jessica Berger** <jberger1@rollins.com>
To: Jessica Benoit <jessben41-1@gmail.com>

Thu, May 15, 2014 at 3:29 PM

Sent from my iPhone

Begin forwarded message:

**From:** 'Paul R. Strickland' <
**Date:** May 15, 2014 at 2:52:11 PM CDT
**To:** Alan Parks <                        >, Chris Colbert <                        >, Chris Lawrence <                        >, "Cotton, Raquen R
Hargrave <                        >, Gordon Melerine <                        >, Hearald Fielder <                        >, "Jack A Carter" <                        >, Jeff
'Roger C. Thornton' <                        >, Mike Long <                        >, Mark Latuso <                        >, Michael McDermott
                        >, Russell Callen <                        >, Minor Harwell <                        >, Murray Strickland <                        >,
                        >, Willie Spearman II <                        >, Scott Smith <                        >, Wayne Zimmerman
"George E. Meadors" <                        >, "Christopher W. Rankin" <                        >, "Anthony V. Moffitt" <                        >, Christian I Turgeau
                        >, Lisa Larue <                        >, "Eddie J Smit" <                        >, Gary Baker <                        >,
                        >, Troy M. Townley" <                        >, Melissa Harmon <                        >, "Judy A. Beverung" <                        >, "Larry L. Nagy Jr"
**Cc:** Cindy Thurman <                        >, Don Tavlin <                        >, Patty Easter <                        >, Tiffney Calvert
**Subject:** AM 90 Day Rolling                                    >, James Earl Thomas <                        >

All,

Below are AM 90 Day Rolling

## Account Managers - Rolling 90

| | Branch Number | Branch Name | Name | MTD 02/14 | MTD 03/14 | MTD 04/14 | MTD 05/14 | 3 month Rolling Avg | 12 Month Total |
|---|---|---|---|---|---|---|---|---|---|
| | | LAMS | | | | | | | |
| 1 | 174 | Alexandria | Gary Baker | 12,945 | 10,035 | 15,216 | 7,734 | 12,732 | 232,286 |
| 2 | 175 | Covington | George Meadors | 0 | 350 | 14,660 | 2,133 | 5,003 | 16,160 |
| 3 | 188 | Shreveport | Patricia Easter | 6,107 | 8,139 | 14,510 | 3,085 | 9,585 | 183,477 |
| 4 | 206 | Gulfport | Tiffany Calvert | -49,427 | 60,585 | 6,496 | 3,683 | 38,836 | 208,771 |
| 5 | 210 | Jackson | Melissa Harmon | 24,963 | 5,575 | 15,799 | 1,000 | 15,446 | 363,547 |
| 6 | 210 | Jackson | Christopher Rankin | | 11,603 | 8,565 | 1,063 | 10,084 | 20,168 |
| 7 | 280 | Baton Rouge | Judy Beverung | 5,028 | 12,596 | 15,425 | 8,242 | 11,016 | 155,608 |
| 8 | 280 | Baton Rouge | Lisa Larue | | | | | | |
| 9 | 280 | Baton Rouge | Troy Townley | | | training | training | training | training |
| 10 | 286 | Houma | Jessica Berger | 17,771 | 4,835 | 7,722 | 520 | 10,109 | 36,138 |
| 11 | 288 | Lafayette | Christian Turgeau | 4,164 | 13,603 | 8,499 | 1,010 | 8,755 | 35,369 |
| 12 | 695 | New Orleans Comml | Steven Hirstius | | | training | training | training | training |

**J. BERGER 128**
**GKB & ASSOCIATES**

| | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| 13 | 695 | New Orleans Comml | Eddie Smit | 11,005 | 14,445 | 23,248 | 8,073 | 16,233 | 181,461 |
| 14 | 695 | New Orleans Comml | Larry Nagy | 12,774 | 88,872 | 26,248 | 3,403 | 42,631 | 271,307 |
| 15 | 836 | Tyler | Anthony Moffett | | training | training | 0 | 0 | 0 |
| | Total | | | 144,184 | 230,638 | 156,388 | 39,946 | 177,070 | 1,704,292 |

**Paul Strickland**

Regional Sales Manager

Louisiana Mississippi Region 189

**ORKIN**

903.504.3599 cell
225.753.3652 fax
12030 Lakeland Park, Suite 125
Baton Rouge, LA 70809

**ORKIN.COM**



PEST CONTROL DOWN TO A SCIENCE

5 attachments

image001.jpg
1 KB

image002.jpg
425 B

image003.png
653 B

image004.jpg
467 B

image005.jpg
501 B

J. BERGER 129
GKB & ASSOCIATES



# Jessica Berger/ 461-2014-01256

**Jessica Berger** <jessben414@gmail.com>
To: nelson.borges@eeoc.gov

Sat, May 17, 2014 at 12:13 PM

Mr. Borges,

Attached are the printed conversations of Lisa Mosely and I from Facebook about the weapon conversation and so on. As well as the claim about Management not wanting to get me the appropriate safety gear to do my job properly. I also attached the scan of the emails from the pre employment process as well. I hope these help. I am working on those sound files.

Thanks,

Jessica Berger

**2 attachments**

📄 **Conversations 4-4-14.pdf**
1370K

📄 **PreEmployment Emails Orkin.pdf**
1507K

J. BERGER 130
GKB & ASSOCIATES

**Jessica Berger**

| | |
|---|---|
| **From:** | Paul R. Strickland |
| **Sent:** | Tuesday, June 10, 2014 8:17 AM |
| **To:** | Alan Parks; Chris Colbert; Chris Lawrence; Cotton, Raquen R.; Gordon Melerine; Hearald Fielder; Jack A. Carter; Jeff Hargrave; John P. Hansen; Mark Latuso; Michael McDermott; Mike Long; Minor Harwell; Murray Strickland; Roger C. Thornton; Russell Callen; Scott Smith; Willie Spearman II; Anthony Moffitt; Christian I Turgeau; Christopher W. Rankin; Eddie J. Smit; Gary Baker; George E. Meadors; Jessica Berger; Judy A. Beverung; Larry L. Nagy Jr; |
| **Cc:** | Lisa Larue; Melissa Harmon; Patty Easter; Steven Hirstius; Tiffney Calvert; Troy M. Townleyt Cindy Thurman; Don Tavlin; James Earl Thomas |
| **Subject:** | AM Rolling 90 thru May 2014 |
| **Importance:** | High |

All,

Below are AM's rolling 90 thru May 2014...

# Account Managers - Rolling 90

| | Branch Number | Name | MTD 02/14 | MTD 03/14 | MTD 04/14 | MTD 05/14 | 3 month Rolling Avg | 12 Month Total |
|---|---|---|---|---|---|---|---|---|
| | **LAMS** | | | | | | | |
| 1 | 174 | Gary Baker | 12,945 | 10,035 | 15,216 | 20,350 | 15,200 | 233,169 |
| 2 | 175 | George Meadors | 0 | 350 | 14,660 | 15,807 | 10,272 | 31,967 |
| 3 | 188 | Patricia Easter | 6,107 | 8,139 | 14,510 | 7,388 | 10,012 | 184,305 |
| 4 | 206 | Tiffany Calvert | 49,427 | 60,585 | 6,496 | 7,343 | 24,808 | 197,643 |
| 5 | 210 | Melissa Harmon | 24,963 | 5,575 | 15,799 | 2,467 | 7,947 | 356,829 |
| 6 | 210 | Christopher Rankin | | 11,603 | 8,565 | 6,331 | 8,833 | 26,499 |
| 7 | 280 | Judy Beverung | 5,028 | 12,596 | 15,425 | 22,937 | 16,986 | 168,532 |
| 8 | 280 | Lisa Larue | | | training | 0 | 0 | 0 |
| 9 | 280 | Troy Townley | | | training | 0 | 0 | 0 |
| 10 | 286 | Jessica Berger | 17,771 | 4,835 | 7,722 | 24,077 | 12,211 | 60,215 |
| 11 | 288 | Christian Tourgeau | 4,164 | 13,603 | 8,499 | 46,097 | 22,733 | 81,466 |
| 12 | 695 | Steven Hirstius | | | training | 0 | 0 | 0 |
| 13 | 695 | Eddie Smit | 11,005 | 14,445 | 23,248 | 18,032 | 18,575 | 194,103 |
| 14 | 695 | Larry Nagy | 12,774 | 88,872 | 26,248 | 55,933 | 57,018 | 314,890 |
| 15 | 836 | Anthony Moffett | | training | training | 12,104 | 12,104 | 12,104 |
| | **Total** | | **144,184** | **230,638** | **156,388** | **238,866** | **208,631** | **1,861,722** |

Paul Strickland

J. BERGER 131
GKB & ASSOCIATES



# Fwd: BN MANAGEMENT HOTEL

**Jessica Berger** <jberger1@rollins.com>
To: Jessica Benoit <jessben414@gmail.com>

Fri, Jun 13, 2014 at 6:06 PM

See below.

Sent from my iPhone

Begin forwarded message:

> **From:** "Paul R. Strickland" <pstrickla@rollins.com>
> **Date:** June 13, 2014 at 1:58:15 PM CDT
> **To:** Jessica Berger <jberger1@rollins.com>
> **Cc:** Hearald Fielder <hfielder@rollins.com>
> **Subject: RE: BN MANAGEMENT HOTEL**

Jessica,

Larry Nagy has been out of town and Mark Latuso has contacted Liz at BN Management and is meeting with them today.

In your email below, you have capitalized words that come across to me as improper and non-business like language. It comes across as if you are shouting; please make sure in any Company correspondence that we are using professional and proper language on all correspondence to me, customers and co-workers. Also, please make sure you as an Account Manager in Houma communicate your needs through your immediate supervisor and Branch Manager in Houma Russell Fielder and he can investigate the issue or communicate any issues to me.

In regards to BN Management Hotel, you have received 'full' credit on the sales in your territory and Larry Nagy has received 'full' credit on the sales in his territory. There hasn't to my knowledge been any split sales with this customer between you and Larry previously and that will stand the same today on this sale.

There will not be any splitting sales on BN Management for sales made by Larry Nagy in his territory.

**J. BERGER 132**
**GKB & ASSOCIATES**

**Paul Strickland**

Regional Sales Manager

Louisiana Mississippi Region 189

**ORKIN**

903.504.3599 cell
225.753.3652 fax
12030 Lakeland Park, Suite 125
Baton Rouge, LA 70809

**ORKIN.COM**



PEST CONTROL DOWN TO A SCIENCE.



**From:** Jessica Berger
**Sent:** Friday, June 13, 2014 8:18 AM
**To:** Paul R. Strickland
**Subject:** BN MANAGEMENT HOTEL

Paul,

Yesterday I received a lead and a phone call for the hotel group that i signed here in Houma. They want pest control in New Orleans. So, I called Larry and asked him how many of the hotels in that group he had signed? He said two. I told him they wanted several more for orkin and that we could split it. Well, he said he would let me know. I haven't heard back from him. If Larry is not willing to split this with me since it was MY LEAD. I DONT HIM ON THIS. I know ed smit works with me 50/50. I am not happy whatsoever. This is my unhappy face. :(

J. BERGER 133
GKB & ASSOCIATES

# Jessica Berger

Account Manager

## ORKIN
985-879-1537 office
985-853-2724 fax
985-226-9102 cell

109 Venture Blvd

# Houma, LA 70360

ORKIN.COM



PEST CONTROL DOWN TO A SCIENCE.®

---

**Jessica Berger** <jberger1@rollins.com>
To: Jessica Benoit <jessben414@gmail.com>

Fri, Jun 13, 2014 at 6:06 PM

See below.

Sent from my iPhone

Begin forwarded message:

> **From:** "Paul R. Strickland" <pstrickla@rollins.com>
> **Date:** June 13, 2014 at 10:42:01 AM CDT
> **To:** Jessica Berger <jberger1@rollins.com>
> **Cc:** Hearald Fielder <hfielder@rollins.com>
> **Subject:** RE: BN MANAGEMENT HOTEL

I asked Mark Latuso the Manager to contact customer and he did, he is meeting with Liz today. Eddie is not going.

Also, I will talk with Larry Nagy when he gets back from being out of town on Monday.

I will let you know after I talk with him regarding your question on 'split' sale.

J. BERGER 134
GKB & ASSOCIATES

**From:** Jessica Berger
**Sent:** Friday, June 13, 2014 8:51 AM
**To:** Paul R. Strickland
**Cc:** Hearald Fielder

**Subject:** Re: BN MANAGEMENT HOTEL

Liz from BN called me and said no one called her so... I called ed and I am sending him there. She needs this done. I let her know ed would be getting in touch with her.

## Jessica Berger
Account Manager

## ORKIN
985-879-1537 office
985-853-2724 fax
985-226-9102 cell

109 Venture Blvd

# Houma, LA 70360

## ORKIN.COM



*PEST CONTROL DOWN TO A SCIENCE.*

On Jun 13, 2014, at 8:25 AM, "Paul R. Strickland" <pstrickla@rollins.com> wrote:

> Sorry I missed your call; I have numerous Conference calls today.

> I will check into it and get back to you.

---

**From:** Jessica Berger
**Sent:** Friday, June 13, 2014 8:18 AM
**To:** Paul R. Strickland
**Subject:** BN MANAGEMENT HOTEL

**J. BERGER 135**
**GKB & ASSOCIATES**

Paul,

Yesterday I received a lead and a phone call for the hotel group that i signed here in Houma. They want pest control in New Orleans. So, I called Larry and asked him how many of the hotels in that group he had signed? He said two. I told him they wanted several more for orkin and that we could split it. Well, he said he would let me know. I haven't heard back from him. If Larry is not willing to split this with me since it was MY LEAD. I DONT HIM ON THIS. I know ed smit works with me 50/50. I am not happy whatsoever. This is my unhappy face. :(

## Jessica Berger
Account Manager

## ORKIN
985-879-1537 office
985-853-2724 fax
985-226-9102 cell

109 Venture Blvd

# Houma, LA 70360

## ORKIN.COM



PEST CONTROL DOWN TO A SCIENCE.™

---

Jessica Berger <jberger1@rollins.com>
To: Jessica Benoit <jessben414@gmail.com>
　　　　　　　　　　　　　　　　　　　　　　　　　　Fri, Jun 13, 2014 at 6:07 PM

See below.

Sent from my iPhone

Begin forwarded message:

> From: "Paul R. Strickland" <pstrickla@rollins.com>
> Date: June 13, 2014 at 8:25:16 AM CDT
> To: Jessica Berger <jberger1@rollins.com>
> Cc: Hearald Fielder <hfielder@rollins.com>
> Subject: RE: BN MANAGEMENT HOTEL

J. BERGER 136
GKB & ASSOCIATES

Sorry I missed your call; I have numerous Conference calls today.

I will check into it and get back to you.

**From:** Jessica Berger
**Sent:** Friday, June 13, 2014 8:18 AM
**To:** Paul R. Strickland
**Subject:** BN MANAGEMENT HOTEL

Paul,

Yesterday I received a lead and a phone call for the hotel group that i signed here in Houma. They want pest control in New Orleans. So, I called Larry and asked him how many of the hotels in that group he had signed? He said two. I told him they wanted several more for orkin and that we could split it. Well, he said he would let me know. I haven't heard back from him. If Larry is not willing to split this with me since it was MY LEAD. I DONT HIM ON THIS. I know ed smit works with me 50/50. I am not happy whatsoever. This is my unhappy face. :(

## Jessica Berger
Account Manager

## ORKIN
985-879-1537 office
985-853-2724 fax
985-226-9102 cell

109 Venture Blvd

# Houma, LA 70360

## ORKIN.COM



PEST CONTROL DOWN TO A SCIENCE.

J. BERGER 137
GKB & ASSOCIATES



## Fwd: BN MANAGEMENT HOTEL
1 message

**Jessica Berger** <jberger1@rollins.com>                                    Fri, Jun 13, 2014 at 6:09 PM
To: Jessica Benoit <jessben414@gmail.com>

See below.

Sent from my iPhone

Begin forwarded message:

> **From:** "Paul R. Strickland" <pstrickla@rollins.com>
> **Date:** June 13, 2014 at 8:25:16 AM CDT
>
> **To:** Jessica Berger <jberger1@rollins.com>
> **Cc:** Hearald Fielder <hfielder@rollins.com>
> **Subject: RE: BN MANAGEMENT HOTEL**
>
> Sorry I missed your call; I have numerous Conference calls today.
>
> I will check into it and get back to you.
>
> **From:** Jessica Berger
> **Sent:** Friday, June 13, 2014 8:18 AM
> **To:** Paul R. Strickland
> **Subject:** BN MANAGEMENT HOTEL
>
> Paul,
>
> Yesterday I received a lead and a phone call for the hotel group that i signed here in Houma. They want pest control in New Orleans. So, I called Larry and asked him how many of the hotels in that group he had signed? He said two. I told him they wanted several more for orkin and that we could split it. Well, he said he would let me know. I haven't heard back from him. If Larry is not willing to split this with me since it was MY LEAD. I DONT HIM ON THIS. I know ed smit works with me 50/50. I am not happy whatsoever. This is my unhappy face. :(
>
> J. BERGER 138
> GKB & ASSOCIATES



## IMG_7146.png
1 message

**Jessica Berger** <jberger1@rollins.com>
To: Jessica Benoit <jessben414@gmail.com>

Fri, Jun 13, 2014 at 6:13 PM

**2 attachments**

**IMG_7146.png**
80 KB

**ATT00001..txt**
25 B

J. BERGER 139
GKB & ASSOCIATES



## Leads

**Jessica Berger** <jessben414@gmail.com>
To: nelson.borges@eeoc.gov

Mon, Jun 23, 2014 at 12:17 PM

Jessica Berger/ 461-2014-01256  See attached.  These are Leads that they took away from me as " punishment" and gave to another person.  I am attaching emails as well.

———— Forwarded message ————
**From: Jessica Berger** <jberger1@rollins.com>
Date: Mon, Jun 23, 2014 at 12:06 PM
Subject: Leads
To: Jessica Benoit <jessben414@gmail.com>

**3 attachments**

**photo 1.PNG**
80K

**photo 2.PNG**
77K

**Scan0007.pdf**
1491K

J. BERGER 140
GKB & ASSOCIATES

●●●○○ AT&T  3G        12:05 PM              47% ▭

< Messages **1 (210) 100-012**   Contact

Text Message
Thu, Jun 12, 9:46 AM

1 of 6
FRM:Branch 286 Houma
(Residential)
SUBJ:Lead Info
MSG:Liz - BN
Management
Hampton Inn - several
locations
504-371-6666

Houma
(Con't) 2 of 6
Branch 286

ORKIN

 Text Message              Send

J. BERGER 141
GKB & ASSOCIATES

 ●●●○○ AT&T  3G     12:04 PM     47% 🔋

**‹ Messages 1 (210) 100-014   Contact**

Text Message
Fri, Jun 13, 8:45 AM

1 of 2
FRM:Branch 286 Houma
(Residential)
MSG:Please call Liz
<u>504-371-6666</u> with B N
Management she is
waiting on an email from
someone in New
(Con't) 2 of 2
Orleans but did not have a
name of the person. Tks
LR(End)

J. BERGER 142
GKB & ASSOCIATES

 Text Message     Send



video

**Jessica Berger** <jessben414@gmail.com>
To: tyrone_d@ldaf.state.la.us

Wed, Jun 25, 2014 at 6:04 PM

Tyrone,

Here is the video that was taken showing the chemical door open and all the techs gone with the exception of management. The entry gate stays open all day.

