pUNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| JESSICA BERGER | CIVIL ACTION |
| VERSUS | NO: 15-4102 |
| ROLLINS, INC., ET AL. | SECTION: "A" (4) |

## ORDER AND REASONS

Before the Court is a **Motion for Summary Judgment (Rec. Doc. 35)** filed by defendants Rollins, Inc. and Orkin, LLC (collectively "Orkin"). Plaintiff Jessica Berger opposes the motion. The motion, noticed for submission on February 22, 2017, is before the Court on the briefs without oral argument. For the reasons that follow, the motion is GRANTED.

**I.  BACKGROUND**

Plaintiff Jessica Berger filed this suit against Orkin, her former employer, asserting claims of hostile work environment (gender) and retaliation under Title VII and state law.[1] Berger began her employment with Orkin in September 2013 at its office in Houma, Louisiana. Berger alleges that her work environment changed in early 2014 when Orkin

---

[1] Like the parties, the Court will not engage in a separate legal analysis under state law. In discrimination cases Louisiana courts follow the same analysis set forth in federal cases. *See Brittain v. Fam. Care Servs., Inc.*, 801 So. 2d 457, 461 (La. App. 2nd Cir. 2001).

brought in H. Russell Fielder as the new branch manager.[2] Berger alleges that Fielder engaged in offensive conduct while in her presence and that he did so on a daily or weekly basis. Berger claims that in May 2014 she specifically told Fielder to stop but ultimately she was disciplined for using profane language in the workplace. Berger contends that Fielder began to demean and humiliate her and in August 2014 Orkin terminated her employment.[3]

Orkin moves for summary judgment arguing that the incidents of inappropriate conduct that underlie Berger's hostile work environment claim occurred too sporadically over a five month period to be actionable. Orkin also contends that Berger cannot create an issue of fact as to her retaliation claim because the undisputed facts demonstrate that she was terminated as part of a workforce reduction.

A jury trial is scheduled to commence on April 24, 2017.[4]

## II.  DISCUSSION

Summary judgment is appropriate only if "the pleadings, depositions, answers to

---

[2] The Court notes that Fielder's predecessor (Wayne Zimmerman) was rarely in the office for the last two years that he held the position. (Rec. Doc. 41-5, Mosley deposition at 30). Therefore, complaints of offensive conduct aside, it is not unusual that Berger's work environment changed significantly when Fielder replaced Zimmerman. In fact, the entire branch experienced a difference when Fielder took over because he was there every day and was far more involved in the branch's day to day operations in comparison to his predecessor. (*Id.* at 50). Thus, Berger's suggestion that the difference in Fielder's management style uniquely impacted her is not supported by the record.

[3] The Court notes that Fielder's version of events conflicts with Berger's. This factual dispute will not be material, however, if the conduct as alleged by Berger does not rise to the level necessary to support a Title VII claim.

[4] On April 5, 2017, the Court cancelled the pretrial conference in order to have additional time to consider the parties' respective arguments and evidence pertaining to the summary judgment motion. (Rec. Doc. 51).

interrogatories, and admissions on file, together with the affidavits, if any," when viewed in the light most favorable to the non-movant, "show that there is no genuine issue as to any material fact." *TIG Ins. Co. v. Sedgwick James*, 276 F.3d 754, 759 (5th Cir. 2002) (*citing Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50 (1986)). A dispute about a material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Id.* (*citing Anderson*, 477 U.S. at 248). The court must draw all justifiable inferences in favor of the non-moving party. *Id.* (*citing Anderson*, 477 U.S. at 255). Once the moving party has initially shown "that there is an absence of evidence to support the non-moving party's cause," *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986), the non-movant must come forward with "specific facts" showing a genuine factual issue for trial. *Id.* (*citing* Fed. R. Civ. P. 56(e); *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 587 (1986)). Conclusional allegations and denials, speculation, improbable inferences, unsubstantiated assertions, and legalistic argumentation do not adequately substitute for specific facts showing a genuine issue for trial. *Id.* (*citing SEC v. Recile*, 10 F.3d 1093, 1097 (5th Cir. 1993)).

**A.     Hostile Work Environment**

The question before the Court is whether Berger has presented sufficient evidence to create an issue of fact as to whether the harassment that she alleges was so severe or pervasive as to alter a condition of her employment.