Jessica Berger

20140625_080841_001.3gp

J. BERGER 143
GKB & ASSOCIATES



## License

**Jessica Berger** <jessben414@gmail.com>
To: tyrone_d <tyrone_d@ldaf.state.la.us>

Wed, Jun ...

Tyrone,

This is a copy of the license i sent to the Government Contract Guy that I work with in Atlanta. Just let me know what exactly you nee
See attached.

📄 **licenses**

Thanks,

Jessica Berger

985-228-5384
Cell

J. BERGER 144
GKB & ASSOCIATES



---

## FW: USCG Mosquito Quote

---

**Jessica Berger** <jberger1@rollins.com>
To: "jessben414@gmail.com" <jessben414@gmail.com>                    Thu, Jun 26, 2014 at 8:10 AM

See below.

---

**From:** Jessica Berger
**Sent:** Thursday, June 05, 2014 8:36 AM
**To:** Michael Campbell
**Cc:** Hearald Fielder; Andy C. Boudreaux; Paul R. Strickland
**Subject:** RE: USCG Mosquito Quote

Mike,

After the assessment, we would be treating 2 warehouses, 1 main office and 1 living quarters building. It would take approximately 2.5 hours. We will be using Talstar P . It will also be on a seasonal basis. Standard pricing that we charge here would be 500.00. We would treat the structure and 10 ft out from the structure. They would like us to treat the 26 acres, however Orkin policy states we have to treat 75 feet away from water and being where the location is it is on an island as per Orkin scope of service due to drift we cannot treat all 26 acres. Also, the drive time to and from equals 3 hours total. If you need anything else, let me know! Thanks!

Jessica Berger

---

**From:** Michael Campbell
**Sent:** Friday, May 23, 2014 8:31 AM
**To:** Jessica Berger
**Cc:** Andy C. Boudreaux; Hearald Fielder; Paul R. Strickland; Kimberly Bailey
**Subject:** RE: USCG Mosquito Quote

Jessica,

This will need to run through Government/National as any Federal Government bid does, including odd jobs. It will be 100% team sales credit.

We need to perform our typical site assessment and identify exactly what is needed to perform to their requirements. If they have a formal SOW we need to get a copy of.

On the site visit you'll need to identify the following:

<div style="text-align:right">

**J. BERGER 145**
**GKB & ASSOCIATES**

</div>

1.   Specific treatment area(s)

2.   Equipment and materials needed and our actual cost.

3.   Service method(s), including surveillance if applicable, lavaciding, fogging for adults, etc.

4.   Frequency (1 time, seasonal or 1 time with follow ups, etc.) and estimated time needed to perform each service.

We'll need to have specific pesticides identified that we'll use and we'll need to provide the MSDS's and Labels, as well as the tech license(s) that will be performing the work. These will be provided with the quote.

Once you have the site visit info, please forward to me and I'll put together the quote. I may need to forward directly to the Contract Officer, but we'll determine that after we get the info together.

Thanks,

**Mike Campbell**

Government Contract Manager

**ORKIN**

770-220-6165

404-877-4282 efax

678-642-2859 cell

2170 Piedmont Road, NE

Atlanta, GA 30324

**ORKIN.COM**



PEST CONTROL DOWN TO A SCIENCE."



**From:** Jessica Berger
**Sent:** Friday, May 23, 2014 9:20 AM
**To:** Michael Campbell
**Cc:** Andy C. Boudreaux; Hearald Fielder; Paul R. Strickland
**Subject:** FW: USCG Mosquito Quote

**J. BERGER 146**
**GKB & ASSOCIATES**

Mike,

How have you been?  The USCG station here in Grand Isle, LA is wanting a Mosquito Bid.  There will be an assessment of what needs to be done going on today i.e. how many building etc. How do we go about doing this?  Let me know!  Thanks!

Jessica Berger

Account Manager

Houma, LA

Jberger1@orkin.com

**From:** Paul R. Strickland
**Sent:** Friday, May 23, 2014 8:16 AM
**To:** Jessica Berger
**Cc:** Hearald Fielder; Andy C. Boudreaux
**Subject:** RE: USCG Mosquito Quote

Yes, we need to send to Mike Campbell and see if this will be a local bid or will he bid it.

**From:** Jessica Berger
**Sent:** Friday, May 23, 2014 8:14 AM
**To:** Paul R. Strickland
**Cc:** Hearald Fielder; Andy C. Boudreaux
**Subject:** USCG Mosquito Quote

Paul,

The USCG Station in Grand Isle is requesting a Mosquito quote.  How do we go about this as far as contract wise?  Do we have to get Mike Campbell involved since it is govement?  I am not sure because it is an odd job.  Let me know! Thanks!

*Jessica Berger*

Commercial Account Manager

**ORKIN**

109 Venture Blvd.

Houma, LA 70360

Office: 985-879-1537

Fax: 985-853-2724

Cell: 985-226-9102

Email: jberger1@orkin.com

J. BERGER 147
GKB & ASSOCIATES

ORKIN.COM



PEST CONTROL DOWN TO A SCIENCE.™



2 attachments

 **gov license.pdf**
282K

 **MSDS TALSTAR P.pdf**
2190K

Jessica Berger <jessben414@gmail.com>
To: tyrone_d <tyrone_d@ldaf.state.la.us>                    Thu, Jun 26, 2014 at 8:47 AM

Thread with attachment emails

———— Forwarded message ————
From: "Jessica Berger" <jberger1@rollins.com>
Date: Jun 26, 2014 8:24 AM
Subject: FW: USCG Mosquito Quote
[Quoted text hidden]

2 attachments

**gov license.pdf**
282K

**MSDS TALSTAR P.pdf**
2190K

J. BERGER 148
GKB & ASSOCIATES



## Emails

---

**Jessica Berger** <jessben414@gmail.com>
To: tyrone_d <tyrone_d@ldaf.state.la.us>

Thu, Jun 26, 2014 at 8:24 AM

Please let me know that you are receiving these emails. I am not sure I am sending them to the right address. Thanks.

Jessica Berger

---

**Dudley, Tyrone** <tyrone_d@ldaf.state.la.us>
To: Jessica Berger <jessben414@gmail.com>

Thu, Jun 26, 2014 at 8:37 AM

Got it!


**From:** Jessica Berger [mailto:jessben414@gmail.com]
**Sent:** Thursday, June 26, 2014 8:24 AM
**To:** Dudley, Tyrone
**Subject:** Emails

Please let me know that you are receiving these emails. I am not sure I am sending them to the right address. Thanks.

Jessica Berger

---

**Jessica Berger** <jessben414@gmail.com>
To: tyrone_d <tyrone_d@ldaf.state.la.us>

Thu, Jun 26, 2014 at 8:42 AM

Here come some more.

[Quoted text hidden]

J. BERGER 149
GKB & ASSOCIATES



## More info

**Jessica Berger** <jessben414@gmail.com>
To: tyrone_d <tyrone_d@ldaf.state.la.us>

Thu, Jun 26, 2014 at 8:54 AM

Tyrone,

This is what I do not understand. The office manager, Lisa mosely has worked in this branch for 26 years. This is her 14 th branch manager. Wouldnt you think she would be up to date on what to do when a branch manager leaves? And what to do with his license? She takes care of all the other testing arrangements.

Also, when you walk into the office to the right is the admin office. They have on the right wall, Wayne's license pinned up with a thumb tack on the wall. I hope this helps.

Jessic berger

Please keep this confidential. Thank you.

J. BERGER 150
GKB & ASSOCIATES



## orkin houma

**Jessica Berger** <jessben414@gmail.com>
To: tyrone_d <tyrone_d@ldaf.state.la.us>

Mon, Jun 30, 2014 at 8:52 AM

Tyrone,

They did truck inspections this morning. I found it to be odd. Someone had mentioned someone named Milton that possibly works up there? Is this the same person that runs the test in New Orleans? If so, He know Wayne Zimmerman. They do have a meeting scheduled for tomorrow by the way. It was written on the board to let everyone know to attend.

Jessica Berger

J. BERGER 151
GKB & ASSOCIATES



## FW: AM 90 Day Rolling Average

Jessica Berger <jberger1@rollins.com>
To: "jessben414@gmail.com" <jessben414@gmail.com>

Mon, Jun 30, 2014 at 9:03 AM

See below

**From:** Paul R. Strickland
**Sent:** Thursday, June 26, 2014 9:30 AM
**To:** Alan Parks; Chris Colbert; Chris Lawrence; Cotton, Raquen R.; Gordon Melerine; Hearald Fielder; Jack A. Carter; Jeff Hargrave; John P. Hansen; Mark Latuso; Michael McDermott; Mike Long; Minor Harwell; Murray Strickland; Roger C. Thornton; Russell Callen; Scott Smith; Willie Spearman II; Anthony Moffitt; Christian I Turgeau; Christopher W. Rankin; Eddie J. Smit; Gary Baker; George E. Meadors; Jessica Berger; Judy A. Beverung; Larry L. Nagy Jr; Lisa Larue; Melissa Harmon; Patty Easter; Steven Hirstius; Tiffney Calvert; Troy A. Townleyt
**Cc:** Christopher J. Fox; Cindy Thurman; Don Tavlin; James Earl Thomas
**Subject:** AM 90 Day Rolling Average

Managers,

Below is the AM 90 Day Rolling Average Report:

For those Account Managers falling below performance expectations, please coach and discuss activities that will increase these averages.

- # of scheduled appointments per day (4-6 per day)
- # of real qualified proposals per day (2-4 per day depending on closing average)
- Daily EDS compliance of entering all proposals and sales (Daily, non-negotiable)
- Working the telephone to schedule future appointments (7-8 each week)
- Solid Sales Check-ins either by phone or in-person in order to celebrate successes and understand the importance of activity

ACTIVITY PRODUCES RESULTS.

## Account Managers - Rolling 90

| Branch Name | Name | Date In Position | MTD 03/14 | MTD 04/14 | MTD 05/14 | MTD 06/14 | 3 month Rolling Avg | 12 Month Total |
|---|---|---|---|---|---|---|---|---|
| New Orleans Comml | Larry Nagy | 9/6/2012 | 88,872 | 26,248 | 55,933 | 14,370 | 57,018 | 314,890 |
| Gulfport | Tiffany Calvert | 12/8/2011 | 60,585 | 6,496 | 7,343 | 15,323 | 24,808 | 197,643 |
| Lafayette | Christian Tourgeau | 11/1/2013 | 13,603 | 8,499 | 46,097 | 11,540 | 22,733 | 81,466 |
| New Orleans Comml | Eddie Smit | 2/1/2011 | 14,445 | 23,248 | 18,032 | 17,789 | 18,575 | 194,103 |
| Baton Rouge | Judy Beverung | 2/16/2009 | 12,596 | 15,425 | 22,937 | 22,126 | 16,986 | 168,532 |

J. BERGER 152
GKB & ASSOCIATES

7/14/2014

Gmail - FW: AM 90 Day Rolling Average

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| Alexandria | Gary Baker | 3/22/2005 | 10,035 | 15,216 | 20,350 | 28,204 | 15,200 | 233,169 |
| Houma | Jessica Berger | 10/1/2013 | 4,835 | 7,722 | 24,077 | 540 | 12,211 | 60,215 |
| Tyler | Anthony Moffett | 3/2/2014 | training | training | 12,104 | 11,423 | 12,104 | 12,104 |
| Covington | George Meadors | 11/7/2013 | 350 | 14,660 | 15,807 | 934 | 10,272 | 31,967 |
| Shreveport | Patricia Easter | 11/19/2012 | 8,139 | 14,510 | 7,388 | 5,146 | 10,012 | 184,305 |
| Jackson | Christopher Rankin | 12/13/2013 | 11,603 | 8,565 | 6,331 | 9,638 | 9,034 | 36,137 |
| Jackson | Melissa Harmon | 2/25/2013 | 5,575 | 15,799 | 2,467 | 3,243 | 7,947 | 356,829 |
| Baton Rouge | Lisa Larue | 4/14/2014 | | training | 0 | 5,773 | 0 | 0 |
| Baton Rouge | Troy Townley | 4/14/2014 | | training | 0 | 0 | 0 | 0 |
| New Orleans Comml | Steven Hirstius | 4/16/2014 | | training | 0 | 1,304 | 0 | 0 |
| | | | 230,638 | 156,388 | 238,866 | 147,353 | 208,631 | 1,861,722 |

**Paul Strickland**

Regional Sales Manager

Louisiana Mississippi Region 189

**ORKIN**

903.504.3599 cell
225.753.3652 fax
12030 Lakeland Park, Suite 125
Baton Rouge, LA 70809

**ORKIN.COM**



PEST CONTROL DOWN TO A SCIENCE™

J. BERGER 153
GKB & ASSOCIATES



## FW: BN MANAGEMENT HOTEL

**Jessica Berger <jberger1@rollins.com>**
To: "jessben414@gmail.com" <jessben414@gmail.com>

Mon, Jun 30, 2014 at 9:12 AM

See below

**From:** Paul R. Strickland
**Sent:** Friday, June 13, 2014 10:42 AM
**To:** Jessica Berger
**Cc:** Hearald Fielder
**Subject:** RE: BN MANAGEMENT HOTEL

I asked Mark Latuso the Manager to contact customer and he did, he is meeting with Liz today. Eddie is not going.

Also, I will talk with Larry Nagy when he gets back from being out of town on Monday.

I will let you know after I talk with him regarding your question on 'split' sale.

**From:** Jessica Berger
**Sent:** Friday, June 13, 2014 8:51 AM
**To:** Paul R. Strickland
**Cc:** Hearald Fielder
**Subject:** Re: BN MANAGEMENT HOTEL

Liz from BN called me and said no one called her so... I called ed and I am sending him there. She needs this done. I let her know ed would be getting in touch with her.

J. BERGER 154
GKB & ASSOCIATES

## Jessica Berger

7/14/2014



Gmail - Jessica Berger/ 461-2014-01256

# Jessica Berger/ 461-2014-01256

**Jessica Berger** <jessben414@gmail.com>
To: nelson.borges@eeoc.gov

Wed, Jul 2, 2014 at 9:45 AM

Nelson,

Update 06/27/14

I requested to look at my personnel file.  As i was looking in it, I was being harassed as to what I was looking for.  My reply was "Nothing".  It was a constant. "what are you looking for?" over and over and over,  I got to the end and there were these written statements there. Russell Fielder hurriedly grabbed them up stating they were confidential and that i could not read them.  I gave back my folder and I went back in there and asked why those confidential things were in my file if I could not see them.  He said that is where they belong.  He said something about the legal department and i asked him if there was a policy on that.  He offered to call our division James Earl Thomas and I said no I wanted a policy stating that.  I do have that on record as well. That it was in my file and what not.

Update July 2, 2014

I was doing my check in when Russel Fielder called Lisa Robichaux, Admin into the office and proceeded to give me a write upon non performance.  According to the expectation sheet that you have a copy of I was written up on parts of that, I was reaching the minimum.  I refused to sign the write up because it was inaccurate to some degree.  I asked for a copy of it because he told me I was suspended with pay.  I was told to turn in my laptop, cell phone and ipad.  He refused to give me a copy until i signed it. I never signed it. He asked me to leave his office. He called upper management, told me to leave the branch, and that he would be in touch because when a decision has been made. I have this on recording as well.

Just updating you.  If you know, doyou know what the status of my claim is?

Thanks.

Jessica Berger

J. BERGER 155
GKB & ASSOCIATES



# Fwd: Counseling July 2, 2014 Jessica Berger / Houma 286

**Jessica Berger** <jberger1@rollins.com>
To: "jessben414@gmail.com" <jessben414@gmail.com>                    Wed, Jul 9, 2014 at 7:25 PM

# Jessica Berger
## Account Manager

# ORKIN
# 985-879-1537 office
# 985-853-2724 fax
# 985-226-9102 cell

# 109 Venture Blvd
# Houma, LA 70360

ORKIN.COM



PEST CONTROL DOWN TO A SCIENCE.

Begin forwarded message:

    **From:** Jessica Berger <jberger1@rollins.com>
    **Date:** July 9, 2014 at 7:16:28 PM CDT                    J. BERGER 156
    **To:** Hearald Fielder <hfielder@rollins.com>              GKB & ASSOCIATES
    **Cc:** "Paul R. Strickland" <pstrickla@rollins.com>, James Earl Thomas <JThomas@rollins.com>,
    Larry Black <LBlack@rollins.com>, Jeff Blandford <jblandford@rollins.com>, Henry Anthony
    <HAnthony@rollins.com>, Harry Sargent <HSargent@rollins.com>
    **Subject: Counseling July 2, 2014 Jessica Berger / Houma 286**

Hearald,

I am formally requesting a copy from the legal department stating according to company policy , in accordance with the state of Louisiana labor laws, that I am entitled to a copy of any write up, whether it is signed or not.   If you are unfamiliar with the counseling I am referring to, it would be the one in which I refused to sign it because the information was incorrect. I was given the ultimatum at that point to either sign it or suspension. You suspended me at that point. That date was July 2,  2014.  On July 9, 2014, You stated that the legal department wrote the counseling form and Larry Black and James Earl Thomas signed it. Furthermore, I am requesting a copy of the company policy and where it is easily accessible for Orkin employees to find it on the portal.  I would like specifics please including page number, policy number, manual where it can be found, date policy was written and revised... Etc. There were a lot of things not stated in the employee handbook given to me as a new hire. You, Russell, did tell me that I could check into it. I would appreciate the time and effort of whomever will be looking into this matter.  If there is need to contact me, you can do so by email, jberger1@orkin.com.

Thank you!!


Have a great day!!!


# Jessica Berger
## Account Manager

## ORKIN
985-879-1537 office
985-853-2724 fax
985-226-9102 cell


# 109 Venture Blvd
# Houma, LA 70360

ORKIN.COM



PEST CONTROL DOWN TO A SCIENCE.™

J. BERGER 157
GKB & ASSOCIATES

ROLLINS

**From:** Jessica Berger
**Sent:** Wednesday, July 09, 2014 8:16 PM
**To:** Hearald Fielder
**Cc:** Paul R. Strickland; James Earl Thomas; Larry Black; Jeff Blandford; Henry Anthony; Harry Sargent
**Subject:** Counseling July 2, 2014 Jessica Berger / Houma 286

Hearald,

I am formally requesting a copy from the legal department stating according to company policy, in accordance with the state of Louisiana labor laws, that I am entitled to a copy of any write up, whether it is signed or not.   If you are unfamiliar with the counseling I am referring to, it would be the one in which I refused to sign it because the information was incorrect. I was given the ultimatum at that point to either sign it or suspension. You suspended me at that point. That date was July 2, 2014.  On July 9, 2014, You stated that the legal department wrote the counseling form and Larry Black and James Earl Thomas signed it. Furthermore, I am requesting a copy of the company policy and where it is easily accessible for Orkin employees to find it on the portal.  I would like specifics please including page number, policy number, manual where it can be found, date policy was written and revised... Etc.  There were a lot of things not stated in the employee handbook given to me as a new hire. You, Russell, did tell me that I could check into it. I would appreciate the time and effort of whomever will be looking into this matter.  If there is need to contact me, you can do so by email, jberger1@orkin.com.