The creation of a hostile work environment through gender-based harassment is a form of discrimination proscribed by Title VII. *E.E.O.C. v. Boh Bros. Const. Co., LLC*, 731 F.3d 444, 452 (5th Cir. 2013) (citing *Vance v. Ball State Univ.*, 133 S. Ct. 2434, 2455

(2013)). Where a harassment claim arises out of a supervisor's conduct, "there are four elements of a hostile working environment claim: (1) that the employee belongs to a protected class; (2) that the employee was subject to unwelcome sexual harassment; (3) that the harassment was based on [a protected characteristic]; and (4) that the harassment affected a 'term, condition, or privilege' of employment." *Boh Bros.*, 731 F.3d at 453 (citing *Lauderdale*, 512 F.3d at 162-63). To affect a term, condition, or privilege of employment, the harassing conduct "must be sufficiently severe or pervasive to alter the conditions of [the victim's] employment and create an abusive working environment." *Id.* (quoting *Aryain v. Wal–Mart Stores of Tex., L.P.*, 534 F.3d 473, 479 (5th Cir. 2008)). Sexually discriminatory verbal intimidation, ridicule, and insults may be sufficiently severe or pervasive as to alter the conditions of the victim's employment and create an abusive working environment that violates Title VII. *Farpella-Crosby v. Horizon Health Care*, 97 F.3d 803, 806 (5th Cir. 1996) (citing *Harris v. Forklift Sys., Inc.*, 114 S. Ct. 367, 370-71 (1993)). But the "mere utterance of an . . . epithet which engenders offensive feeling in an employee" is not alone sufficient to support Title VII liability. *Id.* (quoting *Weller v. Citation Oil & Gas Corp.*, 84 F.3d 191, 194 (5th Cir. 1996)). The court uses an objective "reasonable person" standard to evaluate severity and pervasiveness. *Boh Bros.*, 731 F.3d at 453 (citing *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 82 (1998)). Ultimately, whether an environment is hostile or abusive depends on the totality of circumstances. *Id.* (citing *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 23 (1993)).

    Orkin argues that the conduct that Berger alleges on Fielder's part was not severe or pervasive enough to support a claim for hostile work environment sexual harassment.

Orkin characterizes the conduct as sporadic, isolated incidents occurring only a handful of times over a five month period. Orkin argues that the allegedly offensive conduct does not rise to the level of conduct necessary to support a cause of action for hostile work environment.

Orkin offers the following summary of the alleged incidents, which is consistent with Berger's deposition testimony:

♦ In the same conversation in which she claims to have overhead Fielder remark that he "jerked off in a cup" to give a sperm sample, she claims he also stated that he "bought his wife titties;"

♦ On approximately five occasions Fielder grabbed or rubbed his crotch in her presence;

♦ On at least seven occasions Fielder stared at her breasts;

♦ On one occasion Fielder came into her office, walked behind her chair, leaned up against it and said he was looking at her appointment book. She claims that he leaned down and stated, "You smell good. What kind of perfume are you wearing?" At that point she slammed her appointment book and Fielder left.

♦ On one other occasion she was on the phone and Fielder just stood in the doorway of her office staring and leering "in an aggressively weird way" for at least ten minutes and then walked away;

♦ On another occasion she and Fielder were discussing a contract and she went into her office to retrieve it. Berger bent over to dig in her bag to get the contract and when she stood up, Fielder was within a foot or two of her, and then he got a phone call and left;

♦ On one occasion when she and Fielder were discussing her production, Fielder commented that in order to get the bigger clients she "should wear low-cut blouses and short skirts and bring donuts to specifically the oilfield guys."

(Rec. Doc. 35-8, Orkin's Memo in Support at 5-6).

Orkin also points out that on May 13, 2014—a date that would have fallen squarely within the timeframe when the alleged harassment was occurring—Berger completed an intake questionnaire with the EEOC and in that questionnaire Berger

complains only of disability discrimination. (Rec. Doc. 35-3). Berger complained that Fielder and another employee, Lisa Mosley, were attacking her character on a daily basis and alienating her from coworkers. (*Id.*). Berger was convinced that her bipolar disorder was being used against her. (*Id.*). The narrative contains no reference whatsoever to the conduct that Berger now alleges was so offensive as to create an abusive work environment.[5]

Then on August 27, 2014, Berger filed a charge of discrimination with the EEOC and checked the box for retaliation discrimination, not sex. (Rec. Doc. 35-4). The litany of complaints that she includes in her charge narrative are not related to the incidents of gender harassment that she alleges in this action. With respect to Fielder, Berger complains that "[h]e has been nothing but rude, condescending and disrespectful to me. He argues with me about everything including pit bull attacks on children . . . I am treated as if I am inferior and I honestly believe it is because I am a woman . . . ." (*Id.* at 2). Once again, the narrative contains no reference whatsoever to the conduct that Berger now alleges was so offensive as to create an abusive work environment. The narrative reiterates that Berger believed at the time that she was being mistreated because of her bipolar disorder, not because Fielder was single-handedly creating a sexually abusive work environment.