Thank you!!

Have a great day!!!

# Jessica Berger
# Account Manager

**J. BERGER 158**
**GKB & ASSOCIATES**

# ORKIN
# 985-879-1537 office
# 985-853-2724 fax

985-853-2724 fax
985-226-9102 cell

# 109 Venture Blvd
# Houma, LA 70360

**ORKIN.COM**



**PEST CONTROL DOWN TO A SCIENCE.**

Begin forwarded message:

**From:** Larry Black <LBlack@rollins.com>
**Date:** July 10, 2014 at 2:38:01 PM CDT
**To:** Jessica Berger <jberger1@rollins.com>
**Cc:** James Earl Thomas <JThomas@rollins.com>, Jeff Blandford <jblandford@rollins.com>, Hearald Fielder <hfielder@rollins.com>
**Subject: RE: Counseling July 2, 2014 Jessica Berger / Houma 286**

Jessica,

Thank you for your e-mail to me dated 7/9/14 at 8:16 pm and for the opportunity to respond to that email.

The suspension you referenced in your email to me dated 7/9/14 at 8:16 pm was withdrawn before you left the branch on 7/02/14. That same evening, your branch manager Hearald Fielder called you and confirmed that you were to resume your regular Orkin work duties on 7/3/14.

Louisiana employment law does not require an employer to allow an employee to review his/her employee personnel file or to give copies of documents from their personnel file to the employee. However, you were allowed to review your personnel file in the branch with Hearald Fielder present. In good faith, we will give you a copy of the counseling form in question that was discussed with you by Hearald on 7/02/14. During your Wednesday morning check in on 7/16/14, Hearald will initiate a conference call with me and you from his office. At that time, Hearald will give you a copy of the counseling form from the 7/02/14 counseling discussion that you have requested. I will be available via phone to answer any further questions you may have concerning that counseling form.

**J. BERGER 159**
**GKB & ASSOCIATES**

Larry Black - Division Human Resources Manager - South Central Division - Rollins Support Center - O: 404.888.2530 - C: 404.431.2372

From: Jessica Berger <jberger1@rollins.com>
Date: July 10, 2014 at 7:01:41 PM CDT
To: Larry Black <LBlack@rollins.com>
Cc: James Earl Thomas <JThomas@rollins.com>, Jeff Blandford <jblandford@rollins.com>, Hearald Fielder <hfielder@rollins.com>, Harry Sargent <HSargent@rollins.com>, Henry Anthony <HAnthony@rollins.com>, "Paul R. Strickland" <pstrickla@rollins.com>
Subject: Re: Counseling July 2, 2014 Jessica Berger / Houma 286

Larry,

I received your email on that you sent July 10, 2014 at 2:38 pm. As I appreciate your timely response, my initial request dated July 9, 2014, 8:16 pm has yet to be answered. I specifically asked for a formal written request from the legal department stating Orkin's policy on copies of counseling forms that were not signed and my entitlement to them. I would also like to know the company's policy on an employee availability to accessing personnel files. I am requesting, once again, specifics, policy number, page number, manual where it can be found, date written, date revised.. Etc... Thanks in advance!

Have a nice day!

# Jessica Berger
# Account Manager

# ORKIN
# 985-879-1537 office
# 985-853-2724 fax
# 985-226-9102 cell

# 109 Venture Blvd
# Houma, LA 70360

ORKIN.COM

PEST CONTROL DOWN TO A SCIENCE.™

On Jul 10, 2014, at 2:38 PM, "Larry Black" <LBlack@rollins.com> wrote:

Jessica,

J. BERGER 160
GKB & ASSOCIATES

Thank you for your e-mail to me dated 7/9/14 at 8:16 pm and for the opportunity to respond to that email.

The suspension you referenced in your email to me dated 7/9/14 at 8:16 pm was withdrawn before you left the branch on 7/02/14. That same evening, your branch manager Hearald Fielder called you and confirmed that you were to resume your regular Orkin work duties on 7/3/14.

Louisiana employment law does not require an employer to allow an employee to review his/her employee personnel file or to give copies of documents from their personnel file to the employee. However, you were allowed to review your personnel file in the branch with Hearald Fielder present. In good faith, we will give you a copy of the counseling form in question that was discussed with you by Hearald on 7/02/14. During your Wednesday morning check in on 7/16/14, Hearald will initiate a conference call with me and you from his office. At that time, Hearald will give you a copy of the counseling form from the 7/02/14 counseling discussion that you have requested. I will be available via phone to answer any further questions you may have concerning that counseling form.

Larry Black - Division Human Resources Manager - South Central Division - Rollins Support Center - O: 404.888.2530 - C: 404.431.2372

<image001.gif>

---

**From:** Jessica Berger
**Sent:** Wednesday, July 09, 2014 8:16 PM
**To:** Hearald Fielder
**Cc:** Paul R. Strickland; James Earl Thomas; Larry Black; Jeff Blandford; Henry Anthony; Harry Sargent
**Subject:** Counseling July 2, 2014 Jessica Berger / Houma 286

Hearald,

I am formally requesting a copy from the legal department stating according to company policy, in accordance with the state of Louisiana labor laws, that I am entitled to a copy of any write up, whether it is signed or not. If you are unfamiliar with the counseling I am referring to, it would be the one in which I refused to sign it because the information was incorrect. I was given the ultimatum at that point to either sign it or suspension. You suspended me at that point. That date was July 2, 2014. On July 9, 2014, You stated that the legal department wrote the counseling form and Larry Black and James Earl Thomas signed it. Furthermore, I am requesting a copy of the company policy and where it is easily accessible for Orkin employees to find it on the portal. I would like specifics please including page number, policy number, manual where it can be found, date policy was written and revised... Etc. There were a lot of things not stated in the employee handbook given to me as a new hire. You, Russell, did tell me that I could check into it. I would appreciate the time and effort of whomever will be looking into this matter. If there is need to contact me, you can do so by email, jberger1@orkin.com.

J. BERGER 161
GKB & ASSOCIATES

Thank you!!

Have a great day!!!

## Jessica Berger
## Account Manager

## ORKIN
985-879-1537 office
985-853-2724 fax
985-226-9102 cell

109 Venture Blvd

Houma, LA 70360

ORKIN.COM



PEST CONTROL DOWN TO A SCIENCE.

J. BERGER 162
GKB & ASSOCIATES



## Fwd: Counseling July 2, 2014 Jessica Berger / Houma 286

Jessica Berger <jberger1@rollins.com>
To: "jessben414@gmail.com" <jessben414@gmail.com>

Thu, Jul 10, 2014 at 7:04 PM

See below.

# Jessica Berger
# Account Manager

# ORKIN
# 985-879-1537 office
# 985-853-2724 fax
# 985-226-9102 cell

# 109 Venture Blvd
# Houma, LA 70360

ORKIN.COM



PEST CONTROL DOWN TO A SCIENCE.™

Begin forwarded message:

> **From:** Larry Black <LBlack@rollins.com>
> **Date:** July 10, 2014 at 2:38:01 PM CDT
> **To:** Jessica Berger <jberger1@rollins.com>
> **Cc:** James Earl Thomas <JThomas@rollins.com>, Jeff Blandford <jblandford@rollins.com>,
> Hearald Fielder <hfielder@rollins.com>
> **Subject:** RE: Counseling July 2, 2014 Jessica Berger / Houma 286

J. BERGER 163
GKB & ASSOCIATES

Jessica,

Thank you for your e-mail to me dated 7/9/14 at 8:16 pm and for the opportunity to respond to that email.

The suspension you referenced in your email to me dated 7/9/14 at 8:16 pm was withdrawn before you left the branch on 7/02/14. That same evening, your branch manager Hearald Fielder called you and confirmed that you were to resume your regular Orkin work duties on 7/3/14.

Louisiana employment law does not require an employer to allow an employee to review his/her employee personnel file or to give copies of documents from their personnel file to the employee. However, you were allowed to review your personnel file in the branch with Hearald Fielder present. In good faith, we will give you a copy of the counseling form in question that was discussed with you by Hearald on 7/02/14. During your Wednesday morning check in on 7/16/14, Hearald will initiate a conference call with me and you from his office. At that time, Hearald will give you a copy of the counseling form from the 7/02/14 counseling discussion that you have requested. I will be available via phone to answer any further questions you may have concerning that counseling form.

Larry Black - Division Human Resources Manager - South Central Division - Rollins Support Center - O: 404.888.2530 - C: 404.431.2372



---

**From:** Jessica Berger
**Sent:** Wednesday, July 09, 2014 8:16 PM
**To:** Hearald Fielder
**Cc:** Paul R. Strickland; James Earl Thomas; Larry Black; Jeff Blandford; Henry Anthony; Harry Sargent
**Subject:** Counseling July 2, 2014 Jessica Berger / Houma 286

J. BERGER 164
GKB & ASSOCIATES

Hearald,

I am formally requesting a copy from the legal department stating according to company policy
, in accordance with the state of Louisiana labor laws, that I am entitled to a copy of any write
up, whether it is signed or not.   If you are unfamiliar with the counseling I am referring to, it
would be the one in which I refused to sign it because the information was incorrect. I was
given the ultimatum at that point to either sign it or suspension. You suspended me at that point.
That date was July 2, 2014. On July 9, 2014, You stated that the legal department wrote the
counseling form and Larry Black and James Earl Thomas signed it. Furthermore, I am
requesting a copy of the company policy and where it is easily accessible for Orkin employees
to find it on the portal.  I would like specifics please including page number, policy number,
manual where it can be found, date policy was written and revised... Etc. There were a lot of
things not stated in the employee handbook given to me as a new hire. You, Russell, did tell me
that I could check into it. I would appreciate the time and effort of whomever will be looking
into this matter.  If there is need to contact me, you can do so by email, jberger1@orkin.com.


Thank you!!



Have a great day!!!



# Jessica Berger
# Account Manager


# ORKIN
985-879-1537 office
985-853-2724 fax
985-226-9102 cell


109 Venture Blvd

Houma, LA 70360

J. BERGER 165
GKB & ASSOCIATES

# ORKIN.COM



**PEST CONTROL DOWN TO A SCIENCE.**

J. BERGER 166
GKB & ASSOCIATES



## Orkin License Houma

**Jessica Berger** <jessben414@gmail.com>
To: tyrone_d <tyrone_d@ldaf.state.la.us>                           Fri, Jul 11, 2014 at 9:11 AM

Tyrone,

Did you ever find out if the branch has a valid license?  I need to know for the mere purpose that I cannot sell an account with an invalid
license to a commercial business.  Please email me and let me know.  Thanks.


Jessica Berger


**Dudley, Tyrone** <tyrone_d@ldaf.state.la.us>
To: Jessica Berger <jessben414@gmail.com>                         Fri, Jul 11, 2014 at 11:25 AM

The Place Of Business permits are being renewed this month.  We are investigating to see who is listed as the primary licensee at that
location.  We will further investigate as necessary.  I will keep you posted.
If you have additional questions just let me know.
Thanks
[Quoted text hidden]


                                                                    **J. BERGER 167**
                                                                    **GKB & ASSOCIATES**



## FW: Jessica Berger

**Jessica Berger** <jberger1@rollins.com>
To: "jessben414@gmail.com" <jessben414@gmail.com>

Sat, Jul 12, 2014 at 2:14 PM

See below

**From:** Jessica Berger
**Sent:** Saturday, July 12, 2014 2:13 PM
**To:** Henry Anthony
**Subject:** Jessica Berger

Mr. Anthony,

My name is Jessica Berger. I am the Account Manager for Orkin Branch #286, Houma, LA. I am making a formal complaint to you in regards to Mr. Larry Black, HR Manager, South Central Division. I am writing to you today , whether you are aware or unaware of the situation regarding the HR visit where Mr. Black made a visit to the Houma branch on May 5th, 2014. James Earl Thomas was there as well with Mr. Black. I would like to start off that I was interviewed. My confidentiality was not kept confidential to start. Lisa Mosely, Office manager of the Houma Branch was allowed to take notes for Mr. Black alongside James Earl Thomas taking his notes as well. She is one of the people in the branch with whom is an issue and part of my claim. My claims were not addressed. I was made out to be the "problem" of the branch. Mr. Black called me on 05/22/2014 and advised me of the visit they would be making on 06/10/2014 to investigate the HR claims. On 6/10/2014, they asked to meet with me, I did ask if I could record the meeting  and I was told no. I told Mr. Black and James Earl Thomas that we could arrange to have my attorney present and meet again when I could have a witness to the conversation, I was denied both. The meeting was ended at that point. Mr. Black said that this could negatively impact my claim and he would mail me the results. Upon receiving his final investigation papers, Mr. Black has left out half of the investigation from the first meeting on the 5th of May 2014. It appears as though Mr. Black has a very biased opinion on the claim and it has become apparent to me that any claim or any situation that may arise that I do not have the support of human resources from Orkin nor Rollins at this point.

Thank You in advance.

*Jessica Berger*

**Commercial Account Manager**

J. BERGER 168
GKB & ASSOCIATES

**ORKIN**

109 Venture Blvd.

Houma, LA 70360

Office: 985-879-1537

Fax: 985-853-2724

Cell: 985-226-9102

Email: jberger1@orkin.com

## ORKIN.COM



PEST CONTROL DOWN TO A SCIENCE.®



J. BERGER 169
GKB & ASSOCIATES



---

## FW: Jessica Berger

**Jessica Berger** <jberger1@rollins.com>
To: Jessica Benoit <jessben414@gmail.com>                                          Sat, Jul 12, 2014 at 5:55 PM

---

Sent from my iPhone

Begin forwarded message:

> **From:** Henry Anthony <HAnthony@rollins.com>
> **Date:** July 12, 2014 at 4:18:15 PM CDT
> **To:** Jessica Berger <jberger1@rollins.com>
> **Subject: Re: Jessica Berger**
>
> Jessica,
>
> Thank very much for contacting me.  These are disturbing issues you have raised and I take this
> very seriously.  I will ensure that this is properly investigated by someone on my team.  You should
> expect to be contacted next week.
>
> Sincerely,
>
> Henry Anthony
> [Quoted text hidden]
>
> > [Quoted text hidden]
>
> > **<image001.jpg>**
>
> > <image002.jpg> <image003.gif> <image004.jpg> <image005.jpg>

J. BERGER 170
GKB & ASSOCIATES

# Account Manager

## ORKIN
985-879-1537 office
985-853-2724 fax
985-226-9102 cell

## 109 Venture Blvd

# Houma, LA 70360

**ORKIN.COM**


PEST CONTROL DOWN TO A SCIENCE.®

On Jun 13, 2014, at 8:25 AM, "Paul R. Strickland" <pstrickla@rollins.com> wrote:

> Sorry I missed your call; I have numerous Conference calls today.

> I will check into it and get back to you.

**From:** Jessica Berger
**Sent:** Friday, June 13, 2014 8:18 AM
**To:** Paul R. Strickland
**Subject:** BN MANAGEMENT HOTEL

Paul,                                                      J. BERGER 171
                                                          GKB & ASSOCIATES

Yesterday I received a lead and a phone call for the hotel group that i signed here in Houma. They want pest control in New Orleans. So, I called Larry and asked him how many of the hotels in that

group he had signed? He said two. I told him they wanted several more for orkin and that we could split it. Well, he said he would let me know. I haven't heard back from him. If Larry is not willing to split this with me since it was MY LEAD. I DONT HIM ON THIS. I know ed smit works with me 50/50. I am not happy whatsoever. This is my unhappy face. :(

**Jessica Berger**
Account Manager

**ORKIN**
985-879-1537 office
985-853-2724 fax
985-226-9102 cell

109 Venture Blvd
Houma, LA 70360

ORKIN.COM



PEST CONTROL DOWN TO A SCIENCE™

J. BERGER 172
GKB & ASSOCIATES



# FW: Missing Account Information

Jessica Berger <jberger1@rollins.com>

To: "jessben414@gmail.com" <jessben414@gmail.com>

Mon, Jul 14, 2014 at 7:40 AM

**From:** June Porter
**Sent:** Thursday, July 10, 2014 8:48 AM
**To:** Jessica Berger
**Subject:** Missing Account Information
**Importance:** High

Jessica,

Thank you for your time today and I am sorry that you are experiencing this issue.

Are you able to provide me with the names and/or addresses of any of the accounts that you are missing? Any information you can provide would be helpful.

Also, will you enter at least one account today and email me when you are done with the information of what you entered.

Thanks!

June M. Porter - Business Analyst - Application Development - Rollins Support Center - **P:** 770-220-6031



J. BERGER 173
GKB & ASSOCIATES



## Orkin Houma

**Jessica Berger** <jessben414@gmail.com>
To: tyrone_d <tyrone_d@ldaf.state.la.us>

Tue, Aug 19, 2014 at 8:39 AM

Tyrone,

Did you ever figure out who the main licensee was for houma?
Attached are some pictures of Wayne Zimmerman and posts of him at his new job. You might find them interesting. Notice the time and dates and places. If he is 1900 miles away is some instances, how is he signing paperwork? Just a thought?

Jessica Berger

**4 attachments**



**Screenshot_2014-08-16-15-47-30.png**
507K



**Screenshot_2014-08-16-15-47-19.png**
664K



**Screenshot_2014-08-16-15-47-07.png**
530K

J. BERGER 174
GKB & ASSOCIATES



Screenshot_2014-08-16-15-46-52.png
442K

---

**Dudley, Tyrone** <tyrone_d@ldaf.state.la.us>
To: Jessica Berger <jessben414@gmail.com>                                    Tue, Aug 19, 2014 at 9:31 AM

Jessica,

We received notification that effective August 1, 2014 Brent Guidry is now the primary licensee for Orkin – Houma Branch.  If you have any other questions just let me know.

Thanks

**From:** Jessica Berger [mailto:jessben414@gmail.com]
**Sent:** Tuesday, August 19, 2014 8:40 AM
**To:** Dudley, Tyrone
**Subject:** Orkin Houma

Tyrone,

Did you ever figure out who the main licensee was for houma?
Attached are some pictures of Wayne Zimmerman and posts of him at his new job.  You might find them interesting. Notice the time and dates and places.  If he is 1900 miles away is some instances, how is he signing paperwork?  Just a thought?

Jessica Berger

---

**Jessica Berger** <jessben414@gmail.com>
To: george hair <oneindaside@gmail.com>                                    Tue, Aug 19, 2014 at 10:48 AM

See below.