It was not until March 5, 2015, long after Berger had been terminated that she

---

[5] The narrative does include a reference to the "sperm sample" conversation in the sales room. That conversation may very well be an example of a topic best left out of the workplace but it does not constitute sexual harassment directed at anyone, much less Berger who just happened to walk into the sales room when her coworkers were talking.

filed a new charge of discrimination with the EEOC that for the first time claimed sex discrimination along with disability discrimination and retaliation. (Rec. Doc. 35-5).

Clearly, the fact that Berger's detailed EEOC narratives made no mention whatsoever of the conduct that she now alleges was so severe or pervasive enough to alter the conditions of her employment is troubling and casts doubt on the suggestion that Berger herself perceived the conduct to be subjectively offensive at the time it was occurring. Of course, any inferences to be drawn from the EEOC record would go to the weight of the evidence. In other words, it would be up to the trier of fact to determine the extent to which the EEOC documents undermine Berger's sexual harassment claim.

Likewise, it would be the trier of fact's role to determine if Berger's sexual harassment claim is undermined by the fact that that no other employee in the small Houma office corroborates her claims of pervasive sexually harassing behavior toward her by Fielder.[6] Thus, these issues do not form part of the Court's analysis.

But applying the totality of the circumstances test, the Court is persuaded that the conduct that Berger alleges is objectively neither severe nor pervasive enough to have altered a term or condition of her employment. The incidents are not severe by any stretch of the imagination. The incident with the sperm sample conversation wasn't even directed at Berger. She simply walked into the coffee room and overheard a conversation that she found inappropriate for the workplace. The remainder of the conduct may be unprofessional in the workplace but it is not so severe or egregious as to

---

[6] The Court assumes that Berger would have included any such corroborating evidence with her opposition to the motion for summary judgment if such evidence did in fact exist.

create an abusive workplace environment for purposes of a Title VII claim.[7] Fielder had no physical contact with Berger, never spoke to her in a sexually suggestive or lewd manner, and none of the alleged conduct undermined Berger's ability to do her job.

Likely recognizing that the conduct does not meet any legal test for severity, Berger attempts to grasp on the concept of pervasiveness by emphasizing that incidents that are not particularly severe may very well be pervasive due to the frequency with which they occur. Berger stresses that the question whether offensive gender-based conduct is actionable is subject to a disjunctive test—whether the conduct is severe *or* pervasive. Berger contends that incidents that are not particularly severe may very well be pervasive due to the frequency with which they occur.

Berger is correct in that pervasiveness of conduct may carry the day when severity is lacking but Berger fails to recognize that pervasiveness of conduct is not the end game. Even if the incidents that Berger alleges are considered to be pervasive due to frequency, they nonetheless are insufficient from an objective standpoint to have altered the conditions of her employment and created an abusive working environment. Berger might have perceived subjectively that her work environment was abusive but she has failed to create an issue of fact that her abusive environment was related to sexual harassment. The motion for summary judgment is therefore GRANTED as to the sexual harassment hostile work environment claim.

---

[7] The Court has not been able to discern from the record whether the crotch incidents, or perhaps "adjustments" as Fielder characterized them, were even directed at Berger or merely occurred in her presence. Berger has not suggested that Fielder was actually fondling himself for sexual gratification in her presence.

### B. Retaliation

Title VII's anti-retaliation provision states in relevant part:

> It shall be an unlawful employment practice for an employer to discriminate against any of his employees . . . because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter.

42 U.S.C. § 2000e-3(a).

Title VII claims of unlawful retaliation based on circumstantial evidence are analyzed under the burden-shifting framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *Vargas v. McHugh*, 630 Fed. Appx. 213, 216 (5th Cir. 2015) (per curiam). First the plaintiff must establish a prima facie case of retaliation by showing that 1) she participated in an activity protected under the statute; 2) her employer took an adverse employment action against her; and 3) a causal connection exists between the protected activity and the adverse action. *Feist v. La. Dep't of Justice*, 730 F.3d 450, 454 (5th Cir. 2013) (citing *McCoy v. City of Shreveport*, 492 F.3d 551, 556-57 (5th Cir. 2007)). If the plaintiff makes a prima facie showing of retaliation, the burden shifts to the employer to state a legitimate, non-retaliatory reason for its decision. *Id.* (quoting *LeMaire v. Louisiana*, 480 F.3d 383, 388-89 (5th Cir. 2007)). Finally, the burden shifts back to the plaintiff to prove that the employer's proffered reasons are a pretext for retaliation. *Id.* The employee meets this burden by showing that the adverse action would not have occurred "but for" the employer's retaliatory motive. *Id.* (citing *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 133 S. Ct. 2517, 2533 (2013)).