——— Forwarded message ———
From: "Dudley, Tyrone" <tyrone_d@ldaf.state.la.us>
Date: Aug 19, 2014 9:32 AM
Subject: RE: Orkin Houma
To: "Jessica Berger" <jessben414@gmail.com>
Cc:

                                                                J. BERGER 175
                                                                GKB & ASSOCIATES

Jessica,

We received notification that effective August 1, 2014 Brent Guidry is now the primary licensee for Orkin –

Houma Branch.  If you have any other questions just let me know.


Thanks


**From:** Jessica Berger [mailto:jessben414@gmail.com]
**Sent:** Tuesday, August 19, 2014 8:40 AM
**To:** Dudley, Tyrone
**Subject:** Orkin Houma

Tyrone,

Did you ever figure out who the main licensee was for houma?
Attached are some pictures of Wayne Zimmerman and posts of him at his new job.  You might find them interesting. Notice the time and dates and places.  If he is 1900 miles away is some instances, how is he signing paperwork?  Just a thought?

Jessica Berger

J. BERGER 176
GKB & ASSOCIATES



**EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**
**INTAKE QUESTIONNAIRE** 461. 2014-01256

Please immediately complete the entire form and return it to the U.S. Equal Employment Opportunity Commission ("EEOC"). REMEMBER, a charge of employment discrimination must be filed within the time limits imposed by law, generally within 180 days or in some places 300 days of the alleged discrimination. Upon receipt, this form will be reviewed to determine EEOC coverage. Answer all questions as completely as possible, and attach additional pages if needed to complete your response(s). If you do not know the answer to a question, answer by stating "not known." If a question is not applicable, write "n/a." Please Print.

**1.   Personal Information**

Last Name: Berger                    First Name: Jessica                    MI: R

Street or Mailing Address: 317 Louis Drive                    Apt Or Unit #:

City: Houma            County: Terrebonne            State: LA            ZIP: 70364

Phone Numbers: Home: ( 985 ) 293-7280            Work: ( 985 ) 879-1537

Cell: ( 985 ) 228-5384            Email Address: jessben414@gmail.com

Date of Birth: 04/14/1978    Sex: Male ☐  Female ☒    Do You Have a Disability? ☒ Yes ☐ No

Please answer each of the next three questions.    i. Are you Hispanic or Latino?    ☐ Yes  ☒ No

ii. What is your Race? Please choose all that apply.    ☐ American Indian or Alaska Native    ☐ Asian    ☒ White

☐ Black or African American    ☐ Native Hawaiian or Other Pacific Islander

iii. What is your National Origin (country of origin or ancestry)? USA

Please Provide The Name Of A Person We Can Contact If We Are Unable To Reach You:

Name: Josh Berger                    Relationship: Spouse

Address: 317 Louis Drive            City: Houma            State: LA    Zip Code: 70364

Home Phone: ( 985 ) 228-1342    Other Phone: ( )

**2.  I believe that I was discriminated against by the following organization(s):** (Check those that apply)

☒ Employer    ☐ Union    ☐ Employment Agency    ☐ Other (Please Specify)

**Organization Contact Information** (If the organization is an employer, provide the address where you actually worked. If you work from home, check here ☐ and provide the address of the office to which you reported.) If more than one employer is involved, attach additional sheets.

Organization Name: Orkin Branch # 286

Address: 109 Venture Blvd            County: Terrebonne

City: Houma            State: LA    Zip: 70360    Phone: ( 985 ) 879-1537

Type of Business: Pest Control            Job Location if different from Org. Address:

Human Resources Director or Owner Name: Rollins Inc            Phone: 404-888-2000

Number of Employees in the Organization at All Locations: Please Check (√) One

☐ Fewer Than 15    ☐ 15 – 100    ☐ 101 – 200    ☐ 201 – 500    ☒ More than 500

**3.  Your Employment Data** (Complete as many items as you can)    Are you a Federal Employee? ☐ Yes ☒ No

Date Hired: 09/03/2013            Job Title At Hire: Account Manager        J. BERGER 177
                                                                                                    GKB & ASSOCIATES
Pay Rate When Hired: 3000/month            Last or Current Pay Rate: 2500/mo

Job Title at Time of Alleged Discrimination: Acccount Manager            Date Quit/Discharged:

Name and Title of Immediate Supervisor: Hearald Russell Fielder/ Branch Manager

2

If Job Applicant, Date You Applied for Job _____   Job Title Applied For _____

**4.  What is the reason (basis) for your claim of employment discrimination?**
*FOR EXAMPLE, if you feel that you were treated worse than someone else because of race, you should check the box next to Race. If you feel you were treated worse for several reasons, such as your sex, religion and national origin, you should check all that apply. If you complained about discrimination, participated in someone else's complaint, or filed a charge of discrimination, and a negative action was threatened or taken, you should check the box next to Retaliation.*

☐ Race   ☐ Sex   ☐ Age   ☒ Disability   ☐ National Origin   ☐ Religion   ☒ Retaliation   ☐ Pregnancy   ☐ Color (typically a difference in skin shade within the same race)   ☐ Genetic Information; choose which type(s) of genetic information is involved:

☐ i. genetic testing   ☐ ii. family medical history   ☐ iii. genetic services (genetic services means counseling, education or testing)

If you checked color, religion or national origin, please specify: n/a _____

If you checked genetic information, how did the employer obtain the genetic information? n/a _____

Other reason (basis) for discrimination (Explain). _____

**5.  What happened to you that you believe was discriminatory?** Include the date(s) of harm, the action(s), and the name(s) and title(s) of the person(s) who you believe discriminated against you.  Please attach additional pages if needed.
*(Example: 10/02/06  - Discharged by Mr. John Soto, Production Supervisor)*

A) Date: 05/05/2014   Action: Meeting that went horribly wrong with HR Manager, Larry Black

Name and Title of Person(s) Responsible: Larry Black, HR Manager, South Central Divison, Rollins Inc/Orkin

B) Date:   Action: Please see attached.

Name and Title of Person(s) Responsible: Hearald Russell Fielder, Branch Manager, and Lisa Mosely, Office Manager

**6.  Why do you believe these actions were discriminatory?** Please attach additional pages if needed.

My character is being attacked on a daily basis. I am being alienated from from my coworkers. They are using my bipolar disorder against me. I was singled out and given a disciplinary action for something that everyone in the branch does. Please see attached notes for explanations.

**7.  What reason(s) were given to you for the acts you consider discriminatory?  By whom?  His or Her Job Title?**

He is the Branch Manager, He can do what he wants by Lisa Mosely, Office Manager, Branch 286.  It is his right to do that as a Branch Manager by Larry Black, HR Manager, South Central Division, Rollins/Orkin.

**8. Describe who was in the same or similar situation as you and how they were treated.**  For example, who else applied for the same job you did, who else had the same attendance record, or who else had the same performance?  Provide the race, sex, age, national origin, religion, or disability of these individuals, if known, and if it relates to your claim of discrimination.  For example, if your complaint alleges race discrimination, provide the race of each person; if it alleges sex discrimination, provide the sex of each person; and so on.  Use additional sheets if needed.

Of the persons in the same or similar situation as you, who was treated *better* than you?

| A. Full Name | Race, sex, age, national origin, religion or disability | Job Title |
|---|---|---|
| | | |

Description of Treatment

J. BERGER 178
GKB & ASSOCIATES

| B. Full Name | Race, sex, age, national origin, religion or disability | Job Title |
|---|---|---|
| | | |

Description of Treatment

Of the persons in the same or similar situation as you, who was treated *worse* than you?

| A. Full Name | Race, sex, age, national origin, religion or disability | Job Title |
|---|---|---|
| Description of Treatment | | |

| B. Full Name | Race, sex, age, national origin, religion or disability | Job Title |
|---|---|---|
| Description of Treatment | | |

Of the persons in the same or similar situation as you, who was treated the *same* as you?

| A. Full Name | Race, sex, age, national origin, religion or disability | Job Title |
|---|---|---|
| Description of Treatment | | |

| B. Full Name | Race, sex, age, national origin, religion or disability | Job Title |
|---|---|---|
| Description of Treatment | | |

Answer questions 9-12 <u>only</u> if you are claiming discrimination based on disability. If not, skip to question 13. Please tell us if you have more than one disability. Please add additional pages if needed.

9.  Please check all that apply:

☒ Yes, I have a disability

☐ I do not have a disability now but I did have one

☐ No disability but the organization treats me as if I am disabled

10. What is the disability that you believe is the reason for the adverse action taken against you? Does this disability prevent or limit you from doing anything? (e.g., lifting, sleeping, breathing, walking, caring for yourself, working, etc.).

Bipolar Disorder

11. Do you use medications, medical equipment or anything else to lessen or eliminate the symptoms of your disability?

Yes ☒    No ☐

If "Yes," what medication, medical equipment or other assistance do you use?

Clozepam, Pristiq, Topamax, Lamictal

12. Did you ask your employer for any changes or assistance to do your job because of your disability?

Yes ☐    No ☒

If "YES", when did you ask? n/a _____    How did you ask (verbally or in writing)? n/a _____

Who did you ask? (Provide full name and job title of person)

n/a

Describe the changes or assistance that you asked for:                    J. BERGER 179
                                                                          GKB & ASSOCIATES
n/a


How did your employer respond to your request?

n/a

13. Are there any witnesses to the alleged discriminatory incidents? If yes, please identify them below and tell us what they will say. (Please attach additional pages if needed to complete your response)

| A. Full Name | Job Title | Address & Phone Number |
|---|---|---|
| | | |

What do you believe this person will tell us?

| B. Full Name | Job Title | Address & Phone Number |
|---|---|---|
| | | |

What do you believe this person will tell us?

14.  Have you filed a charge previously in this matter with EEOC or another agency?     Yes ☐     No ☒

15.  If you have filed a complaint with another agency, provide name of agency and date of filing:

16.  Have you sought help about this situation from a union, an attorney, or any other source?     Yes ☒     No ☐
Provide name of organization, name of person you spoke with and date of contact. Results, if any?
Human Resources, Orkin/Rollins Inc/ Larry Black/ 05/05/2014/ Part of this claim.

Please check one of the boxes below to tell us what you would like us to do with the information you are providing on this questionnaire. If you would like to file a charge of job discrimination, you must do so either within 180 days from the day you knew about the discrimination, or within 300 days from the day you knew about the discrimination if the employer is located in a place where a state or local government agency enforces laws similar to the EEOC's laws. If you do not file a charge of discrimination within the time limits, you will lose your rights. If you would like more information before filing a charge or you have concerns about EEOC's notifying the employer, union, or employment agency about your charge, you may wish to check Box 1. If you want to file a charge, you should check Box 2.

Box 1  ☐ I want to talk to an EEOC employee before deciding whether to file a charge. I understand that by checking this box, I have not filed a charge with the EEOC. I also understand that I could lose my rights if I do not file a charge in time.

Box 2  ☒ I want to file a charge of discrimination, and I authorize the EEOC to look into the discrimination I described above. I understand that the EEOC must give the employer, union, or employment agency that I accuse of discrimination information about the charge, including my name. I also understand that the EEOC can only accept charges of job discrimination based on race, color, religion, sex, national origin, disability, age, genetic information, or retaliation for opposing discrimination.

| Jessica Berger *(signature)* | 05/09/2014 |
|---|---|
| **Signature** | **Today's Date** |

J. BERGER 180
GKB & ASSOCIATES

PRIVACY ACT STATEMENT: This form is covered by the Privacy Act of 1974: Public Law 93-579. Authority for requesting personal data and the uses thereof are:
1.  FORM NUMBER/TITLE/DATE. EEOC Intake Questionnaire (9/20/08).
2.  AUTHORITY. 42 U.S.C. § 2000e-5(b), 29 U.S.C. § 211, 29 U.S.C. § 626. 42 U.S.C. 12117(a), 42 USC §2000ff-6.
3.  PRINCIPAL PURPOSE. The purpose of this questionnaire is to solicit information about claims of employment discrimination, determine whether the EEOC has jurisdiction over those claims, and provide charge filing counseling, as appropriate. Consistent with 29 CFR 1601.12(b) and 29 CF may serve as a charge if it meets the elements of a charge.
4.  ROUTINE USES.  EEOC may disclose information from this form to other state, local and federal agencies as appropriate or nec Commission's functions, or if EEOC becomes aware of a civil or criminal law violation. EEOC may also disclose information to re congressional offices in response to inquiries from parties to the charge, to disciplinary committees investigating complaints against attorneys representing the parties to the charge, or to federal agencies inquiring about hiring or security clearance matters
5.  WHETHER DISCLOSURE IS MANDATORY OR VOLUNTARY AND EFFECT ON INDIVIDUAL FOR NOT PROVIDING INFORMATION.
Providing of this information is voluntary but the failure to do so may hamper the Commission's investigation of a charge. It is not mandatory that this form be used to provide the requested information.

Print Form

On 05/05/2014, I, Jessica Berger, called my Regional Sales Manager, Paul Strictland and complained about being formally written up due to an action I supposedly made that is standard practice in the branch that I work in. In the phone call, I did express that I made it clear to Hearald Russell Fielder that I would prefer for him to refrain from talking about his method of giving a sperm sample in mixed company in the sales room of the building. Paul Strictland asked if I would like to make a formal complaint and I said yes I would. He told me he would contact James Earl Thomas, Division Manager and Larry Black, South Central, HR Manager. He advised me to stay and work from home on 05/05/2014 and to report directly to him as well as to wait on the phone call from the "heavy hitters" to be interviewed that Monday.

I received the phone call at 4:00 pm on Monday, May 5, 2014 to report to the Orkin Branch # 286, Houma, LA to talk to James Earl Thomas and Larry Black. When I got there, Lisa Mosely was already in the office being interviewed and Hearald Russell Fielder was interviewed as well. I waited for my turn. When I was called in, Larry Black had Lisa Mosely stay to take "notes" as he is an older gentleman and it is "easier" on him to keep track of the conversation. At 5pm, he advised her that she could leave for the day.

It was a blame game from the beginning. HR was called in to address my claim and I was the last person to be interviewed. It was completely turned around on me. They had their minds already made up when I walked in the room. Before even concluding the investigation, I was told there was "NO CAUSE" for any action whether it was a disciplinary write up or termination. I was asked if I thought I was the problem since I was told I was the problem by the Branch Manager and the Office Manager and I said No. Larry Black disagreed with me.

The interview was more of a discussion on my production and activity as an Account Manager rather than assessing my complaint. I told them this is creating a very hostile work environment for me as well as the fact that I was accused of calling HR which was not the case. I was told to remain in my office by Larry Black. In the HR meeting, Larry Black brought up the fact that I was on new medication. I said, "Excuse me? What did you say and how would you even know that?" He said, "Oops, I let that slip, didn't I?" They questioned whether my medication had any effect on me doing my job. I find they are discriminating against me because I have a disability and using the fact that it causes anxiety to run me out of my position and force me to quit.

HR Manager, Larry Black asked me what I thought I would receive from them coming down to meet with me. My answer was, "I thought I was going to get some support." I was totally wrong. They were not there to help me. He asked what I would like them to do about the situation. I stated that if Russell and Lisa Mosely were to remain in the branch I would like to transfer. He laughed it off and questioned me on whether or not I would just pack up and leave. Then, he asked what about my husband and his job. What would my husband do for work? I told him it wasn't about my husband and not to worry about that. Basically, I was blown off and not taken seriously whatsoever.



**U.S. Equal Employment Opportunity Commission**
**New Orleans Field Office**

1555 Poydras Street
Suite 1900
New Orleans, LA 70112
(504) 595-2826
TTY (504) 595-2958
Fax (504) 595-2884

Respondent: ORKIN PEST CONTROL BRANCH# 286
EEOC Charge No.: 461-2014-01256
FEPA Charge No.:

August 6, 2014

Jessica R. Berger
317 Louis Drive
Houma, LA 70364

Dear Mrs. Berger:

This is with reference to your recent written correspondence or intake questionnaire in which you alleged employment discrimination by the above-named respondent. The information provided indicates that the matter complained of is subject to the statute(s) checked off below:

[ ]     Title VII of the Civil Rights Act of 1964 (Title VII)

[ ]     The Age Discrimination in Employment Act (ADEA)

[ X ]   The Americans with Disabilities Act (ADA)

[ ]     The Equal Pay Act (EPA)

[ ]     The Genetic Information Nondiscrimination Act (GINA)

The attached EEOC Form 5, Charge of Discrimination, is a summary of your claims based on the information you provided. Because the document that you submitted to us constitutes a charge of employment discrimination, we have complied with the law and notified the employer that you filed a charge. Before we investigate your charge, however, you must sign and return the enclosed Form.

To enable proper handling of this action by the Commission you should:

(1) Review the enclosed charge form and make corrections.

(2) Sign and date the charge in the bottom left hand block where I have made an "X". For purposes of meeting the deadline for filing a charge, the date of your original signed document will be retained as the original filling date.

(3) Return the signed charge to this office.

Before we initiate an investigation, we must receive your signed Charge of Discrimination (EEOC Form 5). Please sign and return the charge within thirty (30) days from the date of this letter. Under EEOC procedures, if we do not hear from you within 30 days or receive your signed charge within 30 days, we are authorized to dismiss your charge and issue you a right to sue letter allowing you to pursue the matter in federal court. Please be aware that after we receive your signed Form 5, the EEOC will send a copy of the charge to Louisiana Commission On Human Rights P.O. Box 94094 Baton Rouge, LA 70804 as required by our procedures. If that agency processes the charge, it may require the charge to be signed before a notary public or an agency official. The agency will then investigate and resolve the charge under their statute.

J. BERGER 182
GKB & ASSOCIATES

Please use the "EEOC Charge No." listed at the top of this letter whenever you call us about this charge. Please also notify this office of any change in address or of any prolonged absence from home. Failure to cooperate in this matter may lead to dismissal of the charge.

Please also read the enclosed brochure, "What You Should Know Before You File A Charge With EEOC," for answers to frequently asked questions about employee rights and the EEOC process. If you have any questions, please call me at the number listed below. If you have to call long distance, please call collect.

Sincerely,

/S/ Nelson Borges
Nelson Borges
Acting Enforcement Supervisor
(504) 595-2843

Office Hours: Monday – Friday, 8:00 a.m. - 4:30 p.m.
www.eeoc.gov

Enclosure(s)
    Copy of EEOC Form 5, Charge of Discrimination

J. BERGER 183
GKB & ASSOCIATES

**Corrections**

Please add to :

**I.** I went back to the branch and tried to talk to Andy Boudreaux, Service Manager, he informed me that he was not to associate with me unless it was in the company of Russell Fielder, Branch Manager. We went into Russell Fielder's office where I was accused of calling HR. They then proceeded to tell me that they were not speaking to me other than work related issues to protect themselves from Human Resources in a highly rude and condescending manner.

**III.** (Insert where the crossed out sentence is)  I find they are retaliating against me because I will not succumb to Russell Fielder's argumentative conversations , condescending remarks, attitude, accusations and sexual advances.

**VI.** On 05/02/2014, I was given an expectation guideline sheet after being written up for being unprofessional in the workplace. On 05/05/2014, I had a meeting with HR representative, Larry Black and James Earl Thomas I was told that I had to meet all the expectations on that sheet and if I did not meet them that my job was subject to disciplinary action up and to termination.