The Supreme Court's *Nassar* decision clarifies that a plaintiff asserting a Title VII

retaliation claim must meet a higher standard of causation than a plaintiff claiming Title VII discrimination. *Zamora v. City of Houston*, 798 F.3d 326, 331 (5th Cir. 2015) (quoting *Nassar*, 133 S. Ct. at 2534). Thus, mere proof that retaliation was a "motivating factor" for an adverse employment action will not suffice. Rather, the plaintiff must establish that her protected activity was a "but for" cause of the alleged adverse action by the employer. *Id.* In order to avoid summary judgment, the plaintiff must show "a conflict in substantial evidence" on the question of whether the employer would not have taken the action "but for" the protected activity. *Feist*, 730 F.3d at 454 (quoting *Long v. Eastfield College*, 88 F.3d 300, 308 (5th Cir. 1996)).

Berger filed charges with the EEOC, which constitutes protected activity, and she was later terminated from employment. Berger must establish a causal connection between the protected activity and her termination in order to complete her prima facie case of retaliatory discharge.

Berger presents no evidence that but for her protected activity she would not have been terminated. Berger's subjective beliefs as demonstrated by her deposition testimony are not evidence of unlawful discrimination. (Rec. Doc. 35-1 at 150-56).

But even assuming that Berger satisfied her burden of establishing a prima facie case, she presents no evidence to impugn Orkin's non-discriminatory reason for terminating her. According to James Earl Thomas, Assistant Division President for the South Central Division of Orkin, Berger was terminated because her position was eliminated from the Houma office. During the timeframe relevant to this action, Thomas was the Region Manager for Orkin's Louisiana/Mississippi Region and he was

responsible for overseeing the Orkin branch located in Houma, Louisiana. (Rec. Doc. 35-2, Thomas decl. ¶ 2). Thomas states that in July/August of 2014 he was under pressure to reduce costs in his region to meet the 2014 budget. (*Id.* ¶ 7). Thomas alone, without input from Fielder or any branch managers, eliminated Berger's position in addition to a position in Baton Rouge and a position in Jackson, Mississippi. All three eliminated positions were that of Commercial Account Manager, which was the position that Berger held. (*Id.*). As of January 20, 2017, when Thomas executed his declaration, those positions had not been reinstated. (*Id.* ¶ 9).

The burden now shifts to Berger to prove that Orkin's proffered reason is a pretext for retaliation. To meet this burden Berger must show that Orkin would not have fired her "but for" her complaints of discrimination. In her opposition, Berger argues that the elimination of her position was merely a smokescreen because she and other salespersons are paid a minimal guaranteed salary and are primarily paid on commission.

This argument is unavailing. Even if Berger could establish that Orkin's proffered reason was actually false, that alone would not necessarily mean that the proffered reason was a pretext for unlawful retaliation because there may be other nondiscriminatory reasons for an adverse employment action that are not actionable under Title VII.

Simply, Berger has no evidence to create an issue of fact as to pretext, particularly when one considers that two other individuals who had nothing to do with Berger's case lost their jobs in the staff reductions. The burden is not on Orkin to prove

that it fired Berger for non-discriminatory reasons but rather on Berger to prove that "but for" her protected activity Orkin would not have fired her. The best that Berger could ever hope to prove is that retaliation had been a motivating factor in the otherwise non-discriminatory reason to terminate her, but post *Nassar* that would not be enough to meet her burden of proof. Orkin is entitled to judgment as a matter of law on Berger's retaliatory discharge claim and the motion for summary judgment is GRANTED as to this claim.

Accordingly;

**IT IS ORDERED** that the **Motion for Summary Judgment (Rec. Doc. 35)** filed by defendants Rollins, Inc. and Orkin, LLC is **GRANTED** and Plaintiff's complaint is **DISMISSED** with prejudice.

April 12, 2017

JAY C. ZAINEY
UNITED STATES DISTRICT JUDGE