**VII.** Several sales have been taken from me since May 5, 2014. For example, May 21, 2014, Russell Fielder told me that I was not to do a sell a residential Bed Bug job. I have always inspected and sold residential and commercial bed bug jobs. He took the sale from me and gave it to another employee.  Another example: I had a hotel chain account representative contact me about needed service for a new hotel.  The lead came into the Houma Branch and was given to me. I arranged for my client to get service. Shortly thereafter, I received an email from Paul Strictland that it was given to another account manager and I was to receive no credit or compensation for my account.

**VIII.** On 07/08/2014, I had an appointment with a potential client which was a potential $10, 000 sale. Prior to the sale, I made arrangements with Russell Fielder to have Andy Boudreaux come with me to aid in inspection as it is a 2 acre property.  On the morning of the appointment, I arrive with no signs of Andy or a phone call saying he was unable to make it.  I later received notice he was not coming and was with Russell Fielder on a National Account which I was told was more important than mine.  I was also told that Andy had more important things to do than to go with me and that I should know my job well enough not to need help from Andy. Upon submitting approval for this account on  07/14/2014, I didn't receive an approval or denial until I spoke with Tim Tarantello in Atlanta, Training Manager, on 07/23/2014.  I received the email on 07/24/2014. When reviewing my approval email, it was sent up on 07/23/2014 and approved in 2-3 hours.

**VIIII**. On 08/14/2014, I received an email from James Earl Thomas asking that I be available for a meeting on 08/15/2014 at 10:30 am with Karen Bradford, Director of HR Orkin North America.  Upon meeting with them on the 15th of August, 2014, I was TERMINATED.

EEOC Form 5 (11/09)

| CHARGE OF DISCRIMINATION | Charge Presented To: | Agency(ies) Charge No(s): |
|---|---|---|
| This form is affected by the Privacy Act of 1974. See enclosed Privacy Act Statement and other information before completing this form. | ☐ FEPA<br>☒ EEOC | 461-2014-01256 |

Louisiana Commission On Human Rights

*State or local Agency, if any*                                                      and EEOC

| Name *(indicate Mr., Ms., Mrs.)* | Home Phone *(Incl. Area Code)* | Date of Birth |
|---|---|---|
| Mrs. Jessica R. Berger | ~~(985) 293-7280~~ | 04-14-1978 |

| Street Address | City, State and ZIP Code | |
|---|---|---|
| 317 Louis Drive, Houma, LA 70364 | 985.228.5384 *gr* AUG 27 2014 | |

Named is the Employer, Labor Organization, Employment Agency, Apprenticeship Committee, or State or Local Government Agency That I Believe Discriminated Against Me or Others. *(If more than two, list under PARTICULARS below.)*

| Name | No. Employees, Members | Phone No. *(Include Area Code)* |
|---|---|---|
| ORKIN PEST CONTROL BRANCH# 286 | 500 or More | (985) 879-1536 |

| Street Address | City, State and ZIP Code | |
|---|---|---|
| 109 Venture Blvd, Houma, LA 70360 | | |

| Name | No. Employees, Members | Phone No. *(Include Area Code)* |
|---|---|---|
| | | |

| Street Address | City, State and ZIP Code | |
|---|---|---|
| | | |

DISCRIMINATION BASED ON *(Check appropriate box(es).)*

☐ RACE ☐ COLOR ☐ SEX ☐ RELIGION ☐ NATIONAL ORIGIN
☒ RETALIATION ☐ AGE ☒ DISABILITY ☐ GENETIC INFORMATION
☐ OTHER *(Specify)*

DATE(S) DISCRIMINATION TOOK PLACE
Earliest **02-24-2014**     Latest ~~05-13-2014~~ 08-15-2014

☐ CONTINUING ACTION

THE PARTICULARS ARE *(If additional paper is needed, attach extra sheet(s)):*

I.   On September 3, 2013, I was hired by Orkin Pest Control hereinafter referred as "Respondent" as an Accounts Manager. In May 5, 2014, I called my Regional Sales Manager, Paul Strickland and complained about being formally written up due to an action I supposedly made that is standard practice in the branch that I work in. In the phone call, I did express that I made it clear to Hearald Russell Fielder that I would prefer for him to refrain from talking about his method of giving a sperm sample in mixed company in the sales room of the building. Paul Strickland asked if I would like to make a formal complaint and I said yes I would. He told me he would contact James Earl Thomas, Division Manager and Larry Black, South Central, HR Manager. He advised me to stay and work from home on may 5, 2014, and to report directly to him as well as to wait on the phone call from the "heavy hitters" to be interviewed that Monday.

| I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY – *When necessary for State and Local Agency Requirements* |
|---|---|
| I declare under penalty of perjury that the above is true and correct. | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief.<br>SIGNATURE OF COMPLAINANT    J. BERGER 185    GKB & ASSOCIATES |
| 8/27/14 *Date*    *Jessica Berger*  *Charging Party Signature* | SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE *(month, day, year)* |

EEOC Form 5 (11/09)

## CHARGE OF DISCRIMINATION

AUG 2 7 2014

This form is affected by the Privacy Act of 1974. See enclosed Privacy Act
Statement and other information before completing this form

| Charge Presented To: | Agency(ies) Charge No(s): |
|---|---|
| ☐ FEPA | |
| ☒ EEOC | 461-2014-01256 |

Louisiana Commission On Human Rights

State or local Agency, if any

and EEOC

II.    I received the phone call at 4:00 pm on Monday, May 5, 2014 to report to the Orkin Branch #
286, Houma, LA to talk to James Earl Thomas and Larry Black. When I got there, Lisa Mosely
was already in the office being interviewed and Hearald Russell Fielder was interviewed as
well. I waited for my turn. When I was called in, Larry Black had Lisa Mosely stay to take
"notes" as he is an older gentleman and it is "easier" on him to keep track of the conversation.
Human Resources were called in to address my claim and I was the last person to be
interviewed. It was completely turned around on me. They had their minds already made up
when I walked in the room. Before even concluding the investigation, I was told there was "no
cause" for any action whether it was a disciplinary write up or termination. I was asked if I
thought I was the problem since I was told I was the problem by the Branch Manager and the
Office Manager and I said no. Larry Black disagreed with me.

III.   The interview was more of a discussion on my production and activity as an Account Manager
rather than assessing my complaint. I told them this is creating a very hostile work
environment for me as well as the fact that I was accused of calling Human Resources which
was not the case. I was told to remain in my office by Larry Black. In the Human Resources
meeting, Larry Black brought up the fact that I was on new medication. What did you say and how would you even know that?" He said, "Oops, I let that slip, didn't
I?" They questioned whether my medication had any effect on me doing my job. I find they are
discriminating against me because I have a disability and using the fact that it causes anxiety *also*
to run me out of my position and force me to quit.

IV.    Since February 2014, Hearald Russell Fielder's arrival at this Orkin Branch #286 in Houma, LA
has made my life a living hell. He has caused me nothing but grief. It is affecting my personal
life as well as work life. My family is being affected by the level of stress that Russell Fielder
and Lisa Mosely have induced upon me and now my family as well. He has been nothing but
rude, condescending and disrespectful to me. He argues with me about everything including
pit bull attacks on children. It can even be anything unrelated to work. I can walk in a room
and it would start an argument. I have been coerced into calling off a call to Human Resources
before because I was told that everyone would lose their jobs and that it would make James
Earl Thomas and the "higher ups" happy if I just cooperated. This was told to me by Lisa
Mosely and Russell Fielder. I am being harassed and bullied on a daily basis. I am treated as if
I am inferior and I honestly believe it is because I am a woman who will not "bow" down so to
speak and kiss his behind and brown nose to get where I need to be in the corporate world.
My family life is suffering from my extremely high stress level and it is honestly overwhelming
to the point where my sense of self worth is at a bare minimum.

I want this charge filed with both the EEOC and the State or local Agency, if any. I
will advise the agencies if I change my address or phone number and I will
cooperate fully with them in the processing of my charge in accordance with their
procedures.

I declare under penalty of perjury that the above is true and correct.

NOTARY – When necessary for State and Local Agency Requirements

I swear or affirm that I have read the above charge and that it is true to
the best of my knowledge, informati...  J. BERGER 186
SIGNATURE OF COMPLAINANT        GKB & ASSOCIATES

8/27/14
Date

*Jessica Berger*
Charging Party Signature

SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE
(month, day, year)

EEOC Form 5 (11/09)

| CHARGE OF DISCRIMINATION | Charge Presented To: | Agency(ies) Charge No(s): |
|---|---|---|

This form is affected by the Privacy Act of 1974. See enclosed Privacy Act Statement and other information before completing this form.

AUG 2 7 2014

Charge Presented To:

☐ FEPA

☒ EEOC    461-2014-01256

Louisiana Commission On Human Rights    and EEOC

*State or local Agency, if any*

V.    Russell and Lisa Mosely have turned everyone against me and I have no allies in the branch. Everyone is scared to lose their jobs if they talk to me or even associate with me. There is officially a target on my back and I feel that my livelihood is being threatened.

VI.    ~~I believe that I have been discriminated against because of my disability in violation of the ADA Amendments Act of 2008, as amended. I also believe that all the harassment is in retaliation for my complaints about the discriminatory treatment because of my disability~~

---

I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures.

NOTARY – When necessary for State and Local Agency Requirements

I declare under penalty of perjury that the above is true and correct.

I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief.

SIGNATURE OF COMPLAINANT

J. BERGER 187
GKB & ASSOCIATES

8/27/14    *Jessica Berger*

Date    Charging Party Signature

SUBSCRIBED AND SWORN TO BEFOR
(month, day, year)

**Corrections**

Please add to :

AUG 2 7 2014

**I.** I went back to the branch and tried to talk to Andy Boudreaux, Service Manager, he informed me that he was not to associate with me unless it was in the company of Russell Fielder, Branch Manager. We went into Russell Fielder's office where I was accused of calling HR. They then proceeded to tell me that they were not speaking to me other than work related issues to protect themselves from Human Resources in a highly rude and condescending manner.

**III.** (Insert where the crossed out sentence is)  I find they are retaliating against me because I will not succumb to Russell Fielder's argumentative conversations , condescending remarks, attitude, accusations and sexual advances.

**VI.** On 05/02/2014, I was given an expectation guideline sheet after being written up for being unprofessional in the workplace. On 05/05/2014, I had a meeting with HR representative, Larry Black and James Earl Thomas I was told that I had to meet all the expectations on that sheet and if I did not meet them that my job was subject to disciplinary action up and to termination.

**VII.** Several sales have been taken from me since May 5, 2014. For example, May 21, 2014, Russell Fielder told me that I was not to do a sell a residential Bed Bug job. I have always inspected and sold residential and commercial bed bug jobs. He took the sale from me and gave it to another employee. Another example: I had a hotel chain account representative contact me about needed service for a new hotel.  The lead came into the Houma Branch and was given to me. I arranged for my client to get service. Shortly thereafter, I received an email from Paul Strictland that it was given to another account manager and I was to receive no credit or compensation for my account.

**VIII.** On 07/08/2014, I had an appointment with a potential client which was a potential $10, 000 sale. Prior to the sale, I made arrangements with Russell Fielder to have Andy Boudreaux come with me to aid in inspection as it is a 2 acre property.  On the morning of the appointment, I arrive with no signs of Andy or a phone call saying he was unable to make it.  I later received notice he was not coming and was with Russell Fielder on a National Account which I was told was more important than mine.  I was also told that Andy had more important things to do than to go with me and that I should know my job well enough not to need help from Andy. Upon submitting approval for this account on  07/14/2014, I didn't receive an approval or denial until I spoke with Tim Tarantello in Atlanta, Training Manager, on 07/23/2014.  I received the email on 07/24/2014.  When reviewing my approval email, it was sent up on 07/23/2014 and approved in 2-3 hours.

**VIIII.** On 08/14/2014, I received an email from James Earl Thomas asking that I be available for a meeting on 08/15/2014 at 10:30 am with Karen Bradford, Director of HR Orkin North America.  Upon meeting with them on the 15th of August, 2014, I was TERMINATED.

EEOC Form 5 (11/03)

| CHARGE OF DISCRIMINATION | Charge Presented To: | Agency(ies) Charge No(s): |
|---|---|---|
| This form is affected by the Privacy Act of 1974. See enclosed Privacy Act Statement and other information before completing this form | ☐ FEPA<br>☒ EEOC | AMENDED<br>461-2014-01256 |

| Louisiana Commission On Human Rights | | and EEOC |
|---|---|---|
| *State or local Agency, if any* | | |

| Name *(indicate Mr., Ms., Mrs.)* | Home Phone *(Incl. Area Code)* | Date of Birth |
|---|---|---|
| Mrs. Jessica R. Berger | (985) 228-5384 | 04-14-1978 |

| Street Address | City, State and ZIP Code | |
|---|---|---|
| 317 Louis Drive, Houma, LA 70364 | | |

Named is the Employer, Labor Organization, Employment Agency, Apprenticeship Committee, or State or Local Government Agency That I Believe Discriminated Against Me or Others. *(If more than two, list under PARTICULARS below.)*

| Name | No. Employees, Members | Phone No. *(Include Area Code)* |
|---|---|---|
| ORKIN PEST CONTROL BRANCH# 286 | 500 or More | (985) 879-1536 |

| Street Address | City, State and ZIP Code | |
|---|---|---|
| 109 Venture Blvd, Houma, LA 70360 | | |

| Name | No. Employees, Members | Phone No. *(Include Area Code)* |
|---|---|---|
| | | |

| Street Address | City, State and ZIP Code | |
|---|---|---|
| | | |

MAR 0 5 2015

| DISCRIMINATION BASED ON *(Check appropriate box(es).)* | DATE(S) DISCRIMINATION TOOK PLACE |
|---|---|
| ☐ RACE  ☐ COLOR  ☒ SEX  ☐ RELIGION  ☐ NATIONAL ORIGIN<br>☒ RETALIATION  ☐ AGE  ☒ DISABILITY  ☐ GENETIC INFORMATION<br>☐ OTHER *(Specify)* | Earliest: 02-24-2014   Latest: 08-15-2014<br>☐ CONTINUING ACTION |

THE PARTICULARS ARE *(If additional paper is needed, attach extra sheet(s)):*

Upon information and belief, from approximately March 2014 to August 2014, Hearld Russell Fielder, Branch Manager, contributed to a hostile workplace environment by engaging in severe and pervasive sexual harassment. This unwelcomed conduct included telling sexually explicit jokes and stories in common areas, repeatedly grabbing his groin, standing uncomfortably close to me and starring at my breast. I conducted a residential home inspection after which time the contract was given to a male termite sales inspector (Matt Ambros). The company received a sales lead for an account that I managed. The lead was worked by Larry Nagy, Branch Account Manager, and the commission was awarded to Paul Strickland, Regional Sales Manager. Also all the previous sales for that account were given to Mr. Strickland. I was discharged for Stuff Reduction. I was hired by Orkin Pest Control on September 3,2013 as an Accounts Manager.

*(handwritten annotations in margins: (u. Fitzgerald), (J.B.), Staring (J.B.), inspection (J.B.), Building (J.B.), Reduction (J.B.))*

These incidents of sexual harassment were reported to Paul Strickland, Regional Sales Manager, James Earl Thomas, Region Division Manager for Louisiana and Mississippi, and Larry Black, the

| I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures<br>I declare under penalty of perjury that the above is true and correct. | NOTARY – When necessary for State and Local Agency Requirements |
|---|---|
| | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief<br>SIGNATURE OF COMPLAINANT<br><br>J. BERGER 189<br>GKB & ASSOCIATES |
| 03/03/15   *Jessica, Berger*<br>Date   Charging Party Signature | SUBSCRIBED AND SWORN TO BEF<br>*(month, day, year)* |

EEOC Form 5 (11/09)

| CHARGE OF DISCRIMINATION | Charge Presented To: | Agency(ies) Charge No(s): |
|---|---|---|
| This form is affected by the Privacy Act of 1974  See enclosed Privacy Act Statement and other information before completing this form | ☐ FEPA | AMENDED |
| | ☒ EEOC | 461-2014-01256 |

| Louisiana Commission On Human Rights | and EEOC |
|---|---|
| State or local Agency, if any | |

*(handwritten right margin, vertical: supposedly in the future)*

South Central Division Human Resource Manager.  No corrective action was taken.

*Strickland (J. B.)*

On May 5, 2014, I called my Regional Sales Manager, Paul ~~Strickland~~ to complain about being given a formal write up for _____ .  This is standard practice for this office but I was given a written disciplinary action.  During that phone conversation, I expressed and made it clear to Hearald Russell Fielder that I would prefer for him to refrain from talking about his method of giving a sperm sample in mixed company in the sales room of the building. Paul ~~Strickland~~ *Strickland* asked if I would like to make a formal complaint and I said yes I would. He told me he would contact James Earl Thomas, Division Manager and Larry Black, South Central, HR Manager. He advised me to stay and work from home on May 5, 2014, and to report directly to him as well as to wait on the phone call from the "heavy hitters" to be interviewed that Monday. I received the phone call at 4:00 pm on Monday, May 5, 2014 to report to the Orkin Branch # 286, Houma, LA to talk to James Earl Thomas and Larry Black. When I got there, Lisa Mosely was already in the office being interviewed and Hearald Russell Fielder was interviewed as well. I waited for my turn. When I was called in, Larry Black had Lisa Mosely stay to take "notes" as ~~he is an older gentleman and it is~~ "easier" on him to keep track of the conversation.  *(J. B.)*

*(handwritten left margin, vertical: (J. B.) being disrespectful)*

Human Resources were called in to address my claim and I was the last person to be interviewed. It was completely turned around on me. They had their minds already made up when I walked in the room. Before even concluding the investigation, I was told there was "NO CAUSE" for any action whether it was a disciplinary write up or termination. I was asked if I thought I was the problem since I was told I was the problem by the Branch Manager and the Office Manager and I said no.  Larry Black disagreed with me. The interview was more of a discussion on my production and activity as an Account Manager rather than assessing my complaint. I told them this was creating a very hostile work environment for me as well as the fact that I was accused of calling Human Resources which was not the case. I was told to remain in my office by Larry Black. In the Human Resources meeting, Larry Black brought up the fact that I was on new medication. I said, "Excuse me? What did you say and how would you even know that?" He said, "Oops, I let that slip, didn't I?" They questioned whether my medication had any effect on me doing my job.  I believe the employer is discriminating against me because of my medical condition in violation of the Americans with Disabilities Act of 1990.

Since February 2014, Hearald Russell Fielder's arrival at this Orkin Branch #286 in Houma, LA has made my life a living hell. He has caused me nothing but grief. It is affecting my personal life as well as work life. My family is being affected by the level of stress that Russell Fielder and Lisa Mosely induced upon me and now my family as well. He has been nothing but rude, condescending and disrespectful to me. He argues with me about everything including things which have nothing to do with the job: such as, pit bull attacks on children.  When I walk into the room he starts an argument. I have been coerced to not call Human Resources because I was told that everyone would lose their

*(handwritten right margin, vertical: as of solution and to avoid contact with my co-workers in the future)*

| I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY – When necessary for State and Local Agency Requirements |
|---|---|
| I declare under penalty of perjury that the above is true and correct. | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief. J. BERGER 190 |
| | SIGNATURE OF COMPLAINANT  GKB & ASSOCIATES |
| 03/03/15      *Jessica Berger*  | SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE (month, day, year) |
| Date           Charging Party Signature | |

SIGNATURE OF COMPLAINANT

CP Enclosure with EEOC Form 5 (11/09)

PRIVACY ACT STATEMENT: Under the Privacy Act of 1974, Pub. Law 93-579, authority to request personal data and its uses are:

1. FORM NUMBER/TITLE/DATE. EEOC Form 5, Charge of Discrimination (11/09).

2. AUTHORITY. 42 U.S.C. 2000e-5(b), 29 U.S.C. 211, 29 U.S.C. 626, 42 U.S.C. 12117, 42 U.S.C. 2000ff-6

3. PRINCIPAL PURPOSES. The purposes of a charge, taken on this form or otherwise reduced to writing (whether later recorded on this form or not) are, as applicable under the EEOC anti-discrimination statutes (EEOC statutes), to preserve private suit rights under the EEOC statutes, to invoke the EEOC's jurisdiction and, where dual-filing or referral arrangements exist, to begin state or local proceedings.

4. ROUTINE USES. This form is used to provide facts that may establish the existence of matters covered by the EEOC statutes (and as applicable, other federal, state or local laws). Information given will be used by staff to guide its mediation and investigation efforts and, as applicable, to determine, conciliate and litigate claims of unlawful discrimination. This form may be presented to or disclosed to other federal, state or local agencies as appropriate or necessary in carrying out EEOC's functions. A copy of this charge will ordinarily be sent to the respondent organization against which the charge is made.

5. WHETHER DISCLOSURE IS MANDATORY; EFFECT OF NOT GIVING INFORMATION. Charges must be reduced to writing and should identify the charging and responding parties and the actions or policies complained of. Without a written charge, EEOC will ordinarily not act on the complaint. Charges under Title VII, the ADA or GINA must be sworn to or affirmed (either by using this form or by presenting a notarized statement or unsworn declaration under penalty of perjury); charges under the ADEA should ordinarily be signed. Charges may be clarified or amplified later by amendment. It is not mandatory that this form be used to make a charge.

## NOTICE OF RIGHT TO REQUEST SUBSTANTIAL WEIGHT REVIEW

Charges filed at a state or local Fair Employment Practices Agency (FEPA) that dual-files charges with EEOC will ordinarily be handled first by the FEPA. Some charges filed at EEOC may also be first handled by a FEPA under worksharing agreements. You will be told which agency will handle your charge. When the FEPA is the first to handle the charge, it will notify you of its final resolution of the matter. Then, if you wish EEOC to give Substantial Weight Review to the FEPA's final findings, you must ask us in writing to do so within 15 days of your receipt of its findings. Otherwise, we will ordinarily adopt the FEPA's finding and close our file on the charge.

## NOTICE OF NON-RETALIATION REQUIREMENTS

Please notify EEOC or the state or local agency where you filed your charge if retaliation is taken against you or others who oppose discrimination or cooperate in any investigation or lawsuit concerning this charge. Under Section 704(a) of Title VII, Section 4(d) of the ADEA, Section 503(a) of the ADA and Section 207(f) of GINA, it is unlawful for an *employer* to discriminate against present or former employees or job applicants, for an *employment agency* to discriminate against anyone, or for a *union* to discriminate against its members or membership applicants, because they have opposed any practice made unlawful by the statutes, or because they have made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under the laws. The Equal Pay Act has similar provisions and Section 503(b) of the ADA prohibits coercion, intimidation, threats or interference with any~~ J. BERGER 191~~ exercising or enjoying, or aiding or encouraging others in their exercise or enjoyme ~~GKB & ASSOCIATES~~ under the Act.

EEOC Form 161 (11/09)

## U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

### DISMISSAL AND NOTICE OF RIGHTS

| To: | Jessica R. Berger<br>317 Louis Drive<br>Houma, LA 70364 | From: | New Orleans Field Office<br>1555 Poydras Street<br>Suite 1900<br>New Orleans, LA 70112 |
|---|---|---|---|

|  | ☐ | On behalf of person(s) aggrieved whose identity is<br>CONFIDENTIAL (29 CFR §1601.7(a)) | |
|---|---|---|---|

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| 461-2014-01256 - Amended | Ligita D. Landry,<br>Supervisory Investigator | (504) 595-2876 |

### THE EEOC IS CLOSING ITS FILE ON THIS CHARGE FOR THE FOLLOWING REASON:

☐ The facts alleged in the charge fail to state a claim under any of the statutes enforced by the EEOC.

☐ Your allegations did not involve a disability as defined by the Americans With Disabilities Act.

☐ The Respondent employs less than the required number of employees or is not otherwise covered by the statutes.

☐ Your charge was not timely filed with EEOC; in other words, you waited too long after the date(s) of the alleged discrimination to file your charge

☒ The EEOC issues the following determination: Based upon its investigation, the EEOC is unable to conclude that the information obtained establishes violations of the statutes. This does not certify that the respondent is in compliance with the statutes. No finding is made as to any other issues that might be construed as having been raised by this charge.

☐ The EEOC has adopted the findings of the state or local fair employment practices agency that investigated this charge.

☐ Other (briefly state)

### - NOTICE OF SUIT RIGHTS -
(See the additional information attached to this form.)

**Title VII, the Americans with Disabilities Act, the Genetic Information Nondiscrimination Act, or the Age Discrimination in Employment Act:** This will be the only notice of dismissal and of your right to sue that we will send you. You may file a lawsuit against the respondent(s) under federal law based on this charge in federal or state court. Your lawsuit **must be filed WITHIN 90 DAYS** of your receipt of this notice; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a claim under state law may be different.)

**Equal Pay Act (EPA):** EPA suits must be filed in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that backpay due for any violations that occurred **more than 2 years (3 years)** before you file suit may not be collectible.

On behalf of the Commission

Keith T. Hill,
Director

JUN – 3 2015

(Date Mailed)

Enclosures(s)

cc:
Geoffrey M. Sweeney
The Kullman Firm
P. O. Box 60118
New Orleans, LA 70160

G. Karl Bernard
1615 Poydras Street, Suite 220
New Orleans, LA 70112

J. BERGER 192
GKB & ASSOCIATES

NOTICE OF RIGHTS UNDER THE ADA AMENDMENTS ACT OF 2008 (ADAAA):   The ADA was amended, effective January 1, 2009, to broaden the definitions of disability to make it easier for individuals to be covered under the ADA/ADAAA. A disability is still defined as (1) a physical or mental impairment that substantially limits one or more major life activities (actual disability); (2) a record of a substantially limiting impairment; or (3) being regarded as having a disability. *However, these terms are redefined, and it is easier to be covered under the new law.*

If you plan to retain an attorney to assist you with your ADA claim, we recommend that you share this information with your attorney and suggest that he or she consult the amended regulations and appendix, and other ADA related publications, available at http://www.eeoc.gov/laws/types/disability_regulations.cfm.

"Actual" disability or a "record of" a disability (note: if you are pursuing a failure to accommodate claim you must meet the standards for either "actual" or "record of" a disability):

➢ The limitations from the impairment no longer have to be severe or significant for the impairment to be considered substantially limiting.
➢ In addition to activities such as performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, thinking, concentrating, reading, bending, and communicating (more examples at 29 C.F.R. § 1630.2(i)), "major life activities" now include the operation of major bodily functions, such as: functions of the immune system, special sense organs and skin; normal cell growth; and digestive, genitourinary, bowel, bladder, neurological, brain, respiratory, circulatory, cardiovascular, endocrine, hemic, lymphatic, musculoskeletal, and reproductive functions; or the operation of an individual organ within a body system.
➢ Only one major life activity need be substantially limited.
➢ With the exception of ordinary eyeglasses or contact lenses, the beneficial effects of "mitigating measures" (e.g., hearing aid, prosthesis, medication, therapy, behavioral modifications) are not considered in determining if the impairment substantially limits a major life activity.
➢ An impairment that is "episodic" (e.g., epilepsy, depression, multiple sclerosis) or "in remission" (e.g., cancer) is a disability if it would be substantially limiting when active.
➢ An impairment may be substantially limiting even though it lasts or is expected to last fewer than six months.

"Regarded as" coverage:

➢ An individual can meet the definition of disability if an employment action was taken because of an actual or perceived impairment (e.g., refusal to hire, demotion, placement on involuntary leave, termination, exclusion for failure to meet a qualification standard, harassment, or denial of any other term, condition, or privilege of employment).
➢ "Regarded as" coverage under the ADAAA no longer requires that an impairment be substantially limiting, or that the employer perceives the impairment to be substantially limiting.
➢ The employer has a defense against a "regarded as" claim only when the impairment at issue is objectively *BOTH* transitory (lasting or expected to last six months or less) *AND* minor.
➢ A person is not able to bring a failure to accommodate claim *if* the individual is covered only under the "regarded as" definition of "disability."

*Note:   Although the amended ADA states that the definition of disability "shall be construed broadly" and "should not demand extensive analysis," some courts require specificity in the complaint explaining how an impairment substantially limits a major life activity or what facts indicate the challenged employment action was because of the impairment. Beyond the initial pleading stage, some courts will require specific evidence to establish disability.*   For more information, consult the amended regulations and appendix, as well as explanatory publications, available at http://www.eeoc.gov/laws/types/disability_regulations.cfm.



**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**
**New Orleans Field Office**

1555 Poydras St., Suite 1900
New Orleans, LA 70112
Intake Information Group: (800) 669-4000
Intake Information Group TTY: (800) 669-6820
New Orleans Status Line: (866) 408-8075
New Orleans Direct Dial: (504) 595-2826
TTY (504) 595-2958
FAX (504) 595-2884

G. Karl Bernard
1615 Poydras Street, Suite 220
New Orleans, LA 70112

Re: Charge No. 461-2014-01256 - Amended
    Jessica R. Berger v. Orkin Pest Control Branch #286

Dear Mr. Bernard:

Your client filed the above referenced charge of employment discrimination. We have assessed this matter and determined that the investigation should be discontinued and the charge dismissed because it is not likely that the evidence obtained during the investigation will support the allegations of the charge.

Enclosed please find a signed DISMISSAL AND NOTICE OF RIGHT TO SUE. You have **90 days** to file a private suit in federal or state court. This will conclude EEOC's investigative processing of this charge.

I regret there is nothing further we can do to assist you with this matter.

Sincerely,

JUN − 3 2015
Date

Robin R. Brown
Investigator

Enclosure

cc: Jessica R. Berger

J. BERGER 194
GKB & ASSOCIATES

On 05/05/2014, I, Jessica Berger, called my Regional Sales Manager, Paul Strictland and complained about being formally written up due to an action I supposedly made that is standard practice in the branch that I work in. In the phone call, I did express that I made it clear to Hearald Russell Fielder that I would prefer for him to refrain from talking about his method of giving a sperm sample in mixed company in the sales room of the building. Paul Strictland asked if I would like to make a formal complaint and I said yes I would. He told me he would contact James Earl Thomas, Division Manager and Larry Black, South Central, HR Manager. He advised me to stay and work from home on 05/05/2014 and to report directly to him as well as to wait on the phone call from the "heavy hitters" to be interviewed that Monday.

I received the phone call at 4:00 pm on Monday, May 5, 2014 to report to the Orkin Branch # 286, Houma, LA to talk to James Earl Thomas and Larry Black. When I got there, Lisa Mosely was already in the office being interviewed and Hearald Russell Fielder was interviewed as well. I waited for my turn. When I was called in, Larry Black had Lisa Mosely stay to take "notes" as he is an older gentleman and it is "easier" on him to keep track of the conversation. At 5pm, he advised her that she could leave for the day.

It was a blame game from the beginning. HR was called in to address my claim and I was the last person to be interviewed. It was completely turned around on me. They had their minds already made up when I walked in the room. Before even concluding the investigation, I was told there was "NO CAUSE" for any action whether it was a disciplinary write up or termination. I was asked if I thought I was the problem since I was told I was the problem by the Branch Manager and the Office Manager and I said No. Larry Black disagreed with me.

The interview was more of a discussion on my production and activity as an Account Manager rather than assessing my complaint. I told them this is creating a very hostile work environment for me as well as the fact that I was accused of calling HR which was not the case. I was told to remain in my office by Larry Black. In the HR meeting, Larry Black brought up the fact that I was on new medication. I said , "Excuse me? What did you say and how would you even know that?" He said , "Oops, I let that slip, didn't I?" They questioned whether my medication had any effect on me doing my job. I find they are discriminating against me because I have a disability and using the fact that it causes anxiety to run me out of my position and force me to quit.

HR Manager, Larry Black asked me what I thought I would receive from them coming down to meet with me. My answer was, "I thought I was going to get some support. " I was totally wrong. They were not there to help me. He asked what I would like them to do about the situation. I stated that if Russell and Lisa Mosely were to remain in the branch I would like to transfer. He laughed it off and questioned me on whether or not I would just pack up and leave. Then, he asked what about my husband and his job. What would my husband do for work? I told him it wasn't about my husband and not to worry about that. Basically, I was blown off and not taken seriously whatsoever.

J. BERGER 195
GKB & ASSOCIATES

I was also informed that Russell Fielder talking about his sperm sample was appropriate in the context of the conversation he was having at the time. HR also blew it off when I mentioned that he leers at me and makes me uncomfortable when he stares at me and grabs his crotch and that he has leaned over me and stared down my blouse. But, the fact that he is making me uncomfortable is his "right" as a Branch Manager.  "He is a Branch Manager. He can do what he wants."

The Service Manager, Andy Boudreaux said he could only discuss "business" with me and Russell Fielder said the same to "protect" them selves because I called HR. The Office Manager, Lisa Mosely also told a technician to stay away from me because I was trouble and trying to start things in the office that was getting back to HR. They are completely alienated from everyone in this office.

Since February 2014, Hearald Russell Fielder's arrival at this Orkin Branch #286 in Houma, LA has made my life a living hell.  He has caused me nothing but grief. It is affecting my personal life as well as work life.  My family is being affected by the level of stress that Russell Fielder and Lisa Mosely has induced upon me and now my family as well. He has been nothing but rude, condescending and disrespectful to me. He argues with me about EVERYTHING including pit bull attacks on children.  It can even be anything unrelated to work.  I can walk in a room and it would start an argument. I have been coerced into calling off a call to HR before because I was told that everyone would lose their jobs and that it would make James Earl Thomas and the "higher ups" happy if I just cooperated. This was told to me by Lisa Mosely and Russell Fielder.  I am being harassed and bullied on a daily basis. I am treated as if I am inferior and I honestly believe it is because I am a woman who will not "bow" down so to speak and kiss his behind and brown nose to get where I need to be in the corporate world.  My family life is suffering from my extremely high stress level and it is honestly overwhelming to the point where my sense of self worth is at a bare minimum.  Russell and Lisa Mosely have turned everyone against me and I have no allies in the branch.  Everyone is scared to lose their jobs if they talk to me or even associate with me.  There is officially a target on my back and I feel that my livelihood is being threatened.

J. BERGER 196
GKB & ASSOCIATES

- 02/24/2014 Hearald Russell Fielder stood behind me, in my office looking over my shoulder and was staring down my shirt. Hovering.

*Always grabbing his crotch facing me.

- 03/14/2014 Hearald Russell Fielder made the comment that I haven't been in my position long enough to know my job.
- 04/07/2014 Lisa Mosely called Jordy Parfait while he was in the hospital and told him to stay away from me because I was starting trouble in the branch and it was getting back to Larry Black. This same time my son was in the hospital for surgery.
- 04/15/2014 Hearald Russell Fielder told me in front of my Regional Sales Manager, Paul Strictland that 3 people complained on me for being disrespectful in the branch but refused to tell me what I said. I was not written up for that. It created a rift between another employee and myself.
- 04/15/2014 HRF and Lisa Mosely coerced me out of calling Human resources because they stated that everyone would lose their jobs because of Atlanta coming down and doing an investigation and finding a "things". I would make my Division Manager angry, James Earl Thomas, and lose my job myself. If I enjoyed working there, I would call it off.
- 04/15/2014 Lisa Mosely confronted in my office about alienated people including her when I didn't call her and tell her that my son was in the hospital having surgery. Her comments were "I thought we were closer than that, but if you want to have just a professional relationship then that is where we will keep." She proceeded to tell me that I hurt her feelings by my actions.
- 04/15/2014 I asked to transfer. They didn't take me seriously.
- 04/22/2014 I needed some steel toe shoes to do some site inspections that required me to have them. I was told that they needed to watch their cost. The men of the branch took money out of the petty cash to buy 2 pairs of steel toe boots for a job on a boat out of Port Fourchon. They said they made $9,000 off that job. My sale was worth $300-500 million, but the branch was not going to benefit from it, only I was because it was going through national accounts.
- 04/22/2014 I had a business appointment and he was to accompany me to it in Baldwin, LA. He decided to make me wait at the office and end up cancelling my appointment with no notice, embarrassing me with the client because he had to take care of his own personal business which included taking his "wife/ girlfriend's" vehicle to the shop was more important than our appointment.
- 04/30/2014 The office manager, Lisa Mosely verbally attacked me in the front office when I was answering Hearald Russell Fielder's question and screamed at me and said that I was the problem in the branch, that I was pissing her off and making her angry. He didn't tell her she was out of line. I asked him if he felt she was right and his response was, "She hit it right on. She is part of management and you were the one in the wrong."
- 05/01/2014 I walked in on a conversation about him talking about how he bought his wife "titties" and he was talking in detail about giving a sperm sample. I removed myself from the room because I was uncomfortable and it was inappropriate.

J. BERGER 197
GKB & ASSOCIATES

- 05/02/2014 I received a formal write up for using foul language. The same meeting I asked him to refrain from talking about his sperm in the sales room. His response was, "It wasn't directed at me, therefore ; It was appropriate due to the nature of the conversation he was having with the technician he was speaking to."

- 05/02/2014 The write up also was nit picking on me about my quotas and productivity. He then threatened to terminate me as the next step.

- 05/02/2014 I notified Paul Strictland, Regional Sales Manager, and he called Human Resources. That same day, Russell Fielder, Branch Manager, accused me of calling HR. (Josh, pocket dialed, overheard) I was told I couldn't associate with anyone in the branch or ask any personal questions such as "how are your kids?" without being in his (russell's) office. They were just doing this strictly business policy to "protect" themselves.

- 05/02/2014 I was so upset about being alienated and accused of calling HR and all of this retaliation. I went to lunch and told my husband. I called Paul Strictland so distraught that my spouse had to finish my conversation with him. Josh Berger did let Paul Strictland know about what he heard and who said what.

- 05/05/2014 I was called to the office by James Earl Thomas, Division Manager, and Larry Black, South Central Division Manager of Human Resources, to do an HR interview. They had already interviewed Russell Fielder, Branch Manager and Lisa Mosely, Office Manager. I voiced my complaints about the Hostile work environment, discrimination because I am not a submissive female, and the sexual harassment issues and Larry Black asked me what I would like the resolution to be. I asked for them to be removed from the branch and if that wasn't the case then I would like a transfer. He said that there was no cause to remove them. He didn't find there was anything inappropriate that went on. He asked me if I felt I was the problem, I said no, he disagreed. He questioned me on my quotas, my husband's job and let it slip that I was on "new medication". I asked him how did he know that. He changed the subject really quickly. (See formal complaint for incident details)

<br>

- 05/06/2014 Branch meeting called and only the technicians and the service manager , Andy Boudreaux and myself were present.

- 05/12/2014 I found the online ad on indeed for my position posted for the Houma branch on May 1, 2014. This has been planned all along and I am 100% a target.

- 05/13/2014 Meeting with James Earl Thomas and Russell Fielder and conference with Larry Black. I was told there were 3 complaintants that came forward saying I was going to bring a gun to work and that they were concerned. I was questioned on the incident. I explained that I got lost in Patterson, LA and my GPS took me to a cane field in the middle of nowhere and I was nervous. (dump site) I asked the office manager, Lisa Mosely about the policy on carrying something to protect myself on the road being I am alone and a female. She told me the policy on firearms and also let me know that it has never been an issue before and that no one would ever know if I did. I have proof of this in a message on my phone. I did explain that I do not own a firearm or weapon nor do I have one in my vehicle to Larry Black, Russ Fielder and James Earl Thomas. The meeting continued to harp on my productivity and activity and I asked what did

that have to do with my complaint with HR and Larry Black said that "it didn't have anything to do with it". I asked him why were we discussing it then. He proceeded to twist my words stating that I was connecting the fact that I couldn't produce enough to do my job. I explained that I am doing my best considering the circumstances. Larry Black said that this would not be the first time that he has talked to an account manager to discuss their production issues. I also asked him why wasn't I the first person to be interviewed considering it was my complaint. He said he had received other complaints from other people. Larry Black said he would begin an investigation into the hostile work environment claim. After all that I complained and stated to him, the only thing they are claiming to "investigate" is a hostile work environment.

- 05/13/2014 James Earl Thomas continued on after the conference saying that I wasn't doing enough in my job to be successful. He also told me that I was making excuses when I was trying to explain. In actuality, I am never given the opportunity to talk or speak my side.

May 2014 Andy Boudreaux heard Russell Fielder saying "Fuck, Fuck, Fuck", when he asked a technician who was cussing like that in his branch they replied the Branch Manager Russell.

April 29- May 1st, Opening for my job as Account Manager was put online as vacant for the Houma, LA location.

May 15, Called by friend and asked if I still worked for Orkin because they saw my job was open on the internet on indeed.com.

May 16, 2014 Put in for a personal day off or "Floating Holiday" it was changed without my approval and taken out of my Vacation Bank. When I called and asked why, they said they couldn't change it. Lisa Mosely was the one who takes care of that. They had to call Cindy Thurman , admin in Baton Rouge to change it. I did not approve for them to use my vacation time.

May 19, 2014 My Orkin Identification card was finally sitting on my desk after asking for it on numerous occasions. I was hired September 3rd, 2013.

May 21, 2014 I was told I could not do residential Bed bug jobs although it was a lead that was put on my desk and this was never an issue before. Russ inquired as to how they would pay me different and took it away from me.

June 2, 2014 Having me do service related issues (Sleep Inn) I saved the account.

Conversation with Matt Ambros, Russ pulled him into the office asked if our conversation was on the psychotic side with Gina Martin in the room.

Emails from Paul Strictland taking my lead away from me and giving it to Larry Nagy in New Orleans. Therefore, I will not get paid on my account.



Narrative
of
Incidents

J. BERGER 200
GKB & ASSOCIATES

 **PEST CONTROL**
World's Best

6/13/14
Complaint by Jessica Berger
Houma, LA

Jessica Berger alleges hostile work environment based on discrimination by branch management's knowledge of her personal health information.

- Ms Berger alleges that her personal confidential health information from her employee personnel file was shared with branch manager Russ Fielder by branch admin Lisa Mosley.

Initial discussion between Jessica Berger and Orkin SDHRM Larry Black took place the afternoon of May 5th with LA/MS Region Manager James Earl Thomas taking notes. During that meeting, Ms. Berger made the above allegations to Larry Black. Investigation of her complaint was conducted by Larry Black and James Earl Thomas beginning Tuesday afternoon June 10, 2014. The investigation concluded Friday, June 13, 2014.

All branch employees were interviewed and cooperated with the HR investigation of Berger's allegations stated above during the above listed dates, with the exception of Ms. Berger herself. On Tuesday morning, 6/11/14, Larry Black requested a follow-up interview meeting with Ms. Berger. She came to the branch office where the interviews were conducted. As she entered the room, Ms. Berger asked Larry Black if she could record the conversation. Larry Black immediately advised Ms. Berger that branch employees were not allowed to record conversations. Ms. Berger then told Larry Black that, unless she was allowed to record the conversations or have her attorney present during the conversation, she would not discuss her allegations with Larry Black further. Larry Black advised Ms. Berger that he was under no obligation to allow her or any branch employee to record conversations or allow attorneys present when investigating internal complaints or conducting branch business. However, Black advised Ms. Berger that she could take written notes during the meeting. Ms. Berger rejected this offer and repeated her demands for recording or having her attorney present. Larry Black told Ms. Berger that our intention during the discussion was to simply ask Ms. Berger if there were any additional issues she wanted us to be aware of as we were conducting our follow-up investigation. Also, Larry Black told Ms. Berger that her insisting on unacceptable conditions for our further discussion with her may prevent us from gathering the necessary information during our investigation and could possibly negatively impact the results. Ms. Berger again refused to talk with us about her allegations without her conditions met. Therefore, Larry Black ended his conversation with Ms. Berger.

During the investigation, none of Ms. Berger's allegations listed above were confirmed. We did not find any evidence of any form of hostile work environment or discrimination by the branch manager, Russ Fielder, or the branch service manager, Andy Boudreaux during the investigation.

J. BERGER 201
GKB & ASSOCIATES



**PEST CONTROL**
**World's Best**

Page 2
June 13, 2014
Houma, LA branch investigation

Larry Black and James Earl Thomas also reviewed the branch personnel file of Ms. Berger. There was no document in her personnel file that referenced any diagnosis of a medical condition. Thus, it appears there was no way for the branch admin to access any such information in order to be able to share it with others.

Larry Black interviewed branch admin Lisa Mosley. Ms. Mosley stated that she did share with branch manager Russ Fielder comments made openly in the admin office, by Ms. Berger herself, that a recent change in her medication was having bad side effects and was negatively impacting her health and ability to complete her normal work schedule. During the initial interview with Ms. Berger on May 5th, she admitted to Larry Black that she had openly discussed her health problems due to the medication change within the branch. During the full branch investigation conducted by Larry Black, two other employees confirmed that Ms. Berger had told them she was having problems with a recent medication change. Since Ms. Berger openly discussed her medical problems with several branch employees, her claim that Lisa Mosley improperly shared Berger's <u>confidential</u> medical information with Russ Fielder was uncorroborated. We determined that it was, in fact, Ms. Berger who had not kept her medical information <u>confidential.</u>

Russ Fielder was assigned as the manager in our Orkin Houma, LA branch in March, 2014. Mr. Fielder conducted a full branch meeting with employees when he was assigned to explain his management expectations for the branch operations, including both individual job responsibilities and branch operation goals.

During our investigation, branch employees told us the following:
- Russ was more involved in total branch operations (admin, sales and service functions) than his most recent predecessor. This was a change in management style that required them as individuals to make changes. But, they considered this a positive change overall.
- Russ is consistent in holding all branch employees accountable to perform their respective daily job duties and meet or exceed their monthly goals.
- Both Russ and Andy are respectful of employee personal problems that may require them to miss work, including for personal or family health issues.
- As branch manager, Russ gives them the upmost personal respect, and does not use a demeaning tone of voice or talk down to them.

<div align="right">

J. BERGER 202
GKB & ASSOCIATES
</div>

2170 Piedmont Road, Atlanta, Georgia 30324, Telephone (404) 888-2000

ANOTHER ROLLINS SERVICE



**PEST CONTROL**
World's Best

Page 3
6/13/14
Houma branch investigation

- During an outburst of temper, including loud cursing and demeaning language by Ms. Berger directed at Russ, he remained remarkably calm, self-controlled and tried unsuccessfully to calm Ms. Berger down so that he could understand and address her concerns.

Employees told us that on more than one occasion they had witnessed first-hand Ms. Berger's conduct of:

- Being extremely disrespectful to Russ Fielder in her demeanor, verbal outburst of temper, tone of voice (loud) and use of extremely foul language.
- Being very argumentative and rude in her conversations with Russ Fielder.

As a result of the investigation, the below actions were taken or will be implemented promptly:

- Employee personnel files will be moved to the branch manager's office and kept secured at all times.

- Larry Black gave written instructions and counseling guidance to admin Lisa Mosley related to maintaining confidential employee information, including any medical information, even if the employee himself/herself has already disclosed this information.

- Larry Black conducted a branch meeting with all employees to discuss respectful behavior in the work place, including both manager and employee responsibilities to maintain a comfortable and positive work environment. All attendees at this meeting read and signed the company EEO policy and a copy of the signed policy was placed in their respective personnel files.

Ms. Berger was given a copy of this entire investigative summary document, and instructed that her personal job responsibilities include the following:

- "Check in" with branch manager Russ Fielder on Monday, Wednesday and Fridays of each week as business allows at a time designated by Mr. Fielder.
- Complete her required daily job duties in order to consistently put her in a good position to close sales and meet her monthly sales goal.
- Complete all her reports accurately and on time as required.

J. BERGER 203
GKB & ASSOCIATES



**PEST CONTROL**
World's Best

Page 4
6/13/14
Houma branch investigation

- Conduct herself at all times in a professional business manner in her relationship with her coworkers.
- Conduct herself at all times in a professional business manner in her relationship and conversations with her branch manager Russ Fielder and service manager Andy Boudreaux.
- Any further outbursts of temper in the work place will not be tolerated. Continuation of this behavior will subject Ms. Berger to disciplinary action, up to and including job termination.
- Talking to her branch manager or service manager in a demeaning, rude, arrogant and disrespectful manner laced with profanity will not be tolerated. Continuation of this behavior will subject Ms. Berger to disciplinary action, up to and including job termination.
- Like other employees, Ms. Berger will not be allowed to record any business conversation.
- Like other employees, Ms. Berger will not be allowed to record any coaching, counseling or job responsibility discussion conducted by Orkin management.

**J. BERGER 204**
**GKB & ASSOCIATES**

## INVESTIGATION CLOSURE FORM

I,      **Jessica Berger**                        , acknowledge that I brought a complaint

concerning ____Hostile Work Environment based on management's disclosure of my
personal health information_____ to the attention of the Company on
   5/05/2014____ .


PLEASE COMPLETE ONE OF THE FOLLOWING SECTIONS AS IT APPLIES TO THE
RESOLUTION OF YOUR CONCERN (S).

( ) I am satisfied with the resolution of my complaint. I understand I have the option of
contacting the Division Human Resources Manager if I have further concerns in the
future.


_____          _____
Employee Signature                         Date


_____

( ) I am not satisfied with the resolution of my complaint because of the following:

_____
_____
_____
_____


I am requesting further review in the area of:

_____
_____
_____


                                        **J. BERGER 205**
                                        **GKB & ASSOCIATES**


_____          _____
Employee Signature                         Date



**PEST CONTROL**
World's Best

June 19, 2014

Ms Jessica B. Berger
317 Louis Drive
Houma, LA 70364-2208

Larry Black
Human Resources
2170 Piedmont Road N.E.
Atlanta, Georgia 30324

Cc:        James Earl Thomas
           Jeff Blandford

Subject:   Hostile Work Environment Complaint

Ms Berger,

As you are aware LA/MS Region Manager James Earl Thomas and I conducted a branch investigation in the Orkin, Houma, LA branch beginning June 10, 2014 and ending on June 13, 2014. Please find enclosed the summary of the investigation of your complaint made to me on May 5, 2014 of hostile work environment caused by branch management's disclosure of your personal health information.

As stated in the enclosed summary report, we were not able to confirm your allegation of a hostile work environment. We did not find any evidence of any form of hostile work environment or discrimination by your branch manager, Russ Fielder or service manager, Andy Boudreaux.

I have also enclosed a copy of an Investigation Closure Form and a page with a partial listing of your personal job responsibilities. Please complete the Investigation Closure Form and return to me in the enclosed envelope. Thank you very much for the opportunity to investigate your complaint. I trust this fully addresses and resolves your concerns.

Sincerely,

Larry Black

Orkin Human Resources – SCD

Enclosures:
 (1) page - Personal Job Responsibilities
 (4) pages - Investigation Recap
 (1) Investigation Closure Form
 (1) return envelope

**J. BERGER 206**
**GKB & ASSOCIATES**



**PEST CONTROL**
World's Best

Jessica Berger                                      June 19, 2014

Partial listing of your personal job responsibilities include the following:

- "Check in" with branch manager Russ Fielder on Monday, Wednesday and Fridays of each week as business allows at a time designated by Mr. Fielder.
- Complete your required daily job duties in order to consistently put yourself in a good position to close sales and meet your monthly sales goal.
- Complete all your reports accurately and on time as required.
- Conduct yourself at all times in a professional business manner in your relationship with your coworkers.
- Conduct yourself at all times in a professional business manner in your relationship and conversations with your branch manager Russ Fielder and service manager Andy Boudreaux.
- Any further outbursts of your temper in the work place will not be tolerated. Continuation of this behavior will subject you to disciplinary action, up to and including job termination.
- Talking to your branch manager or service manager in a demeaning, rude, arrogant and disrespectful manner laced with profanity will not be tolerated. Continuation of this behavior will subject you to disciplinary action, up to and including job termination.
- Like other employees, you will not be allowed to record any business conversation.
- Like other employees, you will not be allowed to record any coaching, counseling or job responsibility discussion conducted by Orkin management.

J. BERGER 207
GKB & ASSOCIATES

2170 Piedmont Road, Atlanta, Georgia 30324, Telephone (404) 888-2000

ANOTHER ROLLINS SERVICE



I, Jessica Berger, am turning in my ipad, iphone & Lenovo computer. I will no longer be held liable for these items. Karen Bradford and James Earl Thomas are witnesses and will be signing this receipt.

KBradford 8/15/14

James Earl Thomas 8-15-14

J. BERGER 208
GKB & ASSOCIATES

21st 19th paycheck

Sep 5     Feb 13th

deadline

5pm EST        2500.$^{00}$

# Memo

| | | | |
|---|---|---|---|
| To: | Jessica Berger | From: | James Earl Thomas |
| Date: | August 15, 2014 | Re: | **Staff Reduction** |
| CC: | Karen Bradford, Russ Fielder, file | | |

Due to operational needs, LA/MS Region management team has made the business decision to eliminate the commercial sales position (AM) in our Houma, LA branch effective today August 15th, 2014.

We are offering you 26 weeks of severance pay paid as explained in the severance document you will be given today. In addition to the 26 weeks of pay, you will also be eligible for up to $1000 reimbursement for outplacement services provided by the vendor of your choice as stated in the severance agreement. Severance dollars and reimbursement of outplacement services are both contingent upon your signed agreement to the terms and conditions detailed in the severance document. Severance dollars and the limited reimbursement for outplacement services are not separate stand-alone offers. They will only be paid upon your signed agreement to the terms and conditions of the severance document.

Your final pay earned as of the August 15th pay period will include your prorated salary for 8/1-8/15, plus commissions earned as of 8/15, minus appropriate taxes and deductions. In addition, any current year's accrued but unused vacation time you have through August 15, 2014 will be paid in your final paycheck.

If you have any questions, please contact Karen Bradford at 404-888-2174.

J. BERGER 209
GKB & ASSOCIATES

## Employee Coaching / Counseling Form

☐ Other: _____
☐ Coaching Discussion  ☐ Counseling Discussion  ☒ Formal Warning  ☐ Conversation / Verbal Warning
☐ Suspension Notice (Fact Finding only, do not complete the 2ⁿᵈ and 3ʳᵈ boxes)  ☐ Separation Discussion
☐ Follow-up Discussion

Name: _Jessica Berger_____  Address Book #: _1170737___

Position: _Account Manager____  Location Name: _Houma_____  #: _286_

The following conduct / performance has been observed: Employee was disrespectful and unprofessional, using foul language in front of branch manager and fellow employees in back parking lot area. Further inappropriate and disruptive conversation continued in front office area.

The expected level of performance/conduct is: Employee will not talk to management or fellow employees in a derogatory or disruptive manner.

The following solution(s) have been agreed upon to correct the conduct / performance: Employee will conduct herself in a professional manner at all times

Date solution(s) will be implemented: _Immediately_____  Completed: _Ongoing___

Potential consequence in continuing current behavior is: _Further Disciplinary action up to and including Termination_

Employee comments: _I was cursed at and shouted out and a "ruccous was caused in front of other staff by the office manager as well." I feel that this is singleing_

A follow-up to discuss your progress will be held on: _____

_J. Berger_ _5/2/14_
Employee's signature       Date            Manager's signature       Date

_____
Human Resources       Date

J. BERGER 210
GKB & ASSOCIATES

*Note: Employee's signature on this form indicates that this situation has been discussed. It doesn't necessarily mean the employee agrees. If this form is being used to document a conversation or verbal warning, the employee's signature is not required.*

1-100-1

Rev. 10/2002

me out. If I am going to be wrote up for unprofessional conduct then the entire branch needs to be written up for inappropriate behavior not only foul language but inappropriate discussions. I was told by the office manager I was the problem in the branch and the branch manager agreed when I asked him. I notified Paul Strictland of the incident.

J. BERGER 211
GKB & ASSOCIATES

# Employee Coaching / Counseling Form

☐ Other: _____ **Counseling  Discussion** _____
Warning                                                              ☐ Conversation / Verbal
☐ Coaching Discussion   ☐ Counseling Discussion   ☐ Formal  Warning
☐ Suspension Notice (Fact Finding only, do not complete the 2nd and 3rd boxes)   ☐ Separation Discussion
☐ Follow-up Discussion

Name: __Jessica Berger_____ Address Book #: _1170737_____

Position: ____Account Manager_____ Location Name: ___Houma La 286_____

---

**The following conduct / performance has been observed:**
Your sales activity levels do not meet the required amounts to achieve sales goals expected for month of June 2014. During June you made only 419(20avg)cold calls; only 4 proposals; only $540.00 in total sales generated. This level of monthly sales activity is unacceptable and will not put in the position to achieve the sales goal expected from a tenured account manager with your experience for each remaining month in 2014. During June you did less than 5 check-ins meetings with me as your Branch Manager.

---

**The expected level of performance/conduct is:**
The daily cold call level should be in the 40 to 50 range average per day.  This can be a combination of phone, physical and electronic marketing efforts.  A good balance to strive for would be 25 to 30 calls per day with 15 to 20 physical contacts and 5 to 10 via e-mail.  Furthermore, you should average at least 2 proposals each working day as a minimum to meet or exceed your sales goals of $12,000 per month.

---

**The following solution(s) have been agreed upon to correct the conduct / performance:**
Increase your daily activity levels to meet or exceed the expectations as outline above in order to achieve your sales goals and plans. Additionally, you must on set schedule Monday, Wednesday, and Fridays at 8:30am In order to review your activity with me as your Branch Manager. Please do not leave the branch on check in days until we have completed your check in process. We will review together your sales activity and actual sales during each check-in time.

---

Date solution(s) will be implemented: _____Immediately_____ Completed: ___On going_____

Potential consequence in continuing current behavior is: ____If the lack of sales activity continues,____
disciplinary action will be taken up to and including job termination _____
                                                                      J. BERGER 212
                                                                      GKB & ASSOCIATES
Employee comments: _____

31-100-1

Rev. 10/2002

A follow-up to discuss your progress will be held on: August 1 2014_____

_____                    _____  7/2/14
Employee's signature          Date                  Manager's signature        Date

                                                    Employee Refused to Sign
_____
Human Resources               Date

Note: Employee's signature on this form indicates that this situation has been discussed. It doesn't necessarily mean the employee agrees. If this form is being used to document a conversation or verbal warning, the employee's signature is not required.

J. BERGER 213
GKB & ASSOCIATES

31-100-1

# EMPLOYMENT SEPARATION AGREEMENT
# AND GENERAL RELEASE

THIS EMPLOYMENT SEPARATION AGREEMENT AND GENERAL RELEASE ("Agreement") is entered into by and between **Jessica B. Berger** for herself, her dependents, her family, heirs, executors, administrators, parents, successors and assigns (hereinafter collectively "Employee") and Orkin, LLC, its subsidiaries, parents, affiliates and related entities and its and their present and former agents, employees, representatives, attorneys, officers, directors, owners, insurers, successors, and employee benefit plans (hereinafter collectively "Orkin").

## W I T N E S S E T H

WHEREAS the parties mutually agree that Employee's last day of active employment with Orkin will be **August 15, 2014**; and

WHEREAS Employee and Orkin desire to resolve fully and finally any and all issues arising out of or relating to Employee's employment with Orkin, the termination thereof and all other claims Employee has through the date of this Agreement;

NOW THEREFORE, in consideration of the promises and releases herein contained, it is agreed as follows:

(1)     Employee's association with Orkin has terminated, and she has no authority to represent or act on behalf of Orkin or any affiliated entities without Orkin's prior written consent, except as described below in Paragraph 9.

(2)     In consideration of the promises undertaken and releases given herein by Employee, Orkin shall pay to Employee a severance benefit by continuing her current base salary (less normal withholdings for taxes and relevant benefit deductions), as well as her life insurance, health, dental, and vision benefit plans (to the extent Employee is a participant in such plans), for a period of **twenty-six (26) weeks** following Employee's last day of active employment with Orkin, as designated above.  Employee will also be reimbursed up to a maximum of $1000.00 for third party outplacement services.  The reimbursement request must be submitted on an Expense report, with appropriate back up/documentation within forty-five (45) days the date the severance begins. Employee acknowledges that the foregoing consideration is separate from, and in addition to, normal Orkin compensation and or benefits. Employee further understands and agrees that effective immediately, she will no longer have coverage under the long-term disability or travel plans and will not continue to receive service credit under the pension and vacation plans (to the extent Employee is a participant in such plans).  No further contributions, whether participant or matching, will be made to Employee's account under the Orkin 401(k) Plan during or after the severance period (to the extent Employee is a participant in such plan). Employee also agrees that if during the severance period she is offered a comparable position with Orkin, regardless of whether she accepts or rejects said position, Employee shall forfeit any and all remaining and unpaid severance benefits under this Agreement.

(3)     All remaining earned but unused vacation as of **August 15, 2014** will be paid to Employee either with the Employee's last regular paycheck or with the severance check.  Employee acknowledges that no further sick, vacation or holiday payments are due her.

(4)     In consideration of the benefits described in Paragraph 2, Employee fully, finally and forever releases Orkin from any and all claims and/or causes of action known or unknown which she may have or claim to have, including but not limited to those arising from or as a result of her employment or termination of employment with Orkin, from the beginning of time up through and including the effective date of this Agreement. Employee further agrees that, with respect to any and all such released claims, she will not be entitled to any additional remedy beyond the amount received in above paragraph 2 for entering into this Agreement. This release includes, but is not limited to, claims arising under federal, state or local laws, rules, and regulations prohibiting employment discrimination based upon age, sex, race, color, national origin, religion, disability, veteran status, retaliation, or any claims for alleged underpayment of wages, *including without limitation, claims brought under* Title VII of the Civil Rights Acts of 1964, as amended, the Americans with Disabilities Act (ADA), the Family and

J. BERGER 214
GKB & ASSOCIATES

Medical Leave Act (FMLA), the Employee Retirement Income Security Act (ERISA), the Fair Labor Standards Act (FLSA), the Equal Pay Act (EPA), and any claims of wrongful discharge, slander, harassment, intentional or negligent infliction of emotional distress, mental anguish or any other claims of wrongful conduct, or claims growing out of any legal restrictions on Orkin's right to terminate employees whether arising under any federal or state statutes, regulations, or common law (contract, tort, or other) of any jurisdiction. Employee further agrees not to authorize or participate in a class action on her behalf, and will accept no monetary recovery, as to matters released by this Agreement.

(5)     Employee expressly consents and agrees that the above releases include unknown and unsuspected claims, demands and causes of action, if any, and acknowledges that she may hereafter discover claims or facts in addition to, or different from, those which she now knows or believes to exist, which if known or suspected at the time of executing this Agreement may have materially affected this settlement. Nevertheless, Employee waives any right or claim to any additional relief or remedy that might arise as a result of such additional or different claims or facts. Orkin agrees, and Employee understands, that she does not waive any rights or claims that may arise after the date this Agreement is executed.

(6)     Employee agrees to submit her final expense report within fifteen (15) days, and to be responsible for any additional unpaid charges or outstanding balances on Orkin-provided credit cards when such payments become due. **This deadline does not apply to the reimbursement for out placement services referenced in paragraph 2.**

(7)     Employee authorizes Orkin to withhold, without advance written notice, any amounts she owes to Orkin at termination from her final pay or from any other payments or reimbursements due to her from Orkin.

(8)     Employee agrees to fully cooperate with Orkin both during and subsequent to the severance period in any and all investigations, inquiries or litigation, whether in any judicial, administrative, or other public, quasi-public or private forum, in which Orkin is involved, whether or not Employee is a defendant in such investigations, inquiries, proceedings or litigation. Employee shall provide truthful testimony, background information, and other support and cooperation as Orkin may reasonably request and to the extent such support and cooperation is provided by her subsequent to the severance period, Employee and Orkin agree that she will be reasonably reimbursed for time expended on a per diem basis. Orkin also agrees to reimburse Employee for any pre-approved expenses incurred by her under this paragraph, whether during or subsequent to the severance period. Employee and Orkin agree that she is responsible for any and all applicable taxes associated with these payments.

(9)     Employee agrees to return immediately to Orkin any of the Confidential Information or Trade Secrets concerning the business of Orkin within her possession or control. Employee further agrees she shall immediately return to Orkin all Orkin-provided credit cards, office keys, office equipment, identification cards and all other Orkin property in her possession or control, including without limitation any and all materials, computers and related equipment, documents, plans, records, files, video tapes, and copies of same in any way relating to the affairs of Orkin.

(10)     The parties mutually recognize and agree that through Employee's employment with Orkin, Orkin has disclosed to Employee certain written and oral financial and technical information, customer, vendor and supplier information, scope of services information for particular customers, customer lists and contacts, pricing and bidding strategies, business plans, work in progress or other proprietary data relating to Orkin and its business, operations, affiliates, customers, vendors or suppliers, all of which is considered by Orkin to be confidential and proprietary (collectively, the "Confidential Information"), which constitute "Trade Secrets" to the extent that they collectively and/or individually constitute information which: (a) derives economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means, by other persons who can obtain economic value from its disclosure or use; and (b) is the subject of reasonable efforts by Orkin to maintain its secrecy.

(11)     Employee further acknowledges that she has had substantial and significant contact producing good will with Orkin customers, and has gained valuable and confidential information concerning Orkin operations, such that irreparable injury to Orkin would result should she use this customer contact, good will, or

J. BERGER 215
GKB & ASSOCIATES

information against Orkin's best interests.  Also, the customers and clientele of Orkin have been solicited by Orkin through its sales representatives and advertising media, and a valuable and extensive trade has been established at great expense to Orkin.

(12)   Accordingly, in consideration of the mutual covenants and promises contained in this Agreement, the parties agree to the independent and severable covenants contained herein.  Employee acknowledges that said covenants are reasonably necessary for the protection of the business and good will of Orkin, and that Orkin will sustain great and irreparable loss and damage if she should violate any of said covenants, such that in addition to any other remedy which may be afforded by law, any breach or threatened breach of said covenants may be prohibited by restraining order and/or injunction or any other equitable remedies of the court.  Employee further acknowledges and agrees that the restrictions contained herein will not cause her any hardship, and that her background and experience will enable her to obtain suitable employment regardless of said restrictions.

(13)   This Agreement covers all understandings between Employee and Orkin relating to her employment and termination from employment with Orkin, and supersedes all prior discussions and agreements between Employee and Orkin, with the exception of the written Employment Agreement dated **August 29, 2013** between Employee and Orkin, which obligations expressly survive this Separation Agreement.  No provision of this Separation Agreement may be modified or amended except by a writing signed by both Employee and Orkin after the date that this Agreement is signed.

(14)   Before accepting employment with any person, persons, firm, partnership, corporation, or other legal entity engaged in the pest control, exterminating, fumigating or termite control business, Employee agrees to inform same of her Employment Agreement's existence and provide a copy hereof.

(15)   Employee understands and agrees that her continued entitlement to the payments and reimbursements set forth in paragraphs 2 and 6 of this Agreement is expressly conditioned upon her continued support of Orkin and its officers and directors.  Employee also agrees, as a result of her position with Orkin, to be subject to a continuing duty of loyalty towards Orkin and she agrees not to disparage Orkin.  Employee specifically agrees that she will not make statements to customers or suppliers or potential customers or suppliers of Orkin or to other members of the public and/or press that are in any way disparaging or negative toward Orkin or Orkin's products or services.  In addition, Employee agrees not to speak to any analysts, shareholders, prospective investors or any other party, other than her immediate family, attorney or tax advisor, regarding any information concerning the financial condition or operations of Orkin or the circumstances surrounding his departure from Orkin.

(16)   Should any portion, word, clause, phrase, sentence, paragraph or sub-paragraph of this Agreement, including but not limited to Paragraph 13 above, be declared void or unenforceable, such portion, word, clause, phrase, sentence, paragraph or sub-paragraph shall be modified, severed and/or deleted in such a manner as to make this Agreement as modified legal or enforceable to the fullest extent permitted under law.  An error or omission in any portion, word, clause, phrase, sentence, paragraph or sub-paragraph of this Agreement does not render any other portion, word, clause, phrase, sentence, paragraph or sub-paragraph of this Agreement, or the entire Agreement, void or unenforceable.

(17)   Employee agrees that immediately upon the breach by her of any of the terms and/or provisions of this Agreement, or in the event she challenges the validity of this Agreement or any of its terms, Orkin is immediately thereby relieved of any and all of its obligations hereunder, including but not limited to the obligation to make further payments hereunder.  Furthermore, Employee agrees that as a matter of contract, that in the event she challenges the validity of this Agreement or any of its terms, she will forfeit and, to the extent already paid by Orkin, she will promptly repay to Orkin the full amount of the severance set forth herein.  Employee agrees that in the event she is unsuccessful in any challenge to the validity of this Agreement or any of its terms, she will be fully responsible for any expenses or damages incurred by Orkin, including court costs and reasonable attorneys' fees, arising as a result of her challenge.

(18)   Employee acknowledges that this Agreement and its terms are strictly confidential and that she shall not, without the prior written consent of Orkin, or except as compelled by law, disclose it or any part of it to

J. BERGER 216
GKB & ASSOCIATES

anyone except a prospective employer potentially covered by the terms of paragraph 14, her immediate family, attorney or tax advisor.

(19)     This Agreement covers all understandings between Employee and Orkin relating to her employment and termination from employment with Orkin, and supersedes all prior discussions and agreements between Employee and Orkin relating to the subject matter hereof. No provision of this Agreement may be modified or amended except by a writing signed by both Employee and Orkin after the date that this Agreement is signed.

(20)     Nothing contained in this Agreement, or the fact the parties have signed this Agreement and exchanged the consideration provided for hereunder, constitutes or should be construed as an admission of liability and/or any wrongdoing whatsoever by Orkin, by whom liability and/or any wrongdoing is expressly denied. Moreover, neither this Agreement nor anything therein shall be admissible in any proceeding as evidence of, or an admission by Orkin, of any violation of any federal, state, or local laws.

(21)     Employee understands that she shall have twenty-one (21) days from the date of receipt of this Agreement to review and consider this document, and that she shall have the right, within seven (7) days after executing this Agreement, to revoke this Agreement. This Agreement is not effective or enforceable until that seven (7) day revocation period has expired, after which this Agreement shall become effective and enforceable. Employee further acknowledges that she has been advised to consult with an attorney before executing this Agreement to ensure she fully understands its legal significance. Employee acknowledges and agrees to return this executed Agreement and any revocation of this Agreement made in writing and delivered via registered and certified mail within the seven (7) day revocation period to:  **Karen D. Bradford, Director of Orkin HR – 2170 Piedmont Road, NE – Atlanta, GA  30324.**

(22)     This Agreement shall be interpreted, enforced, and governed under the laws of the State of Louisiana. Employee further warrants and represents:

I HAVE CAREFULLY READ AND FULLY UNDERSTAND THE PROVISIONS OF THIS AGREEMENT INCLUDING MY WAIVER OF CLAIMS AGAINST ORKIN. I HAVE ENTERED INTO THIS AGREEMENT KNOWINGLY AND VOLUNTARILY AS AN ACT OF MY OWN FREE WILL. I HAVE NOT RELIED UPON ANY OTHER REPRESENTATION OR STATEMENT, WRITTEN OR ORAL. I HAVE BEEN ADVISED BY ORKIN TO CONSULT WITH PERSONAL ADVISORS, IF NECESSARY, INCLUDING WITHOUT LIMITATIONS ANY ATTORNEY OF MY CHOOSING, PRIOR TO EXECUTING THIS AGREEMENT AND WAIVING ALL CLAIMS, AND I HAVE HAD SUFFICIENT TIME AND OPPORTUNITY TO DO SO.

**EMPLOYEE:**                                         **ORKIN, LLC:**

Print:_____

Sign:_____                By:_____

Date:_____                Date:_____

Witness: _____                **J. BERGER 217**
                                             **GKB & ASSOCIATES**

Corrections made to Page 221-14

1. I went back to the branch ~~and was accused~~ tried to talk to Andy B. service mgr. He informed me he was not to associate w/ me unless it was in the company of Russ Fielder, Bm. We went into RF office where I was accused of calling HR. They then told me that they were not to speak to me in order to protect themselves ~~per~~ from HR in a rude and condescending manner.

3. retaliating against me because I will not ~~submit~~ succumb to RF argumentative conversations, condescending remarks, attitude and sexual advances.

6. On 5-2-14, I was given a expectation guideline, On 5.5.14, in the HR meeting I was told ~~is~~ meet I had to ~~follow~~ the expectation sheet to a tee. ~~I was informed to meet~~ if I didn't meet ~~my expectations~~ their expectations ~~including bu~~ an final write up ~~not limited to~~ my job was subject to ~~counseling~~ up to termina disciplinary action

7. Several sales have been taken from me since May 5, 2014. ~~5-21~~ For ex: 5-21-14 RF told me I was not to do a BB res. job when I have always done BB Res/com. BB jobs He took the sale from me and gave it to another employee. Another ex: I ~~have~~ had the BN Management Hotel Chain Acct. The lead came in to Houma. I got into contact w/ the person in charge. ~~S~~ Once again it was taken from me. ~~Ran~~ Paul Strictland and wrote in an

J. BERGER 218
GKB & ASSOCIATES

email that they should receive no credit or commission for the sales.

8. 7.8.14 Appt w/ pot. client. Approx $10,000 sale. Prior to sale verified w/ RF and AB for AB to come w/ me ~~to~~. aid in inspection as it is 2 ac. Morning of appt. ~~Andy~~ I arrived w/ no sign of Andy nor a phone call. I contacted him he informed me he couldn't make it. Later, that afternoon, I was informed that RF and AB went to ~~toee's~~ an acct. that was more imp. than mine. I was told Andy had ~~better~~ other things to do. ~~I was also told~~ I should know ~~how~~ my job by now. upon submitting approval for this account, on 7/14/14 · I didn't recieve it back until I spoke w/ Tim Tarantello, Training mngr. in Atlanta on 7/23/14. But I received it on the 7/24/14. The approval wasn't sent up until the 23rd and it was approved in 2-3 hours.

9. On. 8.15.14 I returned to work. after being on vacation for a few days. 8/14/14 I had received an email from UET asking for a meeting at the Branch w/ Karen Bradford, Director of HR Orkin NA. @ 10:30 on 8.15.14. They terminated me in that meeting

J. BERGER 219<br>GKB & ASSOCIATES

MARK CALLAHAN SR - SPOKOE

JENNIFER GAUBERT  —  SPERM CONVO - IVF

ANDY BOUDREAUX = SVC MGR.

RUSS FIELDER - "F" BOMBS

MATT AMBROS — PAY OFF

/

Tim Tarantello / Corporate Training  ATL

ED  DONAHUGHE  DIR OF SALES

Trist (?) ...

(when Lisa not there everyone talks and acts normal)

meeting with Paul   learned how to get under skin

day of Sextalk  Confrontation   was told  to call off HR

later that day accused of calling HR

LB & JET   Whole HR meeting was accusations

that, you were the problem  Same as Russell

had told  You days before

Micromanaging your time became everyday  events
                          Sales

Bad bug job taken from you (Presidental)

NO Twic to go down to Port

Baker Hughes didn't matter to them

Baker Hughes Woman on Cumming road  very rude  you
were told to handle it  but got chastised for doing so.

Steel Toe Shoes ????

Gun Conversation made to look like a pshyco  (3 times)

LB & JET  2nd meeting  you command Record us  so therefore
     our meeting is over

When asked how to make this go away Russell informs
    Call LB.

**J. BERGER 221**
**GKB & ASSOCIATES**

wrote up for  production, copy not given too, phone conference
emails up the ladder, LB seperate Email,  Then  Conference
with JET & lady from HR  straight accused of you not doing your Job